IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SOLAE, LLC,<br>a Delaware limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Action No. 07-140-JJF |
| HERSHEY CANADA INC.,<br>an Ontario, Canada corporation, | ) ) ) | |
| Defendant. | ) ) ) | |

## DECLARATION OF SUSAN M. ANGELE

1.   My name is Susan M. Angele. I am Vice President and Deputy General Counsel of The Hershey Company. I also provide legal services for, and serve as a representative of, Hershey Canada Inc. ("Hershey Canada"), pursuant to a service contract between The Hershey Company and Hershey Canada. I make this Declaration in support of Hershey Canada's motion to dismiss the above-captioned case in favor of a related action currently pending in the province of Ontario, Canada.

2.   Hershey Canada, the sole defendant in this action, is a wholly owned subsidiary of The Hershey Company. Hershey Canada is separately incorporated under the laws of Ontario, Canada and has no operations in Delaware or elsewhere in the United States. Hershey Canada's principal place of business is in Ontario, Canada.

3.   On November 12, 2006, Hershey Canada publicly announced a voluntary recall of certain products manufactured between the dates of October 15, 2006 and November 10, 2006 at its plant in Smiths Falls, Ontario. This recall was prompted due to a Salmonella contamination discovered at the plant during regular quality-control inspections by Hershey Canada employees. A copy of the press release announcing the recall is attached as Exhibit A to this Declaration.

4.   Based upon Hershey Canada's analysis of the Salmonella contamination at its plant, Hershey Canada determined that the source of the Salmonella was soy lecithin manufactured by Solae, LLC, the plaintiff in this action. Soy lecithin is an ingredient that Hershey Canada uses in the manufacture of chocolate products for distribution in Canada.

5.   On November 13, 2006, Burton H. Snyder, Senior Vice President and General Counsel of The Hershey Company, sent Solae a letter advising that Solae's soy lecithin was the source of the Salmonella contamination in Hershey Canada's Smiths Falls plant. Mr.

Snyder informed Solae that "The Hershey Company will hold Solae responsible for all losses suffered as a result of this incident," but also advised that in lieu of litigation, Hershey would be willing to "resolv[e] this claim in an amicable manner." A true and correct copy of Mr. Snyder's letter is attached as Exhibit B to this Declaration.

6.      On November 14, 2006, Cary Levitt, Vice President and General Counsel of Solae, responded that "at this juncture we deny any liability for your losses suffered as a result of this incident," but stated that Solae "look[ed] forward to continuing to work with [Hershey] to resolve this matter." A true and correct copy of Mr. Levitt's letter is attached as Exhibit C to this Declaration.

7.      On December 4, 2006, Mr. Levitt sent Mr. Snyder an email confirming Solae's acceptance of Hershey's invitation to hold settlement talks and asking for dates for "a face-to-face meeting." A copy of Mr. Levitt's email is attached as Exhibit D to this Declaration.

8.      I responded to Mr. Levitt's email on Mr. Snyder's behalf that same day, proposing a meeting the week of December 11, 2006. The next day, December 5, 2006, Mr. Levitt proposed a meeting on December 19, 2006. A copy of Mr. Levitt's December 5, 2006 email is attached as Exhibit E to this Declaration.

9.      Based upon this correspondence, Solae, Hershey Canada, and The Hershey Company held a settlement meeting at The Hershey Company's headquarters in Hershey, Pennsylvania on December 19, 2006. I attended this meeting on behalf of The Hershey Company and Hershey Canada along with Mr. Snyder and the Vice Presidents of Quality and Procurement for The Hershey Company. In attendance for Solae were David Narkiewicz, an in-house lawyer, Scott Winkelman, an outside attorney from the law firm of Crowell & Moring LLP, and Jack Self, the Global Director of Soy Lecithin for Solae.

10.     On the Crowell & Moring website, Mr. Winkelman identifies himself as "Co-Chair of the Firm's Tort Practice" who "litigates class actions, multidistrict proceedings and other complex litigation nationwide in products and commercial matters." A copy of Mr. Winkelman's web bio is attached as Exhibit F to this Declaration.

11.     Prior to the meeting, Hershey Canada had its Ontario counsel prepare a Statement of Claim to commence an Ontario action against Solae, seeking damages related to Solae's contaminated shipment of soy lecithin. Hershey Canada was prepared to commence this action in the Ontario Superior Court of Justice in the event that Solae did not appear willing to reach an amicable settlement of Hershey Canada's claims at the December 19, 2006 meeting.

12.     At the outset of the December 19, 2006 settlement meeting, the parties entered into an Agreement governing the use of information exchanged during settlement negotiations. A true and correct copy of the Agreement is attached as Exhibit G to this Declaration.

13.     The December 19, 2006 Agreement memorialized Hershey Canada's position that "soy lecithin provided by Solae was contaminated with Salmonella which caused various Hershey products to be adulterated, causing significant damage to Hershey's business."

The Agreement provided further that "the parties desire to enter into discussions for the purpose of attempting to resolve liability and damages issues currently in dispute." Finally, the Agreement explicitly recognized that the parties were engaging in "settlement discussions" and acknowledged that there could be "litigation related to [the] matters in dispute" if a settlement were not reached.

14.    As the December 19, 2006 Agreement indicates, both parties understood that Hershey Canada held substantial legal claims against Solae, that the parties desired to engage in "settlement discussions" before resorting to litigation, and that Hershey would indeed initiate "litigation related to [the] matters in dispute" should settlement discussions prove not to be productive.

15.    Solae stated at the December 19, 2006 meeting that it wished to proceed with settlement talks and agreed to provide a response to Hershey's allegations and settlement demands in furtherance of reaching a negotiated resolution of the dispute. Based on statements made and assurances given by Solae at the settlement conference on December 19, 2006, Hershey Canada decided not to file its lawsuit in Ontario at that time but instead to continue to pursue settlement discussions with Solae.

16.    Following the December 19, 2006 meeting, Solae communicated with Hershey principally through Solae's outside litigation counsel, Scott Winkelman and Monica Welt, both of Crowell & Moring in Washington, D.C. Mr. Winkelman and Ms. Welt requested additional information concerning Hershey Canada's proposed damages, which Hershey Canada provided.

17.    Following Hershey's request for a response from Solae, Ms. Welt indicated on February 2, 2007 that Solae was "analyzing" the damages information Hershey had provided and "incorporating them into our analysis of the overall claim." Ms. Welt stated further that she would "be in touch next week about setting up a time for Hershey and Solae to talk." A true and correct copy of Ms. Welt's February 2, 2007 email is attached as Exhibit H to this Declaration.

18.    On February 22, 2007, Ms. Welt sent me an email with her "apologies for the delay in confirming Solae's availability" for follow-up settlement discussions, but she reported that she "just received the final word that everyone is available on [Solae's] side" and that "we look forward to seeing you all on March 8 in Hershey." A true and correct copy of Ms. Welt's February 22, 2007 email and my response are attached as Exhibit I to this Declaration.

19.    Ms. Welt assured me verbally that Solae's representatives at the March 8, 2007 meeting would have authority to settle the dispute and that Solae hoped to reach a settlement at that meeting. Ms. Welt's assurances that Solae was interested in settling the dispute were consistent with numerous other assurances that Hershey Canada received from Solae representatives. Based on these statements, I believed that Solae was negotiating in good faith and desired to reach an amicable resolution of the dispute. In reliance on these statements, Hershey Canada delayed filing suit against Solae in Ontario and awaited Solae's response, due to be presented in person on March 8, 2007.

20. On the evening of March 7, 2007, Mr. Winkelman left voicemail messages for both me and Mr. Snyder abruptly canceling the settlement meeting scheduled for 9 a.m. the next day. According to Mr. Winkelman's voicemail, Solae had to "postpone" the March 8 settlement meeting because "an insurance meeting with our insurer that was supposed to set up [the March 8] meeting with [Hershey] did not happen as planned" and because Mr. Winkelman was not able to speak with a "decisionmaker" prior to the meeting. Mr. Winkelman promised to get "back" to Hershey about a new date for the meeting. A true and correct transcription of Mr. Winkelman's March 7, 2007 voicemail is attached to this declaration as Exhibit J. (An audio recording of Mr. Winkelman's voicemail is also available at the Court's request.)

21. Mr. Winkelman's voicemail indicated to me that Solae intended to continue negotiating a settlement in good faith. Nothing in Mr. Winkelman's voicemail or any other communication indicated that Solae had decided to terminate settlement talks or that Solae had decided to litigate instead of providing Hershey with a response to Hershey's settlement demand. Indeed, after I received Mr. Winkelman's voicemail, I sent him an email seeking to go forward with the March 8 meeting at least "to go over the root cause analysis alone if the Solae folks are already out here." A true and correct copy of my March 7, 2007 email to Mr. Winkelman is attached to this Declaration as Exhibit K.

22. Accepting Mr. Winkelman's representations in his March 7, 2007 voicemail as truthful and made in good faith, on the evening of March 7, 2007, I sent an internal email to the Hershey representatives who were to participate in the settlement meeting advising them that the meeting had been postponed and describing the voicemail from Solae. I wrote that Solae's attorneys had blamed the delay on the fact that "they had hoped to have completed a meeting with an insurer today and to have a key decisionmaker available for them tomorrow" but that "[n]either of these has panned out and so they are looking to postpone the meeting." A true and correct copy of my March 7, 2007 email is attached to this Declaration as Exhibit L.

23. Had I or Mr. Snyder even the slightest understanding or indication that Solae was no longer engaging in good faith settlement discussions, we would have immediately filed our lawsuit in Ontario. The Ontario Statement of Claim had been ready for filing since late December, pending the outcome of our settlement discussions with Solae. We both assumed, in reliance on Mr. Winkelman, that the meeting was being postponed (not cancelled) for logistical reasons and that settlement negotiations were still underway.

24. Neither I nor Mr. Snyder received any contact from Mr. Winkelman after the March 7, 2007 voicemail canceling our March 8 meeting. I called his office in the morning on March 9, 2007 and left a message on his voicemail, asking that he return my call. On March 9, 2007, at 4:22 p.m., with no notice to Hershey Canada whatsoever, Solae filed its Complaint in this case, seeking a declaratory judgment against Hershey in federal court in Delaware. Mr. Winkelman did not return my call until later on March 9, 2007, after Solae had filed its Complaint and after the Ontario courthouse had closed for the day.

4

25.    On the next business day, Monday, March 12, 2007, before 10:45 a.m., Hershey Canada issued its Statement of Claim in the Ontario Superior Court of Justice. The issuance of this Statement of Claim commenced an Ontario action against Solae asserting claims of breach of contract, breach of warranty, negligence, lost profits, damage to reputation, contribution and indemnity, and other equitable relief. The Statement of Claim seeks damages in the amount of $20 million (Canadian) for, *inter alia*, Solae's delivery of tainted soy lecithin, the subsequent recall of Hershey products, the closure of the Smiths Falls plant to eliminate any trace of salmonella and the resultant loss of profit, and the harm to Hershey's reputation. A true and correct copy of Hershey Canada's Statement of Claim against Solae, issued in Ontario, is attached to this declaration as Exhibit M.

26.    Hershey Canada served Solae with the Ontario Statement of Claim at Solae's headquarters in St. Louis, Missouri. The Ontario Statement of Claim was served on Solae on the same day it was issued, at approximately 12:13 p.m. local time.

27.    Hershey Canada was not served by Solae until March 29, 2007, approximately three weeks after Solae filed the Delaware complaint and had been served with the Canada complaint.

28.    According to its website, Solae's "Global Headquarters" is located in St. Louis, Missouri. A link on Solae's website entitled "Company Overview - Locations" identifies 29 different cities throughout the world where Solae has operations, none of which are located in Delaware. A true and correct printout of the Solae website page referenced in this paragraph is attached as Exhibit N to this Declaration.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 18, 2007

Susan M. Angele
Vice President and Deputy General Counsel
The Hershey Company

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2007, I electronically filed the foregoing with the Clerk

of Court using CM/ECF which will send notification of such filing(s) to the following and which

has also been served as noted:

### BY HAND

P. Clarkson Collins, Jr.
Katherine J. Neikirk
Morris James, LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19899

I further certify that on April 19, 2007, the foregoing document was sent to the following

non-registered participants in the manner indicated:

### VIA FEDERAL EXPRESS

Scott L. Winkelman
Monica M. Welt
Crowell & Moring LLP
1001 Pennsylvania Ave. N.W.
Washington, D.C. 20004-2595

_____
Gregory E. Stuhlman (#4765)
stuhlman@rlf.com

# EXHIBIT A

http://www.hersheycanada.com/en/corporate/Hershey_release_English.html

MEDIA CONTACTS:

John Long

717-508-3237

Stephanie Moritz

717-508-3238

CFIA CONTACT:

Garfield Balsom

Canadian Food Inspection Agency

Office of Food Safety and Recall

613-760-4232

## HERSHEY CANADA RECALLS SELECT PRODUCTS

Hershey Canada, in cooperation with the Canadian Food Inspection Agency, today announced a voluntary recall of a limited number of products produced at its Smiths Falls plant between the dates of October 15 and November 10, 2006. The recall of these items, listed below, is being conducted due to the potential of Salmonella contamination associated with an externally sourced ingredient

No Halloween or Christmas items are included in the recall

"Product quality and safety are top priorities at Hershey," said Eric Lent, General Manager, Canada. "We are working in close cooperation with the Canadian Food Inspection Agency to quickly retrieve the product in question from our customers and to ensure that consumers who may have purchased this product are aware of the potential health concern."

Only the date codes starting with four digits ranging from 6417 to 6455 of the following products are included in the recall. The date codes can be found on the back of each unit.

| Brand Name | Product Name | Size |
|---|---|---|
| HERSHEY | CHIPITS Milk Chocolate Chips | 270 gram |
| HERSHEY'S | Creamy Milk Chocolate With Almonds | 43 gram |
| HERSHEY'S | Creamy Milk Chocolate | 45 gram |
| OH HENRY! | OH HENRY! | 62.5 gram<br>62.5g / 4 bars<br>145 gram |
| OH HENRY! | Bites | 130 gram |
| OH HENRY! | Peanut Butter | 60 gram |
| HERSHEY | CHIPITS Semi-Sweet Chocolate Chips | 350 gram<br>2 kg |
| HERSHEY | CHIPITS Mini Chocolate Chips | 300 gram<br>10 kg<br>175 gram |

http://www.hersheycanada.com/en/corporate/Hershey_release_English.html

|  |  | 500 gram |
| --- | --- | --- |
| HERSHEY | CHIPITS Chocolate Chip Bulk | 10 kg |
| HERSHEY | CHIPITS Semi-Sweet Mint Chocolate Chips | 300 gram |
| HERSHEY | Semi-Sweet Chocolate Chips | 300 gram |
| HERSHEY'S | SPECIAL DARK Chocolate | 45 gram |
| HERSHEY'S | SPECIAL DARK Chocolate with Almonds | 43 gram |
| REESE | Peanut Butter Cups | 51 gram<br>68 gram<br>51 gram / 4 bars |
| LOWNEY | Cherry Blossom | 45 gram |
| GLOSETTE | Peanuts | 45 gram |
| GLOSETTE | Almond | 42 gram |
| GLOSETTE | Raisin | 50 gram<br>145 gram |
| HERSHEY'S | Chocolate Shell Topping | 177 ml |
| EAT-MORE | Dark Toffee Peanut Chew | 56 gram<br>56 gram / 4 bars |
| LOWNEY | Bridge Mix | 52 gram<br>340 gram |
| HERSHEY | Assorted 16 count | 728 gram |
| HERSHEY | Assorted 50 count | 2 5 kg |
|  | Nut Roll | 5 kg |
| HERSHEY | Semi-Sweet Chocolate Chips | 10 kg |

Consumers who have purchased the items in question should contact Hershey Consumer Relations at 1-800-468-1714

# # #

# EXHIBIT B



The Hershey Company

Burton H. Snyder
*Senior Vice President,*
*General Counsel and Secretary*

November 13, 2006

100 Crystal A Drive
P.O. Box 810
Hershey, PA 17033-0810
Phone: 717-534-7912
Fax: 717-534-7156
bsnyder@hersheys.com

<u>VIA FACSIMILE:  314-659-5755</u>

Cary A. Levitt, Esq.
Vice President and General Counsel
Solae, LLC
1034 Danforth Drive
St. Louis, MO  63102

Dear Mr. Levitt:

As representatives of Solae are aware, The Hershey Company identified the presence of salmonella during a manufacturing quality check at its facility located at Smiths Falls, Canada, which to date has resulted in a production shutdown at the facility and a product recall. A copy of the Product Alert issued in conjunction with the Canadian Food Inspection Agency and our company press release are attached.

Our lab testing, performed in two different laboratories, confirms that the source of the salmonella contamination is the IP soy lecithin purchased from Solae. Accordingly, The Hershey Company will hold Solae responsible for all losses suffered as a result of this incident.

We appreciate Solae's cooperation on this matter to date and look forward to resolving this claim in an amicable manner. We do not have a claim amount yet as we are still continuing to incur losses in connection with this matter. In particular, it is too early to predict certain losses including the effect of this recall on the brands, business continuity, potential third party claims, etc. I will provide information with respect to loss as it becomes available.

Please let me know who the Solae contact will be for resolution of this matter. If there is an applicable insurance contact, please provide that as well. We will forward information to your insurance carrier at your request. In addition, please let me know the results of any lab testing you have performed on the IP soy lecithin samples taken at our Smiths Falls facility yesterday.

We look forward to working with Solae on a satisfactory resolution of this matter.

Sincerely,

BHS:SMA/fib

cc: David Narkiewicz

55327

# EXHIBIT C

*The Solae
Company*™

Solae LLC
P.O. Box 88940
St. Louis, MO 63188 USA
800 325 7108

**VIA FACSIMILE (717) 534-7156**

November 14, 2006

Burton H. Snyder, Esquire
Senior Vice President,
General Counsel and Secretary
The Hershey Company
100 Crystal A Drive
Hershey, PA 17033-0810

Dear Mr. Snyder,

Thank you for your letter dated November 13, 2006, regarding Hershey Canada's product recall.

As you know, we immediately began an internal investigation to identify and understand the root cause of the potential problem. Our current focus is to determine if our product or manufacturing processes are in any way responsible for the alleged contamination. This investigation is on-going. I understand that our respective teams are working closely together, and we appreciate the cooperative efforts.

In response to your claims, at this juncture we deny any liability for your losses suffered as a result of this incident.

You inquired about insurance. There is no insurance carrier to contact.

David Narkiewicz, Corporate Counsel, and I will continue to be Solae's legal contacts. You may reach David at (314) 659-3170 and my direct number is (314) 659-3058.

We look forward to continuing to work with you to resolve this matter.

Sincerely,

Cary A. Levitt
Vice President and General Counsel

CAL/lr

cc:   David Narkiewicz, Esquire

*Better Ingredients for Better Living*™

SC5001

# EXHIBIT D

**Snyder, Burton**

| | |
|---|---|
| **From:** | CLevitt@solae.com |
| **Sent:** | Monday, December 04, 2006 9:59 AM |
| **To:** | Snyder, Burton |
| **Cc:** | DNarkiew@solae.com |
| **Subject:** | Hershey product recall - Solae |

Burt:

I received your voice message from Friday. First, let me say that Solae knows that your product recall is an important matter that our companies will need to discuss. Solae is still investigating this matter, including some considerations that are peripheral to Hershey.

At this juncture, we agree that it makes sense to schedule a face-to-face meeting. I anticipate that we will have a number of questions about your product recall. In addition, you will no doubt have questions of your own, and, among other things, we can discuss the possibility and desirability of exchanging recall and test data and other such information. I'd like to make progress before the Christmas holidays.

Kindly advise your availability for a meeting during the week of December 11 or the week of December 18. Let's find a date to meet. In the meantime, we will work on an agenda, and of course we are entirely open to your agenda suggestions.

If you would like to talk, perhaps we can schedule a specific time for a conversation.

Thanks, Cary

This communication is for use by the intended recipient and contains information that may be Privileged, confidential or copyrighted under applicable law. If you are not the intended recipient, you are hereby formally notified that any use, copying or distribution of this e-mail, in whole or in part, is strictly prohibited. Please notify the sender by return e-mail and delete this e-mail from your system. Unless explicitly and conspicuously designated as "E-Contract Intended", this e-mail does not constitute a contract offer, a contract amendment, or an acceptance of a contract offer. This e-mail does not constitute a consent to the use of sender's contact information for direct marketing purposes or for transfers of data to third parties.

Francais  Deutsch  Italiano  Espanol  Portugues  Japanese  Chinese  Korean

http://www.DuPont.com/corp/email_disclaimer.html

# EXHIBIT E

## Snyder, Burton

**From:**    CLevitt@solae.com
**Sent:**    Tuesday, December 05, 2006 6:35 PM
**To:**    Angele, Susan
**Cc:**    Snyder, Burton; DNarkiew@solae.com
**Subject:** Hershey product recall - Solae – date for meeting

Susan, Burt:

We have reviewed our calendars for a face-to-face meeting in your offices in Hershey, Pa. Unfortunately, we are not available Dec. 11. The best date for us is **Tuesday Dec. 19.** Is this satisfactory? I anticipate that the Solae team will be: either me or David Narkiewicz, our lecithin business director and possibly outside counsel.

Please confirm Dec. 19 and let us know whether you prefer morning or afternoon.    Thank you

Cary

"Angele, Susan" <sangele@hersheys.com>                    To <CLevitt@solae.com>

                                                          cc "Snyder, Burton" <bsnyder@hersheys com>
12/04/2006 01:32 PM                                       Subject RE: Hershey product recall - Solae

Cary - Monday the 11th would be ideal If that is not workable, next choices would be Wednesday or Thursday of that week, followed by Tuesday Any day the following week would work, but we would prefer the week of the 11th if possible.

Thanks,

Susan

**From:** CLevitt@solae.com [mailto:CLevitt@solae.com]
**Sent:** Monday, December 04, 2006 1:30 PM
**To:** Angele, Susan
**Subject:** Hershey product recall - Solae

----- Forwarded by Cary A. Levitt/PROTEIN on 12/04/2006 12:29 PM -----
**Cary A. Levitt/PROTEIN**

12/04/2006 08:59 AM                    To bsnyder@hersheys.com

                                       cc David L. Narkiewicz/PROTEIN@STLOUIS

3/19/2007

Subject Hershey product recall - Solae

Burt:

I received your voice message from Friday. First, let me say that Solae knows that your product recall is an important matter that our companies will need to discuss. Solae is still investigating this matter, including some considerations that are peripheral to Hershey.

At this juncture, we agree that it makes sense to schedule a face-to-face meeting. I anticipate that we will have a number of questions about your product recall. In addition, you will no doubt have questions of your own, and, among other things, we can discuss the possibility and desirability of exchanging recall and test data and other such information. I'd like to make progress before the Christmas holidays.

Kindly advise your availability for a meeting during the week of December 11 or the week of December 18. Let's find a date to meet. In the meantime, we will work on an agenda, and of course we are entirely open to your agenda suggestions.

If you would like to talk, perhaps we can schedule a specific time for a conversation.

Thanks, Cary

This communication is for use by the intended recipient and contains
information that may be Privileged, confidential or copyrighted under
applicable law. If you are not the intended recipient, you are hereby
formally notified that any use, copying or distribution of this e-mail,
in whole or in part, is strictly prohibited. Please notify the sender by
return e-mail and delete this e-mail from your system. Unless explicitly
and conspicuously designated as "E-Contract Intended", this e-mail does
not constitute a contract offer, a contract amendment, or an acceptance
of a contract offer. This e-mail does not constitute a consent to the
use of sender's contact information for direct marketing purposes or for
transfers of data to third parties.

Francais Deutsch Italiano  Espanol  Portugues  Japanese  Chinese  Korean

        http://www.DuPont.com/corp/email_disclaimer.html

This communication is for use by the intended recipient and contains
information that may be Privileged, confidential or copyrighted under
applicable law. If you are not the intended recipient, you are hereby
formally notified that any use, copying or distribution of this e-mail,
in whole or in part, is strictly prohibited. Please notify the sender by
return e-mail and delete this e-mail from your system. Unless explicitly
and conspicuously designated as "E-Contract Intended", this e-mail does
not constitute a contract offer, a contract amendment, or an acceptance
of a contract offer. This e-mail does not constitute a consent to the
use of sender's contact information for direct marketing purposes or for
transfers of data to third parties.

Francais Deutsch Italiano  Espanol  Portugues  Japanese  Chinese  Korean

3/19/2007

http://www.DuPont.com/corp/email_disclaimer.html

# EXHIBIT F

 crowellmoring



**Practice Areas**
Torts
Class Actions
Aviation
Product Risk Management

**Scott L. Winkelman**
Partner
swinkelman@crowell.com
Washington
1001 Pennsylvania Avenue, N W
Washington, DC 20004-2595
Phone: 202.624.2972
Fax: 202.628 5116
V-Card

Scott L. Winkelman is a partner in the firm and Co-Chair of the firm's Torts Practice  He litigates class actions, multidistrict proceedings, and other complex litigation nationwide in products and commercial matters  His tort practice involves representation in a range of industry sectors, including automotive, computer, aviation, food, alcohol, chemical, rail, and information technology  Scott also represents clients in proceedings before the National Highway Traffic Safety Administration, the Consumer Product Safety Commission and related regulatory bodies, and counsels clients on liability prevention, records management, and commercial contract and warranty matters

Scott is a Six Sigma "black belt" and advises clients on process improvements in the practice of law.  Scott's lecture topics include class actions, tort trends, liability prevention, regulatory procedures, and a range of mass tort concerns  He was selected by his peers to be included in *The Best Lawyers In America 2007* as a "Best Lawyer" in the practice area of product liability litigation

Scott received his undergraduate degree from the University of Michigan (1984), and his law degree from Harvard Law School (1987), before serving as judicial clerk to the Honorable John Pratt of the United States District Court for the District of Columbia

Scott is married with two children, and roots for all Detroit sports teams.

**Education**
University of Michigan, B A., 1984
Harvard Law School, J D . 1987

**Affiliations**
Admitted to practice: District of Columbia, Illinois

**Publications**
"Fear Factor: Supreme Court Permits Mental Anguish Damages for Asbestosis Plaintiffs Who Fear Cancer," *Product Liability Law & Strategy* (September 2003)  Co-Authors: Scott L. Winkelman, Jerome Murphy and F  Ryan Keith.

"District of Columbia Product Liability Law," *Product Liability Desk Reference*, Aspen (2003)  Co-Authors: Scott L. Winkelman and John L  Murino

"Industry Standards As a Source Of Liability For Trade Associations and Association Members," (October 2002)  Co-Authors: Timothy M  Biddle, Edward M  Green, Richard J  Mannix and Scott L  Winkelman

"Six Sigma: Positioning For Competitive Advantage," *ACCA Docket* (January 2001)  Co-Authors: Scott L  Winkelman and Thomas A  Sager.

"Electronic Signatures Act," *National Law Journal* (July 2000)  Co-Author: Scott L  Winkelman and Dylana Blum

"Honoring State Court Class Action Settlements," *Insights Magazine* (March 1996)  Co-Authors: Scott L  Winkelman and Luther Zeigler

"Resetting the Punitives Hurdle," *Legal Times* (December 1995)  Author: Scott L  Winkelman

"Avoiding Federal Courts Through Removal Abuse," *Product Safety & Liability Reporter* (August 1995)  Co-Authors:

Scott L. Winkelman - Washington Lawyer - Crowell & Moring

Scott L. Winkelman and Lori Bean

"Closing Open Court to 'Doe' Plaintiffs." *Legal Times* (August 1995). Author: Scott L. Winkelman



# EXHIBIT G

AGREEMENT

AGREEMENT, effective the 19th day of December, 2006, by and between THE HERSHEY COMPANY and its subsidiary, Hershey Canada, Inc. (hereinafter collectively called "Hershey") and SOLAE, LLC (hereinafter called "Solae").

BACKGROUND

Hershey is engaged in the manufacture and sale of various chocolate and confectionery products. Solae is a supplier of soy lecithin which is used by Hershey in the manufacture of Hershey's products. Hershey has alleged that soy lecithin provided by Solae was contaminated with Salmonella which caused various Hershey products to be adulterated, causing significant damage to Hershey's business (the "Incident"). The parties desire to enter into discussions for the purpose of attempting to resolve liability and damages issues currently in dispute.

Each party acknowledges and understands that, in connection with such discussions it is likely to obtain or be exposed to certain secret, confidential and proprietary information of the other party. To assure that such information is properly protected and to facilitate discussions about potential settlement opportunities, the parties have entered into this Agreement.

WITNESSETH:

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and intending to be legally bound, the parties hereto agree as follows:

1. The parties agree that such discussions between the parties regarding the Incident as may take place on December 19, 2006 and any related follow up discussions between counsel are held for the purpose of attempting to resolve matters in dispute. The discussions and exchange of information are entirely without prejudice. No statements made during settlement discussions and no documents generated in connection with such discussions shall be admissible in any litigation related to matters in dispute. Nothing in this paragraph shall prohibit the use of any evidence or information that would have been available to a party (through discovery or otherwise) if the settlement discussions had never occurred. The parties agree that any privilege otherwise applicable to documents disclosed pursuant to these discussions will not be deemed waived or lost due to such third-party disclosure, and such disclosure during settlement discussions will not be a valid basis upon which to challenge any later asserted privilege.

2. In addition, each party shall treat and regard as secret and strictly confidential the following information of the other party:

   a. Business, technical and financial information relating to the disclosing party's facilities, products, marketing plans, sales, business practices, product planning and product development;

b. Specifications relating to existing and/or contemplated ingredients, formulas, recipes, manufacturing processes, equipment and machinery; and

c. All other nonpublic information, data, specifications, records and reports relating to such party's business.

Throughout this Agreement, the foregoing information shall be referred to collectively as the "Confidential Information."

3. Except as otherwise provided in Paragraph 4, each party shall keep the Confidential Information of the other party strictly confidential, shall not divulge, communicate or transmit the Confidential Information to third parties other than the parties' attorneys, and shall not use, employ or exploit the Confidential Information in any manner without prior written consent.

4. The following shall be excluded from this Agreement:

a. information that was in the possession of a party prior to direct or indirect disclosure by the other party;

b. information that is presently or later becomes public knowledge without any intervention by the receiving party;

c. information that is independently developed by the receiving party;

d. information that is received from a third party who is lawfully in possession of such information and is not in violation of any contractual, legal or fiduciary obligation;

e. information that is required to be disclosed by law, court or administrative order; and

f. information that is disclosed in the context of a legal proceeding and covered by a protective order.

5. Prior to disclosing Confidential Information pursuant to paragraph 4(e), if such information is not the subject of a protective order, a party shall notify the party that is the owner of such information.

6. Each party acknowledges and agrees that the other may suffer substantial and irreparable damage, not readily ascertainable or compensable in monetary terms, in the event of any breach of any provision of this Agreement. Each party therefore agrees that in the event of any such breach, the other party shall be entitled without limitation of any other rights or remedies otherwise available to it, to seek an injunction.

58849

7  Wherever in this Agreement reference is made to either of the parties hereto, such reference shall also be deemed to include the party's directors, officers, employees, agents and other representatives.

8. This Agreement shall be binding upon Hershey and Solae and upon their respective successors and assigns.

9. This Agreement sets forth the entire obligation and understanding of the parties concerning the subject matter herein contained, and any prior or contemporaneous agreements or understandings relating thereto are merged herein and superseded hereby.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

**HERSHEY CANADA, INC.**

By _S. M. Argule_

Title _Vice President, Asst. Secretary_

**THE HERSHEY COMPANY**

By _S. M. Argule_

Title _Vice President Deputy General Counsel_

**SOLAE, LLC**

By _Jerah H. Self_

Title _Global Director — Lecithin_

3

58849

# EXHIBIT H

**Angele, Susan**

| | |
|---|---|
| From: | Welt, Monica [MWelt@crowell.com] |
| Sent: | Friday, February 02, 2007 11:00 AM |
| To: | Angele, Susan |
| Cc: | Snyder, Burton; Winkelman, Scott |
| Subject: | RE: Recall Costing |
| Sensitivity: | Confidential |

Susan—


Thank you for the updated financials.  We are analyzing these new numbers and incorporating them into our analysis of the overall claim, and will be in touch next week about setting up a time for Hershey and Solae to talk.


As for the inventory in storage, I am making contact with Solae's quality control personnel about how to proceed regarding the testing, and will have an answer for you beginning next week as well.


Best,

Monica


Monica M. Welt

Crowell & Moring LLP

1001 Pennsylvania Avenue, NW

Washington, DC 20004

202.624.2858 (direct dial)

202.628.5116 (fax)

www.crowell.com

_____

**From:** Angele, Susan [mailto:sangele@hersheys.com]
**Sent:** Wednesday, January 31, 2007 3:54 PM
**To:** Welt, Monica
**Cc:** Snyder, Burton; Winkelman, Scott
**Subject:** FW: Recall Costing
**Importance:** High
**Sensitivity:** Confidential

Monica - attached is the damages breakdown with a couple of revisions  It includes some newly-received charges for internal time and losses related to Hershey's comanufacturer

Please let me know when we will hear back on the claim and the root cause analysis, as we are anxious to resolve this matter.

Also, we are continuing to retain affected inventory on hold pending Solae's agreement on destruction. Prior to our meeting with Scott and Solae in December, there had been a request by Solae to sample the product. Hershey's position is that while we are willing to accommodate Solae on this, assuming they are able to obtain CFIA and FDA approval to remove the detention with respect to product to be sampled, because the presence of Salmonella in the lecithin renders the inventory unsaleable even if every single finished product test comes back negative, there is nothing to be gained by the testing  Solae had indicated that further discussions on this subject would wait until after the December 19 meeting. If Solae is not comfortable with destruction of the inventory at this point, we will continue to hold it for a reasonable time, but beginning in March we would need to move it to a different location and so would incur additional costs if we were to continue to store it. Please let me have Solae's position on this as well.

Thanks,

Susan


<<Recall Costing - Solae (1) pdf>>

*Susan M. Angele*
*VP, Deputy General Counsel*
*The Hershey Company*
*100 Crystal A Drive*
*Hershey, PA 17033*
*sangele@hersheys.com*
*Phone: (717) 534-7532*
*Fax: (717) 534-7156*

This email may contain information that is privileged or confidential. If you are not the intended recipient, please delete it and notify me immediately.

# EXHIBIT I

**Angele, Susan**

| | |
|---|---|
| From: | Angele, Susan |
| Sent: | Thursday, February 22, 2007 3:42 PM |
| To: | 'Welt, Monica' |
| Cc: | Snyder, Burton; 'Winkelman, Scott' |
| Subject: | RE: March 8 meeting |

Monica - we can meet at 8:00, at the same location as the prior meeting - 100 Crystal A Drive, Hershey.

Thanks,

Susan

---

**From:** Welt, Monica [mailto:MWelt@crowell.com]
**Sent:** Thursday, February 22, 2007 12:18 PM
**To:** Angele, Susan
**Cc:** Snyder, Burton; Winkelman, Scott
**Subject:** March 8 meeting

Susan—

My apologies for the delay in confirming Solae's availability for the March 8 meeting, but I just received the final word that everyone is available on our side.

Please send the pertinent details for time and location at your convenience, and we look forward to seeing you all on March 8 in Hershey.

Best,

Monica M. Welt

Crowell & Moring LLP

1001 Pennsylvania Avenue, NW

Washington, DC 20004

202.624.2858 (direct dial)

202.628.5116 (fax)

www.crowell.com

# EXHIBIT J

<u>Telephone transcription of voice mail left by Scott Winkleman on B. Snyder's office voice mail</u>

March 7, 8:03 p.m.

Hello Burt, it's Scott Winkleman in DC. I'm calling with really terrible manners and poor form to say that I need to postpone tomorrow's meeting on such short notice. I have learned that an insurance meeting with our insurer that was supposed to set up our meeting with you did not happen as planned and I have learned that one of my decision makers who I was supposed to talk to before tomorrow, I cannot talk to until tomorrow night. So again, I couldn't feel worse about this, telling you on such short notice, but I will be back to you. I'm leaving the very same message for Susan. Have a good night.

# EXHIBIT K

## Angele, Susan

| | |
|---|---|
| **From:** | Angele, Susan |
| **Sent:** | Wednesday, March 07, 2007 8:16 PM |
| **To:** | 'Winkelman, Scott' |
| **Cc:** | Snyder, Burton |
| **Subject:** | Tomorrow's meeting |

Scott - received your voicemail. We would be available to meet anyway to go over the root cause analysis alone if the Solae folks are already out here  Please let me know if that would work

Thanks,

Susan

*Susan M. Angele*
*VP, Deputy General Counsel*
*The Hershey Company*
*100 Crystal A Drive*
*Hershey, PA 17033*
*sangele@hersheys.com*
*Phone: (717) 534-7532*
*Fax: (717) 534-7156*

This email may contain information that is privileged or confidential. If you are not the intended recipient, please delete it and notify me immediately.

# EXHIBIT L



ALL-STATE LEGAL 800.222.0510    SGU44    RECYCLED

**Angele, Susan**

| | |
|---|---|
| From: | Angele, Susan |
| Sent: | Wednesday, March 07, 2007 8:21 PM |
| To: | West, David; Tanner, Gregg; Mastrorocco, Don |
| Cc: | Snyder, Burton |
| Subject: | Solae meeting postponed |

Solae counsel left a voicemail tonight – they had hoped to have completed a meeting with an insurer today and to have a key decisionmaker available for them tomorrow. Neither of these has panned out and so they are looking to postpone the meeting. I've sent him an email asking if they would come out to do the root cause analysis anyway, but they will most likely not want to until they are ready to discuss settlement. Will keep you posted if we hear more but assume the meeting will be rescheduled

Susan

*Susan M. Angele*
*VP, Deputy General Counsel*
*The Hershey Company*
*100 Crystal A Drive*
*Hershey, PA 17033*
*sangele@hersheys.com*
*Phone: (717) 534-7532*
*Fax: (717) 534-7156*

This email may contain information that is privileged or confidential. If you are not the intended recipient, please delete it and notify me immediately.

# EXHIBIT M

07-CV- 329291PD 2

Court File No. _____

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**

B E T W E E N :



                    HERSHEY CANADA, INC.

                                                    Plaintiff

                    - and -

                    SOLAE, LLC

                                                    Defendant

**STATEMENT OF CLAIM**

TO THE DEFENDANT

A LEGAL PROCEEDING HAS BEEN COMMENCED AGAINST YOU by the plaintiff. The claim made against you is set out in the following pages.

IF YOU WISH TO DEFEND THIS PROCEEDING, you or an Ontario lawyer acting for you must prepare a statement of defence in Form 18A prescribed by the Rules of Civil Procedure, serve it on the plaintiff's lawyer or, where the plaintiff does not have a lawyer, serve it on the plaintiff, and file it, with proof of service, in this court office, WITHIN TWENTY DAYS after this statement of claim is served on you, if you are served in Ontario.

If you are served in another province or territory of Canada or in the United States of America, the period for serving and filing your statement of defence is forty days. If you are served outside Canada and the United States of America, the period is sixty days.

Instead of serving and filing a statement of defence, you may serve and file a notice of intent to defend in Form 18B prescribed by the Rules of Civil Procedure. This will entitle you to ten more days within which to serve and file your statement of defence.

IF YOU FAIL TO DEFEND THIS PROCEEDING, JUDGMENT MAY BE GIVEN AGAINST YOU IN YOUR ABSENCE AND WITHOUT FURTHER NOTICE TO YOU. IF YOU WISH TO DEFEND THIS PROCEEDING BUT ARE UNABLE TO PAY LEGAL FEES, LEGAL AID MAY BE AVAILABLE TO YOU BY CONTACTING A LOCAL LEGAL AID OFFICE.

MBDOCS_3325914.6

- 2 -

Date        March 12, 2007          Issued by [signature]

                                    Local registrar
                                    ( M. Brenton )

                                    Address of    393 University Avenue
                                    court office   Toronto, ON

TO:     SOLAE, LLC                  393 UNIVERSITY AVE.    393 AVE UNIVERSITY
        1034 Danforth Drive         10TH FLOOR            10E ÉTAGE
        St. Louis, Missouri 63102-1008   TORONTO, ONTARIO   TORONTO, ONTARIO
        U.S.A.                      M5G 1E6               M5G 1E6

MBDOCS 3325014 6

- 3 -

## CLAIM

1.    The plaintiff claims:

    (a)    damages in the amount of $20,000,000 (or such further or other amount as this Honourable Court may deem just) for breach of contract, breach of warranty and negligence;

    (b)    additional damages in an amount to be determined by this Honourable Court on account of lost profits and damage to the plaintiff's reputation and the value of its brands;

    (c)    contribution and indemnity in respect of any third party claim for economic loss or personal injury that may be made against the plaintiff in connection with the events described below;

    (d)    pre-judgment and post-judgment interest pursuant to sections 128 and 129 of the *Courts of Justice Act*, R.S.O. 1990, c. C. 43, as amended;

    (e)    the costs of the action, together with applicable Goods and Services Tax; and

    (f)    such further and other relief as the plaintiff may request and this Honourable Court may deem just.

## THE PARTIES

2.    The plaintiff, Hershey Canada, Inc. ("Hershey Canada"), is a company incorporated under the laws of Canada. Its corporate headquarters are in Mississauga, Ontario. Hershey Canada manufactures and distributes chocolate confectionery products.

3.    Hershey Canada has a chocolate manufacturing facility located in Smiths Falls, Ontario (the "Chocolate Factory"). The Chocolate Factory produces a variety of chocolate products (the "Chocolate Products"). The Chocolate Products include food intermediates such as chocolate chips, baking chocolate and chocolate paste. The Chocolate Products also include a variety of finished chocolate bars and other confection products that are marketed

- 4 -

under popular and valuable brand names like "Eat-More", "Glossette", "Hershey", "Lowney", "Oh Henry" and "Reese's".

4.      The defendant, Solae LLC ("Solae"), is a company incorporated under the laws of the State of Delaware. Solae's corporate headquarters are in St. Louis, Missouri.    Solae manufactures and distributes a full range of soy ingredient products used in food production, including *"specialty lecithins"*.   Those ingredients include a liquid soy lecithin product ("Solae Lecithin") that is used in the making of chocolate products.  For many years, Solae has sold and delivered Solae Lecithin to Hershey Canada to be used by Hershey Canada in making its Chocolate Products.

**THE CONTRACT FOR SOLAE LECITHIN**

5.      On or about January 10, 2006, Hershey Canada entered a contract with Solae for the purchase of 250,000 pounds of Solae Lecithin (the "Contract").  The Contract was for the delivery of the Solae Lecithin to be used by Hershey Canada in making its Chocolate Products at the Chocolate Factory.

6.      The Contract is governed by the laws of Ontario.  The Contract required that Solae deliver Solae Lecithin that conformed to Hershey Canada's specifications.  The Contract also required that the Solae Lecithin would be fit for Hershey Canada's intended use and free from any defect.

**THE DELIVERY OF CONTAMINATED SOLAE LECITHIN**

7.      On September 29, 2006, Solae delivered a substantial quantity of Solae Lecithin to Hershey Canada, under the Contract.  Solae delivered the Solae Lecithin in eighteen sealed containers (the "Solae Containers"), each containing 1000 kilograms of Solae Lecithin.  The Solae Containers had been sealed by Solae prior to delivery.

8.      On October 15, 2006, Hershey Canada began using the Solae Lecithin on its "Symphony" production line at the Chocolate Factory (the "Symphony Line").

9.      On November 1, 2006, Hershey Canada discovered Salmonella in chocolate that had been produced on the Symphony Line on October 28, 2006.  The Salmonella was discovered

- 5 -

as a result of Hershey Canada's regular quality control procedures. On finding Salmonella present, Hershey Canada ceased production on the Symphony Line.

10.    The presence of Salmonella in food products is a very serious human health risk. Salmonella is a bacteria that causes an infection in the intestinal tract known as Salmonellosis. The infection results in illness and can have progressively more serious health consequences including death. The elderly, infants, and those with impaired immune systems are at greater risk from Salmonella. Section B.04.012 of the Canadian *Food and Drug Regulations*, C.R.C. c.870, specifically prohibits the sale of any chocolate product that is not Salmonella-free.

11.    After finding Salmonella present, Hershey Canada conducted testing to identify the source of the Salmonella and the potential dispersion of the Salmonella within the Chocolate Factory and in the Chocolate Products made there. This testing revealed that the Solae Lecithin delivered in the sealed Solae Containers on September 29, 2006 was the source of the Salmonella.

12.    As a result of its findings, Hershey Canada notified the Canadian Food Inspection Agency ("CFIA"), which is responsible for the enforcement of the *Food and Drug Regulations*.

13.    Hershey Canada shut down the Chocolate Factory. It also quarantined thousands of Chocolate Products and laid off hundreds of its employees.

14.    On November 11, 2006, in conjunction with the CFIA, Hershey Canada issued a recall of millions of units of Chocolate Products made at the Chocolate Factory between October 15 and November 9, 2006.

15.    Hershey Canada also conducted further testing. This included the testing of samples from Solae Containers sealed by Solae prior to delivery and unsealed in the presence of Solae representatives. This testing confirmed that the Solae Lecithin delivered by Solae on September 29, 2006 was the source of the Salmonella.

- 6 -

## SOLAE BREACHED ITS OBLIGATIONS

16.    In selecting Solae as a supplier, Hershey Canada chose a company that specializes in the supply of food additives. Solae is an experienced global manufacturer of food additives and does business in more than 100 countries. It has 3500 employees worldwide and its annual sales exceed USD$1,000,000,000. Solae's stated long-term aim is to *"incorporate great-tasting, value-added specialty food ingredients into the world's menu every day in meat products, beverages, cereals and processed foods in general"*. Solae has publicly stated that it *"pays close attention to Hazards Analysis and Critical Control Points"* in order to control the risk of product contamination, so that its customers *"get a product that is safe and produced to agreed-upon standards and specifications"*. As Solae states on its website: *"At the Solae Company, we look at quality from all angles - functionality, safety, purity, ingredients, consistency, manufacturing, customer service, technical support and many more - to ensure that our customers are never disappointed."*

17.    Solae promised Hershey that it would deliver Solae Lecithin that was fit for its intended use in the making of Chocolate Products, and that was free of Salmonella. As a global manufacturer of food additives, Solae understands the critical importance of food safety. Solae has the financial and technical resources necessary to meet its commitments relative to food safety. Hershey Canada reasonably expected Solae to meet those commitments and Hershey Canada relied upon Solae to do so.

18.    By supplying Solae Lecithin that was contaminated with Salmonella, Solae breached the Contract. This breach was a clear violation of the Canadian *Food and Drugs Act*, R.S.C. 1985 c.F-27, and was a fundamental breach going to the root of the Contract.

19.    Solae knew that the Solae Lecithin would be used by Hershey Canada in making its Chocolate Products at the Chocolate Factory. Solae also knew or ought to have known that Canadian law prohibits the sale of chocolate products that are not Salmonella-free. Solae owed a duty of care to Hershey to ensure that it supplied Solae Lecithin that was free of Salmonella. In failing to ensure that the Solae Lecithin was free of Salmonella, Solae breached its duty of care to Hershey Canada.

- 7 -

20.    Solae was negligent.    By permitting the introduction of Salmonella into the Solae Lecithin and by failing to detect the presence of Salmonella in the Solae Lecithin, Solae's actions fell below the applicable standard of care.  Further particulars of the negligent acts or omissions of Solae are known only to Solae.

## HERSHEY CANADA'S DAMAGES

21.    Hershey Canada has suffered serious and material losses as a direct consequence of Solae's breach of its legal obligations.  In particular, Hershey Canada has suffered and will continue to suffer damages related to:

      (a)    investigating to determine the source and dispersion of the Salmonella;

      (b)    implementing the quarantine and recall of Chocolate Products, including,

            (i)    storing and disposing of adulterated Chocolate Products;

            (ii)    travel and lodging expenses for employees;

            (iii)    the opportunity cost of diverted employee time;

            (iv)    the cost of third party consultants and contractors; and,

            (v)    public relations and customer and consumer relations costs;

      (c)    disposing of all intermediate and finished Chocolate Products and other materials in the Chocolate Factory, including related costs and lost profits;

      (d)    increased costs, fees and penalties assessed by customers, suppliers and government agencies as a result of the recall and the shutdown of Chocolate Factory;

      (e)    the cost of cleaning, rehabilitating and re-starting the Chocolate Factory;

      (f)    loss of profits on Chocolate Products that could not be manufactured during the shutdown of the Chocolate Factory;

- 8 -

(g)   loss of profits as a result of the damage done to Hershey Canada's reputation and brands; and

(h)   the cost of remedial marketing and promotional activities undertaken following the recall.

22.   In addition, Hershey Canada faces potential claims from its downstream customers related to their costs of responding to the recall and their corresponding loss of profits.

23.   Hershey Canada may also faces potential claims for damages from individuals who have eaten Chocolate Products contaminated with Salmonella.

24.   Further particulars of Hershey Canada's damages will be provided prior to trial.

**SERVICE OUTSIDE ONTARIO**

25.   In serving this claim on Solae outside of Ontario, the plaintiffs rely upon Rule 17.02 of the Ontario *Rules of Civil Procedure,* and upon the following material facts:

(a)   the breach of the Contract was committed in Ontario;

(b)   the claim involves a tort committed in Ontario; and

(c)   damage has been sustained by Hershey Canada in Ontario.

**PLACE OF TRIAL**

26.   Hershey Canada proposes that this action be tried at Toronto, Ontario.

- 9 -

March 12, 2007

**McMILLAN BINCH MENDELSOHN LLP**
Barristers and Solicitors
BCE Place, Suite 4400
Bay Wellington Tower, 181 Bay Street
Toronto, Ontario
M5J 2T3

Scott Maidment
LSUC#: 33797R
Tel: 416.865.7911
Fax: 416.865.7048

Teresa Dufort
LSUC#: 23677J
Tel: 416.865.7145
Fax: 416.865.7048

Solicitors for the Plaintiff

MBDOCS_3325014.6

07-cv-32929 IPD 2

Court File No: »

**HERSHEY CANADA, INC.**          and          **SOLAE LLC**
Plaintiff                                      Defendant

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
Proceeding commenced at **Toronto**

**STATEMENT OF CLAIM**

**McMILLAN BINCH MENDELSOHN LLP**
Barristers and Solicitors
BCE Place, Suite 4400
Bay Wellington Tower, 181 Bay Street
Toronto, Ontario
M5J 2T3

Scott Maidment
LSUC#: 33797R
Tel: 416.865.7911
Fax: 416.865.7048

Teresa Dufort
LSUC#: 236771
Tel: 416.865.7145
Fax: 416.865.7048

Solicitors for the Plaintiff

MBDOCS_3325914.8

# EXHIBIT N



ALL-STATE LEGAL  800 222-0510    EDM51    RECYCLED



**Better Ingredients**
for Better Living™

Contact Us | Company Fact Sheet | Product Families | Locations | Quality Management

# Company Overview – Locations

Bellevue, OH
New Bremen, OH
Ft. Wayne, IN
Remington, IN
Gibson City, IL
St. Louis, MO
Pryor, OK
Memphis, TN
Louisville, KY
México D.F., Mexico
Sao Paulo, Brazil
Santiago, Chile
Esteio, Brazil
Buenos Aires, Argentina

Corby, UK
Aarhus, Denmark
Hamburg, Germany (Lecithin)
Tokyo, Japan (FPT JV)
Zhengzhou, China
Luohe (Shineway JV)
Yun Meng, China
Hong Kong, China
Ieper, Belgium
Geneva, Switzerland
Bordeaux, France
Johannesburg, South Africa
Caracas, Venezuela
Bogota, Colombia

• Regional Headquarters
• Research & Technology Centers
• Manufacturing and Operations

○ Company Overview
○ Benefits of Soy
○ Soy Essentials
○ Consumer Benefits
○ Career Opportunities
○ Media Room
○ Solae Online
○ Solae Distributors
○ Home
○ Other Languages

*The Solae Company.*

**Global Headquarters & North America**
The Solae Company
P.O. Box 88940
St. Louis, MO 63102
USA
Tel: +1.800.325.7108

**Regional Headquarters – Europe**
Solae Europe, S.A.
2, Chemin du Pavillon
CH-1218 Le Grand-Saconnex
Switzerland
Tel: +41.227.17.6400

**Regional Headquarters - Asia Pacific**
The Solae Company
26/Floor, Tower 6, The Gateway
9 Canton Road
Tsimshatsui
Kowloon, HONG KONG
Tel: +852.2734.5352

**Regional Headquarters - Latin America**
The Solae Company
Alameda Itapecuru, 506
06454-080 - Barueri - SP
Brazil
Tel: +55.11.4166.8709

View the Site Map

© Copyright 2003, 2004 The Solae Company. Read our PRIVACY Policy or Terms of Use

Top