IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SOLAE, LLC, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | C.A. No. 07-140-JJF |
| vs. | ) | |
| | ) | |
| HERSHEY CANADA INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ANSWERING BRIEF OF SOLAE, LLC IN OPPOSITION TO HERSHEY CANADA INC.'S MOTION TO DISMISS

MORRIS JAMES LLP

P. Clarkson Collins (I.D. No. 739)
Katherine J. Neikirk (I.D. No. 4129)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware 19899
(302) 888-6800
pcollins@morrisjames.com
kneikirk@morrisjames.com

OF COUNSEL:
CROWELL & MORING LLP
Scott L. Winkelman
Monica M. Welt
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004
(202) 624-2500

Dated: May 11, 2007

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................. i

STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS ...........................1

SUMMARY OF ARGUMENT .................................................2

STANDARDS....................................................................3

STATEMENT OF FACTS .....................................................4

ARGUMENT .....................................................................7

I.      INTRODUCTION ........................................................7

II.     HERSHEY DOES NOT DENY THIS COURT'S JURISDICTION OVER
        THIS DISPUTE .........................................................9

III.    HERSHEY'S MOTION TO DISMISS FOR *FORUM NON
        CONVENIENS* SHOULD BE DENIED ............................10

        A.    Governing *Forum Non Conveniens* Principles ...........11

        B.    Solae Filed In Its Home Forum.................................12

        C.    This Case Has A Significant Nexus With the United States
              Generally and Delaware In Particular.......................14

        D.    Canadian Law and Procedures Do Not Dictate A Canadian Forum..........19

        E.    Public Interest Considerations Favor This Forum .....................21

IV.     THIS COURT HAS PERSONAL JURISDICTION OVER HERSHEY
        CANADA – OR DISCOVERY SHOULD PROCEED ON THAT ISSUE..........21

        A.    Hershey's Assent To A Delaware Forum Is Consent To Delaware
              Jurisdiction................................................................22

        B.    Jurisdictional Discovery Should Proceed If Doubt Remains....................23

V.      HERSHEY'S UNSUPPORTED "BAD FAITH" CONTENTIONS ARE
        LEGALLY AND FACTUALLY UNFOUNDED................................25

CONCLUSION.....................................................................30

i

# TABLE OF AUTHORITIES

Cases

*ACandS, Inc. v. Aetna Cas. and Sur. Co.,*
   666 F.2d 819 (3d Cir. 1981) .......................................................................... 10

*American Dredging Co. v. Miller,*
   510 U.S. 443 (1994) ..................................................................................... 11

*Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc.,*
   295 F. Supp. 2d 400 (D. Del. 2002) ..................................................... 18, 22,

*BP Chems. Ltd. v. Union Carbide Corp.,*
   4 F.3d 975 (Fed. Cir. 1993) ........................................................................ 10

*Brown v. Williams,*
   No. 03-426-SLR, 2007 WL 1219624 (D. Del. Apr. 25, 2007) ................................ 3, 23

*Carteret Sav. Bank, F.A. v. Shushan,*
   954 F.2d 141 (3d Cir. 1992) ......................................................................... 3

*Chase Manhattan Bank, USA v. Freedom Card, Inc.,*
   265 F. Supp. 2d 445 (D. Del. 2003) .............................................................. 10

*Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.,*
   651 F.2d 877 (3d Cir. 1981) ........................................................................ 27

*Consol. Rail Corp. v. Grand Trunk W. R.R. Co.,*
   592 F. Supp. 562 (E.D. Pa. 1984) ........................................................... 26, 27

*D'Angelo v. Petroleos Mexicanos,*
   398 F.Supp. 72 (D. Del. 1975) ..................................................................... 13

*Drugstore-Direct, Inc. v. The Cartier Div. of Richemont N. Am.,*
   350 F. Supp. 2d 620 (E.D. Pa. 2004) ............................................................ 27

*EEOC v. Univ. of Pa.,*
   850 F.2d 969 (3d Cir. 1988) ........................................................................ 26

*Great Am. Ins. Co. v. Houston Gen. Ins. Co.,*
   735 F. Supp. 581 (S.D.N.Y. 1990) ............................................................... 27

*Guidi v. Inter-Continental Hotels Corp.,*
   224 F.3d 142 (2d Cir. 2000) ................................................................... 12, 15

*Gulf Oil Corp. v. Gilbert,*
 330 U.S. 501 (1947) .............................................................................................. 11, 21

*Hadley v. Shaffer,*
 No. 99-144-JJF, 2003 WL 21960406 (D. Del. Aug. 12, 2003) .......................... 3, 22, 23

*Health Trio v. Margules,*
 No. 06C-04-196, 2007 WL 544156 (Del. Super. Ct. Jan. 16, 2007) ............................ 23

*Hornberger Mgmt. Co. v. Haws & Tingle Gen. Contractors, Inc.,*
 685 A.2d 724 (Del. Super. Ct. 2000) ............................................................................ 22

*Iragorri v. United Techs. Corp.,*
 274 F.3d 65 (2d Cir. 2001) ............................................................................................ 15

*L & L Constr. Assocs., Inc. v. Slattery Skanska, Inc.,*
 No. CIV 05-1289, 2006 WL 1102814 (D.D.C. Mar. 31, 2006) .................................... 15

*Lacey v. Cessna Aircraft Co.,*
 862 F.2d 38 (3d Cir. 1988) ............................................................................................ 11

*Lacey v. Cessna Aircraft Co.,*
 932 F.2d 170 (3d Cir. 1991) ................................................................................... 11, 12

*Little Switz., Inc. v. Destination Retail Holdings Corp.,*
 No. 98-315-SLR, 1999 WL 223496 (D. Del. Mar. 31, 1999) ........................................ 3

*Lony v. E.I. du Pont de Nemours & Co.,*
 886 F.2d 628 (3d Cir. 1989) .......................................................................................... 11

*Lony v. E.I. du Pont de Nemours & Co.,*
 935 F.2d 604 (3d Cir. 1991) .......................................................................................... 12

*M/S Bremen v. Zapata Off-Shore Co.,*
 407 U.S. 1 (1972) .......................................................................................................... 15

*McNeil Nutritionals, LLC v. Sugar Ass'n,*
 No. C.A. 05-69(GMS), 2005 WL 1000242 (D. Del. Apr. 29, 2005) ............................ 25

*Medimmune, Inc. v. Genentech, Inc.,*
 127 S. Ct. 764, (2007) ................................................................................................... 28

*Mobil Tankers Co., S.A. v. Mene Grande Oil Co.,*
 363 F.2d 611 (3d Cir. 1966), *cert. denied,* 385 U.S. 945 (1966) ........................... 14, 21

*Moore Corp. Ltd. v. Wallace Computer Servs., Inc.*,
   898 F. Supp. 1089 (D. Del. 1995)..................................................................... 28

*Nutrasweeet Co. v. Ajinomoto Co.*,
   423 F. Supp. 2d 450 (D. Del. 2006)................................................................. 10

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981)....................................................................... 11, 12, 16

*Reavis v. Gulf Oil Corp.*,
   85 F.R.D. 666 (D. Del. 1980) ............................................................... 11, 14

*Reid-Whalen v. Hansen*,
   933 F.2d 1390 (8th Cir. 1991) ...................................................................... 12

*Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*,
   No. 06-1181, 2007 WL 942201 (Fed. Cir. Mar. 30, 2007)............................................ 28

*The Saudades*,
   67 F. Supp. 820 (E.D. Pa. 1946) .................................................................... 16

*Toys "R" US, Inc. v. Step Two, S.A.*,
   318 F.3d 446 (3d Cir. 2003)......................................................................... 25

*Tracinda Corp. v. DaimlerChrysler AG*,
   197 F. Supp. 2d 86 (D. Del. 2002)................................................................. 25

*Trilegiant Loyalty Solutions, Inc. v. Maritz*,
   No. 04-360-JJF, 2005 WL 441077 (D. Del. Feb. 15, 2005) ............................. 12, 14, 16

*Vanity Fair Mills v. T. Eaton Co.*,
   234 F.2d 633 (2d Cir. 1956)......................................................................... 13

*Wall St. Aubrey Golf v. Aubrey*,
   189 Fed.Appx. 82 (3d Cir. June 5, 2006)....................................................... 23

*Wiwa v. Royal Dutch Petroleum Co.*,
   226 F.3d 88 (2d Cir. 2000)........................................................................... 15


Statutes

28 U.S.C. §1404(a) ............................................................................................. 15

Fed R. Civ. P. 45(b)(2)........................................................................................ 18

## STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

Plaintiff Solae, LLC ("Solae") filed an action for Declaratory Judgment and Breach of Contract on March 9, 2007 ("Complaint"). (D.I. 1.) Defendant Hershey Canada, Inc. ("Hershey") filed a motion to dismiss on the grounds of *forum non conveniens* and lack of personal jurisdiction on April 18, 2007 ("Motion"). (D.I. 7.) Hershey amended its Motion on April 27, 2007, by submitting copies of documents filed by Solae in a parallel action proceeding in Canada, specifically the Notice of Motion filed by Solae on April 23, 2007, as well as the accompanying affidavit of a Solae employee, Laurie Cradick. (D.I. 15.) Hershey again amended its Motion on April 30, 2007, this time with a modification to an affidavit of its employee, James Kuehl. (D.I. 16.)

Solae opposes Hershey's Motion. Solae is also simultaneously filing an Amended Complaint to reflect additional facts revealed since the filing of the Complaint. These changes are consistent with the facts as set forth by Solae in the affidavit of Laurie Cradick in the parallel Canadian proceeding. Hershey's knowledge of these facts is reflected by its submission of both Solae's Notice of Motion and Ms. Cradick's affidavit in this case.

## SUMMARY OF ARGUMENT

1.    The Court should not dismiss this action based on *forum non conveniens* because, according to the allegations of Solae's well-pled Complaint and Amended Complaint, a forum selection clause dictates this Delaware forum.

2.    The Court should not dismiss this action based on *forum non conveniens* because Hershey fails to meet the heavy burden it must sustain to overcome the deference afforded a plaintiff's selection of forum and to the parties' forum selection clause.

3.    Personal jurisdiction over Hershey exists given its consent to jurisdiction in Delaware as memorialized in the parties' agreement.

4.    This action was properly filed in this Court. Hershey's allegations of abusive tactics are baseless.

## STANDARDS

The legal standards governing Hershey's motion to dismiss and for lack of personal jurisdiction are familiar. "The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case." *Brown v. Williams*, No. 03-426-SLR, 2007 WL 1219624, at *1 (D. Del. Apr. 25, 2007). "[G]enerally when reviewing a motion to dismiss under Fed.R.Civ.P. 12, all well-pled facts are taken as true and all inferences therefrom viewed in a light most favorable to the nonmoving party." *Little Switz., Inc. v. Destination Retail Holdings Corp.*, No. 98-315-SLR, 1999 WL 223496, at *2 n.3 (D. Del. Mar. 31, 1999).

These presumptions apply to a motion to dismiss for lack of personal jurisdiction, and to disputes turning – as this case does – on a forum selection clause. "[In] reviewing a motion to dismiss a case for lack of in personam jurisdiction [the court] *must accept all of the plaintiff's allegations as true* and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992) (emphasis added). "In the context of a motion to dismiss, the record must be viewed in the light most favorable to the non-moving party." *Hadley v. Shaffer*, No. 99-144-JJF, 2003 WL 21960406, at *2 (D. Del. Aug. 12, 2003) (motion to dismiss for lack of personal jurisdiction denied as forum selection clause demonstrated consent to the forum).

## STATEMENT OF FACTS

Hershey offers numerous merits contentions in its motion to dismiss, contentions which are to be resolved, if at all, after both parties have had the opportunity to conduct discovery. The facts relevant to the present motion, by contrast, emerge from three sources, as follows: (1) facts alleged on the face of Solae's complaint, which are taken as true for purposes of resolving Hershey's motion; (2) factual admissions by Hershey; and (3) facts that bear on Hershey's unfounded allegations of "bad faith" by Solae in initiating this action.

### The Complaint

Accepted as true in resolving the pending motion are the following alleged facts:

- Solae is a Delaware limited liability corporation. (Complaint ¶ 2; Am. Complaint ¶ 2.)

- Written Conditions of Sale exchanged between the parties govern the soy lecithin purchase transaction between Hershey and Solae. (Complaint ¶¶ 9-15; Am. - Complaint ¶¶ 12-18.)

- The Conditions of Sale contain a forum selection clause selecting Delaware as the jurisdiction in which disputes between the parties must be resolved. (Am. Complaint ¶ 7.)

### Hershey Admissions

In its Motion, and supporting declarations, Hershey offered the following admissions which bear on the Court's analysis:

4

- The basis – indeed, the "sole basis" – for Solae initiating suit in this Delaware forum was a forum selection clause which dictated a Delaware forum. (Motion at 18.)

- Hershey is a wholly-owned subsidiary of The Hershey Company, a Delaware corporation. (S. Angele Decl. ¶ 2; D.I. 12.)

- A representative of The Hershey Company in Hershey, Pennsylvania, Kimberly McLucas, negotiated a Quantity Agreement that established Hershey and Solae's sales relationship for 2006. (J. Kuehl Decl. ¶¶ 5, 8; D.I. 10.)

- Susan Angele, Vice President of The Hershey Company, is heavily involved in this matter, and performs work for Hershey pursuant to a service contract. (S. Angele Decl. ¶ 1.)

- Hershey has dealings relevant to this dispute with Solae representatives in settings throughout the United States, including Missouri, Illinois, and Wisconsin. (J. Kuehl Decl. ¶¶ 3, 6.)

**Additional Salient Facts**

In opposition to Hershey's Motion, Solae makes further submissions to this Court, establishing facts that demonstrate that dismissal is inappropriate.

- Hershey has repeatedly announced its plans to close the Smith Falls plant, the location where the allegedly contaminated lecithin was used, by 2008, calling into question whether the plant's workers will remain employees of Hershey after this impending closure. (Exhibit A.)

5

- The recall at issue included product that was shipped to the United States, which necessitated the involvement of the United Stated Food and Drug Administration. (Exhibit B.)

- Solae cancelled a scheduled March 8 meeting with Hershey after its insurer cancelled a meeting with Solae that had been scheduled for March 6, 2007, and the need to meet with a decision-maker prior to holding further discussions with Hershey.  (J. Self Aff. ¶¶ 4-5.)

## ARGUMENT

## I.    INTRODUCTION

Plaintiff Solae filed this declaratory judgment and breach of contract action to resolve a pending commercial dispute in its place of incorporation, a forum expressly dictated by the forum selection clause in the parties' contract. Defendant Hershey now seeks dismissal of this action on grounds of *forum non conveniens*, lack of personal jurisdiction, and alleged misuse of the declaratory judgment procedure.

Hershey's motion must be denied because all three components of its motion ignore the fact – established on the face of Solae's well-pled complaint – that the parties' 2006 contract contained a forum selection clause specifying that "***the courts of Delaware shall have exclusive jurisdiction over any dispute or issues arising under this Agreement.***" Forum selection clauses are given substantial weight in determining whether this Court is the proper forum under *forum non conveniens* analysis. This clause also embodies Hershey's consent to personal jurisdiction in this Court, and establishes that Solae acted faithfully in accordance with contract terms – not in "bad faith" – in filing its action in this forum. To the extent Hershey would now challenge the terms of the contract alleged by Solae, including the contractual forum selection clause, that challenge is a factual matter that is not appropriately raised at the motion to dismiss stage. The forum selected by the parties, and pled in Solae's complaint, is alone fatal to Hershey's motion.

Beyond that, Hershey faces, and has not met, a heavy burden of overcoming Solae's choice of forum, and cannot establish that proceeding in this Court would cause

undue oppression or prejudice to a corporate entity like Hershey. Hershey's *forum non conveniens* argument is premised on a legally infirm comparison of the connections between this case and the *state* of Delaware, on the one hand, with alleged connections with the *nation* of Canada, on the other. In fact, *forum non conveniens* law, in comparing the convenience of a United States forum with the court of a foreign sovereign, assesses contacts with the *entire United States*, not simply contacts with the forum state. Hershey thus dooms its own forum analysis by underscoring the numerous and critical contacts between the parties' dispute and the United States, all of which render this Court a manifestly appropriate forum. These include, by Hershey's admission, production of the allegedly contaminated soy lecithin ingredient in the United States; substantial contract negotiations in the United States; and key witnesses who are employed by Hershey's parent company, The Hershey Company, in Hershey, Pennsylvania, less than 90 miles from this courthouse. There is no actual inconvenience to Hershey, and no actual basis for this Court to exercise its discretion to dismiss an otherwise appropriate case on *forum non conveniens* grounds.

Hershey's personal jurisdiction challenge fails because, according to the face of Solae's well-pled complaint, Hershey agreed that courts in Delaware would have "exclusive jurisdiction" over disputes relating to the parties' contract. Consent to a Delaware forum is assent to personal jurisdiction in that forum. To the extent Hershey challenges this allegation, or asserts lack of minimum Delaware contacts sufficient to establish personal jurisdiction over Hershey, those are factual matters that require discovery.

Finally, Hershey's contention that the Court should exercise its discretion to dismiss this action as a "bad faith," "abusive" use of the declaratory judgment device is not only an absence of civility, but is wrong. Solae filed its action where it was compelled to do so: in the very jurisdiction that the parties had agreed would resolve their contractual disputes. To assert bad faith, Hershey again mistakes the "first-filed" doctrine – applicable when different courts of the United States have concurrent jurisdiction over a dispute – with the *forum non convenience* principles that actually govern Hershey's motion. Hershey's incendiary accusations are otherwise unfounded in fact.

Accordingly and respectfully, Hershey's motion to dismiss should be denied.

## II.    HERSHEY DOES NOT DENY THIS COURT'S JURISDICTION OVER THIS DISPUTE

It is worthwhile at the outset to note what Hershey's motion is **not** about. This declaratory judgment and breach of contract action was brought pursuant to two independent aspects of this Court's subject matter jurisdiction, federal question and diversity jurisdiction. (Complaint ¶¶ 4-5; Am. Complaint ¶¶ 4-5.) Hershey questions neither.

Nor does Hershey deny that the parties have a live, ripe controversy. To the contrary: Hershey concedes that it sent Solae a letter in November 2006 – fully six months ago – committing to extract *"all damages"* from Solae. (Opening Brief of Hershey Canada, Inc. In Support of Its Motion to Dismiss ("Hershey Brief") at 2; D.I. 9.) Hershey likewise concedes that one month later it entered with Solae into a common interest agreement which made clear – according to Hershey itself – *"that there would be 'litigation related to the matters in dispute'"* should settlement talks fail. (Hershey Brief

9

at 6.) Hershey thus never disputes that Solae's action meets the standards for initiating a declaratory action – *i.e.*, to enable a person reasonably at legal risk because of an unresolved dispute, "to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side." *Nutrasweeet Co. v. Ajinomoto Co.*, 423 F. Supp. 2d 450, 454 (D. Del. 2006) (citing *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975 (Fed. Cir. 1993)). *See also Chase Manhattan Bank, USA v. Freedom Card, Inc.*, 265 F. Supp. 2d 445, 450 n.8 (D. Del. 2003). There is no dispute here that Solae, at the time it filed this action, was "reasonably at legal risk because of an unresolved dispute." *Id.*

Further, as time passed Hershey escalated its damage claims, thus creating the very type of ongoing uncertainty for which the declaratory judgment process was designed. *ACandS, Inc. v. Aetna Cas. and Sur. Co.*, 666 F.2d 819, 823 (3d Cir. 1981) ("[D]eclaratory judgment relief was intended to avoid . . . the 'accrual of avoidable damages to one not certain of his rights.'"). Thus, this is the quintessential declaratory action over which this Court indisputably has jurisdiction.

Finally, Hershey does not dispute (and in fact barely mentions) that Solae is suing not only for a declaratory judgment but also for breach of contract damages based on non-payment of a Solae invoice. (Complaint at ¶ 49-60; Am. Complaint ¶¶ 50-61.) Thus, Solae's Complaint plainly describes a present, justiciable controversy.

## III.    HERSHEY'S MOTION TO DISMISS FOR *FORUM NON CONVENIENS* SHOULD BE DENIED

Hershey's sole argument for dismissal, therefore, is one of discretion. Specifically, it asks the Court to dismiss this case, pursuant to *forum non conveniens*, in favor of an action now pending in Ontario, Canada.

### A. Governing *Forum Non Conveniens* Principles

The doctrine of *forum non conveniens* affords a federal court discretion to dismiss a pending action "when an alternative forum has jurisdiction . . . , and . . . trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience." *American Dredging Co. v. Miller*, 510 U.S. 443, 447-448 (1994) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)). *Forum non conveniens* is the doctrine that governs when a forum dispute pits courts of different countries. *See Reavis v. Gulf Oil Corp.*, 85 F.R.D. 666, 669 (D. Del. 1980).

A plaintiff generally has the right to select its forum, and that forum selection is owed substantial deference. *Lony v. E.I. du Pont de Nemours & Co.*, 886 F.2d 628, 633 (3d Cir. 1989) ("*Lony I*"). Thus, courts of this Circuit, as elsewhere, are mindful that "dismissal for *forum non conveniens* is the exception, rather than the rule." *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 46 (3d Cir. 1988) ("*Lacey I*").

The party seeking discretionary dismissal for *forum non conveniens*, in order to establish "vexation and oppressiveness," must demonstrate that "private and public interest factors ***weigh heavily*** in favor of dismissal." *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 180 (3d Cir. 1991) ("*Lacey II*") (emphasis added). Private interest factors include: (i) access to proof; (ii) availability of process for attendance of witnesses; (iii) cost of obtaining attendance of witnesses; and (iv) other practical problems. Public interest factors include: (i) the burden on a busy court; (ii) imposition on jurors called to hear a case with no relation to the forum; and (iii) the forum court's familiarity with applicable laws. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-509 (1947). Hershey, the party seeking dismissal, "bears the burden on [each] element of the . . . analysis."

11

*Lony v. E.I. du Pont de Nemours & Co.*, 935 F.2d 604, 609 (3d Cir. 1991) ("*Lony II*"). The burden on Hershey "is a strong one." *Id.* at 609.

As this test suggests, the party seeking dismissal (here, Hershey) bears a heavy burden, a burden which it must carry as to all elements of *forum non conveniens* analysis. *Lacey II*, 932 F.2d at 180. To prevail, the defendant must establish that "trial in the chosen forum would establish . . . oppressiveness and vexation to the defendant . . . out of all proportion to plaintiff's convenience." *Piper Aircraft Co.*, 454 U.S. at 241.

Hershey has not, and cannot, meet this burden.

### B. Solae Filed In Its Home Forum

In seeking to carry its burden, Hershey maintains first that "it bears emphasis that Solae has not chosen its home forum by filing suit in Delaware." (Hershey Brief at 11.) This is in error. A United States corporation has two homes: its principal place of business and its place of incorporation. Solae is a limited liability company incorporated in the State of Delaware – the State in which it filed suit. (Complaint ¶ 2; Am. Complaint ¶ 2.) "A corporation's decision to incorporate in a particular state is a rational and legitimate reason to choose to litigate in that state," which entitles a plaintiff's choice of forum to "paramount consideration." *Trilegiant Loyalty Solutions, Inc. v. Maritz*, No. 04-360-JJF, 2005 WL 441077, at *2 (D. Del. Feb. 15, 2005) (denying motion to transfer action to Missouri even though plaintiff Delaware corporation's principle place of business was Virginia and claim arose in defendant's principle place of business, Missouri). Indeed, for purposes of *forum non conveniens* analysis, the "home forum" of an American citizen is any United States court. *See Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142 (2d Cir. 2000); *Reid-Whalen v. Hansen*, 933 F.2d 1390, 1394 (8th

12

Cir. 1991) (recognizing that in *forum non conveniens* analysis, the home forum is not necessarily the district where plaintiff resides but any district in the United States when the alternative is a foreign court).

Hershey argues that Solae's chosen forum is entitled to less deference because Delaware is not its "home turf." In this regard, Hershey confuses motion to transfer analysis with *forum non conveniens* analysis. The cases Hershey cites for this "home turf" proposition[1] each addresses the transfer of a case from one United States court to another United States court pursuant to 28 U.S.C. §1404(a) – not ***outright dismissal*** of an action for *forum non conveniens*. Dismissal, to state the obvious, is a harsher consequence than transfer, and the "limitation on its exercise is narrower than under the transfer statute." *D'Angelo v. Petroleos Mexicanos*, 398 F.Supp. 72, 83 (D. Del. 1975).

While an American citizen does not have an absolute right under all circumstances to sue in an American court, "where, as here, application of the doctrine of *forum non conveniens* would force an American citizen to seek redress in a foreign court, courts of the United States are reluctant to apply the doctrine." *Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633, 646 (2d Cir. 1956). That is precisely the issue here: Hershey asks this Court to "force an American citizen [Solae] to seek redress in a foreign court [in Ontario, Canada.]." Indeed, the Court of Appeals for the Third Circuit has stressed that a United States plaintiff's choice of its home forum should not be disregarded absent "persuasive evidence that the retention of jurisdiction will result in manifest injustice to the [defendant]. This is so even though the more convenient forum may be the foreign

---

[1] *See* cases cited in Hershey Brief at 11.

13

one." *Mobil Tankers Co., S.A. v. Mene Grande Oil Co.*, 363 F.2d 611, 614 (3d Cir. 1966), *cert. denied*, 385 U.S. 945 (1966).

Thus, "if an American plaintiff can be relegated to a foreign forum at all, the circumstances in which it is appropriate to do so are narrowly limited." *Reavis*, 85 F.R.D. at 670. The narrow circumstances envisioned are not present here. Given Hershey's size, resources and corporate reach, and that Solae filed this suit in its home forum, one cannot credibly suggest that Hershey will face a significant hardship by litigating in this venue. *Trilegiant Loyalty Solutions, Inc.*, 2005 WL 441077, at *2.

### C.    This Case Has A Significant Nexus With the United States Generally and Delaware In Particular

Hershey next suggests, rather repeatedly and emphatically, that discretionary dismissal is in order because this case "has no connection to the state of Delaware." (Hershey Brief at 2; *see also id.* at 2-3 ("absolutely no connection"); at 3 ("no connection whatsoever to Delaware"); at 9 ("a stranger to this forum").) These are erroneous statements of fact, and a misconception of *forum non conveniens* law.

*First*, this action is in fact connected to Delaware. As well-pled by Solae, the parties' contract contains a forum selection clause. That clause provides:

> **This Agreement is to be construed and the respective rights of Buyer and Seller are to be determined according to the laws of the State of Delaware, USA,** without regard to choice of law or conflict principles of Delaware or any other jurisdictions, and **the courts of Delaware shall have exclusive jurisdiction over any disputes or issues arising under this Agreement.** The United Nations Convention on Contracts for the International Sale of Goods shall not govern this Agreement or the performance thereof or any aspect of any dispute arising therefrom.

(Am. Complaint ¶ 17 (quoting Solae Conditions of Sale ¶ 17) (emphasis added).) Thus, Hershey and Solae – two sophisticated parties – selected Delaware as the proper venue

14

for this dispute – perhaps the ultimate contact for jurisdictional purposes, as it evidences the parties' consent to Delaware. Indeed, "the forum selection clause is now the dominant factor in the determination." *L & L Constr. Assocs., Inc. v. Slattery Skanska, Inc.*, No. CIV 05-1289, 2006 WL 1102814, at *5 (D.D.C. Mar. 31, 2006). *See also M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). Hershey offers the Court not a single legal authority providing for *forum non conveniens* dismissal in the face of such a forum selection clause. This is telling. When a party elects to sue not only in its place of incorporation, but in observance of a bargained-for forum selection clause, discretionary dismissal is not warranted.

As a matter of law, moreover, the contacts relevant to *forum non conveniens* analysis are ***not*** merely Delaware contacts, but United States contacts in general. "The greater the plaintiff's or the lawsuit's bona fide connection to the United States and the forum of choice . . . the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71-72 (2d Cir. 2001). "[T]he benefit for a U.S. resident plaintiff of suing in a U.S. forum is not limited to suits in the very district where the plaintiff resides." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 103 (2d Cir. 2000). Thus, a United States plaintiff's connections to the United States – not merely to the chosen forum – vis-à-vis its "citizenship and residence is entitled to consideration in favor of retaining jurisdiction." *Id.* at 102. *See also Guidi*, 224 F.3d 142.

Here, Hershey again confuses motion to transfer and first-filed analysis, which is not at issue, with *forum non conveniens* analysis, which is. The former governs disputes over separate United States forums. In that setting, contacts with specific state venues

may be determinative. *Trilegiant Loyalty Solutions*, 2005 WL 441077 at *2. This case, by contrast, features whether this case should be heard in a United States forum or a Canadian forum. In that quite different setting, courts consider all United States contacts in assessing whether litigation in a United States forum would produce "oppressiveness and vexation to the defendant . . . out of all proportion to plaintiff's convenience." *Piper Aircraft Co.*, 454 U.S. at 241. "Perhaps the best way to put the rule . . . is, that an American court may not refuse to try a case brought by an American citizen, unless it feel that injustice would be done by allowing him to proceed in his own court." *The Saudades*, 67 F. Supp. 820, 821 (E.D. Pa. 1946).

Hershey thus dooms its quest for dismissal by emphasizing, at great length, the numerous and critical contacts between the parties' dispute and the United States, all of which render this Delaware court an appropriate forum. Hershey's Brief lists, in convenient bullet format on page 12, this dispute's significant connections with the United States, in locations as varied as Missouri, Chicago, and Illinois. The sworn declarations submitted by Hershey's employees, Mr. Kuehl and Ms. Angele, likewise underscore with great emphasis these United States connections. (J. Kuehl Decl. ¶¶ 3, 5, 6, 8, 13.)

But there is more – much more – by way of relevant United States contacts. Of particular significance:

- The soy lecithin that Hershey alleges was contaminated with *Salmonella* was manufactured in the United States (in Gibson City, Illinois) – not Canada. (J. Kuehl Decl. ¶ 13.)

- All orders for this soy lecithin were delivered to Solae's offices within the United States – not Canada. (J. Kuehl Decl. ¶¶ 9-10.)

- Operative contract negotiations between The Hershey Company (a Delaware corporation) and Solae were conducted by The Hershey Company's representative who was located in Hershey, Pennsylvania, less than 90 miles from this Court – but approximately 400 miles from the pertinent Canadian courthouse.

- Some of the Hershey chocolate product recalled and at issue in this dispute was shipped to the United States. As a result, while Hershey's Brief fixates on the role played by Canadian food authorities, in fact the United States food authority – the United States Food and Drug Administration – was instrumental in investigating the recall and in visiting both Hershey and Solae.

- Hershey's defense to this action – again by Hershey's own account – pivots on Solae's production, testing and shipment of soy lecithin. The witnesses and other evidence central to these issues are found in the United States, not Canada. Thus, Hershey contends (Hershey Brief at 1) that the soy lecithin was contaminated when it left Solae's manufacturing plant – a plant located *in the United States*, not Canada.

- The Hershey Company, a critical witness by Hershey's own admission (S. Angele Decl. ¶ 2.), is a United States corporation incorporated in Delaware. (*Id.*)

- Hershey's own declarations make clear that much of the evidence which Hershey considers essential to the negotiation of the contract is located in Hershey, Pennsylvania, and is under the control of The Hershey Company, including its employee, Kimberly McLucas. (J. Kuehl Decl. ¶¶ 5 and 8.)

17

- Ms. McLucas and other participants in the sales transaction at issue may be subpoenaed to appear as witnesses before this Court, pursuant to Fed. R. Civ. P. 45(b)(2).

- As a Delaware corporation, The Hershey Company, and its employees, may be subpoenaed to appear as third-party witnesses in this matter pursuant to this Court's subpoena powers over Delaware corporations. Fed. R. Civ. P. 45.

- The Delaware forum is a vastly more convenient location for these non-party witnesses from The Hershey Company (a Delaware corporation) than a Canadian venue.

In addition, Hershey's brief fails to notify the Court that Hershey has announced that its manufacturing facility in Smith Falls, Ontario – the facility that produce the contaminated product at issue – is to be closed in 2008. (Exhibit A.) This renders idle at best Hershey's speculation that "it is highly likely that a jury would benefit from a visit to Hershey's Smiths Falls manufacturing facility." Hershey Brief at 14.

These substantial United States and Delaware contacts leave Hershey far afield in relying so heavily upon *Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc.,* 295 F. Supp. 2d 400 (D. Del. 2002) ("*Bell Helicopter*"). *Bell Helicopter* involved an action commenced in Delaware by a Delaware corporation located in Texas (Bell) against two defendants (Cannon and C&C) located in Canada. In granting a motion to dismiss on *forum non conveniens* grounds, the Court found that virtually all sources of evidence were in Canada. As the court summarized the facts in *Bell*:

> All of Cannon's and C&C's sources of proof are in Canada, including their president and employees. [P]ersonnel [of USCAN, an involved third party] are only located in Canada and their testimony can only be

18

compelled by Canadian courts. Bell itself does business in Canada, yet neither of the defendants do business in Delaware.

*Id.* at 411-12. By Hershey's admission the facts here are quite otherwise. Evidence pivotal to this dispute is found in the United States, in some instances near this district, and within the subpoena power of this Court.

Private factor considerations thus favor this Delaware forum.

### D.    Canadian Law and Procedures Do Not Dictate A Canadian Forum

As a final private interest consideration, Hershey suggests that Canada is a preferred venue for this dispute because of Canadian procedures, the availability of evidence, and because "[a] trial in Canada would also provide the Court and jury with access to evidence and witnesses that would be unavailable in Delaware." (Hershey Brief at 13.) In support of these assertions, Hershey cites no Canadian authority, and nothing whatever by way of Canadian court practice or procedure.

Attached to this Opposition is an Affidavit of John Morin, an attorney experienced in Canadian courts and procedure. As Mr. Morin explains (in stark contrast to nearly every Hershey assertion):

- There is no right in Canada to compel the appearance of former employees of parties for discovery purposes (J. Morin Aff. ¶ 15).

- Leave to examine non-party witnesses prior to trial, regardless of their availability, is rarely granted. (J. Morin Aff. ¶¶ 20-22).

- The non-party governmental officials which Hershey identified as relevant witnesses available only in Canada will actually be unavailable for pre-trial examination. (J. Morin Aff. ¶ 15.)

- No direct examination for discovery may be made of experts hired by the parties. (J. Morin Aff. ¶¶ 15, 20, 23.)

- Discovery of a corporate party is limited to the examination, either oral or written, of only one employee. (J. Morin Aff. ¶¶ 16-17.) The limitation on the personal knowledge of this employee, and the process of obtaining relevant information not personally known by the employee, make traditional discovery of facts difficult. (J. Morin Aff. ¶¶ 17-19.)

- If oral discovery is taken, written discovery is disallowed. (J. Morin Aff. ¶ 13.)

- In conjunction with the closure of its Smith Falls plant, Hershey reportedly intends to lay off the majority of the Smith Falls employees. As there is no right to compel the appearance of former employees of parties to be examined for discovery (J. Morin Aff. ¶ 15), and leave to examine non-party witnesses, regardless of their availability, is rarely granted (J. Morin Aff. ¶¶ 21-22), other "critical" Canadian witnesses referenced by Hershey (Brief at 9) will likely be unavailable for discovery examination in the Canadian venue without leave of the court.

- A request for a jury trial is unlikely to be granted in Ontario – that is, if Hershey even requests one, as they have not as of yet. (J. Morin Aff. ¶¶ 24-30.) In the unlikely event that a jury were empanelled, a visit to the Canadian sites listed by Hershey (*i.e.,* the Wills Warehouse and the Smith Falls plant) would be allowed only if necessary to provide "meaningful assistance" in understanding the evidence, and such a "viewing" would not be considered evidence. (J. Morin Aff. ¶¶ 31-33.)

Hershey's contentions regarding the preferred status of the Canadian court do not carry weight.

### E.    Public Interest Considerations Favor This Forum

*Forum non conveniens* analysis next assesses public interest considerations, such as (i) burden on a busy court; (ii) imposition on jurors called to hear a case with no relation to the forum; and (iii) the forum court's familiarity with applicable laws. *See Gulf Oil*, 330 U.S. at 508-509. At their core, the public interest considerations ask whether "the relinquishment of jurisdiction would best serve the ends of justice." *Mobil Tankers Co.,* 363 F.2d at 613.

Hershey has not demonstrated that justice is served by dismissal. Nor could it. The United States has a strong interest in resolving disputes concerning American businesses, their products and manufacturing methods. Delaware courts have an interest in assessing the applicability and effect of a forum selection clause that selects Delaware fora. Delaware courts are well-equipped to analyze and apply United States substantive law – especially where, as here, the parties' contract selects Delaware law. Delaware courts have an interest in determining the rights and obligations of parties (like Solae) which elect to incorporate in Delaware.

Justice is served by denying discretionary dismissal.

## IV.    THIS COURT HAS PERSONAL JURISDICTION OVER HERSHEY CANADA – OR DISCOVERY SHOULD PROCEED ON THAT ISSUE

As a fallback, Hershey asserts that it is "perfectly clear that this Court lacks personal jurisdiction over Hershey." (Hershey Brief at 17.) For this "perfectly clear" assertion Hershey cites a single case – a case which does not even address Delaware's

treatment of forum selection clauses. (Hershey Brief at 17 (citing *Bell Helicopter*, 295 F. Supp. 2d at 406).)

## A. Hershey's Assent To A Delaware Forum Is Consent To Delaware Jurisdiction

In reality, Hershey's motion ignores this Court's well-developed body of law regarding the effect of forum selection clauses when addressing questions of personal jurisdiction. As explained in *Hadley v. Shaffer*, 2003 WL 21960406, at *3, a party bound by a forum selection clause is deemed to have thereby expressly consented to personal jurisdiction, and such express consent is "deemed to be a waiver of any objection on Due Process grounds and an analysis of minimum contacts becomes unnecessary." *See also Hornberger Mgmt. Co. v. Haws & Tingle Gen. Contractors, Inc.*, 685 A.2d 724, 727 (Del. Super. Ct. 2000).

As pled by the Complaint and the Amended Complaint, the Conditions of Sale which govern the parties' dispute provides that "*[t]his Agreement is to be construed and the respective rights of Buyer and Seller are to be determined according to the laws of the State of Delaware*" and "*the courts of Delaware shall have exclusive jurisdiction over any disputes or issues arising under this Agreement.*" (Am. Complaint ¶ 17 (quoting Solae Conditions of Sale ¶ 17) (emphasis added).) The Complaint and Amended Complaint allege further that Hershey assented to these terms, thereby finalizing the parties' contract. (Complaint ¶¶ 12-13; Am. Complaint ¶¶ 14-15.) Hershey concedes (Hershey Brief at 18) that Solae filed in this Court precisely because of this forum selection provision.

"A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no

22

relief could be granted under any set of facts consistent with the allegations of the complaint." *Brown*, 2007 WL 1219624, at *1. Accepting for this purpose the facts alleged in Solae's complaint, Hershey assented to Delaware as having "exclusive jurisdiction" over this dispute. It thereby assented to personal jurisdiction, waiving any such challenges. *Hadley,* 2003 WL 21960406, at *3. "Forum selection clauses are entitled to great weight, and are presumptively valid." *Wall St. Aubrey Golf v. Aubrey,* 189 Fed.Appx. 82, 85 (3d Cir. June 5, 2006) (upholding lower court finding that contractual forum selection clause controls).

Personal jurisdiction over Hershey is thus present.

### B. Jurisdictional Discovery Should Proceed If Doubt Remains

Should the Court harbor doubts about personal jurisdiction, the next appropriate step is not to accept as true Hershey's blanket, untested and unsupported assertion that it lacks contacts with Delaware – especially in the face of Solae's well-pled allegations to the contrary. The next step, instead, is jurisdictional discovery.

Delaware is a "single transaction" jurisdiction when it comes to personal jurisdiction. *See Health Trio v. Margules*, No. 06C-04-196, 2007 WL 544156, at *4-5 (Del. Super. Ct. Jan. 16, 2007). "[P]ersonal jurisdiction can be asserted over a defendant on the basis of a single act related to the state, if the claim has its basis in the asserted transaction." *Hadley,* 2003 WL 21960406, at *7. Minimum contacts with the forum, including consenting to an agreement which provided that the agreement "would be enforced in accordance with the laws of Delaware," are sufficient to bring one within Delaware's jurisdiction. *Id.* at *8.

To suggest the absence of personal jurisdiction, Hershey cites a declaration by the Vice President of The Hershey Company for the proposition that Hershey Canada "(1) transacts no business and performs no work or service in Delaware; (2) has never contracted to supply services or goods in Delaware; (3) has caused no tortious injury in Delaware; (4) has no interest in real property in Delaware; and (5) has never contracted to insure or act as a surety in any capacity in Delaware." (Hershey Brief at 17.)  Yet the declaration cited says nothing of the sort.  It says, merely, that "Hershey Canada . . . has no operations in Delaware or anywhere else in the United States." (S. Angele Decl. at ¶ 2.)

Public records alone suggest otherwise.  A cursory search of public records, for instance, reveals that Hershey has filed at least one claim on assets within Delaware. Hershey may thereby have an interest in real property in Delaware, and may thereby have availed itself of the protections of the courts of Delaware.  (Exhibits C and D.)  And, as noted above, some product subject to the chocolate recall at issue – a recall for which Hershey seeks compensation from Solae – did enter the United States, resulting in direct involvement by the United States Food and Drug Administration ("FDA").  (Exhibit B.) Whether this product reached Delaware, whether Hershey in fact has real estate and other interests in Delaware, and whether Hershey otherwise meets Delaware's "single transaction" test are matters by definition not known or knowable by this Court or Solae absent discovery.

Given such uncertainties, courts in similar settings order discovery confined to personal jurisdiction considerations.  Where a plaintiff has alleged facts "that suggest with reasonable particularity possible existence of the requisite contacts between [the

24

party] and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained." *Toys "R" US, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (internal quotations and citations omitted). Where the court is "satisfied that there is some indication that [these] particular defendant[s] [are] amenable to suit in this forum," there is "presumption in favor of allowing discovery to establish personal jurisdiction." *McNeil Nutritionals, LLC v. Sugar Ass'n*, No. C.A. 05-69(GMS), 2005 WL 1000242, *1 (D. Del. Apr. 29, 2005). Accordingly, "the Third Circuit . . . ha[s] not hesitated to reverse a dismissal for lack of personal jurisdiction where the plaintiff asserts non-frivolous claims and the court has declined to grant limited discovery." *Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 86, 96-97 (D. Del. 2002) (granting plaintiff ninety days to conduct discovery confined to the issue of personal jurisdiction).

By operation of the well-pleaded complaint rule, Hershey's assent to a Delaware forum alone is dispositive of its personal jurisdiction challenge. If the Court feels otherwise, discovery is in order.

## V.    HERSHEY'S UNSUPPORTED "BAD FAITH" CONTENTIONS ARE LEGALLY AND FACTUALLY UNFOUNDED

Hershey opens its brief with a broadside attack on Solae for "abusive tactics," its claim being that Solae's filing of a declaratory judgment action in Delaware had an "obvious purpose" amounting to "bad faith." (Hershey Brief at 4-9.) Hershey's incendiary and unbecoming argument is not only factually incorrect, but proceeds from a misapprehension of law regarding discretionary dismissal of declaratory actions.

First, Solae has not engaged in forum-shopping. Hershey again overlooks that, as pled in crystal-clear terms in the Complaint and Amended Complaint, choosing this forum was not a choice made by Solae. It was a choice, rather, made by the parties

together, when they entered into a contract requiring that disputes like this one be resolved "exclusively" in a Delaware forum. There is nothing ambiguous about this contractual dictate, and no room for Solae to have "forum-shopped" even had it so intended.

Second, for its incendiary argument that filing here, and now, was somehow abusive, Hershey invokes the wrong body of case law. Specifically, it invokes "first-filed" case law, in which separate United States courts are found to have "concurrent jurisdiction." *See EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988); *Consol. Rail Corp. v. Grand Trunk W. R.R. Co.*, 592 F. Supp. 562, 568-69 (E.D. Pa. 1984). Thus, in *EEOC* – cited on pages 3 and 5 of Hershey's brief – the EEOC issued a subpoena to the University in Pennsylvania, but before the EEOC could file to enforce the subpoena, the University filed a declaratory judgment action in a District of Columbia court. The Third Circuit held that the district court had not abused its discretion by refusing to dismiss the EEOC's later Pennsylvania enforcement action, even though the D.C. action was "first filed." The Court so held in large part because the University *had admitted* that it filed in D.C. to avoid unfavorable Third Circuit law on the controlling legal issue in that case (whether University deliberations were protected from discovery). *EEOC v. Univ. of Pa.*, 850 F.2d at 978-79. Similarly, in *Consol. Rail Corp.*, also invoked by Hershey, the court dismissed an action seeking a declaration that Conrail was not liable under the antitrust laws even though it was technically the "first filed" case, filed ahead of an antitrust damages action by Grand Trunk in Michigan. The Court reached this conclusion in part in recognition that there had been an earlier injunction action between the *same* parties in

the *same* Michigan court in which substantial discovery had already occurred. *Consol.*

*Rail Corp.*, 592 F. Supp. at 568-69.

The present case is not governed by first-filed analysis. The Court here is not

presented with which of two cases was "first filed" in separate United States courts with

"concurrent jurisdiction." Hershey's action was filed not in the United States, but in the

courts of a foreign sovereign, Canada. The Third Circuit has made plain that the first-

filed rule

> was never meant to apply where the two courts involved are not courts of
> the same sovereignty.

*Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.*, 651 F.2d 877, 887 n.10 (3d Cir.

1981). Hershey's first-filed case law does not aid the Court's analysis.[2]

Third, though Hershey strategically coins this a "declaratory action," it is not. It

is an action seeking declaratory relief *and* relief for a breach of contract. (Complaint ¶¶

49-60; Am. Complaint ¶¶ 50-61 (Counts IV and V, alleging Hershey's breach of

contract).) In seeking dismissal, therefore, Hershey does not quarrel with or even address

Solae's contention that (a) it supplied soy lecithin product to Hershey which (b) Hershey

has to this date not paid for, in violation of the parties' contract. *See id.* Hershey's

failure to perform under its contract demonstrates, independent of declaratory relief, an

"injury [that is] traceable to [Hershey's] . . . conduct and likely to be redressed by the

---

[2] The other cases Hershey cites are factually inapposite. *See Drugstore-Direct, Inc. v. The Cartier Div. of Richemont N. Am.*, 350 F. Supp. 2d 620, 623 (E.D. Pa. 2004) (dismissing first-filed case where defendant specifically "stated that it would initiate suit if its demands were not met by the end of the week," and where plaintiff immediately filed declaratory action); *Great Am. Ins. Co. v. Houston Gen. Ins. Co.*, 735 F. Supp. 581, 584-586 (S.D.N.Y. 1990) (first-filed suit should be dismissed where defendant threatened immediate litigation, plaintiff requested sixty-day extension within which to reply and then filed an action within forty-eight hours, seeking stay to keep defendant from filing).

requested relief." *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, No. 06-1181, 2007 WL 942201 (Fed. Cir. Mar. 30, 2007). Thus, Solae's Complaint plainly evidences a definite justiciable controversy. *See Medimmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764 (2007); *Moore Corp. Ltd. v. Wallace Computer Servs., Inc.*, 898 F. Supp. 1089 (D. Del. 1995).

In any event, the factual premises of Hershey's "abusive tactics" accusations are incorrect. Hershey contends that Solae behaved improperly by (a) telling Hershey that an insurance meeting was postponed as a reason for not proceeding with a settlement meeting to be held on March 8, 2007; and (b) telling Hershey that Solae counsel needed to speak with a "decision maker" before proceeding with the March 8 meeting. It is true that Solae made these statements. And each was, and remains, true. As explained in an affidavit of Jack Self, Solae's Director of Global Lecithin:

- Solae's insurer, Great American Custom Insurance Services, Inc. ("Great American"), in fact postponed a meeting that was to take place on March 6 that was to be a predicate for the March 8 meeting with Hershey. Solae was informed that the meeting cancellation was due to the illness of Great American's agent, Camella Pratt, who had been working on this matter. (J. Self Aff. ¶ 4.) Solae's coordination with Great American was mandated by insurer-insured relations, and an important component of its evaluation of the possibility of settlement. (J. Self Aff. ¶ 4.)

- Counsel for Solae in fact was to meet with a decision-maker in advance of the scheduled March 8 meeting. And, entirely consistent with Solae's report to

Hershey – the report that Hershey now calls bad faith – that meeting eventually took place on March 7. (J. Self Aff. ¶ 5.)

In reality, the timing of Solae's filing was dictated not to secure a preferred forum – since a contractual forum selection clause dictated the forum – but by a sober assessment of the likelihood of settlement at a given point in time. As noted above, Hershey had in writing demanded "all damages" to be paid by Solae. Hershey had made clear that "all damages," according to Hershey, totaled in the many millions of dollars. This was in contrast to the parties' contract, as pled in the Complaint, under which damages (if any), were limited to the purchase price of the soy lecithin, or approximately $50,000. (J. Self Aff. ¶¶ 6-7.) Given the disparity between the parties' positions, and the uncertainty created by Hershey's claims of escalating damages, it was perfectly customary, appropriate and reasonable for Solae to file a declaratory judgment and breach of contract action in this Court, the forum specified in the parties' contract. However powerful, Hershey does not alone get to decide when to talk settlement, and on what terms.

Bad faith allegations should be leveled cautiously, and with humility.

## CONCLUSION

Hershey Canada, Inc.'s motion to dismiss on grounds of *forum non conveniens* should be denied. In the alternative, this Court should grant discovery limited to the issues pertinent to Hershey's Motion and this Opposition before ruling.


Dated:  May 11, 2007                        MORRIS JAMES LLP


                                            _____
                                            P. Clarkson Collins, Jr. (I.D. No. 739)
                                            Katherine J Neikirk (I.D. No. 4124)
                                            500 Delaware Avenue, Suite 1500
                                            P.O. Box 2306
                                            Wilmington, Delaware 19899
                                            (302) 888-6800
                                            (302) 571-1750 (fax)
                                            pcollins@morrisjames.com
                                            kneikirk@morrisjames.com

                                            Attorneys for Plaintiff Solae, LLC


OF COUNSEL:
Scott L. Winkelman
Monica M. Welt
CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2595
(202) 264-2500

# EXHIBIT A

Kitchener Record
Copyright 2007 TDNG Inc., All Rights Reserved.

**February 23, 2007**

Section: BUSINESS

Smiths Falls Hershey plant to close

SMITHS FALLS, ONT. Canadian Press BUSINESS

Chocolate maker Hershey has confirmed that its factory in this eastern Ontario town is slated to close.

More than 500 employees had been warned earlier this month that the company would likely close the 44-year-old factory.

The exact timing of the closure will depend on business conditions, but the plant is expected to begin a phased shutdown later this year with some operations continuing through 2008, company spokesperson Kirk Saville said yesterday.

"This has been an extremely difficult decision, and we are committed to working with the union to discuss the effects of the plant closure on our employees," Saville said.

Premier Dalton McGuinty said he spoke to Hershey chief executive officer Richard Lenny yesterday to see if there is any way for the province to help the company keep the plant running.

"I asked if there's anything that we might do at this point in time," McGuinty said from Ottawa. "They just don't seem to be particularly receptive to that."

Word of the closure comes just three months after workers were forced off the job when salmonella was detected in an ingredient at the plant.

The contamination was traced to an emulsifying agent, soy lecithin, which prompted the recall of 26 popular products such as Oh! Henry bars and Reese's Peanut Butter Cups.

Hershey gradually brought back about 200 employees to help sanitize the plant, but 300 remained without a paycheque during the shutdown.

---- INDEX REFERENCES ----

NEWS SUBJECT: (Plant Closings (1PL71); Economics & Trade (1EC26))

INDUSTRY: (Ingredients (1IN93); Cocoa Products (1CO59); Food & Beverage Production (1FO79); Agriculture, Food & Beverage (1AG53))

REGION: (Americas (1AM92); North America (1NO39); Canada (1CA33))

Language: EN

OTHER INDEXING: (**CANADIAN** PRESSBUSINESS; **HERSHEY**; PEANUT BUTTER CUPS; SMITHS FALLS **HERSHEY**) (Chocolate; Henry; Kirk Saville; McGuinty; Premier Dalton McGuinty; Reese; Richard Lenny; Saville; Word)

# EXHIBIT B



# *Recall -- Firm Press Release*

FDA posts press releases and other notices of recalls and market withdrawals from the firms involved as a service to consumers, the media, and other interested parties. FDA does not endorse either the product or the company.

## The Hershey Company Recalls Seven Bottles of Reese's Shell Topping Due To Possible Health Risk

**Contact:**
Stephanie Moritz
717-534-7641

**FOR IMMEDIATE RELEASE** -- Hershey, PA -- November 14, 2006 -- The Hershey Company today announced that it is recalling 7 (seven), 7.25-ounce bottles of REESE'S Shell Topping manufactured in Canada on October 27, 2006, due to possible contamination with *Salmonella*.

The 7 (seven), 7.25 ounce bottles of REESE'S Shell Topping have the code 30MXB printed on the back of the bottle below the cap. The UPC/Bar Code is 346010. No other Hershey's shell toppings or other Hershey confectionery items are involved in this recall. No illnesses have been reported to date.

The product in question was available for purchase only in the state of Michigan after November 5, 2006.

Food contaminated with *Salmonella* may not look or smell spoiled. Consumption of a food contaminated with *Salmonella* may cause symptoms such as high fever, severe headache, vomiting, nausea, abdominal pain, and diarrhea. Long-term complications may include severe arthritis. These symptoms could be serious and life-threatening in young children, the elderly and people with weakened immune systems.

The recall is the result of routine manufacturing quality checks by the company during which an externally sourced ingredient tested positive for *Salmonella*. The company has ceased production and distribution of this product, and is working with FDA.

Consumers who have purchased the item in question should contact Hershey Consumer Relations at 1-800-468-1714.

####

RSS Feed for FDA Recalls Information [what's this?]

Get free e-mail alerts about Class I recalls

Media Contacts  |  Recalls Home Page

FDA Home Page | Search FDA Site | FDA A-Z Index | Contact FDA | Privacy | Accessibility

FDA Website Management Staff

# EXHIBIT C

## FINANCING STATEMENT - FORM UCC-1

Debtor       :   OAK LEAF CONFECTIONS OF NORTH AMERICA, INC.
Address      :   228 Linwood Avenue
                 Buffalo, New York 14209

Secured Party :  HERSHEY CANADA  INC.
Address      :   2350 Matheson Blvd. East
                 Missassauga, Ontario
                 CANADA L4W 5E9

        This Financing Statement covers all property of the following types, wherever located, and whether now owned or hereafter owned or acquired by the Debtor:

        (a)  In all of the Debtor's existing accounts and all the Debtor's accounts hereafter arising;

        (b)  In all of the Debtor's inventory now existing or hereafter acquired;

        (c)  In all of the Debtor's equipment now existing or hereafter acquired;

        (d)  In all of the Debtor's instruments now existing or hereafter acquired;

        (e)  In all of the Debtor's chattel paper, now existing or hereafter acquired;

        (f)  In all of the Debtor's general intangibles now existing or hereafter acquired; and

        (g)  In all proceeds and products of all of the foregoing.

**Debtor:**

**OAK LEAF CONFECTIONS OF NORTH AMERICA, INC.**

By: _____
    Philip J. Terranova,
    President

**Secured Party:**

**HERSHEY CANADA  INC.**

By: _____
Name: Bruce A. Brown
Office: Vice President

                                        *STATE OF DELAWARE*
                                        *SECRETARY OF STATE*
                                        *DIVISION OF CORPORATIONS*
                                        *FILED 09:27 AM 06/08/1998*
                                        *9825388 - 0000000*
                                        *SRV: 981220387*

# EXHIBIT D

Westlaw.

9825388DE                                                         Page 1

UNIFORM COMMERCIAL CODE REPORT

| | | |
|---|---|---|
| Information Through: | Current | 12-29-2006 |
| Database Updated: | | 02-27-2007 |
| Update Frequency: | | Weekly |
| Current Date: | | 02/27/2007 |
| Source: | | DE SECRETARY OF STATE |

FILING INFORMATION

| | |
|---|---|
| Filing Number: | 9825388 |
| Filing Date: | 06/08/1998 |
| Filing Type: | ORIGINAL |
| Filing Office: | SECRETARY OF STATE/UCC DIVISION |
| | FEDERAL & DUKE OF YORK STS |
| | DOVER, DE 19901 |

DEBTOR INFORMATION

Debtor(s):                OAK LEAF CONFECTIONS OF NORTH AMERICA, INC.
                          228 LINWOOD AVENUE
                          BUFFALO, NY 14209

SECURED PARTY OR CREDITOR INFORMATION

Secured Party(s):         HERSHEY CANADA INC.
                          ONTARIO
                          CANADA

COLLATERAL INFORMATION

| | |
|---|---|
| Collateral Type: | ALL ACCOUNT(S) INCLUDING PROCEEDS AND PRODUCTS |
| Collateral Type: | ALL INVENTORY INCLUDING PROCEEDS AND PRODUCTS |
| Collateral Type: | ALL EQUIPMENT INCLUDING PROCEEDS AND PRODUCTS |
| Collateral Type: | ALL CHATTEL PAPER INCLUDING PROCEEDS AND PRODUCTS |
| Collateral Type: | ALL GENERAL INTANGIBLE(S) INCLUDING PROCEEDS AND PRODUCTS |

The preceding public record data is for information purposes only and is not the official record. Certified copies can only be obtained from the official source.

The public record items reported above may have been paid, terminated, vacated or

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

9825388DE                                                              Page 2

released prior to today's date.

                    Call Westlaw CourtExpress at 1-877-DOC-RETR (1-877-362-7387)
                    to order copies of documents related to this or other matters.
                              Additional charges apply.

END OF DOCUMENT

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.