IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SOLAE, LLC,<br>a Delaware limited liability company, | ) )<br>) | |
| Plaintiff, | ) )<br>) | |
| vs. | )<br>) | C.A. No. 07-140-JJF |
| HERSHEY CANADA INC.,<br>an Ontario, Canada corporation, | ) )<br>)<br>) | |
| Defendant. | )<br>) | |

## OPENING BRIEF OF HERSHEY CANADA INC.
## IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

OF COUNSEL:

Craig S. Primis, P.C.
John R. Phillips
KIRKLAND & ELLIS LLP
655 15th Street, N.W.
Washington, D.C. 20005
(202) 879-5000

Jeffrey L. Moyer (#3309)
moyer@rlf.com
Steven J. Fineman (#4025)
fineman@rlf.com
Richards, Layton & Finger
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
*Attorneys for Defendant, Hershey Canada, Inc*

Dated: June 8, 2007

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF FACTS ...................................................................................3

SUMMARY OF ARGUMENT ............................................................................5

LEGAL STANDARDS ........................................................................................6

ARGUMENT .......................................................................................................7

I.    THE COURT SHOULD EXERCISE ITS EQUITABLE DISCRETION TO
      DISMISS SOLAE'S ABUSIVE DECLARATORY JUDGMENT ACTION. ..................9

      A.    This Court Has Discretion To Dismiss A Declaratory Judgment Action. ...............9

      B.    Solae's Bad Faith And Forum Shopping Warrant Dismissal. ...............................11

II.   SOLAE'S CAUSE OF ACTION HAS NO CONNECTION TO DELAWARE
      AND SHOULD BE DISMISSED ON *FORUM NON CONVENIENS* GROUNDS. ........15

      A.    The Courts Of Ontario Provide An Adequate Alternative Forum. ........................16

      B.    The "Private Interest" Factors Weigh Strongly In Favor Of Dismissal ................17

      C.    The "Public Interest" Factors Also Counsel Strongly In Favor Of
            Dismissal. ....................................................................................................22

III.  THIS COURT HAS NO PERSONAL JURISDICTION OVER HERSHEY
      CANADA. ................................................................................................25

      A.    Hershey Canada Did Not Consent To Jurisdiction in Delaware. ..........................25

      B.    Hershey Canada Has No Relevant Contacts With Delaware ................................27

CONCLUSION ..................................................................................................29

# TABLE OF AUTHORITIES

Page(s)

## Cases

*AmSouth Bank v. Dale,*
    386 F.3d 763 (6th Cir. 2004) ............................................................................... 11, 13

*At Home Corp. v. Cox Communications, Inc.,*
    No. Civ. A. 02-1486-JJF, 2003 WL 22350925 (D. Del. Oct. 8, 2003).......................... 23

*Banco Nominees Ltd. v. Iroquois Brands, Ltd.,*
    748 F. Supp. 1070 (D. Del. 1990)............................................................................. 23

*Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc.,*
    295 F. Supp. 2d 400 (D. Del. 2002)....................................................................*passim*

*Brillhart v. Excess Insurance Co. of America,*
    316 U.S. 491 (1942)................................................................................................. 9

*Chateau des Charmes Wines Ltd. v. Sabate USA Inc.,*
    328 F.3d 528 (9th Cir. 2003) ............................................................................*passim*

*Consolidated Rail Corp. v. Grand Trunk Western Railroad Co.,*
    592 F. Supp. 562 (E.D. Pa. 1984) .............................................................. 2, 13, 14

*Continental Casualty Co. v. American Home Assurance Co.,*
    61 F. Supp. 2d 128 (D. Del. 1999)........................................................................... 22

*Dahl v. United Technologies Corp.,*
    472 F. Supp. 696 (D. Del. 1979),
    *aff'd,* 632 F.2d 1027 (3d Cir. 1980)...................................................................... 21

*Dahl v. United Technologies Corp.,*
    632 F.2d 1027 (3d Cir. 1980).................................................................... 16, 18, 23

*Dow Jones & Co., Inc. v. Harrods Ltd.,*
    346 F.3d 357 (2d Cir. 2003)................................................................................... 10

*Drugstore-Direct, Inc. v. Cartier Division of Richemont North America, Inc.,*
    350 F. Supp. 2d 620 (E.D. Pa. 2004) ...................................................................... 14

*EEOC v. University of Pennsylvania,*
    850 F.2d 969 (3d Cir. 1988).................................................................................... 11

ii

*Envirometrics Software, Inc. v. Georgia-Pacific Corp.*,
   No. CIV. A. 97-243-SLR, 1997 WL 699328 (D. Del. Nov. 4, 1997) .................. 10, 13, 14

*FMC Corp. v. AMVAC Chemical Corp.*,
   379 F. Supp. 2d 733 (E.D. Pa. 2005) .................................................................. 14

*Grumbkow v. Walt Disney Co.*,
   No. CIV A 06-489-JJF, 2007 WL 570196,
   at *2 (D. Del. Feb. 20, 2007) ............................................................................ 6

*Hadley v. Shaffer*,
   No. Civ. A. 99-144-JJF, 2003 WL 21960406 (D. Del. Aug. 12, 2003)..................... 28, 29

*Hanson PLC v. Metro-Goldwyn-Mayer Inc.*,
   932 F. Supp. 104 (S.D.N.Y. 1996) ..................................................................... 14

*Howe v. Goldcorp Investments, Ltd.*,
   946 F.2d 944 (1st Cir. 1991)............................................................................. 17

*HPF, LLC v. Nu Skin Enterprises, Inc.*,
   No. Civ. A. 99-CV-1505, 1999 WL 782573 (E.D. Pa. Sept. 28, 1999) ................... 14

*In re Livent, Inc. Secs. Litig.*,
   78 F. Supp. 2d 194 (S.D.N.Y. 1999)................................................................... 8

*International Shoe Company v. Washington*,
   326 U.S. 310 (1945)...................................................................................... 25, 27

*Lacey v. Cessna Aircraft Co.*,
   862 F.2d 38 (3d Cir. 1988)............................................................................... 22

*McCann v. Newman Irrevocable Trust*,
   458 F.3d 281 (3d Cir. 2006)............................................................................. 6

*Naghiu v. Inter-Continental Hotels Group, Inc.*,
   165 F.R.D. 413 (D. Del. 1996) ......................................................................... 24

*National Union Fire Insurance Co. of Pittsburgh, Pa. v. Freeport-McMoRan, Inc.*,
   767 F. Supp. 568 (D. Del. 1991)....................................................................... 13, 14

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981)....................................................................................... 18

*Plum Tree, Inc. v. Stockment*,
   488 F.2d 754 (3d Cir. 1973).............................................................................. 22

*Rudisill v. Sheraton Copenhagen Corp.*,
   817 F. Supp. 443 (D. Del. 1993)....................................................................... 23

iii

*Sanitec Indus., Inc. v. Sanitec Worldwide, Ltd.,*
    376 F. Supp. 2d 571 (D. Del. 2005)................................................................................. 6, 29

*Shane v. JCB Belgium N.V.,*
    2003 WL 22597736 (Ont. S. Ct. J. Nov. 14, 2003) ........................................................ 24

*Siemens AG v. LG Semicon Co.,*
    69 F. Supp. 2d 622 (D. Del. 1999) ................................................................................... 28

*Sinochem International Co. Ltd. v. Malaysia International Shipping Corp.,*
    549 U.S. ---, 127 S. Ct. 1184 (2007) ............................................................................... 25

*SportsMEDIA Technology Corp. v. Upchurch,*
    839 F. Supp. 8 (D. Del. 1993) .......................................................................................... 22

*State Auto Insurance Cos. v. Summy,*
    234 F.3d 131 (3d Cir. 2001) ............................................................................................... 9

*Terra Nova Insurance Co., Ltd. v. 900 Bar, Inc.,*
    887 F.2d 1213 (3d Cir. 1989)................................................................................... 8, 10, 11

*Time Share Vacation Club v. Atlantic Resorts, Ltd.,*
    735 F.2d 61 (3d Cir. 1984).................................................................................................. 6

*Wilderman v. Cooper & Scully, P.C.,*
    428 F.3d 474 (3d Cir. 2005).............................................................................................. 10

*Wilton v. Seven Falls Co.,*
    515 U.S. 277 (1995)..................................................................................................... 9, 14

**Statutes and Other Authorities**

10 *Del. C.* § 3104(c)........................................................................................................... 25

6 *Del. C.* § 9-515................................................................................................................. 28

Federal Rule of Civil Procedure 12(b)(2) ............................................................................. 5

Federal Rule of Civil Procedure 45(c) ................................................................................ 23

Ontario Rule of Civil Procedure 17.02 ......................................................................... 16, 17

Canadian *Food and Drug Regulations,*
    C.R.C. c.870 Section B.04.012 ........................................................................................ 24

*Food and Drugs Act,*
    R.S.C. 1985 c.F-27............................................................................................................ 24

## PRELIMINARY STATEMENT

This case arises out of Solae's shipment of 40,000 pounds of Salmonella-contaminated soy lecithin to Hershey Canada for use in chocolate products at its Smiths Falls, Ontario manufacturing plant. By the time the contamination was detected, Hershey Canada had incorporated Solae's soy lecithin into over two million units of Hershey Canada product that had been shipped throughout Canada. The infected shipment caused a public health crisis in Canada, requiring an extensive investigation by local and national Canadian health authorities, a nationwide recall of Hershey products, and the temporary closure of the Smiths Falls plant in Ontario.

In the aftermath of these events, Hershey Canada contacted Solae and informed it that its product was the source of the contamination. Hershey Canada also invited Solae to engage in good faith settlement negotiations in lieu of litigation, to which Solae agreed. Settlement negotiations spanned a period of more than three months. The negotiations were to come to a head in a March 8, 2007 meeting, at which Solae had said it would make a presentation on the "root cause" of the contamination and present a settlement offer. On the evening of March 7, 2007, however, Solae's counsel contacted Hershey Canada and informed it that, due to internal logistical problems, Solae would need to "postpone" the meeting.

Next, while Hershey Canada sought to reschedule the settlement meeting, Solae rushed to file this action in Delaware federal court in an apparent effort to prevent Hershey Canada, the true plaintiff, from proceeding in its preferred forum of Ontario, Canada. According to Solae's initial Complaint, its basis for proceeding in Delaware — where none of the events relevant to its suit occurred — was that the back of the "Order Confirmation" that Solae allegedly sent to Hershey Canada on June 22, 2006 contained Solae's boilerplate Conditions of Sale, which

include a Delaware forum-selection clause. (*See* D.I. 1, Initial Compl. ¶ 10.) Hershey Canada filed a motion to dismiss, pointing out, among other things, that this critical allegation was untrue. Apparently recognizing the risk of proceeding on a complaint containing false allegations, Solae not only opposed Hershey Canada's motion to dismiss but also filed an Amended Complaint. In its Amended Complaint, Solae recanted the allegation that Solae had sent its Conditions of Sale to Hershey Canada prior to delivery of the contaminated shipment.

In this motion to dismiss, Hershey Canada submits that the Court should dismiss Solae's Amended Complaint for three independent reasons. *First*, the Court should exercise its broad discretion to decline jurisdiction over Solae's request for declaratory relief in light of Solae's abusive tactics in filing suit in Delaware. *See Consol. Rail Corp. v. Grand Trunk W. R.R. Co.*, 592 F. Supp. 562, 568 (E.D. Pa. 1984). *Second*, the Court should dismiss Solae's action on the ground of *forum non conveniens* because none of the events relevant to the parties' dispute occurred in Delaware and many of the witnesses (including numerous former employees of Hershey Canada) and much of the evidence in this case are located in the Canadian Province of Ontario, where Hershey Canada has filed an action against Solae. *See Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc.*, 295 F. Supp. 2d 400, 411 (D. Del. 2002). *Third*, the Court should dismiss this action because it lacks personal jurisdiction over Hershey Canada, a company which has taken no action whatsoever to subject itself to the jurisdiction of the Delaware courts. Solae's sole basis for establishing personal jurisdiction over Hershey Canada — a form invoice that Hershey Canada received *after* Solae had delivered its lot of contaminated soy lecithin — is plainly insufficient to require Hershey Canada to litigate in Delaware. *See Chateau des Charmes Wines Ltd. v. Sabate USA Inc.*, 328 F.3d 528 (9th Cir. 2003).

## STATEMENT OF FACTS

On September 29, 2006, Solae delivered 40,000 pounds of soy lecithin tainted with Salmonella from its plant in Gibson City, Illinois to a third-party warehouse in Smiths Falls, Ontario. (D.I. 10, Kuehl Decl. ¶¶ 13, 15; D.I. 11, Nugent Decl. ¶ 5.) This soy lecithin was subsequently sent to Hershey Canada's production facility in Smiths Falls for use in its manufacturing of chocolate products. (D.I. 10, Kuehl Decl. ¶ 15.) Solae's delivery was made pursuant to a contract between Solae and Hershey Canada formed in early 2006, under which Hershey Canada had agreed to purchase a specified quantity of soy lecithin from Solae during the year 2006. (*Id.* ¶ 5; Decl. of K. McLucas ¶¶ 13-17 (June 6, 2007).)

Through routine testing, Hershey Canada discovered the presence of Salmonella in chocolate manufactured at the Smiths Falls facility in October 2006. A subsequent investigation traced the Salmonella to the September 29, 2006 delivery from Solae. (D.I. 11, Nugent Decl. ¶¶ 3, 5.) As a result of the contamination, Hershey Canada was forced to shut down its Smiths Falls plant from the time of discovery through December 2006 and initiate a massive, nationwide recall of more than two million units of chocolate product in Canada. (*Id.* ¶ 12.) Hershey Canada officials worked closely with the Canadian Food Inspection Agency ("CFIA") and the Office of Food Safety and Recall ("OFSR") to clean the facility, quarantine contaminated materials and recall more than two million units of chocolate product that had already been distributed throughout Canada. (*Id.* ¶¶ 6-10, 12-15.)

Hershey Canada contacted Solae in November 2006 to make clear that it would hold Solae responsible for all damages incurred as a result of the contamination but that it wished to pursue settlement negotiations in order to resolve the issue amicably. (D.I. 12, Angele Decl. ¶ 5.) Hershey Canada also informed Solae that it would not accept delivery of any additional lots

3

of soy lecithin — including a lot of soy lecithin for which an order had already been placed —
until it was satisfied by Solae's explanation of how its products became contaminated with
Salmonella. Solae retained legal counsel, and the parties executed a written agreement for the
express purpose of commencing settlement negotiations. (*Id.* ¶¶ 12-16.) These negotiations
proceeded for more than three months, during which time Hershey Canada provided Solae with
extensive information related to its damages at Solae's request in order to allow Solae to
"analyze" the extent of those damages. (*Id.* ¶¶ 16-17.) Settlement talks were scheduled to
culminate in a meeting between the parties in Hershey, Pennsylvania on March 8, 2007. (*Id.*
¶ 19.) On the evening of March 7, 2007, however, Solae's counsel left two voicemail messages
for Hershey Canada requesting to "postpone" the meeting due to a purported inability to contact
either Solae's insurer or a key settlement decisionmaker. (*Id.* ¶ 20-21.) Without any further
communication to Hershey Canada, Solae filed its original Complaint on March 9, 2007 while
Hershey Canada withheld filing its own Complaint in Ontario in reliance on Solae's
representation that settlement talks were only being postponed, not terminated. (*Id.* ¶ 24.)

Solae's initial Complaint predicated venue in this forum on the allegation that Solae had
presented Hershey Canada with, and Hershey Canada had agreed to, Solae's boilerplate
Conditions of Sale when Solae confirmed the order and "again" when Solae included the terms
in the shipping documents that accompanied the product. (D.I. 1, Initial Compl. ¶¶ 10, 15, 16.)
After Hershey Canada pointed out that these allegations was false, Solae withdrew the
allegations — its key allegations supporting venue in this forum. Solae's retreat from these
allegations is confirmed visually by the blackline version of its Amended Complaint:

4

10.    On or about June 22, 2006, Solac transmitted an order confirmation to Hershey, acknowledging receipt of the Hershey order for Lot 1 ("Lot 1 Order Confirmation"). ~~The Solae Lot 1 Order Confirmation contains conditions of sale, setting forth the terms that would govern the transaction ("Conditions of Sale").~~

\*    \*    \*

~~15.    Solae processed Hershey's order of Lot 1. On or about June 27, 2006, Solae shipped Lot 1 from its facility in Gibson City, Illinois, to a Hershey facility in Smith Falls, Ontario.~~

~~16.    Included with Solae's shipment of Lot 1 was an invoice, again containing the Conditions of Sale.~~

In place of these allegations, Solae now alleges that "on or about" the date it shipped its contaminated product, it dropped a form invoice in the mail that contained its boilerplate terms — a document that arrived *after* Solae delivered the contaminated lots of soy lecithin to Hershey Canada. (*See* Am. Compl. ¶ 12; Decl. of S. Hall ¶¶ 3-6 (June 5, 2007).)

## SUMMARY OF ARGUMENT

1.  The Court should exercise its equitable discretion to dismiss Solae's declaratory judgment action because it was motivated by bad faith and forum shopping.

2.  The Court should dismiss this case on *forum non conveniens* grounds because it has no connection to the State of Delaware and a comparable case is already pending in the proper forum of Ontario, Canada.

3.  The Court should dismiss this action under Federal Rule of Civil Procedure 12(b)(2) because it has no personal jurisdiction over Hershey Canada.

5

## LEGAL STANDARDS

As a general matter, a court presumes the plaintiff's factual allegations to be true when evaluating a motion to dismiss at the pleadings stage. That presumption is not appropriate, however, if (as in this case) the defendant objects to the factual basis for the court's assertion of personal jurisdiction and/or subject matter jurisdiction. *See McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 290-91 (3d Cir. 2006); *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984).

With respect to a motion to dismiss for lack of personal jurisdiction, this Court has explained that "[o]nce a defendant properly raises the jurisdictional defense, the plaintiff has the burden of establishing by a preponderance of the evidence that minimum contacts have occurred. [The] [p]laintiff 'must sustain its burden of proof ... through sworn affidavits or other competent evidence.'" *Sanitec Indus., Inc. v. Sanitec Worldwide, Ltd.*, 376 F. Supp. 2d 571, 573 (D. Del. 2005) (quoting *Time Share Vacation Club*, 735 F.2d at 66 n.9) (internal citation omitted). As this Court observed earlier this year, "'[A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of *in personam* jurisdiction.' *Plaintiff is required to respond to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction with actual proof, not mere allegations.*" *Grumbkow v. Walt Disney Co.*, No. CIV A 06-489-JJF, 2007 WL 570196, at *2 (D. Del. Feb. 20, 2007) (internal citations omitted) (emphasis added).

Similarly, the presumption that factual allegations in the plaintiff's complaint are true "does not apply to a *forum non conveniens* motion" or a request that the Court exercise its discretion to decline jurisdiction over an action under the Declaratory Judgment Act. *See In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 200 (S.D.N.Y. 1999). Both inquiries "go[] to the

6

court's subject matter jurisdiction over the action, and '[i]n resolving the jurisdictional dispute, the district court must review the pleadings and any evidence before it, such as affidavits.'" *Id.* (quoting *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1019 (2d Cir. 1993)). As the Third Circuit has instructed, "[i]f a defendant contests any of the jurisdictional allegations as pled by the plaintiff, the courts must permit the plaintiff to respond with rebuttal evidence in support of jurisdiction, and the court then decides the jurisdictional issue by weighing the evidence." *McCann*, 458 F.3d at 290-91.

Thus, for the purpose of this motion, the Court must consider all the evidence that has been presented to it and evaluate Hershey Canada's arguments for dismissal based on its independent assessment of that evidence. It need not accept the allegations in Solae's Complaint as true with respect to any of Hershey Canada's arguments for dismissal.

## **ARGUMENT**

This case poses the question whether Solae can avoid judgment in Canada — where its misconduct affected millions of consumers and caused Hershey Canada millions of dollars in damages — by filing a declaratory judgment action in this District, which has absolutely no connection to the underlying dispute. The obvious answer to this question is "no," and this action should be dismissed, for three distinct reasons.

*First*, Solae forfeited the right to invoke this Court's equitable jurisdiction to obtain a declaratory judgment when, in the midst of pre-litigation settlement talks, it filed an anticipatory action in this Court while Hershey Canada in good faith held off on filing its own action in Ontario. Courts have routinely held that such tactics will not be tolerated, and that the federal courts' equitable jurisdiction may not be invoked where putative defendants file anticipatory declaratory judgment actions in bad faith during settlement negotiations in order to deprive the

7

real plaintiff-in-interest of its forum. *See Terra Nova Ins. Co. Ltd v 900 Bar, Inc.*, 887 F.2d 1213, 1225 (3d Cir. 1989); *Consol. Rail Corp.*, 592 F. Supp. 562, 568 (E.D. Pa. 1984). The same result is proper here.

*Second*, this case is a hornbook candidate for dismissal on grounds of *forum non conveniens*. Indeed, this case has no connection whatsoever to Delaware: none of the events transpired here, none of the witnesses or documents are here, none of the facilities are here, and neither party has its principal place of business here. The contaminated soy lecithin that Solae sold to Hershey Canada never passed through Delaware, and no one involved in the purchase or sale of that product is located in Delaware. Instead, this case should proceed in Ontario, Canada, where Hershey Canada has filed its own lawsuit and where a substantial number of the underlying events took place. *See Bell Helicopter Textron, Inc.*, 295 F. Supp. 2d at 411.

*Third*, on top of all the other problems with Solae's filing, this Court lacks personal jurisdiction over Hershey Canada — a corporation organized under the federal laws of Canada with no employees or operations in this State. Solae's sole basis for asserting personal jurisdiction in this forum is the reverse side of a Solae form invoice, which contains a Delaware forum-selection clause. Solae did not present those reverse-side terms to Hershey Canada with respect to the order in question prior to, or at the time of, delivery of the contaminated shipment of soy lecithin, and in all events Hershey Canada never assented to those terms. Accordingly, those reverse-side terms cannot bind Hershey Canada to litigate in Delaware. *See Chateau des Charmes Wines Ltd.*, 328 F.3d 528.

For these reasons and the reasons set forth below, Hershey Canada respectfully requests that the Court dismiss this action with prejudice in favor of Hershey Canada's lawsuit currently pending in the Superior Court of Justice in Ontario, Canada.

8

I.   **THE COURT SHOULD EXERCISE ITS EQUITABLE DISCRETION TO DISMISS SOLAE'S ABUSIVE DECLARATORY JUDGMENT ACTION.**

Solae's declaratory judgment action — filed in the midst of ongoing settlement negotiations to secure a more favorable forum for Solae — is an abuse of the Declaratory Judgment Act and should be dismissed. The United States Supreme Court made clear more than six decades ago (and reaffirmed in 1995) that a federal district court has broad discretion to decline jurisdiction over a declaratory judgment action in favor of parallel proceedings in another forum. *See Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 290 (1995). And district courts routinely exercise that discretion where, as here, a plaintiff attempts to use the declaratory judgment device to short-circuit pre-litigation settlement talks and to deprive the true plaintiff-in-interest of its forum. In these circumstances, a plaintiff is not entitled to invoke the Court's equitable jurisdiction, and the declaratory judgment action should be dismissed. That is all the more so here, where the chosen forum has no connection to the underlying dispute but was selected solely to avoid the forum where the cause of action accrued.

A.   **This Court Has Discretion To Dismiss A Declaratory Judgment Action.**

As the Supreme Court has stated, "'[t]here is ... nothing automatic or obligatory about the assumption of 'jurisdiction' by a federal court' to hear a declaratory judgment action." *Wilton*, 515 U.S. at 288 (quoting E. Borchard, *Declaratory Judgments*, at 313 (2d ed. 1941)). Rather, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.*; *see also State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 134 (3d Cir. 2001) (same).

9

These considerations of "wise judicial administration" require dismissal where, as in this case, the defendant-in-fact has filed a declaratory judgment action in anticipation of being sued to gain a procedural advantage and deprive the actual plaintiff of its choice of forum. As the Third Circuit has written, the manipulative use of a declaratory judgment action for "forum shopping subverts the policies of the Declaratory Judgment Act." *Wilderman v. Cooper & Scully, P.C.*, 428 F.3d 474, 476 n.1 (3d Cir. 2005). When deciding whether to exercise discretion under the Act, therefore, the Third Circuit has directed courts to "'look with disapproval upon any attempt to circumvent the laudable purposes of the Act, and [to] seek to prevent the use of the declaratory action as a method of procedural fencing, or as a means to provide another forum in a race for res judicata.'" *Terra Nova Ins. Co. Ltd.*, 887 F.2d at 1225.

Applying these principles, numerous courts have recognized that a district court should decline jurisdiction where a party uses a declaratory judgment action to avoid litigation in the state or foreign court preferred by the putative plaintiff. *See, e.g.*, *Dow Jones & Co., Inc. v. Harrods Ltd.*, 346 F.3d 357, 359-60 (2d Cir. 2003) (affirming district court's decision not to exercise jurisdiction over declaratory judgment action in favor of parallel action in Britain, in part, because "the proposed remedy [was] being used merely for 'procedural fencing' or a 'race to res judicata'"); *Envirometrics Software, Inc. v. Georgia-Pacific Corp.*, C.A. No. 97-243-SLR, 1997 WL 699328, at *3 (D. Del. Nov. 4, 1997) (dismissing declaratory judgment action in favor of a pending suit in Georgia state court and explaining that "[v]enerable Third Circuit precedent specifically has directed that 'it is not one of the purposes of the declaratory judgment acts to enable a prospective ... defendant to obtain a declaration of non-liability'") (internal citations omitted). Indeed, even where the declaratory plaintiff files its action before the injured party and the injured party brings suit in another *federal* court (thereby implicating the first-to-file rule),

10

the Third Circuit has made clear that "[b]ad faith and forum shopping have always been regarded as proper bases for" not entertaining the earlier-filed action. *EEOC v. Univ. of Penn*, 850 F.2d 969, 976 (3d Cir. 1988) (internal citations omitted).[1]

### B.    Solae's Bad Faith And Forum Shopping Warrant Dismissal.

The circumstances surrounding the filing of Solae's anticipatory suit in this Court leave no doubt that it is a textbook example of the sort of "procedural fencing" that courts have recognized as a proper basis for declining jurisdiction under the Declaratory Judgment Act. *See Terra Nova Ins. Co*, 887 F.2d at 1225; *AmSouth Bank v. Dale*, 386 F.3d 763, 790 (6th Cir. 2004) (listing cases).

When Solae filed suit against Hershey Canada, the parties had been negotiating a settlement for more than three months. (*See* D.I. 12, Angele Decl. ¶¶ 5-20.) Hershey Canada had informed Solae that it would "hold Solae responsible for all losses suffered as a result of" its contaminated shipment, and the parties had entered into a written confidentiality agreement for the express purpose of "attempting to resolve liability and damages issues currently in dispute." (Nov. 13, 2006 Ltr. from B. Snyder to C. Levitt (D.I. 12, Ex. B to Angele Decl.); Dec. 19, 2006 Agreement ¶ 1 (D.I. 12, Ex. G to Angele Decl.).) As made clear by the parties' confidentiality agreement, both parties understood that there would be "litigation related to the matters in dispute" if settlement negotiations failed — a point Solae conceded in its Opposition to Hershey Canada's first Motion to Dismiss. (*See* D.I. 19, Solae Opp'n at 9, 28; Dec. 19, 2006 Agreement ¶ 1 (D.I. 12, Ex. G to Angele Decl.); D.I. 12, Angele Decl. ¶¶ 12-14.) In light of the impending

---

[1]    Solae conceded in its Opposition to Hershey Canada's initial Motion to Dismiss that "[t]he present case is not governed by first-filed analysis," which generally requires a court to give precedence to the first-filed action, because Hershey Canada's action against Solae is not pending in another federal court. (*See* D.I. 19, Solae Opp'n at 27.) Accordingly, the fact that Solae filed suit in Delaware a day before it was sued in Ontario is immaterial to whether this Court should accept jurisdiction over this case.

11

litigation, Solae had retained the co-chair of Crowell & Moring's tort practice to communicate with Hershey Canada in settlement discussions, (D.I. 12, Angele Decl. ¶¶ 9-10, 16-22), and had repeatedly given Hershey Canada assurances that it intended to resolve the parties' dispute amicably, without resort to litigation. (*Id.* ¶¶ 18-19.) Relying on these assurances, Hershey Canada opened its books to Solae for the ostensible purpose of allowing Solae to "analyze" Hershey's damages in the preparation of a settlement offer. (*Id.* ¶ 16-17.) More important, Hershey Canada delayed bringing suit against Solae in its preferred forum of Ontario, Canada. (*Id.* ¶¶ 15-17.)

Settlement discussions were to culminate at a March 8, 2007 meeting in Hershey, Pennsylvania. Solae assured Hershey Canada that its representatives would present Solae's response to Hershey Canada's settlement demands at that meeting and would have settlement authority. (*Id.* ¶ 19.) At 8 p.m. on the eve of the March 8, 2007 meeting, however, Solae's outside counsel, Scott Winkelman, left two voicemail messages for Hershey Canada, stating that he had "learned that an insurance meeting with [Solae's] insurer that was supposed to set up [the March 8] meeting with [Hershey] did not happen as planned" and that he had been unable to speak with a particular "decision maker." (Transcription of March 7, 2007 voicemail to B. Snyder (D.I. 12, Ex. J to Angele Decl.).) Accordingly, Mr. Winkelman said, Solae needed "to *postpone* tomorrow's meeting." (*Id.* (emphasis added).)

While Hershey Canada sought in good faith to reschedule the meeting with Solae, Solae rushed to this Court to file its Complaint, seeking a declaratory judgment related to the very matters at the heart of the parties' settlement discussions. Notwithstanding messages from Hershey Canada seeking to make good on Mr. Winkelman's stated intention to schedule another settlement meeting, neither Mr. Winkelman, nor any other Solae representative involved in the

12

settlement negotiations, attempted to contact Hershey Canada to correct Mr. Winkelman's previous statements that Solae intended to continue settlement discussions. (D.I. 12, Angele Decl. ¶ 24.) Upon learning that Solae had filed suit on March 9, 2007, Hershey Canada filed its affirmative suit against Solae in Ontario, Canada the next business day. (*Id.*)

The obvious purpose of Solae's failure to respond to Hershey Canada's request to reschedule the March 8, 2007 settlement conference was thus to lead Hershey Canada to believe that settlement negotiations were continuing so that Solae could use the declaratory judgment device in an effort to seize Solae's preferred forum of Delaware and potentially deprive Hershey Canada, the injured party and plaintiff in fact, of its choice of forum. This constitutes the type of "misuse" of the Declaratory Judgment Act that requires dismissal of Solae's action. *Consol. Rail*, 592 F. Supp. at 568; *see also Envirometrics Software*, 1997 WL 699328, at *3; *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Freeport-McMoRan, Inc.*, 767 F. Supp. 568, 573 (D. Del. 1991) (refusing to "reward [party seeking declaratory judgment] 'for winning a race to the courthouse which it had completed before its adversary heard the starting gun'") (internal citation omitted). As one court recently explained, a pre-emptive declaratory judgment action like the one filed by Solae has "no real value ... except to guarantee to the declaratory plaintiff her choice of forum — a guarantee that cannot be given consonant with the policy underlying the Declaratory Judgment Act." *AmSouth Bank*, 386 F.3d at 788. This is precisely why the Third Circuit has directed that courts should "seek to prevent the use of the declaratory action as a method of procedural fencing, or as a means to provide another forum in a race for res judicata." *Terra Nova Ins. Co.*, 887 F.2d at 1225 (internal quotations omitted). It is also why the courts in this Circuit have declined time and again to entertain declaratory judgment actions, like the one filed by Solae, that are preemptively filed to gain a procedural advantage in the midst of active

13

settlement negotiations. *See, e.g., Consol. Rail*, 592 F. Supp. at 568.[2]  As a court in the Eastern District of Pennsylvania explained when dismissing a case on facts almost identical to those here, "in light of [the putative defendant's] unseemly conduct in winning the race to the courthouse when [the plaintiff] did not even know there was a race, allowing this action to proceed would condone a misuse of the Declaratory Judgment Act." *Id.*  The same conclusion is required in this case.

Indeed, as numerous courts have recognized, if a putative defendant were able to subvert a plaintiff's choice of forum simply by rushing to get a declaratory judgment action on file, as Solae has tried to do here, no plaintiff would ever attempt to resolve its dispute amicably, without first filing a lawsuit. *See, e.g., HPF, LLC v. Nu Skin Enters., Inc.*, No. Civ. A. 99-CV-1505, 1999 WL 782573, at *3 (E.D. Pa. Sept. 28, 1999) ("The [Declaratory Judgment] Act should not be applied to encourage would-be . . . plaintiffs to file suit rather than resolve their disputes amicably by providing the incentive of forum choice to file suit quickly.") (citation omitted); *Hanson PLC v. Metro-Goldwyn-Mayer Inc.*, 932 F. Supp. 104, 107 (S.D.N.Y. 1996). Solae should not be permitted to subvert the policies of the Declaratory Judgment Act in this manner.

That Solae has tacked on a breach-of-contract claim related to a different lot of soy lecithin to its claims under the Declaratory Judgment Act should make no difference in the Court's analysis.  The Court's discretion to issue declaratory relief arises from the Declaratory Judgment Act itself and, thus, is in no way diminished by the pendency of a separate claim. Moreover, there should be no question that Solae's request for declaratory judgment (which

---

2       *See also FMC Corp. v. AMVAC Chem. Corp.*, 379 F. Supp. 2d 733, 743-44 (E.D. Pa. 2005); *Drugstore-Direct, Inc. v. Cartier Div. of Richemont N. Am., Inc.*, 350 F. Supp. 2d 620, 623 (E.D. Pa. 2004); *Envirometrics Software*, 1997 WL 699328, at *3; *Nat'l Union Fire Ins. Co.*, 767 F. Supp. at 573 .

14

implicates damages of up to $20 million), not its breach claim (which involves less than $50,000), is the claim at the center of this dispute. To accept jurisdiction over the declaratory judgment claims merely due to the presence of the breach claim would allow the tail to wag the dog. It would also permit Solae to enjoy the benefits of an abuse of the declaratory judgment procedure, simply by taking the additional step of attaching a claim arising out of an entirely separate order of soy lecithin.

For these reasons — and because "the questions in controversy between the parties to [this] suit ... can better be settled in the proceeding pending in" Ontario, *see Wilton*, 515 U.S. at 282 (quoting *Brillhart*, 316 U.S. at 495), where the harm occurred and where critical evidence is located — the Court should exercise its discretion to dismiss Solae's declaratory judgment action.

## II.   SOLAE'S CAUSE OF ACTION HAS NO CONNECTION TO DELAWARE AND SHOULD BE DISMISSED ON *FORUM NON CONVENIENS* GROUNDS.

This case is a stranger to this forum and has no business proceeding here. The contract at issue was breached in Ontario, Hershey Canada suffered damages in Ontario, and Solae's breach threatened the public health of Canadian citizens in Ontario and throughout Canada. None of the relevant conduct occurred in Delaware, none of the documents or witnesses are located in Delaware, and there is no indication that Delaware is a convenient forum for anyone involved in this dispute. Maintaining this forum would serve only to burden Hershey Canada and deprive it of the proper forum in Ontario, while at the same time draining Delaware's resources for a matter of no interest to the people of Delaware. It would also require this Court to resolve the parties' dispute without access to critical witnesses for trial or the ability to view important physical evidence located in Ontario. This is a hornbook example of a case ripe for dismissal under the doctrine of *forum non conveniens*

15

The doctrine of *forum non conveniens* "permits a court to decline jurisdiction even though venue and jurisdiction are proper, on the theory that for the convenience of the litigants and the witnesses, the action should be tried in another judicial forum." *Dahl v. United Techs. Corp.*, 632 F.2d 1027, 1029 (3d Cir. 1980). As this Court has recognized, "dismissal will be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Bell Helicopter Textron, Inc.*, 295 F. Supp. 2d at 411. This test is easily satisfied here.

Indeed, this case is almost on all fours with *Bell Helicopter*, where this Court dismissed a case against Canadian defendants on *forum non conveniens* grounds. As in *Bell Helicopter*, "[t]here is an adequate, alternative forum, Ontario, Canada, that has jurisdiction over the dispute and the parties," and "Canada has an interest in the decision of this controversy, whereas Delaware does not." 295 F. Supp. 2d at 412. Hershey Canada respectfully submits that the same result should apply in this case.

## A.    The Courts Of Ontario Provide An Adequate Alternative Forum.

The initial question in any *forum non conveniens* analysis is whether an alternative forum is available and adequate to resolve the parties' dispute. *Bell Helicopter*, 295 F. Supp. 2d at 411. In this case, it is clear that Ontario, Canada is just such a forum.

An alternative forum is available for purposes of the *forum non conveniens* analysis "when the defendant is 'amenable to process' in the other jurisdiction." *Id.* It cannot be disputed that this factor is satisfied here. For its part, Hershey Canada is a Canadian corporation with its principal place of business in Ontario. In addition, Solae is amenable to process in Ontario under Rule 17.02 of the Ontario Rules of Civil Procedure as a result of the breach of contract that

16

occurred in Ontario, the Canadian tort claim that arose in Ontario, and the damage caused to Hershey Canada in Ontario. Ont. R. Civ. P. 17.02. (*See also* Decl. of J. Morden ¶¶ 28-29 (June 7, 2007).) Indeed, Solae has already been served with process in the Canadian action, (D.I. 12, Angele Decl. ¶ 25), and has filed responsive affidavits in the Ontario court. (*See* D.I. 15.)

Furthermore, the adequacy of an alternative forum is not affected by procedural differences between the two jurisdictions or the "possibility of an unfavorable change in law." *See Howe v. Goldcorp Invs., Ltd.*, 946 F.2d 944, 951-52 (1st Cir. 1991) (holding Canada to be an appropriate alternative forum, despite "conced[ing] there may be some differences between Canadian and American law"). A forum will be deemed inadequate only if "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Id.* (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981)). The remedies available in Ontario, Canada for the contract and tort claims at issue in this dispute easily surpass this minimum requirement. (*See* Morden Decl. ¶¶ 28-30.) Thus, an appropriate alternative forum exists in Ontario with respect to both parties. *See Howe*, 946 F.2d at 951-52.

## B. The "Private Interest" Factors Weigh Strongly In Favor Of Dismissal.

Once it is established that an adequate alternative forum exists, the district court then must weigh both the "private interests affecting [the] convenience of the litigants" and "public interests affecting the convenience of the chosen forum." *Bell Helicopter*, 295 F. Supp. 2d at 411. Relevant private interest factors include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

17

*Dahl*, 632 F.2d at 1030 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). Analysis of these various factors confirms that it makes eminent sense for this case to proceed in Ontario while at the same time revealing the lack of any reason for it to go forward in Delaware.

As an initial matter, it bears emphasis that Solae's only connection to the State of Delaware is that it is organized as a Delaware limited liability company. Solae's principal place of business is in Missouri (Am. Compl. ¶ 2), none of its offices are located in Delaware (D.I. 12, Angele Decl. ¶ 28), and none of the conduct at issue in this dispute occurred in Delaware. Although a plaintiff's choice of forum is generally entitled to deference, the Supreme Court has recognized that it "should not be given dispositive weight. . . . As always, if the balance of conveniences suggests that trial in the chosen forum would be necessarily burdensome for the defendant or the courts, dismissal is proper." *Piper Aircraft*, 454 U.S. at 256 n.23.

Indeed, "the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient." *Piper Aircraft*, 454 U.S. at 256. Solae's attempt to justify Delaware as a forum because of other far-flung contacts with the United States, despite the lack of relevant connections with Delaware (D.I. 19, Solae Opp'n at 14-16), flatly ignores this central purpose of *forum non conveniens* principles — convenience. Solae seems to take the position that, so long as the case has a connection to some distant part of the United States, it is irrelevant to the analysis that there is ***no*** connection to the State of Delaware. This simply cannot be squared with the prevailing caselaw or the rationale behind the doctrine. *See, e g, Bell Helicopter*, 295 F. Supp. 2d at 411-12 (comparing the relative convenience of litigating in Canada with the convenience of litigating in Delaware, not the United States generally); *Piper Aircraft*, 454 U.S. at 256. Hershey Canada does not dispute that Solae is a U.S. citizen with various contacts to the United States as a whole. But the key events relevant to this case occurred in Ontario, and Solae

18

can point to no factors that make a trial in Delaware convenient for anyone. Even Solae's own headquarters in St. Louis and its plant in Gibson City, Illinois are geographically closer to the Ontario court in Toronto than to this Court in Wilmington.

The practical inconveniences of maintaining this litigation in Delaware are significant. Because none of the relevant conduct occurred in Delaware, none of the sources of proof — documents, witnesses, or physical evidence — will be easily accessible here for either party. In contrast, the vast majority of documents, witnesses and physical evidence are in Ontario. For example:

- Hershey Canada is a company incorporated under the federal laws of Canada, with its corporate headquarters in Mississauga, Ontario. Hershey Canada does no business in Delaware. (D.I. 12, Angele Decl. ¶ 2.)

- Solae shipped the soy lecithin at issue to Wills Warehouse in Smiths Falls, Ontario, a warehouse operated by a third party contractor, Wills Transfer. Wills Transfer employee Keith Chapman received the shipment and accompanying shipping documents for the order at issue in this case. (D.I. 10, Kuehl Decl. ¶¶ 13, 15.)

- As a result of Solae's conduct in delivering contaminated soy lecithin, Hershey Canada was forced to shut down its factory in Smiths Falls, Ontario, quarantine and undergo extensive cleaning of its equipment and inventory in Smiths Falls, and temporarily lay off nearly all of its Smiths Falls employees. (D.I. 11, Nugent Decl. ¶¶ 5, 9.)

- Also as a result of Solae's conduct, Hershey Canada voluntarily recalled over 2 million units of product distributed throughout Canada and issued a press release explaining to the Canadian public the basis for the recall and the actions Hershey Canada had taken to protect the Canadian public. Hershey Canada's recall had no impact on the citizens of Delaware. (*Id.* ¶¶ 8, 12.)

- Representatives of the Canadian Food Inspection Agency ("CFIA"), which is based in Ottawa, Ontario and is responsible for enforcement of the Canadian *Food and Drug Regulations*, have been heavily involved in the investigation and recall efforts, conducted their own regulatory investigation, and communicated with Hershey Canada on a daily basis beginning November 9, 2006. (*Id.* ¶¶ 6-15.)

- Representatives of the Office of Food Safety and Recall ("OFSR"), a division of Health Canada (the Canadian equivalent to the U.S. Department of Health) and based

19

in Ottawa, Ontario, were also heavily involved in the investigation and recall efforts from November to December 2006. (*Id.* ¶¶ 6-8.)

- The Quantity Contract governing the relationship between Hershey Canada and Solae for the year 2006 was negotiated in e-mail and telephone communications between Kimberly McLucas of Hershey's Commodities Department in Hershey, Pennsylvania and Solae account manager Laurie Cradick in St. Louis. Neither of the individuals who negotiated the Quantity Contract is based in Delaware. (D.I. 10, Kuehl Decl. ¶¶ 5-6; D.I. 15 Ex. B, Cradick Aff. ¶ 34(d).)

- The purchase order referenced in the Amended Complaint, PO# 4500257993, was transmitted by James Kuehl of Hershey Canada in Ontario to Laura Titus, a Solae customer service representative working either in St. Louis or Chicago (but not Delaware), who generated the corresponding order confirmation. (D.I. 10, Kuehl Decl. ¶¶ 9-11.)

- The raw material used by Solae in its production of the contaminated lots was imported from Brazil to Chicago and then sent to Solae's plant in Gibson City, Illinois for further processing. The product in question never passed through Delaware. (*Id.* ¶¶ 13-14.)

These extensive Ontario contacts and the complete absence of any Delaware contacts confirm that a "trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience'" of proceeding in Delaware. *Bell Helicopter*, 295 F. Supp. 2d at 411 (quoting *Piper Aircraft*, 454 U.S. at 241).

A trial in Ontario would also provide the Court and jury with access to evidence and witnesses that would be unavailable in Delaware. Most important, an Ontario court could secure the availability of nonparty witnesses, such as the numerous CFIA and OFSR officials who confirmed that the contamination originated with Solae and who participated in the recall, none of whom could be compelled to appear before this Court. (*See* Morden Decl. ¶ 21; Fed. R. Civ. P. 45(c).) A Canadian court could also compel former employees of Hershey Canada, including James Kuehl, the Hershey Canada employee who ordered and later received the tainted product from Solae, and Peter Johnston, the Hershey Canada quality assurance manager who oversaw the detection and clean-up efforts in Smiths Falls, to attend trial. As of April 27, 2007, both Mr.

20

Kuehl and Mr. Johnston are former employees no longer subject to Hershey Canada's control. (D.I. 10, Kuehl Decl. ¶ 19; Supp. Decl. of S. Angele ¶ 5 (June 8, 2007).)  Similarly, the key witness regarding the arrival of the tainted soy lecithin at Wills Warehouse in Smiths Falls — Keith Chapman — is the employee of a nonparty independent contractor in Ontario, (*see* D.I. 10, Kuehl Decl. ¶ 15), and also beyond this Court's subpoena power.  As a result, Hershey Canada would not be able to compel the attendance of any of these third-party, Ontario witnesses to a trial in Delaware.  *See, e.g.*, *Dahl v. United Techs. Corp.*, 472 F. Supp. 696, 700 (D. Del. 1979), *aff'd*, 632 F.2d 1027 (3d Cir. 1980); *Bell Helicopter*, 295 F. Supp. 2d at 411.

In addition, it is highly likely that a jury would benefit from a visit to Hershey Canada's Smiths Falls manufacturing facility, where the contamination occurred, and Wills Warehouse, where the product was received, in order to assess fault and damages.  Although the manufacturing facility is scheduled to cease operations in 2008, a visit to the site will likely be possible throughout 2008 and also during a trial of the case in Ontario even through mid-2009. Again, however, such site visits could happen only if this case is litigated in Ontario.  *Bell Helicopter*, 295 F. Supp. 2d at 412 ("A view of the premises of USCAN and Cannon may be helpful, but can only happen in Canada.").

Finally, the forum selection clause in Solae's form invoice — received by Hershey Canada subsequent to receipt of the contaminated soy lecithin — should not affect the Court's analysis. The parties' Quantity Contract, which governed all sales of soy lecithin from Solae to Hershey Canada for the year 2006, did not include this clause (McLucas Decl. ¶ 12, Ex. B to McLucas Decl.), nor did the purchase order and order confirmation pertaining to the particular delivery at issue. (D.I. 10, Kuehl Decl. ¶ 11.)  Sent well after formation of the binding Quantity Contract to an individual with no authority to negotiate on behalf of Hershey Canada (Hall Decl.

21

¶ 4), this clause never became part of the parties' contract. *See infra* Part III.A; *see also Chateau des Charmes Wines Ltd.*, 328 F.3d 528. Furthermore, even if the Court were to determine that Solae's form somehow contained the terms of the parties' agreement, a forum selection clause would not be sufficient to outweigh the other convenience factors, which point overwhelmingly to Ontario. *See, e.g., SportsMEDIA Tech. Corp. v. Upchurch*, 839 F. Supp. 8, 10 (D. Del. 1993); *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 758 (3d Cir. 1973); *Cont'l Cas. Co. v. Am. Home Assurance Co.*, 61 F. Supp. 2d 128, 133 (D. Del. 1999). For purposes of this analysis, therefore, Solae's forum selection clause is not binding, dispositive or even particularly informative.

## C.    The "Public Interest" Factors Also Counsel Strongly In Favor Of Dismissal.

The next step of the *forum non conveniens* analysis is to evaluate the "public interests affecting the convenience of the chosen forum." *Bell Helicopter*, 295 F. Supp. 2d at 411. Important public interest factors include:

> administrative difficulties flowing from court congestion; local interest in having localized controversies decided at home; avoidance of unnecessary problems in conflict of laws, or in application of foreign law; unfairness of burdening citizens with jury duty in an unrelated forum; and interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action.

*Id.* (citing *Gulf Oil*, 330 U.S. at 509). Once again, these factors point strongly away from Delaware and toward Ontario, Canada, where the citizens have a significant interest in having their courts police matters that affect the public health and impact employees of local companies like Hershey Canada.

The Third Circuit has made clear that an evaluation of the public interest factors in a *forum non conveniens* analysis requires consideration of "the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to plaintiff's chosen forum." *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 48 (3d Cir. 1988) (quoting *Van Cauwenberghe v.*

22

*Biard*, 486 U.S. 517, 528 (1988)). Here, the "locus of alleged culpable conduct" cannot even be described as a disputed issue; there is simply no connection to Delaware. As this Court and many others have recognized, there is value in local controversies being litigated in their local courts. *See Bell Helicopter*, 295 F. Supp. 2d at 412; *At Home Corp. v. Cox Commc'ns, Inc.*, No. Civ. A. 02-1486-JJF, 2003 WL 22350925, at *2 (D. Del. Oct. 8, 2003). Where the forum at issue has no local interest in the matter, it is a waste of judicial resources and an imposition on the citizens of the forum (particularly those burdened with jury duty) to allow litigation to proceed there. *See, e.g.*, *Dahl*, 632 F.2d at 1032 ("We therefore conclude that the commitment of Delaware judicial time and resources to this case is not justified by any nexus Delaware has with what is essentially a Norwegian case."); *Rudisill v. Sheraton Copenhagen Corp.*, 817 F. Supp. 443, 448 (D. Del. 1993) (concluding that the litigation's nexus with Delaware was "not sufficient to impose jury duty upon citizens of the State of Delaware").

The fact that Solae is a Delaware limited liability company is insufficient under the circumstances to establish a local interest in the controversy that warrants maintaining this forum. *See Dahl*, 632 F.2d at 1032 (affirming district court's dismissal where only connection to Delaware was defendant's incorporation there); *Rudisill*, 817 F. Supp. at 448 (dismissing on grounds of *forum non conveniens* where "the only nexus between this litigation and this forum is that Sheraton Copenhagen is incorporated in Delaware"); *see also Banco Nominees Ltd v. Iroquois Brands, Ltd.*, 748 F. Supp. 1070, 1077 (D. Del. 1990) (granting motion to dismiss where defendant was a Delaware corporation).

This Court also has no advantage in terms of the law to be applied to this case. Solae does not even rely on Delaware substantive law for resolution of this case, pleading instead under the United Nations Convention on Contracts for the International Sale of Goods ("CISG")

23

and invoking Delaware law only in the event that the CISG does not apply. (*See*, *e.g.*, Am. Compl. ¶ 34.) This Court is in no better position than an Ontario court to evaluate Solae's numerous claims under the CISG; indeed, unlike in Delaware (which has no decisions under the CISG reported on Westlaw), courts in Ontario do have experience applying the CISG in commercial disputes. *See*, *e.g.*, *Shane v. JCB Belgium N.V.*, 2003 WL 22597736 (Ont. S. Ct. J. Nov. 14, 2003). Furthermore, Delaware's choice of law rules, which include a "most significant relationship" test for questions sounding in contract, *see Naghiu v. Inter-Continental Hotels Group, Inc.*, 165 F.R.D. 413, 419-20 (D. Del. 1996), would require this Court to apply the substantive law of Ontario if the CISG were not to apply, an area beyond this Court's expertise. Nor can this Court be expected to have familiarity with the Canadian *Food and Drugs Act*, R.S.C. 1985 c.F-27, and section B.04.012 of the Canadian *Food and Drug Regulations*, C.R.C. c.870, both of which are implicated by Solae's shipment of a Salmonella-infested product. (Hershey Compl. ¶¶ 10, 18 (D.I. 12, Ex. M to Angele Decl.)); *see Bell Helicopter*, 295 F. Supp. 2d at 412 ("The Court is unfamiliar with Canadian law and may have to rely on experts from Canada, thereby increasing the costs for trial.").

In addition, Hershey Canada has tort claims arising under Ontario law against Solae that would not be resolved by this litigation, (*see* Hershey Compl. ¶¶ 1, 19-20, 25 (D.I. 12, Ex. M to Angele Decl.)), thus requiring duplicative judicial efforts to be expended in Ontario regardless of the outcome of this litigation. It should go without saying that the interests of justice and judicial economy would be better served if this matter were litigated in a forum that could efficiently and effectively resolve all of the many facets of the dispute in one fell swoop. As this Court has acknowledged in the past: "It is a waste of judicial resources to require two courts to attend to

24

this matter when there is the chance that the cases could be consolidated in [Canada]." *Banco Nominees*, 748 F. Supp. at 1078.

## III.    THIS COURT HAS NO PERSONAL JURISDICTION OVER HERSHEY CANADA.

Although the Court may dismiss Solae's Complaint without even addressing the question,[3] it is clear that this Court lacks personal jurisdiction over Hershey Canada. Hershey Canada never consented to jurisdiction in Delaware, and its contacts with Delaware are insufficient to satisfy either the applicable long-arm statute, 10 *Del. C.* § 3104(c) , or the Due Process Clause under the standards set forth in *Int'l Shoe Company v. Washington*, 326 U.S. 310 (1945). Personal jurisdiction over Hershey Canada is thus unjustified on contractual, statutory and constitutional grounds.

### A.    Hershey Canada Did Not Consent To Jurisdiction in Delaware.

As a threshold matter, the parties' contract does not include a Delaware forum selection clause. As both parties admit, the 2006 Quantity Contract — entered in January 2006 after negotiations between Hershey's Kimberly McLucas and Solae's Laurie Cradick — governed Solae's sale of soy lecithin to Hershey Canada for the calendar year 2006. (McLucas Decl. ¶¶ 2-8; D.I. 15 Ex. B, Cradick Aff. ¶¶ 17-19.) The Quantity Contract contained no provision identifying Delaware as either a proper forum or the source of governing law. (McLucas Decl. ¶ 12; Ex. B to McLucas Decl.) Ms. McLucas was the only person authorized to negotiate with Solae for its supply of soy lecithin, and she never received nor agreed to a Delaware forum selection clause at any point in time. (McLucas Decl. ¶¶ 6, 12, 18-20.) As memorialized in the

---

[3]    *See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184, 1186 (2007) (holding that "a district court has discretion to respond at once to a defendant's *forum non conveniens* plea, and need not take up first any other threshold objection," including jurisdictional issues).

25

Quantity Contract, Ms. McLucas and Ms. Cradick agreed to the total volume of soy lecithin that Hershey Canada was obligated to purchase between January 10, 2006 and December 31, 2006; the price at which Solae was obligated to sell such volume; and freight terms of "FOB Destination." (McLucas Decl. ¶¶ 7-8; Ex. B to McLucas Decl.)  The purchase order for the shipment at issue in this case was generated pursuant to this Quantity Contract and simply drew down from the total volume commitment of the Quantity Contract. (McLucas Decl. ¶¶ 13-17; D.I. 10, Kuehl Decl. ¶ 5.)  All contractual obligations under the Quantity Contract had been established in writing by January 2006, and no modifications were ever proposed to Ms. McLucas at any time thereafter. (McLucas Decl. ¶¶ 13, 20.)

Solae points only to a forum-selection clause appearing on an invoice that arrived in Smiths Falls *after* the shipment at issue had already been delivered and that was received by individuals with no authority to modify the existing contract between Solae and Hershey Canada. (McLucas Decl. ¶¶ 18-20; Hall Decl. ¶¶ 3-6.)  Under the CISG — the law that Solae claims governs the parties' relationship and that Hershey Canada contends should apply under Delaware choice-of-law doctrine if this case is not dismissed — Solae's unilateral attempt to add terms through an invoice did not modify the parties' contract.  The Ninth Circuit addressed precisely this issue in *Chateau des Charmes Wines Ltd.*, 328 F.3d 528.  In that case, the parties had agreed in two telephone conversations to the purchase of a certain number of corks to be shipped in subsequent staggered batches. *Id.* at 529.  The terms of these two oral contracts included the kind of cork, quantity and price per cork and constituted binding agreements under the CISG. *Id.* at 531.  For each delivery that subsequently followed pursuant to the oral agreements, the seller also sent an invoice — including in its terms a forum selection clause — that arrived at varying times either before, with or after the corresponding shipment. *Id.* at 529.  The cork seller argued

26

that although this forum selection clause was not part of the parties' initial oral agreements, it

had become part of the contracts as a result of its appearance on the invoices. *Id.* at 531. The

Ninth Circuit disagreed, holding that the invoices had *not* altered the parties' original contracts

under the CISG because the purchaser had never agreed to the modification, despite its payment

of the invoices in question. *Id.* As the court observed:

> There is no indication that Chateau des Charmes [the purchaser] conducted itself
> in a manner that evidenced any affirmative assent to the forum selection clauses
> in the invoices. Rather, Chateau des Charmes merely performed its obligations
> under the oral contract. . . . In such circumstances, a party's multiple attempts to
> alter an agreement unilaterally do not so effect.

*Id.* Similarly, here, Hershey Canada simply performed its obligations under the 2006 Quantity

Contract by paying for the September delivery upon receipt of the corresponding invoice in

October; there was never any affirmative assent to modify the parties' existing contract to

include a Delaware forum selection clause.

### B.    Hershey Canada Has No Relevant Contacts With Delaware.

It becomes apparent why Solae tries so hard to rely on an inapplicable forum selection

clause when one considers the total lack of relevant contacts between Hershey Canada and the

State of Delaware. Hershey Canada's contacts with Delaware do not even arguably subject it to

personal jurisdiction, either as a statutory or constitutional matter. 10 *Del. C.* § 3104(c); *Int'l*

*Shoe Co.*, 326 U.S. 310. Hershey Canada has no business operations in Delaware, does not

regularly solicit business or engage in persistent conduct in Delaware, and does not derive any

significant revenue from the State of Delaware. (Supp. Angele Decl. ¶ 2.) Accordingly, in

connection with its relationship with Solae and the events giving rise to this dispute, Hershey

Canada has not transacted business or performed work or services in Delaware, contracted to

supply services or goods or to act as a surety in Delaware, caused tortious injury in Delaware,

27

nor maintained an interest in real property in Delaware. (*Id* ¶ 3.) The shipment at issue in this case never even passed through Delaware. (D.I. 10, Kuehl Decl. ¶¶ 14, 18.)

Besides the non-binding invoice, Solae's opposition to Hershey Canada's initial motion to dismiss cites two possible grounds for personal jurisdiction, but these only confirm the lack of Hershey Canada's contacts with Delaware. Solae's first ground is based on a press release that disclosed, in Solae's words, that "[s]ome of the Hershey chocolate product recalled . . . was shipped to the United States." (D.I. 19, Solae Opp'n at 17.) Based on this press release, Solae goes so far as to claim that the United States Food and Drug Administration was "instrumental" in the recall of the contaminated product. (*Id*.) But Solae fails to mention that the FDA press release it cites relates to a grand total of seven jars of sundae topping from a store in Michigan (not Delaware) — less than .0003 percent of the overall recall of approximately 2.5 million units in Canada. (D.I. 19, Ex. B to Solae Opp'n.)

Solae also cites a UCC financing statement Hershey Canada filed in 1998 to perfect a security interest in the non-real property of one of its debtors, Oak Leaf Confections of North America, Inc. That this is all Solae could find after a month of searching is telling, and even this security interest is irrelevant to personal jurisdiction: the security interest has long since been discharged (Supp. Angele Decl. ¶ 4); had the security interest not been discharged, it would have lapsed as a matter of law, 6 *Del. C.* § 9-515 (financing statements cease to be effective after five years); and, in all events, it has nothing whatsoever to do with this case. It is well-established that, in order for a single transaction to suffice to establish personal jurisdiction, that transaction must actually be related to, and form the basis of, the plaintiff's claim. *Hadley v. Shaffer*, No. Civ. A. 99-144-JJF, 2003 WL 21960406, at *7 (D. Del. Aug. 12, 2003); *Siemens Aktiengesellschaft v. LG Semicon Co. Ltd.*, 69 F. Supp. 2d 622, 625 (D. Del. 1999). As this

28

Court has recognized, "the plaintiff cannot assert personal jurisdiction over a defendant on claims that are unrelated to the defendant's jurisdictional contacts." *Hadley*, 2003 WL 21960406, at *7; *see also Sanitec Indus., Inc. v. Sanitec Worldwide, Ltd.*, 376 F. Supp. 2d 571, 574 (D. Del. 2005) (requiring a "'nexus' between the plaintiff's cause of action and the conduct of the defendant that is used as a basis for jurisdiction").

In sum, Hershey Canada has not taken any actions, either contractually or otherwise, that subject it to this Court's jurisdiction. For this reason alone, the Court should dismiss Solae's Amended Complaint.

## CONCLUSION

For each of the reasons set forth above, Hershey Canada respectfully submits that its motion to dismiss Solae's Amended Complaint should be granted.

OF COUNSEL:

Craig S. Primis, P.C.
John R. Phillips
Kirkland & Ellis LLP
655 15th Street, N.W.
Washington, D.C. 20005
(202) 879-5000

Jeffrey L. Moyer (#3309)
moyer@rlf.com
Steven J. Fineman (#4025)
fineman@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
*Attorneys for Defendant, Hershey Canada, Inc.*

Dated: June 8, 2007

29

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2007, I electronically filed the foregoing with the Clerk of

Court using CM/ECF which will send notification of such filing(s) to the following and which

has also been served as noted:

### HAND DELIVERY

P. Clarkson Collins, Jr.
Katherine J. Neikirk
Morris James, LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19899


I further certify that on June 8, 2007, the foregoing document was sent to the following

non-registered participants in the manner indicated:

### FEDERAL EXPRESS

Scott L. Winkelman
Monica M. Welt
Crowell & Moring LLP
1001 Pennsylvania Ave. N.W.
Washington, D.C. 20004-2595

Jeffrey L. Moyer (#3309)