IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SOLAE, LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> HERSHEY CANADA INC., an Ontario, Canada corporation, <br><br> Defendant. | Civil Action No. 07-140-JJF |

## DECLARATION OF STANLEY HALL

1. I am the General and Accounts Payable Coordinator for Hershey Canada Inc. ("Hershey Canada") at its offices in Smiths Falls, Ontario. As such, I have knowledge of the matters stated in this affidavit.

2. Attached hereto as Exhibit A is a true copy of the front page of Invoice No. 90308495 from "The Solae Company" (the "Invoice"). As shown on its face, the Invoice relates to Hershey Canada Purchase Order No. 4500257993 ("PO 993").

3. The Invoice was received by Hershey Canada by mail at Smiths Falls on October 4, 2006. I know this because of the date stamp that appears on the face of the Invoice: "OCT 4 – 2006". I have compared the "OCT 4 – 2006" stamp record on the subject Invoice with other stamp records made by my date stamp. I am confident that the stamp record on the Invoice was created by me on October 4, 2006 and that the Invoice was received by Hershey Canada on October 4, 2006, and not before that date. The date stamp record on the Invoice was created in the usual and ordinary course of business of Hershey Canada.

4. I have no authority to negotiate any contract terms on behalf of Hershey Canada. I have never had any such authority at any time during my employment with Hershey Canada.

5. I have noted that the Invoice contains another date stamp: "OCT 09 2006". This date stamp was made by the disbursements department at The Hershey Company in Hershey, Pennsylvania. In accordance with Hershey Canada's standard procedure, invoices that I receive and stamp at Smiths Falls are subsequently sent by me via FedEx to the disbursements department for payment. These FedEx shipments are sent by me personally on Tuesdays and Fridays. Since I stamped the Invoice on Wednesday, October 4, 2006, this Invoice was sent by FedEx on Friday, October 6, 2006, and received by the disbursements department on Monday, October 9, 2006. The practice of the disbursements department is to stamp the invoices upon receipt to accurately record

the date they are received at the disbursements department. All of this is done in the ordinary course of business of Hershey Canada and The Hershey Company.

6. I have reviewed Hershey Canada's SAP accounting system records regarding PO 993. These records are created in the usual and ordinary course of business of Hershey Canada at or near the time of the transactions that they record. The SAP accounting records confirm that the shipment made in response to PO 993 was received at Smiths Falls on September 29, 2006. These records also confirm that the Invoice was entered into the accounts payable system on October 9, 2006 in Hershey, Pennsylvania.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 5, 2007

_____
Stanley Hall

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2007, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and which has also been served as noted:

**HAND DELIVERY**

P. Clarkson Collins, Jr.
Katherine J. Neikirk
Morris James, LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19899

I further certify that on June 8, 2007, the foregoing document was sent to the following non-registered participants in the manner indicated:

**FEDERAL EXPRESS**

Scott L. Winkelman
Monica M. Welt
Crowell & Moring LLP
1001 Pennsylvania Ave. N.W.
Washington, D.C. 20004-2595

_____
Jeffrey L. Moyer (#3309)

# EXHIBIT A

The Solae Company.

OCT 0 9 2006

**107**
**Invoice**
**90308495**

**Shipping Address**

HERSHEY CANADA, INC.
C/O WILLS WAREHOUSE
HWY 15 SOUTH
SMITH FALLS ON  K7A 4T6
CANADA

OCT 4 - 2006

**Billing Address**

HERSHEY CANADA SMITH FALLS PLT
1 HERSHEY DRIVE
SMITH FALLS ON  K7A 4T8
CANADA

**Information**

| | |
|---|---|
| Document Date | 27 Sep 2006 |
| Billing Date | 27 Sep 2006 |
| Purchase Order No. | 4500257993 |
| Purchase Order Date | |
| Sales Order Number | 234910 |
| Incoterms | FOB Shippoint; Frt. PPD/Dlvd |
| Payment Terms | 30 days from invoice date |
| Payment Due Date | 27 Oct 2006 |

PLEASE REMIT TO:
SOLAE, LLC
C/O BANK OF AMERICA
P O BOX 169
ST LOUIS, MO 63150-0169          Page 1

**Invoice Details**

| Item | Material Description | Date Shipped | Quantity | Net Weight | Gross Weight | Unit Price | Amount |
|---|---|---|---|---|---|---|---|
| 0010 | 10005325<br><br>SOLEC 3F-UB-IP<br>Standard Soy Lecithin Fluid<br>1,000 KG ST CAGE<br>Cust. Material No.: 1-00768-000<br>Country of Origin:  US | 09/27/2006 | 18 IBC | 18,000.000 KG | | 2.7701 /KG | 49,861.80 |
| | | | | | | Total Amount | USD   49,861.80 |
| | | Total Gross Weight | | | 18,242 KG | | |

Price shall be the price in effect on the date of shipment.
Please see Attachment 1 - Conditions of Sale on reverse side.

Solae, LLC
P.O. Box 88940
St. Louis, Missouri 63188
(314) 982-1983 Tel (800) 325-7108 Toll Free

Solae, LLC
1034 Danforth Drive
St. Louis, Missouri 63102

·108

ATTACHMENT 1 - CONDITIONS OF SALE

1. Unless otherwise indicated on the face of this Agreement, title, liability for and risk of loss to Product sold hereunder (the "Product") pass to Buyer upon loading for shipment at Seller's producing location.

2. Seller warrants only to Buyer that the Product delivered hereunder meets Seller's standard specifications for the Product as in effect on the date of shipment or such other specifications as may have been expressly agreed to herein. EXCEPT AS EXPRESSLY PROVIDED IN SECTION 6 HEREOF, SELLER MAKES NO EXPRESS OR IMPLIED WARRANTY (INCLUDING, WITHOUT LIMITATION, THE WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR ARISING FROM ANY COURSE OF DEALING OR TRADE USAGE) REGARDING THE PRODUCT. Buyer, having the expertise and knowledge in the intended use of the Product and any articles made therefrom, assumes all risk and liability for results obtained by the use of the Product, whether used alone or in combination with other materials.

3. Failure to give notice of claim within ninety (90) days from date of delivery, or the date fixed for delivery (in case of non-delivery), shall constitute a waiver by Buyer of all claims in respect of the Product so delivered or not delivered, as the case may be. No Product shall be returned to Seller without Seller's prior written permission, and then only in the manner prescribed by Seller. No claim shall be allowed for Product that has been processed in any manner. Any claims of Buyer may be setoff by seller in any amounts due and payable to Seller. Claims include claims of any kind, including without limitation those (a) for loss, damage, expense or injury, (b) with respect to the Product delivered or for non-delivery of the Product, or (c) based upon Seller's (i) breach of warranty, contract, statute, or regulation or (ii) negligence, strict liability or any other tort.

4. BUYER'S EXCLUSIVE AND SOLE REMEDY FOR ANY CLAIM SHALL BE A REFUND OF THE AMOUNT OF THE PURCHASE PRICE PAID FOR THE PRODUCT IN RESPECT OF WHICH DAMAGES ARE CLAIMED, AND IN NO EVENT SHALL SELLER'S LIABILITY FOR ANY CLAIM BE GREATER THAN THAT AMOUNT.

5. NEITHER PARTY SHALL BE LIABLE FOR SPECIAL, INDIRECT, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES (INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF BUSINESS PROFITS, BUSINESS INTERRUPTION OR ANY OTHER LOSS), WHETHER OR NOT CAUSED BY OR RESULTING FROM THE BREACH OF CONTRACT, NEGLIGENCE OR OTHER WRONGFUL ACT OR OMISSION OF SUCH PARTY EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

6. Seller warrants that the use or sale of the Product delivered hereunder will not infringe the claims of any validly issued United States patent covering the Product itself, but does not warrant against infringement due to: (a) the use of Products in combination with other products or materials or in the operation of any process, or (b) the compliance by Seller with any specifications provided to the Seller by Buyer.

7. No liability shall result from delay in performance or non-performance, directly or indirectly caused by circumstances beyond the control of the Party affected ("Force Majeure"), including, but not limited to Act of God, fire, explosion, flood, war, act of or authorized by any government, accident, labor trouble or shortage, equipment failure, inability to obtain from its usual sources of supply fuel, power, material, equipment or transportation or commercial impracticability. Quantities so affected may be eliminated from this Agreement without liability, but this Agreement shall remain otherwise unaffected. Seller shall have no obligation to purchase supplies of the Products specified herein to enable Seller to perform this Agreement.

8. It is understood and agreed between Buyer and Seller that if this Agreement covers Products that must be manufactured especially for Buyer and is suspended or terminated for any reason, Buyer will take delivery of and make payment for such Products as have been completed and such Products as are in process on the date notice of suspension or termination is received by Seller. If Buyer for any reason cannot accept delivery of such Products, Buyer will make payment therefor as though delivery has been made and Seller will store such Products for Buyer's account and at Buyer's expense.

9. If for any reason, including without limitation, Force Majeure, Seller is unable to supply the total demand for Products specified herein, Seller may distribute its available supply among any or all purchasers as well as business units, including affiliates and subsidiaries, of Seller on such basis as Seller may deem fair and practical without liability for any failure of performance that may result therefrom. Seller shall have no obligation to purchase Product to enable Seller to supply Buyer under this Agreement.

10. At Buyer's request, Seller may, at its option, furnish such technical information as Seller has available with respect to the use of the Products covered by this Agreement. Unless otherwise agreed in writing, all such technical assistance and information will be provided gratis, and Buyer assumes sole responsibility for results obtained in reliance thereon.

11. Buyer acknowledges that it has received and is familiar with Seller's labeling and literature concerning the Products and their properties. Buyer will forward such information to Buyer's employees and any others, including Buyer's customers, who may handle, process or sell such Products and advise such parties to familiarize themselves with such information.

12. Buyer shall reimburse Seller for all taxes, licenses, or other charges, by whatever name, (other than taxes based upon Seller's income) which Seller may be required to pay to any Government (National, Foreign, State or Local) upon the sale, production, or transportation of the Products sold hereunder.

13. In the event Buyer fails to fulfill Seller's terms of payment completely, or in case Seller shall have any doubt at any time as to Buyer's financial responsibility, Seller, without advance notice and at Seller's sole option, may decline to make further deliveries, except upon payment of all arrearages and receipt of cash in advance or delivery of security satisfactory to Seller.

14. This Agreement is not assignable or transferable by Buyer, in whole or in part, except with the prior written consent of Seller. This Agreement shall be binding upon the Parties, their successors and permitted assigns.

15. Failure by either Party to require performance by the other Party or to claim a breach of any provision of this Agreement shall not be construed as a waiver of any right arising under this Agreement, including the right to require subsequent performance or contest any subsequent breach.

16. If any term or provision of this Agreement shall be found to be invalid, illegal or unenforceable, this Agreement shall remain in full force and effect and such term or provision shall be deemed stricken. Seller and Buyer shall promptly agree upon a substitute for any such term or provision.

17. This Agreement is to be construed and the respective rights of Buyer and Seller are to be determined according to the laws of the State of Delaware, U.S.A., without regard to choice of law or conflicts principles of Delaware or any other jurisdiction, and the courts of Delaware shall have exclusive jurisdiction over any disputes or issues arising under this Agreement. The United Nations Convention on Contracts for the International Sale of Goods shall not govern this Agreement or the performance thereof or any aspect of any dispute arising therefrom.

18. This Agreement contains all of the terms and conditions with respect to the purchase and sale of the Products sold hereunder. These terms and conditions supersede any of previous date and no modification thereof shall be binding on Seller unless separately contracted in writing and agreed to by a duly authorized representative of Seller. No modification shall be effected by the acknowledgment or acceptance of purchase order forms stipulating different conditions. Unless Buyer shall notify Seller in writing to the contrary as soon as practicable after receipt of this Agreement by Buyer, Buyer shall be deemed to have accepted the terms and conditions hereof and, in the absence of such notification, Buyer's acceptance of the Products shall be equivalent to Buyer's assent to the terms and conditions hereof.