IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SOLAE, LLC,<br>a Delaware limited liability company,<br><br>       Plaintiff,<br><br>vs.<br><br>HERSHEY CANADA INC.,<br>an Ontario, Canada corporation,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)   Civil Action No. 07-140-JJF<br>)<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF JOHN WILSON MORDEN

1.    My name is John Wilson Morden.  Jeffrey L. Moyer of Richards, Layton & Finger, P.A. has asked me to state my opinion on a number of the points of Ontario law and procedure that are discussed by John T. Morin in his Declaration.  Mr. Moyer has also asked me to state my opinion on some additional points of Ontario law and procedure that are not specifically addressed by Mr. Morin.

2.    This Declaration sets out my opinion on these matters. This Declaration includes a number of footnotes that also form part of my opinion.

3.    I understand that my opinion may be relied upon by the United States District Court for the District of Delaware (the "Delaware Court") on a motion by Hershey Canada Inc. ("Hershey Canada") to dismiss the proceeding in the Delaware Court on jurisdictional and *forum non conveniens* grounds.

**Overview**

4.    While Ontario pre-trial discovery rules place some limitations on the right of litigating parties to conduct discovery of non-parties, these limitations do not impair the proper conduct of civil litigation in Ontario and do not impair the ability of the Ontario Superior Court of Justice (the "Ontario Court") to do justice between parties to civil litigation.  Furthermore, all

parties to civil litigation before the Ontario Court have the right to subpoena relevant testimony and documents from non-parties at a civil trial or in connection with any procedural motion, and the Ontario Court has the power to compel relevant testimony and documents from any person in Ontario for trials and motions.

5.      While most civil cases in Ontario are not tried before a jury, an action in negligence and contract like that brought by Hershey Canada may be properly tried before an Ontario jury.  Canadian law recognizes that the right to a jury trial is "a substantive right of great importance of which a party ought not to be deprived except for cogent reasons".  While it is possible that an Ontario judge could strike a jury in Hershey Canada's case on the ground of complexity, it is not apparent that an Ontario judge would do so in this case and it would be premature to conclude that a jury would be struck.

6.      The Ontario Court is a court of competent jurisdiction with respect to the kind of claims asserted by Hershey Canada in Ontario and by Solae, LLC ("Solae") in Delaware.  The Ontario Court also has the power to grant declaratory relief and damages in contract cases.

**My Experience and Qualifications**

7.      I was called to the Ontario bar in 1961 and I practised litigation in Toronto from 1961 until 1973.  A true copy of my curriculum vitae is attached hereto as Exhibit 1.

8.      In 1973 I was appointed to the High Court of Justice for Ontario (now the Ontario Superior Court of Justice) and I served as a Judge of that Court until 1978.  In 1978 I was appointed to the Ontario Court of Appeal (Ontario's final appellate court) and I served as a Judge of the Court of Appeal until 2003.  From 1990 to 1999, I also served as Associate Chief Justice of Ontario.  I retired from the Court of Appeal in 2003.  Since January of 2004 I have been Counsel to the law firm of Heenan Blaikie in Toronto, where I am engaged in alternative dispute resolution and general counsel work.

9.      From 1974 until 1999, I served as a member of what is now known as the Civil Rules Committee.  The Civil Rules Committee is the body principally responsible for the making of

the rules of procedure that apply in civil cases in Ontario.[1]  From 1980 to 1984, I chaired the Special Sub-Committee that prepared the modern *Rules of Civil Procedure*[2] that govern civil procedure in Ontario today.  I also chaired the Civil Rules Committee from 1990 to 1999. From 1999 to 2004, I served as an Adjunct Professor at the Faculty of Law of the University of Toronto, where I taught Advanced Civil Procedure.

**Pre-Trial Discovery in Ontario**

10.     Mr. Morin has commented extensively, and accurately, upon the law of pre-trial discovery in Ontario.  There are a number of additional related points, however, which I think may be helpful to the Delaware Court.

11.     Mr. Morin is correct in stating that non-parties cannot be examined for discovery in Ontario as of right.  An order of the court is required and Rule 31.10 sets out a specific threshold for such an order.  The Ontario pre-trial discovery rules apply equally to plaintiffs and defendants, providing each side with the same discovery rights.  They do not confer any advantage upon any particular party to an action in Ontario.

12.     The threshold for discovery of non-parties in rule 31.10 reflects an effort to balance the interests of the parties to the action (who seek information) and non-parties (who may be burdened by discovery demands).  Accordingly, under rule 31.10, parties to the action are expected to seek the relevant information from other parties on discovery or from the non-party on an informal basis.  These are the common means by which Ontario counsel obtain information and documents from non-parties in Ontario civil cases.  Rule 31.10 essentially requires that these means be attempted before any order for discovery of a non-party is made. These common means usually provide satisfactory discovery of information and documents

---

[1] The Civil Rules Committee derives its authority from the Ontario *Courts of Justice Act*, R.S.O. 1990, c. C-43. Subject to the approval of the Attorney General for Ontario, the Civil Rules Committee may make rules for the Court of Appeal and the Superior Court of Justice in relation to the practice and procedure of those courts in all civil proceedings, except for family law proceedings.

[2] R.R.O. 1990, Regulation 194.

from non-parties. Accordingly, orders under rule 31.10 are seldom considered necessary and are therefore seldom sought.

13.     If a party shows that it is unable to obtain relevant information by either of these common means, however, the Ontario Court is empowered to order a non-party to submit to an examination for discovery provided that it will not result in any unfairness, unreasonable expense or delay. In most cases where a rule 31.10 order is sought, the decision to make the order does not turn on questions of unfairness, expense or delay, however. Rather, the Court primarily focuses on whether there has been an actual or constructive refusal (on the part of either the party or the non-party) to provide the relevant information sought. Orders for discovery of non-parties have been made in numerous cases where an actual or constructive refusal has been established. A true copy of rule 31.10 and a summary of cases applying the rule are attached hereto as Exhibit 2.

14.     A lower threshold applies to orders for production of documents from non-parties. Under rule 30.10, the court may order production of a document in the power, possession or control of a non-party that is not privileged where the court is satisfied that (a) the document is relevant to a material issue in the action and (b) it would be unfair to require the moving party to proceed to trial without having discovery of the document. Such orders have been granted in numerous cases in Ontario. A true copy of rule 30.10 and a summary of cases applying the rule are attached hereto as Exhibit 3.

15.     It is also important to note that every party to an Ontario civil case is required by the Ontario rules to obtain and produce for inspection all non-privileged documents related to any matter in issue that are in the "possession, control or power" of that party. Because the production obligation is not limited to documents in the "possession" of the party, Hershey Canada, for example, would be obliged in its Ontario proceeding (the "Ontario Action") to obtain and produce relevant non-privileged documents from non-parties where those documents are within Hershey Canada's control or power.

16.     Mr. Morin has made reference to the fact that "undertakings" are often answered in writing and "drafted" by the party's counsel. While this is a common practice, it should not be understood that the answers to undertakings are therefore likely to be unreliable. It would

be a perilous practice for a lawyer to provide undertaking answers that are inaccurate or misleading, for obvious reasons, and the accuracy and reliability of the written answers can be tested on the continued discovery of the deponent.

17.     While a party is generally entitled to examine only one representative of an opposing corporate party, the examining party has the right to select the representative to be deposed. Accordingly, Solae would have the right to select as a discovery representative of Hershey Canada the officer, director or employee that Solae believes will have the most direct knowledge of the most important matters in issue. Furthermore, the chosen representative has an obligation to inform himself or herself of relevant matters not within his or her direct knowledge, so that the opposing party may obtain the discovery to which it is entitled. Where the deponent has failed to do this, the Court may order the examination of another corporate representative. I agree with Mr. Morin that the Ontario Court does not often grant leave to examine a second deponent, but the availability of this remedy in appropriate cases does encourage parties to properly prepare deponents for discovery and does encourage deponents to inform themselves by seeking relevant information from others.

18.     Mr. Morin has correctly pointed out that Ontario law does not permit the pre-trial examination of expert witnesses retained by the parties. Rule 31.10(1) excludes obtaining discovery from an expert engaged by a party. As Mr. Morin acknowledges, however, Ontario rule 31.06(3) does allow a party to obtain any testifying expert's findings, opinions and conclusions from the party that has retained the expert on the discovery of that party.

19.     The Ontario rules also provide another means of obtaining discovery of expert opinions and evidence. Ontario rule 53.03 requires that a party deliver to the opposing party a written report of any expert witness that the first party intends to call at trial. The expert report must be delivered 90 days before trial (or 60 days before trial in the case of a responding report). The report must set out the name, address and qualifications of the expert and the "substance of his or her proposed testimony".

20.     As a general rule, an expert may not testify on any issue at trial unless the substance of his or her testimony on that issue is set out in a report delivered within the specified time limit. At trial, the expert's report is considered a prior statement and may be used by the

opposing party for cross-examination and impeachment of the expert. Experienced Ontario trial counsel generally find the required exchange of expert reports satisfactory to permit proper trial preparation and to permit effective challenge and cross-examination of experts at trial.

21.     While the Ontario rules place restrictions on the pre-trial discovery of non-parties, that does not mean that the Ontario Court has no power to compel testimony or documents from non-party witnesses for trial purposes. The Ontario Superior Court has the full power (by virtue of Ontario rule 53.04) to subpoena persons and documents anywhere in Ontario. Generally speaking, this subpoena power is at the disposal of all parties to civil suits in Ontario for the purpose of compelling the attendance and evidence of party and non-party witnesses at trial and the production of documents from parties and non-parties at trial. This subpoena power is also available (by virtue of Ontario rule 39.03) for obtaining evidence and documents from parties and non-parties in Ontario for use on motions in an Ontario action.

**Civil Jury Trials in Ontario**

22.     Mr. Morin has correctly stated that in Ontario the right to a jury in civil cases is not absolute. However, the leading Canadian authority on the right to a civil jury trial states the law as follows: "The right to trial by jury is a substantive right of great importance of which a party ought not to be deprived except for cogent reasons".[3]

23.     Questions of negligence and breach of contract may be, and have been, determined by an Ontario jury in a commercial dispute. Attached hereto as Exhibit 4 is a true copy of the recent decision of the Ontario Court of Appeal in *Calvin Forest v. Tembec*.[4] In that case, the trial judge had granted the defendant's motion for a non-suit following the return of the jury's verdict in favour of the plaintiff.[5] On appeal, the Ontario Court of Appeal reversed the trial judge's non-suit ruling and granted judgment in accordance with the jury's verdict. As is

---

[3] *King v. Colonial Homes Ltd.*, [1956] S.C.R. 528 at page 537.

[4] *Calvin Forest Products Ltd. v. Tembec Inc.* (2006), 208 O.A.C 336.

[5] The motion for a non-suit had been brought at the close of the plaintiff's case but the ruling was reserved by the trial judge until after the jury's verdict.

apparent from the appeal judgment and the verdict form attached to it, the jury determined a number of issues in that commercial dispute involving allegations of negligent misrepresentation and breach of contract.[6]  Nothing in the Court of Appeal's judgment questions the propriety of the case being tried by a jury.

24.     It is apparent from the Ontario Statement of Claim that the Ontario Action against Solae is made in negligence and breach of contract.  Negligence cases are commonly determined by juries in Ontario.  For example, it would appear from the pleading filed by Solae in Delaware that a key factual question in the Ontario Action will be whether Solae's product was the source of the Salmonella contamination at Hershey Canada's plant.  On its face, there is nothing to suggest that this question is too complex to be determined by an Ontario jury.

25.     As for the breach of contract allegations, it would appear that a key question will be whether the parties intended that the "reverse terms" on Solae's invoice would form part of the contract made between Solae and Hershey Canada for the purchase and sale of the subject soy lecithin. The common intention of the parties to an agreement is a question of fact. On its face, there is nothing to suggest that this is an inappropriate or unduly complex question for an Ontario jury.

26.     Of course, it remains possible that the Ontario Court would strike a jury in this case on the basis of complexity.  In general, however, if one party requests a trial by jury and the other party moves to strike the jury, the Ontario Court will take a "wait and see" approach.  The Ontario Court of Appeal has stated that a jury should not be struck on the ground that the issues are too complex until complex evidence is actually adduced at trial, and that to do otherwise is to anticipate complexity that may never arise.[7]  The Court of Appeal has also said that if it is possible but not certain that complex legal issues will arise during trial, the question of whether to strike the jury notice should be determined only after the complexity

---

[6] Questions related to breach of contract were also determined by the jury at trial but were not relevant to the appeal judgment because the defendant's motion for a non-suit failed in respect of the contract claims.

[7] *Otonabee Motors Ltd. v. B.A. Oil Co.*, [1968] 1 O.R. 573 (C.A.); *Such v. Dominion Stores*, [1961] O.R. 190 (C.A.).

issue has actually arisen.[8] Accordingly, at this stage of the Ontario Action it would be premature to conclude that an Ontario Court judge would strike a jury in this particular case. Nothing in the pleadings in Ontario or Delaware suggest that a jury would necessarily be struck by the Ontario Court.

### Jurisdiction of the Ontario Court

27.    Mr. Moyer has also asked me to briefly state my opinion as to the whether the Ontario Court is a court of competent jurisdiction in relation to the kind of claims asserted in the Ontario Statement of Claim and the Delaware Complaint.

28.    Generally speaking, the question of whether an Ontario Court has jurisdiction over any claim is determined by whether the claim has a "real and substantial connection" to Ontario. In cases like that brought by Hershey Canada, a "real and substantial connection" is easily established by virtue of the delivery of contaminated or defective products into Ontario. With respect to jurisdictional competence in product liability claims against foreign defendants, our Supreme Court has stated:: *"[W]here a foreign defendant carelessly manufactures a product in a foreign jurisdiction which enters into the normal channels of trade and he knows or ought to know both that as a result of his carelessness a consumer may well be injured and it is reasonably foreseeable that the product would be used or consumed where the plaintiff used or consumed it, then the forum in which the plaintiff suffered damage is entitled to exercise judicial jurisdiction over that foreign defendant."*[9] Accordingly, the Ontario Court is a court of competent jurisdiction in respect of the kind of claim brought by Hershey Canada.

29.    There is also a "real and substantial connection" between Ontario and the claims made by Solae in the Delaware Complaint. Among other things, this connection is established by Hershey Canada's presence and operations in Ontario, the fact that the goods were delivered (or were to be delivered) to Ontario, as well as the relationship to Hershey Canada's own claim. Claims of this nature may be pursued in Ontario by way of a Counterclaim delivered in

---

[8] *Martin v. St. Lawrence Cement Co.*, [1968] 1 O.R. 94 (C.A.); *Ryan v. Whitton*, [1964] 1 O.R. 111 (C.A.).

[9] This was established in respect of Canadian extra-provincial defendants in *Moran v. Pyle*, [1975] 1 S.C.R. 393, at page 409. The Supreme Court later approved the application of this reasoning to extra-national defendants in *Beals v. Saldanha*, [2003] 3 S.C.R. 416 at pages 435-436.

response to Hershey Canada's Statement of Claim.[10]    The Ontario procedure for Counterclaims is set out in Ontario Rule 27, a true copy of which is attached hereto as Exhibit 5. Claims for declaratory relief and damages for breach of contract like those asserted by Solae are also within the jurisdiction of the Ontario Court. Having taken jurisdiction, an Ontario Court would have the power to grant Solae the requested relief if Solae were to establish its entitlement to that relief under the proper law of the contract, as determined and applied by the Ontario Court. Accordingly, the Ontario Court is a court of competent jurisdiction with respect to the kind of claim asserted by Solae in Delaware.

30.    The Ontario Court has the power to grant declaratory relief including a declaration of rights under a contract. It also has the power to award damages for breach of contract, together with pre-judgment and post-judgment interest.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 7th, 2007

**JOHN WILSON MORDEN**

---

[10] Such claims could also be pursued by way of a separate proceeding before the Ontario Court, and the Ontario Court would still have jurisdiction over the claims, but it would clearly be more economical and practical for a party in Solae's position to pursue such claims by way of a Counterclaim in the Ontario Action.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2007, I electronically filed the foregoing with the Clerk of

Court using CM/ECF which will send notification of such filing(s) to the following and which

has also been served as noted:

### HAND DELIVERY

P. Clarkson Collins, Jr.
Katherine J. Neikirk
Morris James, LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19899

I further certify that on June 8, 2007, the foregoing document was sent to the following

non-registered participants in the manner indicated:

### FEDERAL EXPRESS

Scott L. Winkelman
Monica M. Welt
Crowell & Moring LLP
1001 Pennsylvania Ave. N.W.
Washington, D.C. 20004-2595

Jeffrey L. Moyer (#3309)

# EXHIBIT 1

**The Honourable John W. Morden**

JOHN WILSON MORDEN – CURRICULUM VITAE

Born - Toronto, Ontario, July 26, 1934

Married Joyce Gillies Campbell, 1958; two daughters, Mary (born 1963) and Martha (born 1967); three grandchildren, Caroline (1998), Johanna (2000), and Jeremy (2001)

University of Toronto - B.A. 1956

Faculty of Law, University of Toronto - LL.B. 1959

Law Society of Upper Canada – LL.D. 2001

The University of Trinity College, Toronto – D.S.L. (Doctor of Sacred Letters (*honoris causa*) 2006

Called to the Bar of Ontario in 1961

Practised law with Day, Wilson, Campbell, Toronto, 1961-73

Special Lecturer, Faculty of Law, University of Toronto, 1965

Bencher, Law Society of Upper Canada, 1971-73

Counsel, Royal Commission - Inquiry into Civil Rights, 1964-71

Assistant Counsel, House of Commons Special Committee on Statutory Instruments, 1969

Editor, Land Compensation Reports, 1971-73

Judge, High Court of Justice, Supreme Court of Ontario, 1973-78

Judge, Court of Appeal for Ontario, 1978-2003

Associate Chief Justice of Ontario, 1990-99

2

Counsel, Heenan Blaikie LLP, 2004-

Member, Editorial Board, Ontario Reports, 2003-5

Member, Rules Committee under the Courts of Justice Act (Ont.) 1974-99

Chairman, Special Sub-Committee of the Rules Committee which prepared the Rules of Civil Procedure for Ontario, 1980-84

Member, Adjunct Faculty, Faculty of Law, University of Toronto, 1999-2004

Chairman, Civil Rules Committee (Ont.) 1990-99

Consultant, Ontario Law Reform Commission, 1971-72

Consultant, Law Reform Commission of Canada, 1972-73

Member of Statutory Powers Procedure Rules Committee (Ontario), 1975-83

Member of Advisory Panel to the Consultative Group on Research and Education in Law appointed by the Social Sciences and Humanities Research Council, 1980-82

Trustee of Rosedale Presbyterian Church, 1961-88

Elder of Rosedale Presbyterian Church since 1980

Member of the Board of Management of Knox College (University of Toronto), 1980-86

Member of Board of Trustees, Toronto School of Theology, 1986-1992

Director, University Club of Toronto, 2003-2006

Honorary Director, Gilda's Club Greater Toronto, 2004 –

Ontario Bar Association, Award for Distinguished Service, 2001

3

# PUBLICATIONS

Criminal Law: Murder; Provocation; Test of effect of provocation on mind of reasonable man. Reasonable man not to be invested with the physical peculiarities of the accused. Comments on Bedder v. D.P.P., [1954] 2 All E.R. 801. 16 Fac. Law Rev. 133 (with S.G. Fisher) (1958)

Natural law and the Courts 17 Fac. Law Rev. 54 (1959)

Racial Discrimination: A Legal Problem, Obiter Dicta, new Series 30 (with Harry Arthurs) (1960)

Evidence: Proof of own witnesses' prior inconsistent statements where "adverse"; Section 24, Evidence Acts (Ontario) Comment on Wawanesa Mutual Insurance Company v. Hanes (1961), 28 D.L.R. (2d) 386. 40 Can. Bar. Rev. 96 (1962)

Succession of surviving husband to all personalty of intestate wife – Jus Maritii; Devolution of Estates Act (Ont.), c. 29(2). 44 Can. Bar Rev. 346 (1966)

Recent Developments in Administrative Law. Law Society of Upper Canada Special Lectures (1967) 275

Expropriation – Compensation – Business disturbance damages where existing use not highest in best use – Double recovery. 47 Can. Bar Rev. 278 (1969)

An Introduction to the Expropriations Act (1968-69 (Ontario). (Canada Law Book Limited, 1969)

Determining Compensation in a Rising Market. 12 Can. Bar Journal 360 (1969)

The Compensation Provisions in Bill C-200. The Expropriation Act (Canada). 18 Chitty's Law Journal 77 (1970)

The New Expropriation Legislation – Powers and Procedures. Law Society of Upper Canada Special Lectures (1970) 225

4

A Succeeding Solicitor's Duty to Protect the Accounts of the Former Solicitor. 5 Law Society Gazette 257 (1971)

Recent Developments in Expropriation Law. 20 Chitty's Law Journal 261 (1972)

The Partnership Bench and Bar. 16 Law Society Gazette 46 (1982)

Law and Religion. 17 Law Society Gazette 249 (1983) and, sub nom. An Essay on the Connections between Law and Religion, 2 Journal of Law and Religion 7 (1984)

Report of the Special Sub-committee on the new Rules of Civil Procedure (1984)

Descriptive Commentary on the Innovations in the New Rules (excerpts from the Report, above) in Rules of Civil Procedure, March, 1984, published by the Ministry of the Attorney General

An Overview of the Rules of Civil Procedure (of Ontario). 18 Law Society Gazette 131 (1984); 5 Advocates' Quarterly 257 (1984); L.S.U.C. – C.B.A.O. – Materials on the New Rules of Civil Procedure – C.L.E. Program (November, 1984)

Foreword to Holmested & Watson's Ontario Civil Procedure (1984)

Foreword to Sheriffs' and Registrars' Procedural Manual – Rules of Civil Procedure (1984)

Appellate Judging – Some Canadian Features. 19 Law Society Gazette 46 (1985)

Some Notes on the Making of the new Rules. 4 Advocates' Society Journal 3: 7-9 (1985)

Book Review: Mailhot and Carnwath, Decisions, Decisions ... A Handbook for Judicial Writing, 11 National Judicial Institute Bulletin 3 (1998)

Legal Scholars, 18 Advocates' Society Journal 10 (1999)

A Tribute to The Honourable Peter Cory, 19 Advocates' Society Journal 4 (2000)

5

The Courts of Appeal: A Genealogy (with The Hon. J.D. Arnup Q.C.) 20 Advocates' Society Journal 13 (2001)

"Not here, never again" (with Sandra R. Demson), Toronto Star, December 28, 2003

Reminiscences of the Bench and Bar, 23 Advocates' Society Journal 3 (2004)

The "good" judge, 23 Advocates Society Journal 13 (2005)

Obituary relating to The Honourable Justice Ivan John Anthony Fernandes in "Lives Lived", The Globe and Mail, November 15, 2005, p. A 28

Obituary relating to John Warner Hoag, "Joie de vivre and bon vivant", Presbyterian Record, December , 2005, p. 36

December, 2006

# EXHIBIT 2

## DISCOVERY OF NON-PARTIES WITH LEAVE

*General*

**31.10 (1)** The court may grant leave, on such terms respecting costs and other matters as are just, to examine for discovery any person who there is reason to believe has information relevant to a material issue in the action, other than an expert engaged by or on behalf of a party in preparation for contemplated or pending litigation.

*Test for Granting Leave*

(2) An order under subrule (1) shall not be made unless the court is satisfied that,

(a) the moving party has been unable to obtain the information from other persons whom the moving party is entitled to examine for discovery, or from the person the party seeks to examine;

(b) it would be unfair to require the moving party to proceed to trial without having the opportunity of examining the person; and

(c) the examination will not,

(i) unduly delay the commencement of the trial of the action,

(ii) entail unreasonable expense for other parties, or

**R. 31.10**          RULES OF CIVIL PROCEDURE

(iii) result in unfairness to the person the moving party seeks to examine.

*Costs Consequences for Examining Party*

(3) A party who examines a person orally under this rule shall serve every party who attended or was represented on the examination with the transcript free of charge, unless the court orders otherwise.

(4) The examining party is not entitled to recover the costs of the examination from another party unless the court expressly orders otherwise.

*Limitation on Use at Trial*

(5) The evidence of a person examined under this rule may not be read into evidence at trial under subrule 31.11(1).

*Case Law*

*Discovery of Non-Parties - Generally*

*Cowles v. Balac* (2004), 9 C.P.C. (6th) 326, 2004 CarswellOnt 4841 (S.C.J.)

The court refused to require the plaintiff's treating physician to be interviewed about the content of his consultation report.

*Buzzi v. Berger* (1998), 20 C.P.C. (4th) 360 (Ont. Gen. Div.)

The failure of counsel on discovery to volunteer information derived from a non-party was held to be constructive refusal thereby satisfying rule 31.10(2)(a).

*Famous Players Development Corp. v. Central Capital Corp.* (1991), 6 O.R. (3d) 765, 3 C.P.C. (3d) 286, 53 O.A.C. 185 (Div. Ct.)

In order to satisfy the test under rule 31.10(2)(a), there must be a refusal, actual or constructive, by the opposing party to obtain the information from the non-party.

*Lloyds Bank Canada v. Canada Life Assurance Co.* (1991), 47 C.P.C. (2d) 157 (Ont. Gen. Div.)

Where the non-party declined to meet with the solicitors for the moving parties, but did provide information through the solicitors for the responding party, the court refused to order a discovery. The test in rule 31.10(2)(a) had not been met.

*Duguay v. Devoe* (1988), 63 O.R. (2d) 499 (H.C.)

A physician who has *treated* the plaintiff may be ordered to be examined under rule 31.10. *Snively v. Schacher, infra*, disapproved.

*Rothwell v. Raes* (1986), 13 O.A.C. 60 (Div. Ct.)

The requirements of rule 31.10(2) are cumulative and all of them must be satisfied: the rule-makers established a number of preconditions so that the remedy could not easily be subjected to abuse: the onus is on the applicant to show that the requirements of the rule have been satisfied; to satisfy the second requirement it may be necessary to ask the person to be examined to supplement her initial response.

*D'Amore Construction (Windsor) Ltd. v. Ontario (No. 2)* (1986), 12 C.P.C. (2d) 178 (Ont. H.C.)

If a plaintiff has undertaken to make inquiries of a non-party, it must be given an opportunity to complete those inquiries before the defendant will be permitted to bring a motion to examine the non-party.

*Snively v. Schacher* (1986), 10 C.P.C. (2d) 38 (Ont. H.C.)

Discovery of a non-party was refused where the person to be examined was an expert retained by the plaintiff.

EXAMINATION FOR DISCOVERY          **R. 31.10**

*Dalewood Investments Ltd. v. Canada Trust Co.* (1986), 9 C.P.C. (2d) 129 (Ont. H.C.); leave to appeal to Ont. Div. Ct. refused 9 C.P.C. (2d) 129 at 131

The court ordered discovery of a non-party who was a former employer of one of the parties notwithstanding that party's willingness to make inquiries to the non-party.

*Carleton Condo. Corp. No. 25 v. Shenkman Corp.* (1986), 9 C.P.C. (2d) 233 (Ont. Master)

To obtain an order to examine a non-party for discovery the moving party must show that it is unable to obtain the information possessed by the non-party *both* from the non-party *and* from persons it is entitled to examine.

### Discovery of Non-Parties - Examples

*Leadbeater v. Ontario* (2004), 70 O.R. (3d) 224, [2004] O.J. No. 1228, 2004 Carswell-Ont 1158 (S.C.J.); additional reasons at (June 21, 2004), Doc. 99-CV-173665CM, 2004 CarswellOnt 2536 (S.C.J.)

In this malicious prosecution action, the court granted the Crown leave to examine a non-party who had material evidence about the plaintiff's knowledge at the time of his prosecution.

*George v. Harris* (2003), 32 C.P.C. (5th) 134, 2003 CarswellOnt 80, 102 C.R.R. (2d) 316, [2003] O.J. No. 26 (S.C.J.); additional reasons at (April 29, 2003), Doc. 96-CU-99569, 2003 CarswellOnt 1710 (S.C.J.)

The Court dismissed the plaintiff's motion to declare unconstitutional all restrictions on public servants' ability to communicate with plaintiff's counsel. The plaintiff's remedy lay in the proper application of the rules, including rule 31.10.

*Huang v. Abitibi-Price Inc.* (1999), 35 C.P.C. (4th) 364, 1999 CarswellOnt 1558 (Master)

Where the information sought by the plaintiff was relevant and the plaintiff was unable to obtain the information from other sources, the court granted leave to examine a non-party for discovery.

*Hanson v. Finkelstein* (2000), 46 C.P.C. (4th) 147, 2000 CarswellOnt 638 (S.C.J.)

The court dismissed a motion to examine a non-party where the moving party had not tried to obtain the subject information from a party as required by rule 31.10(2)(a).

*Cameron v. Louden* (1998), 21 C.P.C. (4th) 244 (Ont. Master)

Where the plaintiff refused to produce her doctor's report at discovery and refused to contact her doctor, the court granted leave to examine the doctor.

*Transcon Recycling Inc. v. London Assurance* (1997), 14 C.P.C. (4th) 361 (Ont. Gen. Div.)

The court permitted the plaintiffs' solicitors' former law clerk to be examined regarding answers she prepared to the plaintiffs' undertakings, which were subsequently repudiated by the plaintiffs.

*Ontario (Attorney General) v. Ballard Estate* (1994), 33 C.P.C. (3d) 373, 20 O.R. (3d) 350 (Gen. Div. [Commercial List])

The court permitted the examination for discovery of a witness who appeared to have important evidence.

*Famous Players Development Corp. v. Central Capital Corp.* (1990), 1 O.R. (3d) 672, 46 C.P.C. (2d) 90 (Gen. Div.); affirmed (1991), 6 O.R. (3d) 765, 3 C.P.C. (3d) 286, 53 O.A.C. 185 (Gen. Div.)

The court refused to order discovery of a non-party who had co-operated by giving written answers to questions asked of the defendants. The level of difficulty, delay or expense so created amounted to inability to obtain relevant information from the non-party.

**R. 31.10**  RULES OF CIVIL PROCEDURE

*Microtel Ltd. v. Endless Electronics Distributors Inc.* (1988), 32 C.P.C. (2d) 85 (Ont. H.C.)

The court refused to permit discovery of a non-party where the plaintiff admitted to not having first attempted to obtain the information from the non-party voluntarily.

*College of Physicians & Surgeons of Ont. v. Morris* (1988), 28 O.A.C. 59 (Div. Ct.)

The court ordered the examination for discovery of a non-party witness at the request of the defendant where the plaintiff who planned to call the witness at trial did not know a very material fact and refused to undertake to ask the witness.

*Fraser v. E.S. Gallagher Sales Ltd.* (1987), 22 C.P.C. (2d) 238 (Ont. Master)

The plaintiff was not entitled to examine a former employee of the defendant where the plaintiff could have obtained the information on the original discovery of the defendant.

*Nelson v. MacDonald* (1987), 19 C.P.C. (2d) 115 (Ont. Dist. Ct.)

The court ordered discovery of an insurance adjuster where the only issue at trial would be the effect of releases obtained by the adjuster from the plaintiffs, the adjuster would testify at trial, and the information was not obtained from the discovery of the defendants.

*Weiszman v. 491 Lawrence Avenue West Ltd.* (1985), 5 C.P.C. (2d) 160 (Ont. H.C.)

Where witnesses gave statements to one party but refused to provide information not included in the statements to another party, the court granted leave to examine the witnesses for discovery.

*Meneses v. Geary* (1985), 49 C.P.C. 185 (Ont. Master)

The court ordered a representative of the defendant's insurer to be examined for discovery where it was alleged that the representative had made an admission of liability. In the absence of the defendant attempting to countermand or withdraw the admission, it would be unfair to require the plaintiff to proceed to trial without the admission.

# EXHIBIT 3

## PRODUCTION FROM NON-PARTIES WITH LEAVE

*Order for Inspection*

30.10 (1) The court may, on motion by a party, order production for inspection of a document that is in the possession, control or power of a person not a party and is not privileged where the court is satisfied that,

(a) the document is relevant to a material issue in the action; and

(b) it would be unfair to require the moving party to proceed to trial without having discovery of the document.

*Notice of Motion*

(2) A motion for an order under subrule (1) shall be made on notice,

(a) to every other party; and

(b) to the person not a party, served personally or by an alternative to personal service under rule 16.03.

*Court may Inspect Document*

(3) Where privilege is claimed for a document referred to in subrule (1), or where the court is uncertain of the relevance of or necessity for discovery of the document, the court may inspect the document to determine the issue.

*Preparation of Certified Copy*

(4) The court may give directions respecting the preparation of a certified copy of a document referred to in subrule (1) and the certified copy may be used for all purposes in place of the original.

*Cost of Producing Document*

(5) The moving party is responsible for the reasonable cost incurred or to be incurred by the person not a party to produce a document referred to in subrule (1), unless the court orders otherwise.

O. Reg. 260/05, s. 5

*Case Law*

*Production from Non-Parties - Generally*

*Temelini v. Ontario Provincial Police Commissioner* (1999), 44 O.R. (3d) 609, 120 O.A.C. 380, 174 D.L.R. (4th) 418, 38 C.P.C. (4th) 40, 1999 CarswellOnt 1564 (C.A.)

The federal Crown is not immune from production of documents under this rule due to the effect of s. 27 of the *Crown Liability and Proceedings Act*.

714

DISCOVERY OF DOCUMENTS **R. 30.10**

*Lowe v. Motolanez* (1996), 30 O.R. (3d) 408, 3 C.P.C. (4th) 169 (C.A.)

When considering a motion for third party production, the interests to be balanced are the moving party's need to prove his or her case at trial with the non-party's exposure to inconvenience, expense, or liability. In ordering the release of a party's employment records the court refused to impose terms requiring that the plaintiff use the notice to admit procedure under Rule 51 and to not use the information in any way that might be adverse to the employer's interests. The moving party does not need to sign a release to obtain production because the non-party is protected by Rule 30.1.

*Ontario (Attorney General) v. Ballard Estate* (1995), 26 O.R. (3d) 39, 129 D.L.R. (4th) 52, 86 O.A.C. 43 (C.A.)

To obtain documents from a non-party, it is not necessary to show the documents sought are vital or crucial for trial preparation. The court should consider various factors including the importance of the documents; whether pre-trial production is necessary to avoid unfairness; whether discovery from the parties is adequate and, if not, whether responsibility for the inadequacy rests with a party; whether the non-party resists production; the availability of the documents or information from other sources; and the relationship between the non-party and the parties.

*550551 Ontario Ltd. v. Framingham* (1991), 2 O.R. (3d) 284, 46 O.A.C. 156 (Gen. Div.)

Rule 30.10 does not apply to applications.

*Peters v. Gen. Motors of Can. Ltd.* (1986), 14 C.P.C. (2d) 147 (Ont. Dist. Ct.)

A motion for production from an affiliated company should proceed under rule 30.02(4) rather than rule 30.10.

*Re Royal Bank of Can. and Ont. Securities Comm.* (1976), 14 O.R. (2d) 783, 2 C.P.C. 132 (H.C.)

The non-party may appear and make objections to the production of documents.

*Jameson v. Margetson* (1975), 11 O.R. (2d) 175 (Co. Ct.)

An order was refused where production of the documents by the non-party would involve considerable time and expense.

*Herrington v. Voss*, [1968] 1 O.R. 250 (Master)

It is not necessary to specify the particular documents believed to be in the possession of the non-party.

*Halpin v. Gillam*, [1967] 2 O.R. 269 (Master)

The material in support of the motion should attempt to identify the particular types of document sought. Only documents containing important relevant material need be produced.

*Weber v. Czerevko*, [1962] O.W.N. 245 (H.C.)

The court refused to permit a "fishing expedition."

### *Production from Non-Parties - Banking Records*

*Colville-Reeves v. Gray* (2003), 33 C.P.C. (5th) 375, 2003 CarswellOnt 1858 (Master)

The court ordered production of banking records regarding a mortgage which was the subject of this action.

*Union of Canada Life Insurance v. Levesque Securities Inc.* (1999), 42 O.R. (3d) 633, 1999 CarswellOnt 114 (Gen. Div.)

The court refused to order that the defendant bank produce the bank records of a non-party which were subject to a common law privilege and were not relevant.

## R. 30.10    RULES OF CIVIL PROCEDURE

*Morse Shoe (Canada) Ltd. v. Zellers Inc.* (1997), 10 C.P.C. (4th) 390, 100 O.A.C. 116 (Ont. C.A.)

The court ordered production from the plaintiff's bank where the plaintiff had gone out of business, its American parent had been through Chapter 11 proceedings, its knowledgeable personnel had been dispersed, and there were significant gaps in the plaintiff's discovery which it appeared likely the bank could fill.

*I.T.L. Indust. Ltd. v. Winterbottom* (1980), 27 O.R. (2d) 496, 15 C.P.C. 255, 106 D.L.R. (3d) 577 (C.A.)

Production of bank documents not within the scope of s. 34 of the *Evidence Act* may, in a proper case, be ordered in an action in which the bank is not a party.

*Astral Films Ltd. v. Sherman* (1978), 19 O.R. (2d) 206, 5 C.P.C. 317, 3 B.L.R. 150; leave to appeal refused 19 O.R. (2d) 208n, 5 C.P.C. 317n (H.C.)

The plaintiff was permitted to inspect banking records where such records were of considerable significance and relevance to its claim. Discussion of guidelines for such applications.

### Production from Non-Parties - Employment Records

*Pryslak v. Anderson* (1987), 57 O.R. (2d) 788, 15 C.P.C. (2d) 79 (H.C.)

The court ordered production of documents regarding the plaintiff's applications for employment to several police forces.

*Wright v. Clark* (1984), 48 O.R. (2d) 528, 46 C.P.C. 105 (Master)

The court refused to order production of any part of the plaintiff's employment record file where the plaintiff had undertaken to produce documents regarding the rates of pay, amounts paid and attendance record of the plaintiff.

*Kap v. Sands; Keanie v. Sands* (1980), 30 O.R. (2d) 125, (sub nom. *Zoltac v. Ross*) 22 C.P.C. 32 at 36; affirmed 22 C.P.C. 32 at 61 (H.C.)

The court refused to order production of employment records regarding deceased persons for whose deaths the actions were brought where it was not shown that the documents were relevant and it would be oppressive to order such production.

*Woods v. Harris* (1979), 25 O.R. (2d) 14, 12 C.P.C. 119 (H.C.)

The court refused to order the employer of a plaintiff making a loss of earnings claim in a motor vehicle case to produce all employment records of the plaintiff. The court must strike a balance between disclosure of relevant documents and preventing harassment of non-parties.

### Production from Non-Parties - Hospital Records and Medical Reports

*Ahmed v. Stefaniu* (2004), 72 O.R. (3d) 590, 2004 CarswellOnt 3802 (S.C.J.)

The court refused to order production of medical records that were created three to eight years after the events giving rise to the litigation where the defendants failed to show the records were relevant.

*F. (K.) v. White* (2001), 53 O.R. (3d) 391, 2001 CarswellOnt 634, [2001] O.J. No. 847, 3 C.P.C. (5th) 189, 142 O.A.C. 116, 198 D.L.R. (4th) 541 (C.A.)

The court held that there is no blanket privilege attached to medical records. However, where a defendant failed to show that medical records were relevant and that it would be unfair to require him to proceed to trial without having discovery of documents, production of third party medical records was denied.

*Wells (Litigation Guardian of) v. Paramsothy* (1996), 32 O.R. (3d) 452 (Div. Ct.)

No privilege attaches to doctor-patient information and all relevant medical information must be disclosed. Where the parties cannot agree on disclosure of medical information in the hands of a non-party, the court will supervise disclosure under rules 30.10, 31.10 and 33.

DISCOVERY OF DOCUMENTS    **R. 30.10**

*P. (L.M.) v. F. (D.)* (1994), 34 C.P.C. (3d) 172, 22 C.C.L.T. (2d) 312 (Ont. Gen. Div.)

The court ordered the plaintiff's physician in this sexual abuse case to produce his clinical notes and records. The need to properly assess the plaintiff's damages outweighed the need to preserve confidentiality.

*Mather v. Turnbull* (1991), 47 C.P.C. (2d) 180 (Ont. Gen. Div.)

The court ordered production of a physician's clinical notes and psychologist's raw test data.

*G. (D.M.) v. G. (S.D.)* (1990), 72 O.R. (2d) 774, 44 C.P.C. (2d) 52 (Master)

Where production of psychiatric records would have had an adverse effect on a party, the court exercised its discretion to refuse production, notwithstanding the relevance of the documents.

*Noonan v. Commercial Union Assurance Co. of Can.* (1989), 42 C.P.C. (2d) 1 (Ont. H.C.)

As a general rule, in a personal injury case it is unfair to require the defendant to go to trial without clinical notes. Accordingly, physicians' clinical notes and records relating to post-accident treatment were to be produced. Documents relating to the plaintiff's unsuccessful application for a disability pension from the Canada Pension Plan and documents relating to insurance benefits paid to the plaintiff by another insurance company were also ordered produced. Medical records relating to pre-accident treatment were not ordered produced.

*Noonan v. Commercial Union Assurance Co. of Can.* (1989), 36 C.P.C. (2d) 232 (Ont. Dist. Ct.)

A psychologist was ordered to produce clinical notes and records despite objections that these documents might be misinterpreted by anyone but a psychologist. The psychologist could address that problem at trial if this occurred.

*Karkanas v. Thomas* (1986), 19 C.P.C. (2d) 303 (Ont. Dist. Ct.)

The court refused to order production of clinical notes of the plaintiff's family doctor for the period predating the accident where there was no *prima facie* case of an issue regarding her pre-existing condition.

*Couto v. T.T.C.* (1987), 59 O.R. (2d) 406, 16 C.P.C. (2d) 241 (H.C.)

In personal injury cases in which the nature and extent of the plaintiff's injuries are in issue, it is usually unfair to require the defendant to go to trial without production of the treating physician's clinical notes. A responding party opposing production of such records under rule 30.10 has the burden of establishing that production of the documents is unnecessary. *Tilly v. Crangle*, *infra*, is no longer the law.

*Tamssot v. Belgrano* (1987), 59 O.R. (2d) 57, 16 C.P.C. (2d) 189 (Master)

The court ordered production of OHIP records, but only for a time period having relevance to the issues in the action.

*Trovato v. Smith* (1987), 15 C.P.C. (2d) 121 (Ont. Dist. Ct.)

The court ordered the plaintiff to seek his physician's clinical records and notes although they were not within the plaintiff's "power" within the meaning of rule 30.03(1). There is no merit, logic or support in the Rules for requiring the defendant to establish a conflict in the medical reports or discovery evidence before making such an order. If a doctor does not voluntarily produce the documents, the defence will be met with its more limited rights under rule 30.10.

*Jonathan v. Gore Mutual Ins. Co.* (1985), 6 C.P.C. (2d) 300 (Ont. Dist. Ct.)

A hospital may insist that a patient sign the hospital's own form of authorization for release of records rather than a form prepared by the patient's solicitor.

**R. 30.10**    RULES OF CIVIL PROCEDURE

*Cook v. Ip* (1985), 52 O.R. (2d) 289, 5 C.P.C. (2d) 81, 22 D.L.R. (4th) 1, (sub nom. *Cook v. Washuta*) 11 O.A.C. 171 (C.A.); leave to appeal to S.C.C. refused (1986), 68 N.R. 400n, (sub nom. *sub nom. OHIP v. Cook*) 18 O.A.C. 80n

Where the plaintiff's medical condition was in issue, the court ordered production of O.H.I.P. cards relating to the plaintiff's treatment (overruling *Zdravkovic v. Paszano* (1984), 45 O.R. (2d) 550, 7 D.L.R. (4th) 328, 2 O.A.C. 293 (Div. Ct.)).

*Horvath v. Home Ins. Co.* (1985), 50 C.P.C. 105 (Ont. Dist. Ct.)

The court refused to order the Workers' Compensation Board to produce documents pertaining to the plaintiff relating to an industrial occurrence where the board filed a certificate pursuant to s. 30 of the *Evidence Act* objecting on the ground of privilege and that it would not be in the best interest of the public for production to be compelled.

*Re Krasovskis* (1985), 48 C.P.C. 159, 7 O.A.C. 316 (Div. Ct.)

Where a party obtains hospital records on the condition he will not disseminate the records further, he should request permission from the hospital to produce the records to the opposing party and advise the opposing party of the hospital's response. If the hospital refuses permission, the opposing party may move for an order that the hospital produce the records directly.

*Soer v. Zorko; Zorko v. Soer* (1983), 36 C.P.C. 126 (Ont. H.C.)

Clinical records will not be ordered produced by reason only of a difference of medical opinion, as opposed to a disputed question of fact.

*Millward v. Reid* (1981), 22 C.P.C. 101 (Ont. Div. Ct.)

Where there was reference in the medical reports to a pre-existing condition concerning the injury suffered, it was ordered that all documents relating to that condition be produced.

*Tilly v. Crangle* (1981), 31 O.R. (2d) 641, 120 D.L.R. (3d) 563 (C.A.)

Where the evidence of the plaintiff on examination for discovery conflicted with the contents of a medical report, the court ordered production of excerpts of the physician's clinical records dealing with the particular discrepancy. A broader order for production was refused.

*Kap v. Sands; Keanie v. Sands* (1980), 30 O.R. (2d) 125, (sub nom. *Zoltac v. Ross*) 22 C.P.C. 32 at 36; affirmed 22 C.P.C. 32 at 61 (H.C.)

Discussion of the proper procedure to follow to obtain production of hospital records and bank records.

*Cruickshank v. Noble* (1980), 29 O.R. (2d) 604 (H.C.)

1.    Where a plaintiff is requested by a defendant to obtain production of hospital records and fails to request such documents from the hospital, he should bear the costs of a motion to compel production from the hospital. If the hospital arbitrarily or unreasonably refuses to comply with the plaintiff's request, it should bear the costs of the motion. The defendant should bring the motion only if the documents are not voluntarily produced.

2.    A non-party from whom production is sought must be served personally.

*Re Mitchell and St. Michael's Hosp.* (1980), 29 O.R. (2d) 185, 19 C.P.C. 113, 112 D.L.R. (3d) 360 (H.C.)

The court refused to order the release of hospital records. *Strazdins v. Orthopaedic & Arthritic Hosp. (Toronto)* (1978), 22 O.R. (2d) 47, 7 C.P.C. 243, 7 C.C.L.T. 117, 2 L. Med. Q. 309 (H.C.), *infra*, not followed.

*Dwyer v. Chu*, 29 O.R. (2d) 156, 16 C.P.C. 188, [1980] I.L.R. 1-1226 (H.C.)

The plaintiff's no-fault insurer was ordered to produce a copy of a medical report obtained with respect to a disability benefits claim.

DISCOVERY OF DOCUMENTS          **R. 30.10**

*Sugrue v. Brown* (1979), 14 C.P.C. 114 (Ont. Master)

Where a hospital refused to release records pertaining to a party's admission to hospital after written requests by his solicitor and his consent, an order was made requiring production of all the documents in the hospital's possession and costs were awarded against the hospital.

*Re Sunnybrook Hosp. and Can. Gen. Accident Assur. Co.* (1979), 13 C.P.C. 102 (Ont. H.C.)

A hospital was ordered to produce certain medical records to its insurer where the plaintiff patients had withheld their consent.

*Atkins v. Iwanicki* (1978), 22 O.R. (2d) 182 (Master)

The Workmen's Compensation Board was required to produce medical records relevant to the treatment of the plaintiff where the Board had commenced a subrogated action in the name of the plaintiff.

*Strazdins v. Orthopaedic & Arthritic Hospital (Toronto)* (1978), 22 O.R. (2d) 47, 7 C.P.C. 243, 7 C.C.L.T. 117, 2 L. Med. Q. 309 (H.C.)

Hospital records of a deceased person were ordered to be produced on an originating application by the personal representative of the deceased.

*Bowen v. Montag* (1978), 21 O.R. (2d) 801, 91 D.L.R. (3d) 719, 2 L. Med. Q. 233 (H.C.)

The court ordered production of psychiatric records where the information would promote settlement and notwithstanding that mental health was not put in issue by the pleadings.

*Vanmechelen v. Vanmechelen*, [1973] 3 O.R. 422, 13 R.F.L. 88 (H.C.)

The court ordered psychiatric hospitals to produce records for use regarding a custody issue with the proviso that they could not be used with respect to other issues.

*Coderque v. Mutual of Omaha Ins. Co.*, [1970] 1 O.R. 473, [1969] I.L.R. 1-297 (H.C.)

Production of medical reports was ordered.

*Kokan v. Dales*, [1970] 1 O.R. 456 (H.C.)

Production of hospital records may be ordered notwithstanding that such documents may not be admissible at trial.

*Petursson v. Petursson*, [1966] 2 O.R. 626 (H.C.)

The court refused to order a mental hospital to produce records of the history and condition of the plaintiff because the records were highly confidential, contained hearsay and were partly irrelevant to the issues in the action.

### *Production from Non-Parties - Insurance Files*

*Belmont (Village) v. Joe Snyders Construction Ltd.* (1989), 44 C.P.C. (2d) 292, 36 O.A.C. 235 (Div. Ct.)

The court refused to order production of an insurance policy from a non-party, where that policy was not relevant to a material issue in the action.

*Wright v. Clark* (1984), 48 O.R. (2d) 528, 46 C.P.C. 105 (Master)

The court refused to order production of the entire file of the plaintiff's no-fault insurer but did order production of documents relating to the plaintiff's disability claim.

*Anger v. Dykstra*, 45 O.R. (2d) 701, 43 C.P.C. 268, [1984] I.L.R. 1-1758 (H.C.)

In this personal injury action, only that portion of the file of the liability insurer of the plaintiff relating to no fault benefits was ordered produced.

*Zdravkovic v. Paszana* (1983), 34 C.P.C. 283 at 287 (Ont. H.C.)

The court ordered production of witness statements, adjuster's and examiner's notes, etc. from the plaintiff's insurer's files.

**R. 30.10**       RULES OF CIVIL PROCEDURE

*Production from Non-Parties - Miscellaneous*

*Nurse (Litigation Guardian of) v. Kawartha Pine Ridge District School Board* (2005), 17 C.P.C. (6th) 51, 2005 CarswellOnt 3184, [2005] O.J. No. 3107 (Master)

The Children's Aid Society was entitled to waive privilege over a minor's school record as the minor's legal guardian.

*L. (S.) v. B. (N.* (2005), 12 C.P.C. (6th) 34, 2005 CarswellOnt 1417, [2005] O.J. No. 1411, 195 C.C.C. (3d) 481, 252 D.L.R. (4th) 508, 196 O.A.C. 320 (C.A.)

The court refused to order production of young offender records under this rule where the *Youth Criminal Justice Act* provided a comprehensive scheme to control access to such records. The plaintiff should have first made a request for access to records and, if dissatisfied, brought a motion before a youth justice court judge.

*Publicover v. Ontario (Minister of Transportation)* (February 18, 2005), Doc. London 43680/04, 2005 CarswellOnt 715 (S.C.J.)

The court dismissed the plaintiff's motion for production of the Crown Brief from a related criminal proceeding, where the statement of claim had not been served and the supported evidence was inadequate. The dismissal was without prejudice to a further motion.

*P. (D.) v. Wagg* (2004), 71 O.R. (3d) 229, [2004] O.J. No. 2053, 2004 CarswellOnt 1983, 239 D.L.R. (4th) 501, 120 C.R.R. (2d) 52, 184 C.C.C. (3d) 321, 187 O.A.C. 26, 46 C.P.C. (5th) 13 (C.A.); additional reasons at (2004), [2004] O.J. No. 2745, 2004 CarswellOnt 2660, 239 D.L.R. (4th) 501 at 533 (C.A.)

Production of a Crown Brief should not be compelled until the state agencies have an opportunity to consider the public interest consequences of doing so. The defendant's statement to police should be produced with its admissibility determined by the trial judge.

*G. (N.) v. Upper Canada College* (2004), 70 O.R. (3d) 312, 2004 CarswellOnt 1966, [2004] O.J. No. 1202, 50 C.P.C. (5th) 218 (C.A. [In Chambers])

In this sexual assault case, the defendant was granted disclosure from the Crown of a videotaped statement which the plaintiff/complainant had given to the police in the related criminal case.

*Prima Tek II v. Sonneman Packaging Inc.* (2003), 68 O.R. (3d) 451, 2003 CarswellOnt 5367, 50 C.P.C. (5th) 185, 32 C.P.R. (4th) 151 (S.C.J.)

The court ordered an Ontario non-party to disclose a customer list required by the plaintiff as evidence in its Illinois action.

*1207678 Ontario Ltd. v. Canadian Surety Co.* (2004), 2004 CarswellOnt 988, 1 C.P.C. (6th) 203 (Master)

The court ordered the production of crown briefs from a related criminal proceeding.

*Dixon v. Gibbs* (2003), 2003 CarswellOnt 44, 29 C.P.C. (5th) 290 (S.C.J.)

In this custody case the court ordered production of the Crown brief from related criminal proceedings against the father but, to preserve the integrity of the criminal prosecution, deferred production until after completion of the preliminary inquiry.

*Irwin Toy Ltd. v. Joe Doe* (2000), 12 C.P.C. (5th) 103, 2000 CarswellOnt 3164 (S.C.J.)

Plaintiffs who claimed to have been defamed by a communication made by electronic mail obtained an order that an internet service provider provide disclosure of identity of its specific subscriber to whom the e-mail had been traced.

*Pastway v. Pastway* (2000), 2 C.P.C. (5th) 18, 2000 CarswellOnt 2849, [2000] O.J. No. 3062 (S.C.J.)

Where the parties had signed a marriage contract (the validity of which was in dispute) excluding the husband's shares from net family property equalization, the wife's mo-

tion for production from non-parties was dismissed except as it related to the husband's child support obligations.

*Katz v. 1211443 Ontario Inc.* (2000), 2000 CarswellOnt 4658, 4 C.P.C. (5th) 359 (Master); additional reasons at (November 24, 2000), Doc. Toronto 97-CV-126360CM, 2000 CarswellOnt 4714 (Master)

Where the defendant did not preserve relevant records of billings to OHIP, the court ordered OHIP to produce the information with the expense to be borne by the defendant.

*Care Canada v. Canadian Broadcasting Corp.* (1999), 36 C.P.C. (4th) 166, 175 D.L.R. (4th) 743, 123 O.A.C. 357, 1999 CarswellOnt 2004 (Div. Ct.)

In this libel action the court granted the defendant broadcaster's request for production of the interview notes of a non-party management consultant hired by the plaintiff.

*Kisber & Co. v. Ault* (1999), 34 C.P.C. (4th) 297, 1999 CarswellOnt 1274 (Gen. Div.)

Where documents were shown to be relevant to a fraudulent conveyance issue, the court ordered production from a non-party, subject to solicitor-and-client privilege.

*Polycellular Tires Ltd. v. Alles* (1992), 12 C.P.C. (3d) 104 (Ont. Gen. Div.)

The court ordered that non-party solicitors produce their files for examination in relation to a claim for solicitor-client privilege.

*Roberts (Litigation Guardian of) v. Davidson* (1991), 3 C.P.C. (3d) 64 (Ont. Div. Ct.)

In a personal injury case, the court ordered production of the transcripts of the examinations for discovery in a wrongful dismissal case in which the plaintiff was involved.

*Hockenhull v. Laskin* (1987), 59 O.R. (2d) 157, 16 C.P.C. (2d) 200 (H.C.)

The court ordered a television station to provide a copy of certain news film at the expense of the moving party, including a component of overhead cost.

*Peters v. Fireman's Fund Co. of Can.*, 45 O.R. (2d) 149, 4 C.C.L.I. 104, 6 D.L.R. (4th) 135, [1984] I.L.R. 1-1744 (H.C.)

Where two actions were commenced, one against the tortfeasor, and one under the underinsured motorist endorsement, and the defendant insurer sought production of the tortfeasor's insurance policy from the tortfeasor's insurer for use in the first action, the court held under the former Rules that the policy need not be produced.

*Lockwood v. Ranger* (1983), 42 O.R. (2d) 308, 35 C.P.C. 92 (H.C.)

The court ordered OHIP to produce claim cards regarding services rendered to the plaintiff.

*Glover v. Glover* (1980), 18 C.P.C. 107 (Ont. C.A.)

Bell Canada was not required to produce its records of calls to and from the residence of a third party to assist in enforcing a custody judgment.

*Dand v. Mills* (1978), 7 C.P.C. 86 (Ont. Master)

In an action by beneficiaries against trustees, the master refused to order production of accountant's documents concerning creation and administration of the trust.

*Pocock v. Pocock*, [1950] O.R. 734; affirmed [1952] O.R. 155 (C.A.)

The court may require the production of a provincial corporate tax return.

# EXHIBIT 4

336                                   Labrosse, J.A.                        208 O.A.C.

Calvin Forest Products and Christopher Whalley (appellants/respondents by way of cross-appeal) v. Tembec Inc. (respondent/appellant by way of cross-appeal) (C42613)

## Indexed As: Calvin Forest Products et al. v. Tembec Inc.

Ontario Court of Appeal
Labrosse, Blair and Rouleau, JJ.A.
March 23, 2006.

### Summary:

The plaintiffs sued the defendant for damages for negligent misrepresentation and breach of contract. At the close of the plaintiff's case, the defendant moved for a nonsuit. The parties agreed to reserve the motion until after the jury's verdict. The jury rendered its verdict in favour of the plaintiffs. The trial judge granted the defendant's motion for a nonsuit. The plaintiffs appealed. In the event that the plaintiffs' appeal was successful, the defendant cross-appealed to have the jury verdict set aside and the action for negligent misrepresentation dismissed, or, alternatively, a new trial ordered.

The Ontario Court of Appeal allowed the appeal and dismissed the cross-appeal.

### Fraud and Misrepresentation - Topic 2508

Misrepresentation - General principles - Negligent misrepresentation - The defendant, a major pulp and paper company, was granted licences to harvest trees on Crown lands - The defendant entered into annual harvesting contracts with the plaintiffs, a tree harvester - The defendant assisted the plaintiffs in researching the necessary equipment and advanced a loan to the plaintiffs to mechanize its operations - The plaintiffs sued the defendant for damages for negligent representation, alleging that they relied on the defendant's misrepresentations, both implicit and explicit, in proceeding to mechanize its operation which resulted in a financial disaster for the plaintiffs - The trial judge granted the defendant's motion for a nonsuit after a favourable jury verdict for the plaintiffs - The plaintiffs appealed - In the event that the plaintiffs' appeal succeeded, the defendant cross-appealed to have the jury verdict set aside and the action for negligent misrepresentation dismissed, or, alternatively, a new trial ordered - The defendant argued that the jury's findings were unsupported by the evidence - The Ontario Court of Appeal dismissed the cross-appeal - The jury provided clear and concise reasons explaining why damages flowed from negligent misrepresentations - The jury's findings were supported by the evidence and it could not be said that the verdict was so plainly unreasonable that no jury reviewing the evidence as a whole and acting judicially could have reached it - See paragraphs 34 to 36.

### Practice - Topic 5390.1

Dismissal of action - Application or motion for dismissal - Nonsuit - At close of plaintiff's case - When available (incl. grounds) - The defendant, a major pulp and paper company, was granted licences to harvest trees on Crown lands - The defendant entered into annual harvesting contracts with the plaintiffs, a tree harvester - The defendant assisted the plaintiffs in researching the necessary equipment and advanced a loan to the plaintiffs to mechanize its operations - The plaintiffs sued the defendant for damages for negligent representation, alleging that they relied on the defendant's misrepresentations, both implicit

**Calvin Forest Products et al. v. Tembec Inc.**     337
(cite as (2006), 208 O.A.C. 336)

and explicit, in proceeding to mechanize its operation which resulted in a financial disaster for the plaintiffs - The trial judge granted the defendant's motion for a nonsuit after a favourable jury verdict for the plaintiffs - The plaintiffs appealed - The Ontario Court of Appeal allowed the appeal - The trial judge erred in granting the non-suit - He took into consideration the defendant's position on some of the evidence and the weight that the defendant felt should be given to various pieces of evidence - He focused on the evidence most favourable to the defendant and reached his own conclusions - There was sufficient evidence to support a finding in favour of the plaintiffs - The evidence established a prima facie case of negligent misrepresentation - See paragraphs 10 to 17.

**Practice - Topic 9285**

Appeals - Appeal from jury verdict - Setting aside jury verdict - Verdict not supported by the evidence - [See **Fraud and Misrepresentation - Topic 2508**].

**Cases Noticed:**

Queen (D.J.) v. Cognos Inc., [1993] 1 S.C.R. 87; 147 N.R. 169; 60 O.A.C. 1, refd to. [para. 5].

Hall et al. v. Pemberton (1974), 5 O.R.(2d) 438 (C.A.), refd to. [para. 14].

Ontario v. Ontario Public Service Employees Union (1990), 37 O.A.C. 218 (Div. Ct.), refd to. [para. 14].

Olmstead v. Vancouver-Fraser Park District, [1975] 2 S.C.R. 831; 3 N.R. 326, refd to. [para. 19].

McConnell v. McLean, [1937] S.C.R. 341, refd to. [para. 20].

G.K. v. D.K. (1999), 122 O.A.C. 36 (C.A.), refd to. [para. 25].

Zesta Engineering Ltd. v. Cloutier et al.,

[2002] O.A.C. Uned. 288; 21 C.C.E.L. (3d) 161 (C.A.), refd to. [para. 38].

Boucher et al. v. Public Accountants Council (Ont.) et al. (2004), 188 O.A.C. 201; 71 O.R.(3d) 291 (C.A.), refd to. [para. 38].

**Authors and Works Noticed:**

Sopinka, John, Lederman, Sidney N., and Bryant, Alan W., The Law of Evidence in Canada (2nd Ed. 1999), p. 139 [para. 13].

**Counsel:**

Ronald H. Caza and Justin Bertrand, for the appellants/respondents by way of cross-appeal;

Tomas V. Ozere and Vincent J. DeRose, for the respondent/appellant by way of cross-appeal.

This appeal and cross-appeal were heard on February 20, 2006, by Labrosse, Blair and Rouleau, JJ.A., of the Ontario Court of Appeal. The following judgment of the Court of Appeal was delivered by Labrosse, J.A., on March 23, 2006.

---

**[1] Labrosse, J.A.:** This action, for negligent misrepresentation and breach of contract, was tried by Kealey, J., with a jury. After the jury rendered its verdict in favour of the plaintiffs/appellants, Calvin Forest Products and Christopher Whalley (collectively "Calvin"), the trial judge granted a motion for non-suit. The motion had been brought at the end of the plaintiffs' case by the defendant/respondent, Tembec Inc. ("Tembec"), and by agreement of the parties, reserved until after the jury verdict.

**[2]** Calvin appeals the decision of the trial judge granting the motion for non-suit and the costs awarded to Tembec. In the event that Calvin is

338                                                        208 O.A.C.

Labrosse, J.A.

successful in its appeal and judgment is award-
ed in accordance with the jury's verdict, Tembec
cross-appeals to have the verdict set aside and
the action for negligent misrepresentation
dismissed or, in the alternative, a new trial
ordered. For the reasons that follow, I would
allow the appeal and dismiss the cross-appeal.

**The Facts**

[3] Tembec, a major pulp and paper company,
was granted licenses to harvest trees on Crown
lands between 1994 and 1999. Tembec entered
into annual harvesting contracts with Calvin, a
tree harvester. Whalley is the principal of
Calvin.

[4] Calvin used the traditional manual harvest-
ing method to supply trees to Tembec. By the
mid-1990's, companies in the forest industry
had begun to mechanize. Mechanization in-
creased productivity, resulting in greater reve-
nues for harvesters and more logs for compa-
nies like Tembec. Tembec encouraged its
harvesters to mechanize, including Calvin, its
largest harvester in the Mattawa area. Tembec
assisted Calvin in researching the necessary
equipment and advanced funds by way of a loan
to Calvin to assist with the financing required
to mechanize. Calvin mechanized in two stages.
In 1996, it purchased its first batch of equip-
ment, and then bought more machinery in 1998.

[5] The essence of the action was that Calvin
relied on Tembec's misrepresentations, both
implicit and explicit, in proceeding to mecha-
nize its operation. This resulted in financial
disaster for Calvin. In order to establish that
Tembec made negligent misrepresentations,
Calvin had to show that (1) there was a duty of
care based on a "special relationship"; (2) the
representations in question were untrue, inaccu-

rate, or misleading; (3) Tembec acted negli-
gently in making the misrepresentations; (4)
Calvin relied, in a reasonable manner, on the
negligent misrepresentations; and, (5) the re-
liance was detrimental to Calvin in the sense
that damages resulted: see **Queen (D.J.) v.
Cognos Inc.,** [1993] 1 S.C.R. 87; 147 N.R. 169;
60 O.A.C. 1, at 110 [S.C.R.]. Issues relevant to
establishing the claim included Tembec's
method of calculating the price to be paid to
Calvin (i.e., cost of harvest plus profit and risk
vs. price based on market value of final prod-
uct), and the types of cut blocks (i.e., areas to
be harvested) assigned to Calvin.

[6] At the end of the presentation of Calvin's
case, Tembec moved for a non-suit on the claim
of negligent misrepresentation. Having been put
to its election, Tembec proceeded to call evi-
dence. In all, 22 witnesses testified, and sub-
stantial documentation was filed during the trial.
In due course, the jury rendered its verdict and
awarded damages to Calvin in the amount of
$3,086,700 for negligent misrepresentation, and
$60,864.69 for various breaches of contract.

[7] After the jury rendered its verdict, the trial
judge granted Tembec's non-suit motion on the
claim for negligent misrepresentation. The
successful non-suit motion resulted in Calvin
recovering only $60,864.69. Calvin's bill of
costs totaled $303,279. On September 3, 2004,
approximately three years after the issuance of
the statement of claim and ten days before the
commencement of the trial, Tembec submitted
a Rule 49 offer to Calvin in the amount of
$75,000 plus pre-judgment interest and costs on
a partial indemnity basis. The trial judge re-
duced Calvin's costs to $75,000 and awarded
costs to Tembec pursuant to Rule 49.10 on a
partial indemnity scale from September 3, 2004
to the end of the trial in the amount of

**Calvin Forest Products et al. v. Tembec Inc.**
(cite as (2006), 208 O.A.C. 336)                           **339**

$136,234.82.

**The Findings of the Jury**

[8] The relevant questions submitted to the jury and the jury's answers can be found in the appendix to this judgment. In summary, the jury found as follows:

1) Tembec represented that it was prepared to back Calvin in its efforts to mechanize by assuring Calvin that sufficient business (i.e., wood supply and prices) would be made available and, in this way, Tembec would set the pace for a long-term commitment;

2) Tembec represented it would take care of Calvin;

3) the cut blocks assigned to Calvin contained an insufficient volume of wood at the prices paid to permit Calvin to function successfully;

4) the representation that Tembec would set the pace for a long-term commitment was inaccurate;

5) the representation that Tembec would take care of Calvin was untrue;

6) Tembec was negligent in making the representations in 4) and 5);

7) Calvin relied in a reasonable manner on the negligent misrepresentations; and

8) Calvin suffered damages.

[9] In arriving at these findings, the jury stated that it relied on the evidence of the following witnesses: Whalley; Roy Herault (a supervisor with Tembec); Kent Perry (Tembec's woodland

supervisor from 1994-1996); George Bruemmer (Tembec's mill manager as of 1997); and Marc Bouthillier (a woodland manager for Tembec). As well, the jury stated that it relied on the documentary evidence.

**Decision on the Motion for Non-Suit**

[10] As stated earlier, the trial judge rendered his decision on the motion for non-suit after the jury's verdict. He set out the test for a non-suit to succeed. He then examined the evidence, the submissions of the parties and the elements of the claims. With respect to the negligent misrepresentation claim, he noted that Tembec had conceded that a "special relationship" existed between the parties so as to give rise to the necessary duty. However, Tembec argued that except for a written contract between the parties dated May 23, 1996, no representation was made to Calvin as to future pricing or contracts. As well, Tembec argued that there was no evidence of reliance by Calvin on any suggested misrepresentation. Calvin argued that Tembec's non-disclosure of its pricing methods, combined with its encouragement to mechanize, amounted to a negligent misrepresentation that the price paid for harvesting would either remain the same or increase after mechanization. Calvin submitted that comments made by Bruemmer to Whalley during an unplanned encounter in early 1997 supported the negligent misrepresentation claim. Tembec argued that these comments were casual statements made in a casual setting, and that nothing Bruemmer said was untrue, inaccurate or misleading.

[11] In the trial judge's view, there was no evidence of discussion about the price to be paid to Calvin for harvesting. Whalley testified that he was unconcerned about price because he assumed it would be reasonable, as it had been

340                                                                    208 O.A.C.

                              Labrosse, J.A.

in the past. Further, the trial judge held that there was no evidence in the record to reasonably sustain a finding that Tembec committed the tort of negligent misrepresentation. Even if a negligent misrepresentation had been made by Tembec, there was no evidence that Calvin relied upon it in proceeding to mechanize. Whalley acted on the May 23, 1996 agreement and made assumptions about price. There was no suggestion of encouragement or discussion of any kind by Tembec regarding Calvin's acquisition of further mechanized equipment in 1998. At no material time did Calvin ever claim, suggest or infer that Tembec reneged or was acting contrary to any promise or representation that it made.

[12] In the trial judge's opinion, the jury could not have reasonably found that the reliance required to be proven for the tort of negligent misrepresentation was present on the facts. As well, the trial judge found that the evidence did not disclose the elements necessary to show an oral contract. The evidence available to support Calvin's claim of breach of oral contract was the same as that considered on the issue of negligent misrepresentation. The evidence did not disclose certainty of terms, consideration and other essentials necessary for a contract to be found.

### The Test on a Motion for Non-Suit

[13] The legal test to be satisfied on a motion for non-suit has been well articulated by John Sopinka, Sidney N. Lederman and Alan W. Bryant in **The Law of Evidence in Canada** (2nd Ed. 1999), at p. 139:

"The judge must conclude whether a reasonable trier of fact could find in the plaintiff's favour if it believed the evidence given in the trial up to that point. The judge does not decide whether the trier of fact should accept the evidence, but whether the inference that the plaintiff seeks in his or her favour could be drawn from the evidence adduced, if the trier of fact chose to accept it."

[14] In determining a motion for non-suit, the trial judge must take into consideration the most favourable facts from the evidence led at trial, as well as all supporting inferences. In attempting to set aside the granting of the non-suit, a plaintiff simply has to show that there is evidence which, if believed, would form the basis for a prima facie case. A prima facie case is no more than a case for the defendant to answer (see **Hall et al. v. Pemberton** (1974), 5 O.R.(2d) 438 (C.A.), and **Ontario v. Ontario Public Service Employees Union** (1990), 37 O.A.C. 218 (Div. Ct.), at 226).

### Application to the Case at Bar

[15] Calvin submits that there is ample evidence on the record to meet the above test and establish a **prima facie** claim of negligent misrepresentation. It points to the following evidence in support of its position:

- Calvin presented evidence of the log contract costing sheets provided to Calvin by Tembec when the parties were preparing annual contracts. The sheets contained cost estimates for every step in the tree harvesting process. The price which Tembec would pay was calculated as costs plus profit and risk. Calvin would review this estimate of the price for the area to be logged and would make adjustments, if necessary, to reflect any costs which were unaccounted for. The parties would then negotiate changes. Whalley testified that, in past negotiations, Calvin and Tembec agreed

05/23/2007 WED 16:10 FAX                                    ☒007/013

**Calvin Forest Products et al. v. Tembec Inc.**
(cite as (2006), 208 O.A.C. 336)                             341

to prices which Whalley felt would cover the costs of harvesting. He affirmed that the contract negotiations were the same from one year to the next.

- Tembec brought Whalley to see contractors working in the bush with mechanized equipment, and Perry and Whalley discussed the productivity and financial viability of a mechanized harvesting operation. Whalley testified that they estimated the revenue that could be generated by mechanized equipment by calculating the costs of operation plus profit and risk.

- Whalley testified that, during his encounter with Bruemmer in 1997, Bruemmer reassured him that Tembec would take care of its main contractors. Whalley also testified that, in deciding to purchase a particular piece of machinery, he took into consideration reassurances by Tembec that there would be decent cut blocks and prices, and that business would continue on as it had in the past.

- Perry testified that Tembec wanted to have their contractors start a mechanized operation. He testified that Tembec representatives assured contractors that if they committed to mechanizing, they could depend on Tembec for a long-term commitment. In the context, this could properly be inferred to mean both commitments in terms of wood volume and in terms of pricing. Perry further testified that he told Whalley, on behalf of Tembec, that the company wanted to see a long-term commitment and "we would set the pace for the long-term commitment, if he would mechanize".

[16] In my view, the trial judge was in error in granting the non-suit. He took into consideration Tembec's position on some of the evi-

dence and the weight that Tembec felt should be given to various pieces of evidence. In effect, he focused on the evidence most favourable to Tembec and reached his own conclusions. As reviewed above, there was sufficient evidence, which if believed, could support a finding in favour of Calvin. The evidence establishes a prima facie case of negligent misrepresentation, satisfying the five Cognos factors listed above. The relevance of the evidence to various Cognos factors will be examined in greater detail in the context of the cross-appeal.

[17] Accordingly, Calvin's appeal is allowed.

**The Cross-Appeal**

[18] As Calvin has been successful in its appeal, it becomes necessary to deal with Tembec's cross-appeal.

[19] At the outset, it is helpful to reiterate that an appellate court must give great deference to a jury's verdict. This proposition has been stated in many different ways, but none is clearer than the statement of de Grandpré, J., in **Olmstead v. Vancouver-Fraser Park District**, [1975] 2 S.C.R. 831; 3 N.R. 326, at 839 [S.C.R.]:

"All of the relevant cases make it abundantly clear that jury verdicts must be treated with considerable respect and must be accorded great weight."

[20] The principle governing appellate review of a jury verdict was laid down in **McCannell v. McLean**, [1937] S.C.R. 341, at 343, as follows:

"The verdict of a jury will not be set aside as against the weight of evidence unless it is so plainly unreasonable and unjust as to satisfy

342                                                                    208 O.A.C.

Labrosse, J.A.

the Court that no jury reviewing the evidence as a whole and acting judicially could have reached it."

[21] The grounds of appeal raised by Tembec deal with the charge to the jury on the issue of negligent misrepresentation, the charge to the jury on the issue of damages and the unreasonableness of the verdict.

**(a) The charge to the jury on the issue of negligent misrepresentation**

**Issue (i)**

[22] When dealing with certain alleged statements made by its employees, Tembec accepts that the trial judge's charge with respect to future occurrences or intention was correct. However, Tembec submits that the trial judge should have gone further and instructed the jury that statements of future intention cannot amount to misrepresentations at law, unless at the time they were made, the representor had already formed and held an intention to act in the future contrary to what had been represented.

**Issue (ii)**

[23] Tembec submits that the trial judge erred in failing to charge the jury that there was no evidence that Calvin had reasonably relied on Tembec's representations that Calvin would be provided with an adequate volume of wood at prices that would cover the costs of mechanization and would provide an element of profit.

**Issue (iii)**

[24] Tembec alleges that the trial judge erred in his review of the evidence of Perry. Tembec argues that the trial judge invited the jury to ground a finding of liability on a section of Perry's evidence that had been objected to and ruled inadmissible.

[25] These three complaints are being raised by Tembec for the first time on appeal. In **G.K. v. D.K.** (1999), 122 O.A.C. 36 (C.A.), Finlayson, J.A., speaking for the majority of this court at para. 15, dealt with the failure to object at trial by stating that "[i]t is accepted that in civil cases, failure to object in these circumstances is usually fatal."

[26] In any event, these complaints are without merit.

[27] With respect to issue (i), the trial judge cautioned the jury that representations as to future occurrences cannot be used to establish negligent misrepresentation unless they involve a misstatement of an existing fact. It is also clear that the jury concluded that, at the time of making the representation, Tembec implied that it would provide a sufficient volume of wood at a price based on the actual cost of harvesting. The jury further concluded that at that time, Tembec had the intention to act contrary to the representation. Tembec always intended to pay a price based on the market value of its final product, thereby passing the market risk on to Calvin. The misrepresentation was not of a future intention to act; rather, it was a misrepresentation of an existing fact.

[28] With respect to issue (ii), there was clear evidence that Calvin had reasonably relied on the misrepresentations to proceed with mechanization. It was open to the jury to conclude that if Tembec had not made assurances and if Calvin had known about Tembec's true pricing method, Calvin would not have mechanized.

05/23/2007 WED 16:11 FAX                                    @009/013

**Calvin Forest Products et al. v. Tembec Inc.**
(cite as (2006), 208 O.A.C. 336)                              343

[29] As to issue (iii), it is questionable whether there had been an objection or simply a clarification of the evidence. In any event, this evidence was of little significance and was present elsewhere in the record.

**(b) The charge to the jury on damages**

**Issue (i)**

[30] Tembec alleges that the trial judge erred in failing to advise the jury that in assessing damages, the actual income earned by Whalley as of the date of trial and his ability to earn personal future income could be taken into account to reduce the damage award.

[31] The trial judge specifically charged the jury on this point and instructed the jury to take into consideration Whalley's present earnings in assessing his future earning capacity.

**Issue (ii)**

[32] Tembec alleges that the trial judge erred in failing to advise the jury of the relevance of the additional machinery bought later and that it was open to the jury to find that all damages flowed from the second stage of mechanization, and not the first

[33] The evidence of the relevance of the additional machinery to an assessment of damages was led by expert witnesses. The trial judge instructed the jury on how to treat this evidence. Moreover, the jury was alive to this issue and took into account the additional machinery in finding contributory negligence on the part of Calvin.

**(c) The unreasonable verdict**

[34] Tembec alleges that the evidence at trial, taken at its highest with the most favourable inferences in favour of Calvin, cannot establish the elements of negligent misrepresentation. As such, Tembec argues that the findings of the jury are wholly unsupported by the evidence. Keeping in mind that jurors have no legal training and are not afforded much time to prepare written answers, the jury provided clear and concise reasons explaining why damages flowed from negligent misrepresentations. The jury cited portions of the evidence to support its findings. The evidence cited includes the following: Calvin was paid on a cost plus profit basis; Tembec wanted Calvin to mechanize; Tembec was prepared to back Calvin in its efforts to mechanize by assuring Calvin that sufficient business, in the form of wood supply and prices, would be available in order to cover the costs of mechanization; and, Tembec represented to Calvin that it would set the pace for a long-term commitment and that Calvin would be taken care of.

[35] It is evident that the jury relied upon much of the same evidence which I have relied upon in setting aside the successful motion for non-suit. The jury's findings are all supported by the evidence and it cannot be said that the jury's verdict is so plainly unreasonable that no jury reviewing the evidence as a whole and acting judicially could have reached it.

[36] Accordingly, the appeal is allowed, the granting of the motion for non-suit is set aside and judgment is to issue in accordance with the verdict of the jury. The cross-appeal is dismissed.

344                                                                                       208 O.A.C.

Labrosse, J.A.

## Costs

[37] Calvin has submitted a bill of costs claiming $190,772.76 for partial indemnity fees to September 3, 2004, the date of their offer to settle. Because the offer to settle was less than the amount awarded by the jury, Calvin thereafter claims the amount of $319,400.89 for substantial indemnity fees until the end of the trial. The fees plus disbursement and G.S.T. total $640,297.27

[38] This court, in recent years, has stated on numerous occasions that the costs award should reflect what the court views as a fair and reasonable amount that should be paid by the unsuccessful party rather than any exact measure of the actual costs to the successful litigant: see, for example, **Zesta Engineering Ltd. v. Cloutier et al,** [2002] O.A.C. Uned. 288; 21 C.C.E.L.(3d) 161 (C.A.). This court has also emphasized the importance of assessing the reasonableness and fairness of counsel fees from the perspective of the reasonable expectations of the parties: see **Boucher et al v. Public Accountants Council (Ont.) et al** (2004), 188 O.A.C. 201; 71 O.R.(3d) 291 (C.A.).

[39] Without minimizing the importance of this trial, the bill of costs demonstrates that Calvin's counsel worked in excess of 2250 hours from the commencement of the matter to the commencement of the trial. The trial lasted eleven and a half days.

[40] In my view, the total fees for the trial requested by Calvin are not reasonable and fair and could not be in the reasonable expectation of Tembec.

[41] As reviewed earlier, as a result of the successful non-suit motion, the trial judge

awarded costs to Calvin of $75,000 and costs to Tembec in the amount of $136,234.82. I am reluctant to second-guess Calvin with respect to disbursements which total $130,123.62 and which have not been attacked by Tembec. Accordingly, I would allow the disbursements as claimed and fix the total fees for the trial at $200,000 plus G.S.T.

[42] With respect to the appeal, Calvin requests $150,000 plus disbursements and G.S.T. Counsel for Tembec advised the court that if his client had been successful, on the appeal or cross-appeal, he would have requested $69,000 on behalf of his client. The appeal lasted one day. Once again, I am reluctant to interfere with the total disbursement listed at $19,110.25. I would allow the amount and fix the counsel fees at $70,000 plus G.S.T.

                                     Appeal allowed;
                              cross-appeal dismissed.

Editor: Anick Ouellette-Levesque/gs

### Appendix

### Questions to & Answers from the Jury

The questions answered by the jury that are relevant to this appeal and its reasons (in italics), are as follows:

### Section II – Negligent Misrepresentation

                    . . . . .

5(a) Did Tembec Inc. make representations to the plaintiffs, other than those set out in the Agreement of May 23, 1996 regarding mechanization by Calvin Forest Products Ltd.?

**Calvin Forest Products et al. v. Tembec Inc.**
(cite as (2006), 208 O.A.C. 336)

345

Yes _YES_ or No___

. . . . .

(c) If your answer to question (a) is Yes, then please state fully and clearly the nature of these representations.

*In the context of the industry at that time, and in the context of the relationship existing throughout the period between Tembec and Calvin Forest Products ["C.F.P."], as presented in the evidence, the following representations were made by Tembec to Calvin Forest Products:*

*- Tembec considered C.F.P. as their largest and best wood harvester, and wanted C.F.P. to mechanize - supported by testimony of Chris Whalley, Ray Hereault (sic), Kent Perry, and Tab 34 of Exhibit 1.*

*- Tembec was prepared to back C.F.P. in its efforts to mechanize by assuring C.F.P. that sufficient business (i.e. wood supply and prices) would be made available to afford the cost related to mechanization, and, in this way, Tembec would set the pace for a long-term commitment - supported by testimony of Chris Whalley and Kent Perry.*

*- Tembec supported purchase of Feller-Buncher as indicated by Tab 46 of Exhibit 1 and delimber as supported by Tab 68 of exhibit 1, thus reinforcing the direction encouraged previously.*

*- Tembec gave assurances that C.F.P., as a main contractor would be taken care of. This is related to informal meeting on Weyrhauser (sic) Road and is supported in full by testimony of Mr. Whalley, and in*

*part by testimony of Mr. Bruemmer and Mr. Bouthillier of Tembec.*

6(a) Was (were) the representation(s) "untrue, inaccurate, misleading?"

Yes _YES_ or No_____

. . . . .

(c) If your answer to question (a) is Yes, then state clearly and fully all particulars of how the representation(s) was untrue, inaccurate or misleading.

*The McAuslan and Wyse cut blocks assigned to C.F.P. in '98-'99 contained insufficient volume at the prices paid or insufficient prices for the conditions present to allow C.F.P. to function successfully.*

*This illustrates that the representation that "Tembec would set pace for the long-term commitment" was inaccurate. As stated in evidence, the pricing and the wood flow or the wood vine that could be harvested were integral to this long-term commitment.*

*Furthermore, it illustrates that the representation that "Tembec would take care of their main contractors" was untrue, as it can reasonably be inferred that the conditions of the representation should have extended beyond a single year.*

7(a) Did Tembec Inc. act negligently in making the representation?

Yes _YES_ or No_____

. . . . .

346                              Labrosse, J.A.                    208 O.A.C.

(c) If your answer to question (a) is **Yes**, then state fully and clearly all particulars of the negligence.

*Tembec would set the pace for long-term commitment - Tembec was negligent in making this misrepresentation as they had in hand sufficient information, including the 5 year plan, Tembec internal reports, Tembec public reports, Mattawa Mill reports and information that indicated that they may not be in a position to fully support C.F.P. through the long-term commitment.*

*Tembec would take care of their main contractor - Tembec was negligent in making this misrepresentation as they were fully aware, at that time, of what would be available in terms of cut blocks and pricing structure for at least the period until the end of 1999, the current 5-year plan.*

8(a) Did the plaintiffs rely in a reasonable manner on the negligent misrepresentation?

Yes ___*YES*___ or No_____.

. . . . .

(c) If your answer to (a) is **Yes**, then state fully and clearly all particulars of the plaintiff(s)' reasonable reliance on the representation.

*Relying on these misrepresentations, C.F.P. proceeded to mechanize in a prudent and reasonable manner in the purchase of a fellerbuncher, and delimber, and other equipment associated with mechanization, and continued to negotiate and execute contracts in good faith.*

9(a) Was the plaintiffs' reliance detrimental in the sense that they suffered damages as a result thereof? YES

. . . . .

(c) If your answer to (a) is **Yes**, then state fully and clearly all particulars as to why their reliance was detrimental.

*Their reliance was detrimental because the revenue generated failed to meet the expenses incurred, resulting in the requirement to liquidate assets, and the loss of present and future income.*

If you have answered **Yes** to questions 5 to 9 inclusively, then you must consider whether there was negligence in the conduct of the plaintiffs in the circumstances and answer question 10.

10(a) Were the plaintiffs negligent in any manner which contributed to their damages?

Yes ___*YES*___ or No_____

(b) If your answer to (a) is **Yes**, then state fully and clearly what the negligence was.

*Prior to further mechanization, it would have been reasonably prudent to consult formally with Tembec to seek reassurance that risk position was warranted.*

*Prior to signing harvesting contracts, it would have been reasonably prudent to have followed traditional procedures by walking the McAuslen and Wysc cut blocks and present a counter-proposal to Tembec, whether or not the counter-proposal would be accepted.*

Calvin Forest Products et al. v. Tembec Inc.
(cite as (2006), 208 O.A.C. 336)                    347

(c) Do you find it practicable to determine the respective degrees of fault or negligence on the part of the plaintiffs and the defendant?

Yes __YES__ or No_____

(d) If your answer to (c) is **Yes**, then state in percentages the degree of fault attributable to each.

Defendant - Tembec Inc.          __60%__

Plaintiffs - Calvin Forest Products __40%__

                                 __100%__

. . . . .

**Section V - Damages** – I repeat that regardless of how you have answered the questions 1 to 13 in sections I, II, III, IV, you are required to assess the plaintiffs' damages as if they had been 100% successful.

. . . . .

**B - Damages for Negligent Misrepresentation - Collateral Contract**

Write the amount which you assess for the plaintiffs' damages under the following headings:

| Special Damages | |
| --- | --- |
| --Past loss of income: | $800,000.00 |
| --loss on sale of Equipment: | $92,500.00 |
| --loss on the sale of the Commanda property: | $39,000.00 |
| --loss resulting from refinancing: | $13,000.00 |
| **Loss of Future Income** | $4,200,000.00 |
| **TOTAL** | $5,144,500.00 |
| -- | reduced by 40% = $3,086,700.00 |

# EXHIBIT 5

**R. 27**                    RULES OF CIVIL PROCEDURE

## RULE 27 — COUNTERCLAIM

*Highlights*

Rule 27 deals comprehensively with all aspects of counterclaims.

A defendant may assert by way of counterclaim *any* right or claim against the plaintiff and may join as a defendant to the counterclaim any other person who is a necessary or proper party to the counterclaim: rule 27.01. However, rule 27.08(2) gives the court a discretion to order that the counterclaim be tried separately or proceed as a separate action.

A counterclaim has to be issued only where a person who is not already a party to the main action is made a defendant to the counterclaim. (This is consistent with the overall policy of the Rules of not treating as an originating process a pleading which makes a claim only against an existing party: see rule 1.03.) However, where a defendant to the counterclaim is a new party to the action, there are different requirements as to the time for service, the manner of service, and the time for delivery of a defence to counterclaim: rules 27.04 and 27.05.

*Prima facie*, a counterclaim is to be tried together with the main action unless this would unduly complicate or delay the main action, or cause undue prejudice to a party: rule 27.08.

Where a claim or counterclaim is not disputed it may be stayed, or judgment may be granted with or without a stay of execution, until the disputed claim or counterclaim is disposed of: rule 27.09.

By amendment, rule 27.01(1) now specifically provides that a claim for contribution or indemnity under the *Negligence Act* by a defendant in respect of another party's claim against the defendant may be asserted by counterclaim. Although prior to its amendment the rule appeared to be appropriately worded to permit such a counterclaim, case law interpreted the subrule as not altering the practice established under the pre-1985 Rules of asserting such a claim for contribution and indemnity in the statement of defence: *Jacome v. McDonald* (1987), 19 C.P.C. (2d) 93 (Ont. H.C.), following and applying *Crowder v. Graham*, [1961] O.W.N. 320 (C.A.).

*Set-off.* See the *Courts of Justice Act*, s. 111.

*Former Rules:* Rules 44–47, 58(5), 114–119.

## WHERE AVAILABLE

*Against the Plaintiff*

**27.01 (1) A defendant may assert, by way of counterclaim in the main action, any right or claim against the plaintiff including a claim for contribution or indemnity under the *Negligence Act* in respect of another party's claim against the defendant.**

COUNTERCLAIM **R. 27.01**

### Against the Plaintiff and Another Person

**(2) A defendant who counterclaims against a plaintiff may join as a defendant to the counterclaim any other person, whether a party to the main action or not, who is a necessary or proper party to the counterclaim.**

O. Reg. 396/91, s. 4

**Cross-Reference:** See rules 27.08(2) and 5.05 regarding relief against joinder.

*Case Law*

### Availability Of Counterclaim - General Principles

*Jaffe v. Miller* (1991), 3 O.R. (3d) 680 (Master)

A defendant may counterclaim in a capacity different from that in which he is sued.

*Wharton Enterprises Ltd. v. Brompton Financial Corp.* (1990), 71 O.R. (2d) 463, 40 C.P.C. (2d) 51, 37 C.L.R. 121, 67 D.L.R. (4th) 119 (H.C.)

A defendant may not counterclaim against a non-party in a *Construction Lien Act* claim.

*Wm. Beatty Lands & Timber Co. v. New Belvedere Hotel of Parry Sound,* [1947] O.W.N. 633 (C.A.)

The right to counterclaim is confined to those cases where the two claims can be conveniently tried together. Conspiracy is not generally a proper subject of a counterclaim.

*Long v. Long,* [1943] O.W.N. 78 (Master)

A counterclaim may be struck out if it is oppressive or if it adds a non-party as defendant by counterclaim and is unrelated to the main action.

*Johnson v. Johnson,* [1942] O.W.N. 543 (H.C.)

Where trial of the claim and counterclaim together would be inconvenient the counterclaim may be struck out.

*Bosa v. Citarella* (1982), 39 O.R. (2d) 700, 31 C.P.C. 153 (Div. Ct.)

A counterclaim in a libel action may not be permitted where the issues raised in the main action are complex and different from those raised in the counterclaim.

*Roque v. Brown* (1977), 2 C.P.C. 239 (Ont. H.C.)

The fact that a defendant did not counterclaim in a previous action does not prevent him from bringing a subsequent action.

*Re Huffmon and Breese* (1974), 3 O.R. (2d) 416 (H.C.)

A surrogate court may not entertain a counterclaim.

*Arback v. Goodman* (1975), 6 O.R. (2d) 49 (H.C.)

A counterclaim need not be against the plaintiff in the same capacity as that in which he sues.

*Lajlo v. Noiles,* [1973] 3 O.R. 666 (H.C.)

A counterclaim may not be made after the main action is discontinued.

### Availability Of Counterclaim - After Expiry of Limitation Period

*Moio v. Gravelle* (1977), 13 O.R. (2d) 558 (C.A.)

The Registrar of Motor Vehicles may be added as a defendant by counterclaim notwithstanding the expiry of the limitation period set out in the *Highway Traffic Act,* R.S.O. 1970, c. 202, s. 146.

**R. 27.01**                RULES OF CIVIL PROCEDURE

*Dottor v. McQueen and Sorokopud* (1975), 10 O.R. (2d) 592 (H.C.)

Leave was given at trial to counterclaim against the plaintiff and a co-defendant not-withstanding that the purpose of the counterclaim appeared to be merely to provide a vehicle for asserting a claim against the co-defendant which otherwise would have been barred by the expiry of a limitation period.

*Broadhurst v. Sartisohn*, [1972] 2 O.R. 567 (H.C.)

A counterclaim commenced after the expiry of the limitation period contained in the *Highway Traffic Act*, R.S.O. 1970, c. 202, s. 146, is not statute-barred even where a defendant by counterclaim was not a party to the main action.

*Weir v. Lazarius*, [1964] 1 O.R. 158; affirmed without written reasons [1964] 1 O.R. 205n (H.C.)

Where a defence was delivered before the limitation period expired, the court permitted a counterclaim to be asserted after such expiry.

*Imbro v. Nagle*, [1963] 2 O.R. 570 (C.A.)

The court set aside a default judgment and gave leave to counterclaim after the expiry of the limitation period, relying on s. 147(3) of the *Highway Traffic Act*, R.S.O. 1960, c. 172.

### Availability Of Counterclaim - Examples

*Lee v. Globe & Mail The* (2002), 2002 CarswellOnt 42, 17 C.P.C. (5th) 342, [2002] O.J. No. 16 (S.C.J.)

Where a Singapore minister commenced a defamation action regarding a newspaper article published in Ontario, the court permitted a counterclaim for abuse of process where it was alleged the defamation action was intended to foster a climate of fear and intimidation.

*Coderre v. Lambert*, 14 O.R. (3d) 453, 18 C.P.C. (3d) 17, 18 C.C.L.I. (2d) 249, 46 M.V.R. (2d) 1, 103 D.L.R. (4th) 289, [1993] I.L.R. 1-2977, 64 O.A.C. 241 (C.A.)

A defendant in a personal injury action was not permitted to add a counterclaim against the insurer of the plaintiff in an attempt to obtain a binding determination of the plaintiff's entitlement to long-term disability benefits. The defendant had no claim against the insurer in contract or tort or on any other basis. The issue was a matter for the statement of defence and not a counterclaim.

*R. Cholkan & Co. v. Brinker* (1990), 71 O.R. (2d) 381, 40 C.P.C. (2d) 6, 1 C.C.L.T. (2d) 291 (H.C.)

The defendants were refused leave to add a counterclaim alleging abuse of process where the defendant failed to show an improper purpose in the plaintiffs' bringing of the action and any definitive act or threat in furtherance of that purpose.

*Gary Oswald Blasting Inc. v. M.J. Robinson Trucking Ltée* (1989), 38 C.P.C. (2d) 195 (Ont. H.C.)

A third party's counterclaim against the plaintiff in the main action was dismissed; the counterclaim did not join the defendant in the main action.

*Co-Operators Insurance Assn. v. Brown*, 69 O.R. (2d) 135, 37 C.P.C. (2d) 310, 39 C.C.L.I. 190, [1989] I.L.R. 1-2509 (Dist. Ct.)

A counterclaim against an insured was struck out where the plaintiff in the main action was not the insured but an insurer seeking, in its own name, to recover its subrogated loss. A counterclaim must name the plaintiff as a party defendant.

*Buchan Oil Ltd. v. Petro-Canada* (1986), 12 C.P.C. (2d) 181 (Ont. H.C.)

A counterclaim for declaratory relief which included an alternative claim for rectification of an agreement was struck out where the declaratory relief was superfluous and rectification ought to have been pleaded in the statement of defence.

COUNTERCLAIM                    **R. 27.02**

*Beckett Elevator Ltd. v. York Condo. Corp. No. 42* (1984), 45 O.R. (2d) 669, 9 D.L.R. (4th) 159 (H.C.)

No notice is required from a condominium corporation to its owners and mortgagees before the corporation may bring a counterclaim for damages.

*C.I.B.C. v. Murray Kingate Invts. Inc.* (1983), 38 C.P.C. 118 (Ont. Master)

Under the former Rules, where a defendant was made a third party in a contract action he was not permitted to counterclaim against his co-defendant for contribution and indemnity but was required to issue his own third party notice. [*But see now rules 28.01 and 27.10 - Authors.*]

*City Wide Lumber Co. v. 349027 Ont. Ltd.; 349207 Ont. Ltd. v. City Wide Lumber Co.* (1983), 39 C.P.C. 78, 3 C.L.R. 243 (Ont. H.C.)

In a mechanics' lien action, a counterclaim alleging that registration of the lien constituted slander of title was permitted.

*Reynolds Extrusion Co. v. Jolub Const. Ltd.* (1982), 37 O.R. (2d) 417 (H.C.)

The court struck out portions of a counterclaim claiming contribution and indemnity with respect to a separate action against the defendant in which no third party proceedings had been taken.

*Cooper v. Gales* (1981), 25 C.P.C. 267 (Ont. Co. Ct.)

In this *Family Law Reform Act* action commenced by the personal representatives of the deceased wife, a counterclaim against the personal representatives in their personal capacities and raising issues involving the application of principles outside of the scope of that Act was struck out with leave to amend.

*Greenwood v. Magee* (1977), 15 O.R. (2d) 685, 4 C.P.C. 67 (H.C.)

A counterclaim alleging that the claim was an abuse of process was struck out.

*Del Zotto v. Int. Chemalloy Corp.* (1977), 2 C.P.C. 198 (Ont. H.C.)

A counterclaim alleging conspiracy was struck out where it was not made against all the plaintiffs.

*Toronto v. Canada Dry Ltd.*, [1957] O.W.N. 471 (H.C.)

Where the plaintiff claimed an injunction restraining the defendant from using its land for certain purposes, the defendant was permitted to counterclaim for a declaration that it had a right to use the lands for those purposes.

*Andoniadis v. Bell and Sykes*, [1946] O.W.N. 949 (C.A.)

The court allowed the defendant to counterclaim against the plaintiff and two other parties where it was alleged that the three defendants by counterclaim were parties to a fraudulent conspiracy.

*Reeder v. Reeder*, [1945] O.W.N. 210 (Master)

In an action for possession of chattels by a husband against his wife, a counterclaim for arrears owing under a separation agreement was held to be proper.

*Williams Tool Corp. Ltd. v. Merrickville Engineering Co.*, [1944] O.W.N. 384 (Master)

A counterclaim for slander was struck out in an action for a debt.

## STATEMENT OF DEFENCE AND COUNTERCLAIM

**27.02 A counterclaim (Form 27A or 27B) shall be included in the same document as the statement of defence and the document shall be entitled a statement of defence and counterclaim.**

**R. 27.02**            RULES OF CIVIL PROCEDURE

*Case Law*

> *Liebersbach v. McArthur* (1975), 11 O.R. (2d) 360 (Master)
> A counterclaim and statement of defence may not be set out in separate documents.

## COUNTERCLAIM TO BE ISSUED WHERE DEFENDANT TO COUNTERCLAIM NOT ALREADY PARTY TO MAIN ACTION

**27.03** Where a person who is not already a party to the main action is made a defendant to the counterclaim, the statement of defence and counterclaim,

    (a) shall be issued,

        (i) within the time prescribed by rule 18.01 for delivery of the statement of defence in the main action or at any time before the defendant is noted in default, or

        (ii) subsequently with leave of the court; and

    (b) shall contain a second title of proceeding showing who is the plaintiff by counterclaim and who are defendants to the counterclaim.

## TIME FOR DELIVERY OR SERVICE OF DEFENCE AND COUNTERCLAIM

*Where all Parties are Parties to Main Action*

**27.04** (1) Where a counterclaim is only against the plaintiff, or only against the plaintiff and another person who is already a party to the main action, the statement of defence and counterclaim shall be delivered within the time prescribed by rule 18.01 for the delivery of the statement of defence in the main action, or at any time before the defendant is noted in default.

*Where New Party is Brought in*

(2) Where a counterclaim is against the plaintiff and a defendant to the counterclaim who is not already a party to the main action, the statement of defence and counterclaim shall be served, after it has been issued, on the parties to the main action and, together with all the pleadings previously delivered in the main action, on a defendant to the counterclaim who is not already a party to the main action, and shall be filed with proof of service,

    (a) within thirty days after the statement of defence and counterclaim is issued or at any time before the defendant is noted in default; or

    (b) subsequently with leave of the court.

(3) A statement of defence and counterclaim need not be served personally on any person who is a party to the main action, except where a defendant to the counterclaim is also a defendant in the main action and has failed to deliver a notice of intent to defend or a statement of defence in the main action, in which case the defendant shall be served personally or by an alternative to personal service under rule 16.03 whether or not the defendant has been noted in default in the main action.

*Case Law*

> *Merit Invt. Corp. v. Mogil* (1985), 49 C.P.C. 149 (Ont. Master)
> The court permitted the late assertion of a counterclaim against the plaintiff but refused to permit the addition of claims against proposed new defendants by counterclaim because such claims might delay the plaintiff.

COUNTERCLAIM                    **R. 27.07**

*Morley v. Wiggins* (1985), 49 O.R. (2d) 136, 47 C.P.C. 128, 30 M.V.R. 189, 7 O.A.C. 324 (Div. Ct.)

The court permitted a third party to assert a counterclaim against the defendants notwithstanding the expiry of the relevant limitation period.

*Leblanc & Royle Communications Towers Ltd. v. Internav Ltd.* (1984), 45 C.P.C. 77 (Ont. Master); (appeal dismissed without written reasons on May 9, 1984)

The master refused to grant leave to amend the statement of defence to advance a counterclaim where the action was on the eve of trial and the basis of the counterclaim had been known to the defendant for four years.

*Giacomelli v. O'Reilly* (1979), 23 O.R. (2d) 469, 9 C.P.C. 65 (H.C.)

The court extended the time to counterclaim in a motor vehicle case where there was no actual prejudice to the plaintiff and notwithstanding that the plaintiff's insurer had closed its file four years earlier.

*Hunter v. Gallant* (1979), 21 O.R. (2d) 213 (Master)

The court extended the time for service of a counterclaim notwithstanding the expiry of a limitation period, but without prejudice to raising the limitation period as a defence.

*A.G. Ont. v. Palmer* (1977), 15 O.R. (2d) 670, 3 C.P.C. 214 (H.C.)

Late service of a counterclaim does not render s. 146(3) of the *Highway Traffic Act*, R.S.O. 1970, c. 202, inapplicable.

## TIME FOR DELIVERY OF DEFENCE TO COUNTERCLAIM

**27.05 (1) The plaintiff and any other defendant to a counterclaim who is already a party to the main action shall deliver a defence to counterclaim (Form 27C) within twenty days after service of the statement of defence and counterclaim.**

**(2) Where the plaintiff delivers a reply in the main action, the defence to counterclaim shall be included in the same document as the reply and the document shall be entitled a reply and defence to counterclaim.**

**(3) Except as provided in subrule 18.02(3) (notice of intent to defend) or 19.01(5) (late delivery of defence), a defendant to a counterclaim who is not already a party to the main action shall deliver a defence to counterclaim,**

**(a) within twenty days after service of the statement of defence and counterclaim, where the defendant to the counterclaim is served in Ontario;**

**(b) within forty days after service of the statement of defence and counterclaim, where the defendant to the counterclaim is served elsewhere in Canada or in the United States of America; or**

**(c) within sixty days after service of the statement of defence and counterclaim, where the defendant to the counterclaim is served anywhere else.**

## TIME FOR DELIVERY OF REPLY TO DEFENCE TO COUNTERCLAIM

**27.06 A reply to defence to counterclaim (Form 27D), if any, shall be delivered within ten days after service of the defence to counterclaim.**

## AMENDING DEFENCE TO ADD COUNTERCLAIM

**27.07 (1) A defendant who has delivered a statement of defence that does not contain a counterclaim and who wishes to counterclaim only against the plaintiff or only against the plaintiff and another person who is already a party to the main action may amend the statement of defence in accordance with rules 26.02 and 26.03 in order to add the counterclaim, and rule 26.05**

653

**R. 27.07**          RULES OF CIVIL PROCEDURE

(responding to amended pleading) applies to the amended statement of defence and counterclaim.

(2) A defendant who has delivered a statement of defence that does not contain a counterclaim and who wishes to counterclaim against the plaintiff and another person who is not already a party to the main action may, with leave of the court, have the registrar issue an amended statement of defence and counterclaim, and rule 26.05 (responding to amended pleading) applies to the amended statement of defence and counterclaim.

## TRIAL OF COUNTERCLAIM

27.08 (1) A counterclaim shall be tried at the trial of the main action, unless the court orders otherwise.

(2) Where it appears that a counterclaim may unduly complicate or delay the trial of the main action, or cause undue prejudice to a party, the court may order separate trials or order that the counterclaim proceed as a separate action.

*Cross-Reference*: See also cases under rule 5.05.

*Case Law*

### *Severance Ordered*

*Royal Bank v. Kilmer van Nostrand Co.* (1994), 29 C.P.C. (3d) 191 (Ont. Gen. Div.) The court severed the trial of issues relating to a counterclaim where that would improve the management of the case and would not prejudice the defendant.

### *Refusal to Order Severance*

*Renegade Capital Corp. v. Hees International Bancorp Inc.* (1991), 3 O.R. (3d) 251, 50 C.P.C. (2d) 51 (Gen. Div.)

The court declined to strike out a counterclaim and direct that it proceed as a separate action where the same key personnel, events and documents were involved in both the main action and the counterclaim.

*Mogil v. Mogil* (1985), 6 C.P.C. (2d) 137 (Ont. H.C.)

The court permitted a counterclaim to be tried with the main action notwithstanding the existence of a separate action involving related issues. The court could guard against the possibility of inconsistent results by ordering the two actions tried together when they were ready for trial.

## DISPOSITION OF COUNTERCLAIM

### *Where Claim in Main Action not Disputed*

27.09 (1) Where a defendant does not dispute the claim of the plaintiff in the main action, but asserts a counterclaim, the court may stay the main action or grant judgment, with or without a stay of execution, until the counterclaim is disposed of.

### *Where Counterclaim not Disputed*

(2) Where the plaintiff does not dispute the counterclaim of a defendant, the court may stay the counterclaim or grant judgment, with or without a stay of execution, until the main action is disposed of.

### *Where Both Claim and Counterclaim Succeed*

(3) Where both the plaintiff in the main action and the plaintiff by counterclaim succeed, either in whole or in part, and there is a resulting balance in

654

COUNTERCLAIM                    **R. 27.10**

favour of one of them, the court may in a proper case give judgment for the balance and dismiss the smaller claim and may make such order for costs of the claim and counterclaim as is just.

*Case Law*

### Stay of Action Where Claim in Main Action Not Disputed - rule 27.09(1)

*Von Brevern v. Great West Saddlery Co.*, [1962] O.W.N. 60 (Master)
The main action should not be stayed until after judgment is obtained in it.

### Granting Separate Judgments or Judgments for the Balance

*Norbury Sudbury Ltd. v. Noront Steel (1981) Ltd.* (1984), 47 O.R. (2d) 548, 11 D.L.R. (4th) 686 (H.C.)
Where the defendant did not maintain certain premises as agreed, the plaintiff's claim in damages succeeded. However money expended by the defendant to improve and expand the premises was set off against any damages awarded.

*380631 Ont. Inc. v. Solray Invts. Ltd.* (1983), 34 C.P.C. 211 (Ont. H.C.)
Where both the main action and counterclaim were successful the court permitted the debts to be set off. There were no extraneous factors such as a subrogated interest of an insurer.

*Bodnar v. Hazet Holdings Ltd.* (1976), 11 O.R. (2d) 414 (Master)
A master gave leave to appeal from his own report being of the opinion that he ought not to have given judgment for the balance.

*Lewenza v. Ruszczak*, [1960] O.W.N. 40 (C.A.)
Where the subrogated claim of an insurer was involved the court gave separate judgments for the claim and counterclaim.

*Banks v. Yule*, [1955] O.R. 155, [1955] 2 D.L.R. 34 (H.C.)
The court set off the amount recovered in a counterclaim against the amount recovered in the main action except to the extent that the first amount was subject to a solicitor's lien for costs.

*McConnell v. Alexander*, [1954] O.W.N. 266 (H.C.)
The court gave judgment for the balance owing after setting off the amount recovered in a cross-action. Cross-actions should be treated in the same way as counterclaims.

## APPLICATION TO COUNTERCLAIMS, CROSSCLAIMS AND THIRD PARTY CLAIMS

**27.10 Rules 27.01 to 27.09 apply, with necessary modifications, to the assertion of a counterclaim by a defendant to a counterclaim, by a defendant to a crossclaim and by a third party.**

*Case Law*

*Gary Oswald Blasting Inc. v. M.J. Robinson Trucking Ltée* (1989), 38 C.P.C. (2d) 195 (Ont. H.C.)
A third party may not assert a counterclaim solely against the plaintiff in the main action.

*Morley v. Wiggins* (1985), 49 O.R. (2d) 136, 47 C.P.C. 128, 30 M.V.R. 189, 7 O.A.C. 324 (Div. Ct.)
The court permitted a third party to assert a counterclaim against the defendants notwithstanding the expiry of the relevant limitation period.

**R. 27.10**         RULES OF CIVIL PROCEDURE

*Solomon v. Mead & Co.* (1983), 42 O.R. (2d) 318, 36 C.P.C. 97 (Master)

Where a party defendant in the main action was also made a third party by a co-defendant, a counterclaim by the third party against the co-defendant was permitted.

*Union Carbide Can. Ltd. v. C.N.R.* (1980), 17 C.P.C. 127 (Ont. C.A.)

A third party may not counterclaim against the plaintiff.

*Re Solway and Potter*, [1958] O.W.N. 125 (H.C.)

A person added as a defendant by counterclaim may not himself assert a counterclaim. A plaintiff made a defendant by counterclaim may assert a counterclaim only if it arose after the commencement of the main action or is a shield against the counterclaim by the defendant; in other cases it may be raised by amending the original statement of claim [*cf. rule 27.10*].

*Homes Dev. Ltd. v. Forbes*, [1956] O.W.N. 668 (Master)

A plaintiff, defendant by counterclaim, may assert his own counterclaim in his reply and defence to counterclaim only if his counterclaim is not an independent claim but is merely a shield against the counterclaim of the defendant [*cf. rule 27.10*].

*Smart v. The Royal Trust Co.*, [1947] O.W.N. 902 (Master)

A defendant who is the subject of a claim by a co-defendant may be given leave to file a counterclaim against the co-defendant.