IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SOLAE, LLC,                          )
                                     )
            Plaintiff                )
                                     )      C.A. No. 07-140-JJF
vs.                                  )
                                     )
HERSHEY CANADA INC.,                 )
                                     )
            Defendant.               )
                                     )

## ANSWERING BRIEF OF SOLAE, LLC,
## IN OPPOSITION TO MOTION TO DISMISS

OF COUNSEL
CROWELL & MORING LLP
Scott L. Winkelman
Monica M. Welt
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004
(202) 624-2500

P. Clarkson Collins (I.D. No. 739)
Katherine J. Neikirk (I.D. No. 4129)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware 19899
(302) 888-6800
pcollins@morrisjames.com
kneikirk@morrisjames.com

Attorneys for Plaintiff Solae, LLC

June 25, 2007

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... iii

STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS ...................................1

SUMMARY OF ARGUMENT .......................................................................................2

INTRODUCTION ........................................................................................................2

STANDARDS...............................................................................................................5

STATEMENT OF FACTS .............................................................................................6

ARGUMENT................................................................................................................9

I.     HERSHEY DOES NOT DENY THIS COURT'S JURISDICTION
OVER THIS DISPUTE ..........................................................................9

II.    HERSHEY'S MOTION TO DISMISS FOR *FORUM NON
CONVENIENS* SHOULD BE DENIED ...........................................................11

     A.     Governing *Forum Non Conveniens* Principles .......................................11

     B.     Solae Filed In Its Home Forum...............................................................13

     C.     This Case Has A Significant Nexus With the United States
Generally and Delaware In Particular.....................................................15

     D.     Canadian Law and Procedures Do Not Dictate A Canadian
Forum 20.................................................................................................20

     E.     Public Interest Considerations Favor This Forum ...................................22

     F.     Hershey's New Arguments Regarding Contract Formation
And Governing Law Do Not Meet Its Burden.........................................23

     G.     If Doubt Remains, The Proper Course Is *Forum Non
Conveniens* Discovery ...........................................................................26

III.    THIS COURT HAS PERSONAL JURISDICTION OVER
HERSHEY CANADA – OR DISCOVERY SHOULD PROCEED
ON THAT ISSUE ........................................................................................27

     A.     Legal Standards.......................................................................................27

     B.     Hershey's Assent To A Delaware Forum Is Consent To
Delaware Jurisdiction..............................................................................28

     C.     Jurisdictional Discovery Should Proceed If Doubt Remains...................30

IV.    HERSHEY'S UNSUPPORTED "BAD FAITH" CONTENTIONS
       ARE LEGALLY AND FACTUALLY UNFOUNDED......................................32

CONCLUSION............................................................................................................36

# TABLE OF AUTHORITIES

**Cases**

*ACandS, Inc. v. Aetna Cas. and Sur. Co.*,
   666 F.2d 819 (3d Cir. 1981) ......................................................................................... 10

*American Dredging Co. v. Miller*,
   510 U.S. 443 (1994).................................................................................................... 11

*Anderson-Tully Lumber Co. v. Int'l Forest Prods.*,
   No. 5:05-cv-68(DCB)(JCS), 2006 WL 2571273 (S.D. Miss. Sept. 5, 2006) ............... 27

*Banco Nominees Ltd. v. Iroquois Brands, Ltd.*,
   748 F. Supp. 1070 (D. Del. 1990).................................................................................. 23

*Beebe v. Housatonic R.R. Co.*,
   No. 05-CV-0021, 2005 WL 1173974 (N.D.N.Y. May 12, 2005)................................. 27

*Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc.*,
   295 F. Supp. 2d 400 (D. Del. 2002)............................................................................... 20

*Bhatnagar v. Surrendra Overseas Ltd.*,
   52 F.3d 1220 (3d Cir. 1995) ......................................................................................... 13

*BP Chems. Ltd. v. Union Carbide Corp.*,
   4 F.3d 975 (Fed. Cir. 1993) .......................................................................................... 10

*Brown v. Williams*,
   No. 03-426-SLR, 2007 WL 1219624 (D. Del. Apr. 25, 2007)................................. 5, 29

*Carteret Sav. Bank, F.A. v. Shushan*,
   954 F.2d 141 (3d Cir. 1992) ...................................................................................... 5, 27

*Chase Manhattan Bank, USA v. Freedom Card, Inc.*,
   265 F. Supp. 2d 445 (D. Del. 2005).............................................................................. 10

*Chateau du Charmes Wines Ltd. v. Sabate USA, Inc.*,
   328 F.3d 528 (9th Cir. 2003) ....................................................................................... 25

*Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.*,
   651 F.2d 877 (3d Cir. 1981) ........................................................................................ 34

*Consol. Rail Corp. v. Grand Trunk W. R.R. Co.*,
   592 F. Supp. 562 (E.D. Pa. 1984)........................................................................... 33, 34

*Cytotherapeutics, Inc. v. Neurospheres, Ltd.,*
  No. 97-019L, 1997 WL 33547301 (D.R.I. Mar. 13, 1997) ......................................... 27

*D'Angelo v. Petroleos Mexicanos,*
  398 F.Supp. 72 (D. Del. 1975)................................................................................... 14

*Duha v. Agrium, Inc.,*
  448 F.3d 867 (6th Cir. 2006) ..................................................................................... 27

*E.I. duPont de Nemours and Co. v. Rhodia Fiber and Resin Intermediates,*
  197 F.R.D. 112 (D. Del. 2000) .................................................................................. 28

*EEOC v. Univ. of Pa.,*
  850 F.2d 969 (3d Cir. 1988) ................................................................................ 33, 34

*Estate of King v. Cessna Aircraft Co.,*
  405 F. Supp. 2d 1374 (S.D. Fla. 2005) ...................................................................... 15

*Grand Entm't Group v. Star Media Sales,*
  988 F.2d 476 (3d Cir. 1993) ...................................................................................... 28

*Grumbkow v. Walt Disney Co.,*
  No. 06-489-JJF, 2007 WL 570196 (D. Del. Feb. 20, 2007) .............................. 6, 27, 28

*Guidi v. Inter-Continental Hotels Corp.,*
  224 F.3d 142 (2d Cir. 2000) ............................................................................... 14, 17

*Gulf Oil Corp. v. Gilbert,*
  330 U.S. 501 (1947).............................................................................................. 12, 22

*Hadley v. Shaffer,*
  No. 99-144-JJF, 2003 WL 21960406 (D. Del. Aug. 12, 2003) .............. 5, 27, 29, 30, 31

*Health Trio v. Margules,*
  No. 06-04-196, 2007 WL 544156 (Del. Super. Ct. Jan. 16, 2007)............................... 31

*Hornberger Mgmt. Co. v. Haws & Tingle Gen. Contractors, Inc.,*
  685 A.2d 724 (Del. Super. Ct. 2000)......................................................................... 29

*In re Bridgestone/Firestone Inc.,*
  131 F. Supp. 2d 1027 (S.D. Ind. 2001)...................................................................... 26

*In re Livent, Inc.,*
  78 F. Supp. 2d 194 (S.D.N.Y. 1999) .......................................................................... 12

*Initiatives, Inc. v. Korea Trading Corp.,*
  991 F. Supp. 476 (E.D. Va. 1997) .............................................................................. 27

*Iragorri v. United Techs. Corp.,*
   274 F.3d 65 (2d Cir. 2001) ........................................................................... 16

*Joint Stock Soc'y v. Heublin, Inc.,*
   936 F. Supp. 177 (D. Del. 1996)............................................................... 5, 28

*L & L Constr. Assocs., Inc. v. Slattery Skanska, Inc.,*
   No. 05-1289, 2006 WL 1102814 (D.D.C. Mar. 31, 2006) ........................... 16

*Lacey v. Cessna Aircraft Co.,*
   862 F.2d 38 (3d Cir. 1988) ............................................................. 11, 13, 26

*Lacey v. Cessna Aircraft Co.,*
   932 F.2d 170 (3d Cir. 1991) ........................................... 6, 11, 12, 26, 27

*Little Switz., Inc. v. Destination Retail Holdings Corp.,*
   No. 98-315-SLR, 1999 WL 223496 (D. Del. Mar. 31, 1999) ......................... 5

*Lony v. E.I. du Pont de Nemours & Co.,*
   886 F.2d 628 (3d Cir. 1989) ........................................................................ 11

*Lony v. E.I. du Pont de Nemours & Co.,*
   935 F.2d 604 (3d Cir. 1991) .............................................................. 6, 12, 13

*M/S Bremen v. Zapata Off-Shore Co.,*
   407 U.S. 1 (1972)........................................................................................ 16

*McNeil Nutritionals, LLC v. Sugar Ass'n,*
   No. 05-69(GMS), 2005 WL 1000242 (D. Del. Apr. 29, 2005) ..................... 32

*Mobil Tankers Co., S.A. v. Mene Grande Oil Co.,*
   363 F.2d 611 (3d Cir. 1966) ................................................................. 15, 22

*Niv v. Hilton Hotels Corp.,*
   No. 06-7839-PKL, 2007 WL 510113 (S.D.N.Y. Feb. 15, 2007)................... 27

*Nutrasweeet Co. v. Ajinomoto Co.,*
   423 F. Supp. 2d 450 (D. Del. 2006)............................................................. 10

*Piper Aircraft Co. v. Reyno,*
   454 U.S. 235 (1981).............................................................................. 11, 12

*Presbyterian Church of Sudan v. Talisman Energy, Inc.,*
   244 F. Supp. 2d 289 (S.D.N.Y. 2003) ..................................................... 6, 14

*Reavis v. Gulf Oil Corp.,*
   85 F.R.D. 666 (D. Del. 1980) ................................................................ 11, 15

*Reid-Walen v. Hansen,*
  933 F.2d 1390 (8th Cir. 1991) ...................................................................... 14

*Sandvik AB v. Advent Int'l Corp.,*
  83 F. Supp. 2d 442 (D. Del. 1999)................................................................ 13

*Siemens v. LG Semicon Co., Ltd.,*
  69 F. Supp. 2d 622 (D. Del. 1999)................................................................ 28

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.,*
  127 S.Ct. 1184 (2007)........................................................................... 12, 13

*Snodgrass v. Provident Life and Acc. Ins. Co.,*
  147 F.3d 1163 (9th Cir. 1998) ...................................................................... 23

*Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.,*
  482 F.3d 1330 (Fed. Cir. 2007) .................................................................... 33

*Toys "R" US, Inc. v. Step Two, S.A.,*
  318 F.3d 446 (3d Cir. 2003) ......................................................................... 31

*Tracinda Corp. v. DaimlerChrysler AG,*
  197 F. Supp. 2d 86 (D. Del. 2002)................................................................ 32

*Trilegiant Loyalty Solutions, Inc. v. Maritz,*
  No. 04-360-JJF, 2005 WL 441077 (D. Del. Feb. 15, 2005) .................................. 14, 15

*Vanity Fair Mills, Inc. v. T. Eaton Co.,*
  234 F.2d 633 (2d Cir. 1956) ......................................................................... 14

*Wall St. Aubrey Golf v. Aubrey,*
  189 Fed.Appx. 82 (3d Cir. June 5, 2006) ....................................................... 29

*Wiwa v. Royal Dutch Petroleum Co.,*
  226 F.3d 88 (2d Cir. 2000) ............................................................... 6, 15, 17

## Statutes

28 U.S.C. §1404(a) ..................................................................................... 14

## Rules

Fed. R. Civ. P. 12........................................................................................ 5

Fed. R. Civ. P. 45(b)(2)............................................................................... 19

## STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

Plaintiff Solae, LLC ("Solae") filed this action for Declaratory Judgment and Breach of Contract on March 9, 2007 ("Complaint"). (D.I. 1.) Defendant Hershey Canada, Inc. ("Hershey") filed a motion to dismiss on the grounds of *forum non conveniens* and lack of personal jurisdiction on April 18, 2007 ("Prior Brief"). (D.I. 7.) Hershey amended its Motion on April 27, 2007, by submitting copies of documents filed by Solae in a proceeding in Canada, specifically the Notice of Motion filed by Solae on April 23, 2007, as well as the accompanying affidavit of a Solae employee, Laurie Cradick. (D.I. 15.) Hershey again amended its Motion on April 30, 2007, this time with a modification to an affidavit of its employee, James Kuehl. (D.I. 16.)

Solae filed an opposition to Hershey's first motion to dismiss on May 11, 2007. (D.I. 19.) Solae also amended its complaint ("Am. Complaint") to reflect additional facts learned since the filing of the initial Complaint. (D.I. 23.) These changes mirrored the facts set forth by Solae in the Cradick affidavit from the Canadian proceeding, and addressed the transmission of Solae's conditions of sale for the transactions involved and during the years of course of dealing between Solae and Hershey. Hershey knew those facts already, as reflected by its submission in this case of both Solae's Notice of Motion and Ms. Cradick's affidavit.

Hershey elected in response to file a new motion to dismiss and accompanying memorandum of law ("Brief") on June 8, 2007. (D.I. 27.) Urging again the same two grounds - *forum non conveniens* and lack of personal jurisdiction - Hershey's new filing seeks dismissal.

1

## SUMMARY OF ARGUMENT

1.  The Court should not dismiss this action based on *forum non conveniens* because, according to the allegations of Solae's well-pled Complaint and Amended Complaint, and as supplemented by Solae's affidavits, a forum selection clause dictates this Delaware forum.

2.  The Court should not dismiss this action based on *forum non conveniens* because Hershey otherwise fails to meet the heavy burden it must sustain to overcome the deference afforded a plaintiff's selection of forum and the parties' forum selection clause.

3.  Personal jurisdiction over Hershey exists given its consent to jurisdiction in Delaware as memorialized in the parties' agreement.

4.  If the Court harbors doubt about Hershey's *forum non conveniens* and personal jurisdiction points, the proper recourse is not dismissal, as Hershey suggests, but discovery tailored to these points.

5.  This action was properly filed in this Court.  Hershey's allegations of abusive tactics are baseless.

## INTRODUCTION

Plaintiff Solae filed this declaratory judgment and breach of contract action to resolve a pending commercial dispute in its place of incorporation, a forum expressly dictated by the forum selection clause in the parties' contract.  Defendant Hershey now seeks dismissal of this action on grounds of *forum non conveniens*, lack of personal jurisdiction, and alleged misuse of the declaratory judgment procedure.

2

Hershey's motion must be denied because all three components of its motion are undercut by the fact – established on the face of Solae's well-pled complaint – that the parties' 2006 contract contained a forum selection clause specifying that "*the courts of Delaware shall have exclusive jurisdiction over any dispute or issues arising under this Agreement.*" Forum selection clauses are given substantial weight in determining whether this Court is the proper forum under *forum non conveniens* analysis. This clause also embodies Hershey's consent to personal jurisdiction in this Court, and establishes that Solae acted faithfully in accordance with contract terms – not in "bad faith" as alleged by Hershey – in filing its action in this forum. To the extent Hershey would now challenge the terms of the contract with Solae, including the contractual forum selection clause, such a challenge is a factual matter not appropriately raised at the motion to dismiss stage. The forum selected by the parties, and pled in Solae's complaint, is alone fatal to Hershey's motion.

Beyond that, Hershey faces, and has not met, a heavy burden of overcoming Solae's choice of forum, and cannot establish that proceeding in this Court would cause undue oppression or prejudice to a corporate entity like Hershey. Hershey's *forum non conveniens* argument is premised on a legally infirm comparison of the connections between this case and the *state* of Delaware, on the one hand, with alleged connections within the *nation* of Canada, on the other. In fact, *forum non conveniens* law, in comparing the convenience of a United States forum with the court of a foreign sovereign, assesses contacts with the *entire United States*, not simply contacts with the forum state. Hershey thus dooms its own forum analysis by underscoring the numerous and critical contacts between the parties' dispute and the United States, all of which

render this Court a manifestly appropriate forum. These include, by Hershey's admission, production of the allegedly contaminated soy lecithin ingredient in the United States; substantial contract negotiations in the United States; and key witnesses who are employed by Hershey's parent company, The Hershey Company, in Hershey, Pennsylvania, less than 90 miles from this courthouse. There is no actual inconvenience to Hershey, and no actual basis for this Court to exercise its discretion to dismiss an otherwise appropriate case on *forum non conveniens* grounds.

Hershey's personal jurisdiction challenge fails because, according to the face of Solae's well-pled complaint, Hershey agreed that courts in Delaware would have "exclusive jurisdiction" over disputes relating to the parties' contract. Consent to a Delaware forum is assent to personal jurisdiction in that forum. To the extent Hershey challenges this allegation, or asserts lack of minimum Delaware contacts sufficient to establish personal jurisdiction over Hershey, those are merits issues that require discovery.

Hershey's contention that the Court should exercise its discretion to dismiss this action as a "bad faith," "abusive" use of the declaratory judgment device is not only an absence of civility, but is wrong. Solae filed its action where it was compelled to do so: in the very jurisdiction that the parties had agreed would resolve their contractual disputes. To assert bad faith, Hershey again mistakes the "first-filed" doctrine – applicable when different courts of the United States have concurrent jurisdiction over a dispute – with the principles that actually govern Hershey's motion. Hershey's incendiary accusations are otherwise unfounded in fact.

Accordingly and respectfully, Hershey's motion to dismiss should be denied.

4

## **STANDARDS**

The legal standards governing Hershey's motion to dismiss for *forum non*

*conveniens* and lack of personal jurisdiction are familiar. "The purpose of a motion to

dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the

merits of the case." *Brown v. Williams*, No. 03-426-SLR, 2007 WL 1219624, at *1 (D.

Del. Apr. 25, 2007). "[G]enerally when reviewing a motion to dismiss under Fed. R. Civ.

P. 12, all well-pled facts are taken as true and all inferences therefrom viewed in a light

most favorable to the nonmoving party." *Little Switz., Inc. v. Destination Retail Holdings*

*Corp.*, No. 98-315-SLR, 1999 WL 223496, at *2 n.3 (D. Del. Mar. 31, 1999).

These presumptions apply to a motion to dismiss for lack of personal jurisdiction,

and to disputes turning – as this case does – on a forum selection clause. "[In] reviewing

a motion to dismiss a case for lack of in personam jurisdiction [the court] ***must accept all***

***of the plaintiff's allegations as true*** and construe disputed facts in favor of the plaintiff."

*Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992) (emphasis

added). "In the context of a motion to dismiss, the record must be viewed in the light

most favorable to the non-moving party." *Hadley v. Shaffer*, No. 99-144-JJF, 2003 WL

21960406, at *2 (D. Del. Aug. 12, 2003) (motion to dismiss for lack of personal

jurisdiction denied as forum selection clause demonstrated consent to the forum). There

is some divergence in the case law as to whether the Court considers only the factual

allegations in the complaint, *Joint Stock Soc'y v. Heublin, Inc.*, 936 F. Supp. 177, 192 (D.

Del. 1996), or considers as well affidavits and other evidence submitted on personal

jurisdiction. *Grumbkow v. Walt Disney Co.*, No. CIV A 06-489-JJF, 2007 WL 570196, at

*2 (D. Del. Feb. 20, 2007).  Under either standard, the Court accepts Plaintiff's well-pled averments as true.  *Id.*

On a motion to dismiss for *forum non conveniens*, the movant bears a heavy burden that must be carried as to all elements of *forum* analysis.  *See Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 180 (3d Cir. 1991) ("*Lacey II*").  The movant "must establish 'a strong preponderance in favor of dismissal.'"  *Lony v. E.I. du Pont de Nemours & Co.*, 935 F.2d 604, 609 (3d Cir. 1991) ("*Lony II*") (quoting *Lacey II*, 932 F.2d at 179).  "The test for *forum non conveniens* is not a simple matter of which side has the weightier argument.  Instead, the burden is on the defendant to show that the factors tilt 'strongly' in favor of trial in a foreign forum."  *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F. Supp. 2d 289, 335 (S.D.N.Y. 2003) (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 100 (2d Cir. 2000)).

## STATEMENT OF FACTS

Hershey offers numerous merits contentions in its motion to dismiss, contentions which are to be resolved, if at all, after both parties have had the opportunity to conduct discovery.  The facts relevant to the present motion, by contrast, emerge from two sources:  (1) facts alleged on the face of Solae's complaint, which are taken as true for purposes of resolving Hershey's motion; and (2) factual admissions by Hershey.  To the extent the Court determines to consult materials outside the pleadings at this threshold stage, Solae has submitted affidavits addressing: (1) contract formation issues raised by Hershey; and (2) Hershey's unfounded allegations of "bad faith" by Solae in initiating this action.

**The Complaint**

Accepted as true in resolving the pending motion are the following alleged facts:

- Solae is a Delaware limited liability company. (Am. Complaint ¶ 2.)

- Written Conditions of Sale exchanged between the parties govern the soy lecithin purchase transaction between Hershey and Solae. (Am. Complaint ¶¶ 12-18.)

- The Conditions of Sale contain a forum selection clause selecting Delaware as the jurisdiction in which disputes between the parties must be resolved and Delaware as the law to be applied. (Am. Complaint ¶¶ 7 and 17.)

**Hershey Admissions**

In its Brief and supporting declarations, Hershey offered the following admissions which bear on the Court's analysis of the forum selection:

- The basis – indeed, the "sole basis" – for Solae initiating suit in this Delaware forum was a forum selection clause which dictated a Delaware forum. (Brief at 2).

- A representative of The Hershey Company in Hershey, Pennsylvania,[1] Kimberly McLucas, negotiated a Quantity Agreement that established the Hershey and Solae sales relationship for 2006. (J. Kuehl Decl. ¶¶ 5, 8, D.I. 10; K. McLucas Decl. ¶ 2, D.I. 30.)

- Susan Angele, Vice President of The Hershey Company, of Hershey, Pennsylvania, is heavily involved in this matter, and performs work for Hershey pursuant to a service contract. (S. Angele Decl. ¶ 1, D.I. 12.)

---

[1] Hershey is a wholly-owned subsidiary of The Hershey Company, a Delaware corporation. (S. Angele Decl. ¶ 2.)

- Hershey has dealings relevant to this dispute with Solae representatives in settings throughout the United States, including Missouri, Illinois, and Wisconsin. (J. Kuehl Decl. ¶¶ 3, 6; Brief at 3, 20.)

- Hershey is closing the Smith Falls plant, the location where the allegedly contaminated lecithin was used, by 2008, calling into question the availability of the plant and its employees as evidence in this case. (Brief at 21.)

- The recall at issue included product that was shipped to the United States, necessitating the involvement of the United Stated Food and Drug Administration. (Brief at 28.)

- The document Hershey now calls the "Quantity Contract," and seems to assert is the contract between the parties, was never sent to Solae or received by a Solae employee. The address on the document was not the correct Solae address at the time, nor the address to which Hershey regularly sends its orders to Solae. Nor had it been for approximately two years. The identified fax number was not a current Solae fax number. (*See, e.g.* Hershey Purchase Order Jan. 11, 2006 (attached as Exhibit B to Declaration of Kimberly McLucas).)

**Additional Salient Facts**

To the extent the Court determines to consider matters outside the pleadings and Hershey's admissions in order to resolve this motion, Solae makes further submissions to this Court bearing on Hershey's contentions that (a) Solae filed in Delaware in "bad faith" and (b) which terms and conditions govern the parties' relationship:

- In response to Hershey's assertion that Solae's stated reasons for cancelling a March 8, 2007 meeting were a pretext for Solae's alleged decision to file first in

Delaware, the facts are that Solae did in fact cancel the March 8 meeting with Hershey after Solae's insurer cancelled a meeting with Solae that had been scheduled for March 6, 2007, and because Solae was to meet with a corporate executive prior to holding further discussions with Hershey – and did indeed have that meeting.  (J. Self Aff. ¶¶ 4-5, D.I. 20.)

- Through substantial prior dealings between the parties, the written Solae terms and conditions, including the Delaware forum selection clause, were well known to Hershey and its parent corporation.  Solae's terms were included in several pre-shipment confirmations of orders months prior to the shipments now at issue. (Am. Complaint at ¶ 12; L. Cradick Aff. at ¶¶ 25-27; C. Wright Aff. at ¶¶ 8-20.)

- By contrast, Solae did not receive Hershey's so-called "Quantity Contract."  It was addressed to a long defunct fax number and location.  (L. Craddick Aff. ¶¶ 18-23.)  Ms. McLucas, and other Hershey personnel, were aware of Solae's correct contact information.  (L. Cradick Aff. ¶ 22.)

## ARGUMENT

## I.    HERSHEY DOES NOT DENY THIS COURT'S JURISDICTION OVER THIS DISPUTE

It is worthwhile at the outset to note what Hershey's motion is *not* about.  This declaratory judgment and breach of contract action was brought pursuant to two independent aspects of this Court's subject matter jurisdiction, federal question and diversity jurisdiction.  (Am. Complaint ¶¶ 4-5.)  Hershey questions neither.

Nor does Hershey deny that the parties have a live, ripe controversy.  To the contrary:  Hershey concedes that it sent Solae a letter in November 2006 -- fully seven months ago – committing to extract *"all damages"* from Solae.  (Brief at 3.)  Hershey

9

likewise concedes that one month later it entered with Solae into a common interest agreement which made clear – according to Hershey itself – that, in the absence of settlement, "***there would be 'litigation related to the matters in dispute.'***" (Brief at 11.) Hershey thus never disputes that Solae's action meets the standards for initiating a declaratory action – *i.e.*, to enable a person reasonably at legal risk because of an unresolved dispute "to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side." *Nutrasweeet Co. v. Ajinomoto Co.*, 423 F. Supp. 2d 450, 454 (D. Del. 2006) (citing *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 977 (Fed. Cir. 1993)). *See also Chase Manhattan Bank, USA v. Freedom Card, Inc.*, 265 F. Supp. 2d 445, 450 n.8 (D. Del. 2005). There is no dispute here that Solae, at the time it filed this action, was "reasonably at legal risk because of an unresolved dispute." *Nutrasweeet Co.*, 423 F. Supp. 2d at 454.

Further, as time passed Hershey escalated its damage claims, thus creating the very type of ongoing uncertainty for which the declaratory judgment process was designed. *ACandS, Inc. v. Aetna Cas. and Sur. Co.*, 666 F.2d 819, 823 (3d Cir. 1981) ("[D]eclaratory judgment relief was intended to avoid . . . the 'accrual of avoidable damages to one not certain of his rights.'"). Thus, this is the quintessential declaratory action over which this Court indisputably has jurisdiction.

Finally, Hershey does not dispute (and in fact barely mentions) that Solae is suing not only for a declaratory judgment but also for breach of contract damages based on non-payment of a Solae invoice. (Am. Complaint ¶¶ 50-61.)

10

Thus, having had now two motion to dismiss opportunities and several months in which to make its case, Hershey does not deny that Solae's Complaint plainly describes a present, justiciable controversy.

## II.    HERSHEY'S MOTION TO DISMISS FOR *FORUM NON CONVENIENS* SHOULD BE DENIED

Hershey's sole argument for dismissal, therefore, is one of discretion. Specifically, it asks the Court to dismiss this case, pursuant to *forum non conveniens*, in favor of an action now pending in Ontario, Canada.

### A.    Governing *Forum Non Conveniens* Principles

The doctrine of *forum non conveniens* affords a federal court discretion to dismiss a pending action "when an alternative forum has jurisdiction . . . , and . . . trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience." *American Dredging Co. v. Miller*, 510 U.S. 443, 447-448 (1994) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)). *Forum non conveniens* is the doctrine that governs when a forum dispute pits courts of different countries. *See Reavis v. Gulf Oil Corp.*, 85 F.R.D. 666, 669 (D. Del. 1980).

A plaintiff generally has the right to select its forum, and that forum selection is owed substantial deference. *Lony v. E.I. du Pont de Nemours & Co.*, 886 F.2d 628, 633 (3d Cir. 1989) ("*Lony I*"). Thus, courts of this Circuit, as elsewhere, are mindful that "dismissal for *forum non conveniens* is the exception, rather than the rule." *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 46 (3d Cir. 1988) ("*Lacey I*").

The party seeking discretionary dismissal for *forum non conveniens*, in order to establish "vexation and oppressiveness," must demonstrate that "private and public interest factors **weigh heavily** in favor of dismissal." *Lacey II*, 932 F.2d at 180 (emphasis

11

added).  Private interest factors include:  (i) access to proof; (ii) availability of process for attendance of witnesses; (iii) cost of obtaining attendance of witnesses; and (iv) other practical problems.  Public interest factors include:  (i) the burden on a busy court; (ii) imposition on jurors called to hear a case with no relation to the forum; and (iii) the forum court's familiarity with applicable laws.  *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-9 (1947).  Hershey, the party seeking dismissal, "bears the burden of [each] element of the . . . analysis."  *Lony II*, 935 F.2d at 609.  The burden on Hershey "is a strong one."  *Id.*

As this test suggests, the party seeking dismissal (here, Hershey) bears a heavy burden, a burden which it must carry as to all elements of *forum non conveniens* analysis. *Lacey II*, 932 F.2d at 180.  To prevail, Hershey must establish that "trial in the chosen forum would establish . . . oppressiveness and vexation to the defendant . . . out of all proportion to plaintiff's convenience."  *Piper Aircraft Co.*, 454 U.S. at 241.

Hershey's articulation of governing principles is rather different – and in error. Hershey argues that a motion to dismiss based on *forum non conveniens* "go[es] to the court's subject matter jurisdiction over the action, and '[i]n resolving the jurisdictional dispute, the district court must review the pleadings and any evidence before it, such as affidavits." (Brief at 6-7 (citations omitted).)  This is incorrect.[2]  *Forum non conveniens* does not go to this Court's subject matter jurisdiction.  *See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184, 1192-94 (2007) (drawing distinctions

---

[2] Hershey's single cited authority for this proposition, *In re Livent, Inc.*, 78 F. Supp. 2d 194, 200 (S.D.N.Y. 1999), is not of this Circuit and does not explain the basis for its assertion that *forum non conveniens* may be considered jurisdictional.

between *forum non conveniens* and jurisdictional bases for dismissal). *Forum non conveniens* does not question a court's power to adjudicate a matter before it, but rather is a discretionary tool that courts may use where another forum also has jurisdiction and the balance of factors strongly so dictate. *See Sandvik AB v. Advent Int'l Corp.*, 83 F. Supp. 2d 442, 449 (D. Del. 1999) ("The doctrine of forum non conveniens arises out of the power of a court to decline to exercise its jurisdiction in exceptional cases."); *Lacey I*, 862 F.2d at 42-3.[3]

Hershey also suggests burden-shifting, specifically, that where "a defendant contests any of the jurisdictional allegations as pled by the plaintiff, the courts must permit the plaintiff to respond with rebuttal evidence in support of the jurisdiction," (Brief at 7 (citations omitted)). This too is mistaken, as it is long settled that the movant bears all burdens on its *forum non conveniens* motion. *See, e.g., Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1226 (3d Cir. 1995); *Lony II*, 935 F.2d at 609. Hershey offers this Court no Third Circuit authority, or other controlling authority, to the contrary.

Hershey has not, and cannot, meet its burden.

### B. Solae Filed In Its Home Forum

In seeking to carry its burden, Hershey initially represented to this Court that Solae's chosen forum was entitled to little deference because Delaware is not Solae's "home turf." Prior Brief at 11. No longer. Hershey now apparently recognizes that a United States corporation has two homes: its principal place of business and its place of incorporation. Solae is a limited liability company incorporated in the State of Delaware

---

[3] The recent Supreme Court decision on *forum non conveniens*, also cited in Hershey's Brief at page 25, iterates this same point. *See Sinochem Int'l Co. Ltd.*, 127 S. Ct. at 1190.

– the state in which it filed suit. (Am. Complaint ¶ 2; Brief at 18.) "A corporation's decision to incorporate in a particular state is a rational and legitimate reason to choose to litigate in that state," which entitles a plaintiff's choice of forum to "paramount consideration." *Trilegiant Loyalty Solutions, Inc. v. Maritz*, No. 04-360-JJF, 2005 WL 441077, at *2 (D. Del. Feb. 15, 2005) (denying motion to transfer action to Missouri even though plaintiff Delaware corporation's principal place of business was Virginia and claim arose in defendant's principal place of business, Missouri). Indeed, "[f]or purposes of a *forum non conveniens* determination, the home forum of any United States resident is any United States Court." *Presbyterian Church of Sudan*, 244 F. Supp. 2d at 339. *See also Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142, 146-7 (2d Cir. 2000); *Reid-Walen v. Hansen*, 933 F.2d 1390, 1394 (8th Cir. 1991) (recognizing that in *forum non conveniens* analysis, the home forum is not necessarily the district where plaintiff resides but any district in the United States when the alternative is a foreign court).[4]

While an American citizen does not have an absolute right under all circumstances to sue in an American court, "where, as here, application of the doctrine of *forum non conveniens* would force an American citizen to seek redress in a foreign court, courts of the United States are reluctant to apply the doctrine." *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 646 (2d Cir. 1956). That is precisely the issue here: Hershey asks this Court to "force an American citizen [Solae] to seek redress in a foreign

---

[4] Hershey initially confused motion to transfer analysis with *forum non conveniens* analysis. The cases Hershey cited for its "home turf" proposition each addressed the transfer of a case from one United States court to another United States court pursuant to 28 U.S.C. §1404(a) – not ***outright dismissal*** of an action for *forum non conveniens*. Dismissal, to state the obvious, is a harsher consequence than transfer, and the "limitation on its exercise is narrower than under the transfer statute." *D'Angelo v. Petroleos Mexicanos*, 398 F.Supp. 72, 83 (D. Del. 1975).

court [in Ontario, Canada.]." Indeed, the Court of Appeals for the Third Circuit has stressed that a United States plaintiff's choice of its home forum should not be disregarded absent "persuasive evidence that the retention of jurisdiction will result in manifest injustice to the [defendant]. This is so even though the more convenient forum may be the foreign one." *Mobil Tankers Co., S.A. v. Mene Grande Oil Co.*, 363 F.2d 611, 614 (3d Cir. 1966), *cert. denied*, 385 U.S. 945 (1966). *See also Estate of King v. Cessna Aircraft Co.,* 405 F. Supp. 2d 1374, 1377 (S.D. Fla. 2005) (The "presumption for the plaintiff's choice [of forum] is strongest when the plaintiff is a United States citizen, resident or corporation. In fact, a material injustice must manifest before a court can deny a United States citizen access to a United States court.").[5]

Thus, "if an American plaintiff can be relegated to a foreign forum at all, the circumstances in which it is appropriate to do so are narrowly limited." *Reavis*, 85 F.R.D. at 670. The narrow circumstances envisioned are not present here. Given the size, resources and corporate reach of the Hershey corporate family, one cannot credibly suggest that Hershey will face a significant hardship by litigating in Solae's home forum. *Trilegiant Loyalty Solutions, Inc.*, 2005 WL 441077, at *2.

### C. This Case Has A Significant Nexus With the United States Generally and Delaware In Particular

As now demonstrated in both parties' briefing, the location of evidence and key witnesses in the United States, as well as the parties' contractual selection of a Delaware forum, create substantial and material connections to Delaware and the United States.

---

[5] Failure to favorably weigh a United States citizen's choice of a United States forum in *forum non conveniens* analysis has been considered reversible error. *Wiwa*, 226 F.3d at 103.

First, as well-pled in Solae's Amended Complaint, the parties' contract contains a

forum selection clause placing any disputed claims in Delaware. That clause provides:

> *This Agreement is to be construed and the respective rights of Buyer and Seller are to be determined according to the laws of the State of Delaware, USA,* without regard to choice of law or conflict principles of Delaware or any other jurisdictions, and *the courts of Delaware shall have exclusive jurisdiction over any disputes or issues arising under this Agreement.* The United Nations Convention on Contracts for the International Sale of Goods shall not govern this Agreement or the performance thereof or any aspect of any dispute arising therefrom.

(Am. Complaint ¶ 17 (quoting Solae Conditions of Sale ¶ 17) (emphasis added).) In

making *forum non conveniens* determinations, forum selection clauses are to be enforced

absent a strong showing of evidence of fraud, undue influence, or unequal bargaining

power. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12-13 (1972). Indeed, "the

presence of a forum selection clause . . . changes the [*forum non conveniens*] analysis"

and becomes "the dominant factor in the determination." *L & L Constr. Assocs., Inc. v.*

*Slattery Skanska, Inc.*, No. CIV 05-1289, 2006 WL 1102814, at *5 (D.D.C. Mar. 31,

2006).

Second, the location of significant events, evidence and parties in the United

States confound Hershey's efforts to prove oppressiveness or vexation should the case

remain in Delaware. The contacts relevant to *forum non conveniens* analysis are *not*

merely Delaware contacts, but United States contacts in general. Hershey wishes to

challenge this principle, preferring a Delaware-only *forum* analysis. (Brief at 18.)

Hershey cites not a single authority articulating its view, saying merely that this "simply

cannot be squared" with law. *Id.* In reality, the law provides that "[t]he greater the

plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of

choice . . . the more difficult it will be for the defendant to gain dismissal for *forum non*

*conveniens*." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71-2 (2d Cir. 2001). "[T]he benefit for a U.S. resident plaintiff of suing in a U.S. forum is not limited to suits in the very district where the plaintiff resides." *Wiwa*, 226 F.3d at 103. Thus, a United States plaintiff's connections to the United States – not merely to the chosen forum – vis-à-vis its "citizenship and residence is entitled to consideration in favor of retaining jurisdiction." *Id.* at 102. *See also Guidi*, 224 F.3d at 146-7.

Hershey thus dooms its quest for discretionary dismissal by emphasizing, at great length, the numerous and critical contacts between the parties' dispute and the United States, all of which render this Delaware court an appropriate forum. Hershey's Brief lists, in bullet format on page 20, this dispute's significant connections with the United States, in locations as varied as Missouri, Chicago, and Illinois. The sworn declarations submitted by Hershey's employees, Mr. Kuehl, Ms. Angele, and Ms. McLucas, likewise underscore with great emphasis these United States connections. (J. Kuehl Decl. ¶¶ 3, 5, 6, 8, 13.)

But there is more – much more – by way of relevant United States contacts that Hershey omits. Of particular significance:

- The soy lecithin that Hershey alleges was contaminated with *Salmonella* was manufactured in the United States (in Gibson City, Illinois) – not Canada. (L. Cradick Aff. ¶ 10; J. Kuehl Decl. ¶ 13.)

- All orders for this soy lecithin were delivered to Solae's offices within the United States – not Canada. (L. Cradick Aff. ¶ 7; J. Kuehl Decl. ¶¶ 9-10.)

- Operative contract negotiations between The Hershey Company (a Delaware corporation) and Solae were conducted by The Hershey Company's

representative who was located in Hershey, Pennsylvania, less than 90 miles from this Court – but approximately 400 miles from the pertinent Canadian courthouse. (L. Cradick Aff. ¶¶ 3-4; K. McLucas Decl. ¶ 1.)

- Some of the Hershey chocolate product recalled and at issue in this dispute was shipped to the United States. Although omitted from its Prior Motion, Hershey now admits that the United States food authority – the United States Food and Drug Administration – was instrumental in investigating the recall and in visiting both Hershey and Solae. (Brief at 28.)

- Hershey's defense to this action – again by Hershey's own account – pivots on Solae's production, testing and shipment of soy lecithin. The witnesses and other evidence central to these issues are found in the United States, not Canada. (L. Cradick Aff. ¶¶ 15-16.) Thus, Hershey contends (Brief at 3) that the soy lecithin was contaminated when it left Solae's manufacturing plant – a plant located *in the United States*, not Canada.

- Hershey's own declarations confirm that much of the evidence which Hershey considers essential to the negotiation of the contract is located in Hershey, Pennsylvania, and is under the control of The Hershey Company, including its Pennsylvania employee Kimberly McLucas. (J. Kuehl Decl. ¶¶ 5 and 8; K. McLucas Decl. ¶ 1.)

- Solae never received the so-called "Quantity Contract" that Hershey now identifies as an element of the parties' contract. (L. Cradick Aff. ¶¶ 18-23.) There are, to put it mildly, significant factual issues regarding Hershey's assertion that its "Quantity Contract" was sent from Hershey, Pennsylvania to Solae. These

18

factual issues hinge on site locations and persons resident in the United States, not Canada. (K. McLucas Decl. ¶¶ 7-10).

Further, there is no issue regarding the availability of key witnesses to appear before this Court:

- Ms. McLucas and other participants in the sales transaction at issue may be subpoenaed to appear as witnesses before this Court, pursuant to Fed. R. Civ. P. 45(b)(2).

- As a Delaware corporation, The Hershey Company, and its employees, may be subpoenaed to appear as third-party witnesses in this matter pursuant to this Court's subpoena powers over Delaware corporations. Fed. R. Civ. P. 45(b)(2).

- The Delaware forum is a vastly more convenient location for these non-party witnesses from The Hershey Company than a Canadian venue.

- All witnesses involved in the production, quality assurance, and shipment of the lecithin from Solae are Solae employees located in the United States. (L. Cradick Aff. ¶¶ 15-16.)

Finally, Hershey now admits that its manufacturing facility in Smith Falls, Ontario – the facility that produced the contaminated product at issue – is to be closed in 2008. (Brief at 21.) This renders idle Hershey's speculation that "it is highly likely that a jury would benefit from a visit to Hershey's Smiths Falls manufacturing facility" as Hershey cannot even guarantee the availability of the facility by the time a jury would be empanelled. (Brief at 21.)

These substantial United States and Delaware contacts leave Hershey far afield in relying so heavily upon *Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc.,* 295

F. Supp. 2d 400 (D. Del. 2002) ("*Bell Helicopter*"). *Bell Helicopter* involved an action

commenced in Delaware by a Delaware corporation located in Texas (Bell) against two

defendants (Cannon and C&C) located in Canada. In granting a motion to dismiss on

*forum non conveniens* grounds, the Court found that virtually all sources of evidence

were in Canada. As the court summarized the facts in *Bell*:

> All of Cannon's and C&C's sources of proof are in Canada, including
> their president and employees. [P]ersonnel [of USCAN, an involved third
> party] are also located in Canada and their testimony can only be
> compelled by Canadian courts. Bell itself does business in Canada, yet
> neither of the defendants do business in Delaware.

*Id.* at 411-12. By Hershey's admission, the facts here are quite otherwise. Evidence

pivotal to this dispute is found in the United States, in some instances near this district,

and within the subpoena power of this Court.

Private factor considerations thus favor this Delaware forum.

### D.    Canadian Law and Procedures Do Not Dictate A Canadian Forum

In its new briefing Hershey correctly acknowledges that the adequacy of the

foreign forum is a threshold burden which the movant must satisfy before proceeding to

relevant private and public interest considerations. In contrast to its Prior Brief, which

cited no Canadian authority and nothing whatever by way of Canadian court practice or

procedure, Hershey has now submitted a declaration on Canadian law by one John

Wilson Morden.[6] (Brief at 16-17.) While Mr. Morden's information is an improvement

over no information, it turns out that Mr. Morden does not take issue with any statements

---

[6] Throughout its new *forum* discussion Hershey has replaced references to "Canada" with
its preferred term "Ontario." (Brief at 20, 21, 24.) Hershey provides no argument or law
counseling this change. This change does not aid Hershey, and does not alter proper
*forum* analysis.

in the affidavit originally submitted by Solae's affiant, John Morin, an attorney experienced in Canadian courts and procedure. Mr. Morin's affidavit was attached to Solae's previous Opposition, as it remains the case that:

- There is no right in Canada to compel the appearance of former employees of parties for discovery purposes (J. Morin Aff. ¶ 15, D.I. 21.)

- Leave to examine non-party witnesses prior to trial, regardless of their availability, is rarely granted. (*Id.* ¶¶ 20-22).

- The non-party governmental officials whom Hershey identified as relevant witnesses available only in Canada will actually be unavailable for pre-trial examination. (*Id.* ¶ 15.)

- No direct examination for discovery may be made of experts hired by the parties. (*Id.* ¶¶ 15, 20, 23.)

- Discovery of a corporate party is limited to the examination, either oral or written, of only one employee. (*Id.* ¶¶ 16-17.) The limitation on the personal knowledge of this employee, and the process of obtaining relevant information not personally known by the employee, make traditional discovery of facts difficult. (*Id.* ¶¶ 17-19.)

- If oral discovery is taken, written discovery is disallowed. (*Id.* ¶ 13.)

- In conjunction with the closure of its Smith Falls plant, Hershey reportedly intends to lay off the majority of the Smith Falls employees. As there is no right to compel the appearance of former employees of parties to be examined for discovery (*id.* ¶ 15), and leave to examine non-party witnesses, regardless of their availability, is rarely granted (*id.* ¶¶ 21-22), other "critical" Canadian witnesses

referenced by Hershey (Brief at 15) will likely be unavailable for discovery examination in the Canadian venue without leave of the court.

- A request for a jury trial is unlikely to be granted in Ontario -- that is, if Hershey even requests one, as they have not as of yet. (J. Morin Aff. ¶¶ 24-30.) In the unlikely event that a jury were empanelled, a visit to the Canadian sites listed by Hershey (*i.e.,* the Wills Warehouse and the Smith Falls plant) would be allowed only if necessary to provide "meaningful assistance" in understanding the evidence, and such a "viewing" would not be considered evidence. (*Id.* ¶¶ 31-33.)

Hershey's contentions regarding the preferred status of a Canadian venue thus are to no avail.

### E.    Public Interest Considerations Favor This Forum

*Forum non conveniens* analysis next assesses public interest considerations, such as: (i) burden on a busy court; (ii) imposition on jurors called to hear a case with no relation to the forum; and (iii) the forum court's familiarity with applicable laws. *See Gulf Oil*, 330 U.S. at 508-9. At their core, the public interest considerations ask whether "the relinquishment of jurisdiction would best serve the ends of justice." *Mobil Tankers Co.,* 363 F.2d at 614.

Hershey has not demonstrated that justice is served by dismissal. Nor could it. The United States has a strong interest in resolving disputes concerning American businesses, their products and manufacturing methods. Delaware courts have an interest in assessing the applicability and effect of an agreement that contains a forum selection clause that selects Delaware fora. Delaware courts are well-equipped to analyze and apply United States substantive law – especially where, as here, the parties' contract

22

selects Delaware law. Delaware courts have an interest in determining the rights and obligations of parties (like Solae) which elect to incorporate in Delaware.

Further, as emphasized by the authorities Hershey itself submits, *forum non conveniens* is intended to further judicial economy, not create duplicate proceedings. (Brief at 24-5 (citing *Banco Nominees Ltd. v. Iroquois Brands, Ltd.*, 748 F. Supp. 1070, 1078 (D. Del. 1990).) As this Court would retain jurisdiction under any scenario over Solae's independent breach of contract claim relating to a second soy lecithin transaction, the outcome now sought by Hershey would create piecemeal litigation. *Snodgrass v. Provident Life and Acc. Ins. Co.*, 147 F.3d 1163, 1167 (9th Cir. 1998) ("[Dismissing] only the declaratory component of such an action will frequently produce piecemeal litigation, a result which the Declaratory Judgment Act was intended to avoid, rather than promote.").

Hershey submits "that the interests of justice and judicial economy would be better served if this matter were litigated in a forum that could efficiently and effectively resolve all of the many facets of the dispute in one fell swoop." (Brief at 24.) That jurisdiction is Delaware, in this Court.

### F.    Hershey's New Arguments Regarding Contract Formation And Governing Law Do Not Meet Its Burden

Hershey's final salvo on *forum non conveniens* is new. No longer able to question whether Solae sued on its "home turf"; no longer able quite so dramatically to claim the total absence of a Delaware nexus to this case,[7] and faced with the legal reality

---

[7] Gone from Hershey's new brief is its original assertions that Hershey is "a stranger to this forum" (Prior Brief at 9), with "no connection" with Delaware (*id.* at 2); "absolutely

(continued...)

23

that contacts nationwide govern a *forum non conveniens* analysis, Hershey now informs the Court that Hershey alone has now identified the actual contract between the parties. That supposed contract is a so-called "Quantity Contract." Indeed, by Hershey's account, "both parties admit" that this is the parties' contract. (Brief at 25.) Alternatively, Hershey now asserts for the first time that Solae agrees that under no circumstances would Delaware law govern this dispute. (Brief at 21-22, 25.)

The facts are otherwise. As well-pled in the Amended Complaint, the parties' terms and conditions provide that the United Nations Convention on Contracts for the International Sale of Goods ("CISG") governs contract formation, while Delaware law governs the substance of the parties' contractual relationship. (*See, e.g.*, Am. Complaint at ¶¶ 13-17, 43.) Hershey cites nothing for its sudden assertion that Solae believes otherwise.

Hershey's contract formation analysis is likewise amiss. As demonstrated by the Amended Complaint, and the broader body of information now before this Court, (i) the 2006 Solae invoice provisions, including its forum selection clause, control the disputed transaction; (ii) Hershey received those terms (L. Cradick Aff. ¶ 11); (ii) those terms were familiar to Hershey, as Hershey and Solae had a long history of dealing under Solae's terms, as demonstrated by the terms contained in Solae's numerous purchase confirmations and invoices, as attached (C. Compas Aff. ¶¶ 3-13; L. Cradick Aff. ¶¶ 13-14; C. Wright Aff. ¶¶ 8-20); (iii) Solae's representative reasonably understood that

---

(continued)

no connection" to Delaware (*id*. at 2-3) and "no connection whatsoever to Delaware" (*id*. at 9).

Solae's regular and familiar terms would control each soy lecithin shipment (L. Cradick Aff. ¶ 5); (iv) the discussions between the parties regarding 2006 shipments to Hershey did not give rise to a binding contract (L. Cradick Aff. ¶¶ 24-25); (v) the parties' course of dealing as to these shipments confirms that these annual volume discussions did not create binding agreements (L. Cradick Aff. ¶¶ 26-27); (vi) Hershey's "Quantity Contract" was not received by Solae (L. Cradick Aff. ¶ 18); (vii) no document akin to Hershey's "Quantity Contract," or any document setting forth terms from Hershey, had been seen by Ms. Cradick prior to this litigation (L. Cradick Aff. ¶ 23).

For its contrary contract formation theory, Hershey cites a single Ninth Circuit case, *Chateau du Charmes Wines Ltd. v. Sabate USA, Inc.*, 328 F.3d 528 (9th Cir. 2003). *Chateau* addressed a purchase transaction between a cork manufacturer and a winery. The Ninth Circuit found that two phone calls between the parties formed an oral contract, and hence that a later-submitted invoice could not therefore be the parties' contract. *Id.* at 531. The Ninth Circuit thus stated a tautology: if the contract is already formed, a later document cannot be the contract. Here, by contrast, there was no contract between Hershey and Solae when in 2006 the parties exchanged the Solae terms and conditions which, according to Solae's complaint, formed the parties' contractual relationship.

Tellingly, *Chateau* confirms that under the CISG "all relevant circumstances" govern the parties' contracting intent, including "any practices which the parties have established between themselves, usages and any subsequent conduct of the parties." *Id.* (quoting CISG). The Solae terms were well known to Hershey from years of sales and dozens of transactions wherein these very terms were provided to both Hershey and its parent corporation, including in several pre-shipment confirmations of orders months

25

prior to the shipments in contention. (Am. Complaint at ¶ 12; C. Compas Aff. ¶¶ 3-13; L. Cradick Aff. ¶ 13-14; C. Wright ¶¶ 8-20.)

At any rate, a *forum non conveniens* motion is not the proper vehicle for resolving the merits of Hershey's theory of contract formation. While a district court presented such a motion may "immerse itself to a certain degree in the facts of the case" prior to discovery, the "court must do no more than delineate the likely contours of the case by ascertaining, among other things, the nature of the plaintiff's action, the existence of any potential defenses, and the essential sources of proof." *Lacey II*, 932 A.2d at 181. *See Lacey I*, 862 F.2d at 45 ("[A] 'motion to dismiss for *forum non conveniens* does not call for a detailed development of the entire case . . . .'"). The Court need not accept Hershey's invitation – before any discovery has begun – to make ultimate merits determinations in resolving Hershey's threshold motion, particularly where factors other than the forum selection clause render this Delaware forum appropriate.

### G.    If Doubt Remains, The Proper Course Is *Forum Non Conveniens* Discovery

Hershey has not met its heavy burden of justifying a discretionary dismissal of this action. Should doubt remain on this score, however, the proper course is not to accede to Hershey's view of the merits, nor to resolve the merits. In such circumstances, "it behooves courts to permit discovery on facts relevant to *forum non conveniens* motions." *In re Bridgestone/Firestone Inc.*, 131 F. Supp. 2d 1027, 1029-30 (S.D. Ind. 2001). While "a motion to dismiss for *forum non conveniens* does not typically require a detailed development of the entire case through discovery, courts will allow limited

discovery when warranted." *Beebe v. Housatonic R.R. Co.*, No. 05-CV-0021, 2005 WL 1173974, at *3 (N.D.N.Y. May 12, 2005) (internal quotations omitted).[8]

Courts, in short, avoid significant merits determinations "at this nascent stage of the litigation." *Lacey II*, 932 F.2d at 181. Either Hershey has not met its burden, or discovery should ensue.

## III. THIS COURT HAS PERSONAL JURISDICTION OVER HERSHEY CANADA – OR DISCOVERY SHOULD PROCEED ON THAT ISSUE

Finally, Hershey asserts that it is "clear that this Court lacks personal jurisdiction over Hershey." (Brief at 25.)

### A. Legal Standards

In "reviewing a motion to dismiss a case for lack of in personam jurisdiction, [courts] must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Savings Bank*, 954 F.2d at 142 n.1. While the plaintiff bears the burden of establishing personal jurisdiction once it has been challenged by the defendant, courts are required to "tak[e] Plaintiff's averments as true . . . ." *Grumbkow*, 2007 WL 570196, at *2. Once plaintiff makes a prima facie showing by a preponderance of the evidence that personal jurisdiction exists, "the burden shifts to the defendant to 'present a compelling case that the presence of some other consideration would render jurisdiction unreasonable.'" *Hadley*, 2003 WL 21960406, at *2 (quoting *Grand Entm't*

---

[8] *See also Niv v. Hilton Hotels Corp.*, No. 06 Civ. 7839(PKL), 2007 WL 510113, at *1 (S.D.N.Y. Feb. 15, 2007); *Anderson-Tully Lumber Co. v. Int'l Forest Prods.*, No. 5:05-cv-68(DCB)(JCS), 2006 WL 2571273, at *3 (S.D. Miss. Sept. 5, 2006); *Duha v. Agrium, Inc.*, 448 F.3d 867, 871 (6th Cir. 2006) (noting district court's provision of discovery on *forum non conveniens*); *Initiatives, Inc. v. Korea Trading Corp.*, 991 F. Supp. 476, 477 (E.D. Va. 1997); *Cytotherapeutics, Inc. v. Neurospheres, Ltd.*, No. Civ.A. 97-019L, 1997 WL 33547301, at *1 (D.R.I. Mar. 13, 1997).

*Group v. Star Media Sales*, 988 F.2d 476, 483 (3d Cir. 1993)). "In the context of a motion to dismiss, the record must be viewed in the light most favorable to the non-moving party." *Id.* (denying a motion to dismiss for lack of personal jurisdiction as forum selection clause demonstrated consent to the forum).

Hershey now suggests a different standard, requiring a plaintiff to "establish jurisdictional facts through sworn affidavits or other competent evidence." (Brief at 6 (quoting *Grumbkow*, 2007 WL 570196, at \*2).) Under either standard, Hershey's personal jurisdiction motion should be denied.

### B. Hershey's Assent To A Delaware Forum Is Consent To Delaware Jurisdiction

This Court, like others in this Circuit, has observed that a motion to dismiss for lack of personal jurisdiction turns on a complaint provided it alleges the requisite Delaware contacts. *See Joint Stock Soc'y*, 936 F. Supp. at 192 ("Prior to the beginning of discovery, the nonmoving party may rely on the good faith factual allegations of its complaint, cross claims, or counterclaims if such allegations establish sufficient contacts between the moving party and Delaware."). *See also E.I. duPont de Nemours and Co. v. Rhodia Fiber and Resin Intermediates*, 197 F.R.D. 112, 119 (D. Del. 2000) (recognizing that a plaintiff need only present evidence in support of personal jurisdiction after commencement of discovery); *Siemens v. LG Semicon Co., Ltd.*, 69 F. Supp. 2d 622, 624 (D. Del. 1999) (holding that a plaintiff must present evidence in support of personal jurisdiction only after discovery has begun).

The Amended Complaint pleads facts showing that that the Court has personal jurisdiction over Hershey. The Amended Complaint pleads that the parties, in their contracting as sophisticated parties, selected a Delaware forum. (Am. Complaint ¶¶ 14-

18.)  As explained in *Hadley v. Shaffer*, 2003 WL 21960406, at \*3, a party bound by a

forum selection clause is deemed to have thereby expressly consented to personal

jurisdiction, and such express consent is "deemed to be a waiver of any objection on Due

Process grounds and an analysis of minimum contacts becomes unnecessary."  *See also*

*Hornberger Mgmt. Co. v. Haws & Tingle Gen. Contractors, Inc.*, 685 A.2d 724, 727

(Del. Super. Ct. 2000).   "Forum selection clauses are entitled to great weight, and are

presumptively valid."  *Wall St. Aubrey Golf v. Aubrey,* 189 Fed.Appx. 82, 85 (3d Cir.

June 5, 2006) (upholding lower court finding that contractual forum selection clause

controls).

As pled by the Amended Complaint, the Conditions of Sale which govern the

parties' dispute provides that "*[t]his Agreement is to be construed and the respective*

*rights of Buyer and Seller are to be determined according to the laws of the State of*

*Delaware*" and "*the courts of Delaware shall have exclusive jurisdiction over any*

*disputes or issues arising under this Agreement.*"  (Am. Complaint ¶ 17 (quoting Solae

Conditions of Sale ¶ 17) (emphasis added).)  The Amended Complaint alleges further that

Hershey assented to these terms, thereby finalizing the parties' contract.  (Am. Complaint

¶¶ 14-18.)  Hershey concedes (Brief at 2) that Solae filed in this Court precisely because

of this forum selection provision.

"A complaint should be dismissed only if, after accepting as true all of the facts

alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no

relief could be granted under any set of facts consistent with the allegations of the

complaint."  *Brown*, 2007 WL 1219624, at \*1.  Accepting for this purpose the facts

alleged in Solae's complaint, Hershey assented to Delaware as having "exclusive

jurisdiction" over this dispute.   It thereby assented to personal jurisdiction.   *See Hadley,* 2003 WL 21960406, at *3.

### C.  Jurisdictional Discovery Should Proceed If Doubt Remains

Hershey's alternate proposed standard turns not merely on the pleadings, but also on "competent evidence." (Brief at 6.)  Before discovery, of course, such "evidence" will by definition often be in short supply.  That said, Solae's original motion to dismiss opposition brief disclosed, based on nothing but a public records search, evidence of a security interest Hershey filed in Delaware.  After having originally denied any Delaware contacts whatsoever (Prior Brief at 9), Hershey has now acknowledged this voluntary contact with this forum.  (Brief at 28-29.)

Solae has also now submitted affidavits averring that (i) Solae and Hershey's prior dealings had been conducted under the contract terms identified by Solae; (ii) both Hershey and its parent, for whom Ms. McLucas works, were familiar with these terms; (iii) Hershey's supposed "Quantity Contract" was not received by Solae; and (iv) no Solae employee had seen any such document prior to its submission by Hershey in this litigation.  Hershey counters with factual disputes, pointing to a so-called "Quantity Contract" never received, much less acknowledged, by Solae.  Hershey offers this while ***not*** informing the Court of the years' worth of transactions between the parties involving exchange of the terms that the Amended Complaint purports is controlling.  (Am. Complaint at ¶ 12; C. Compas Aff. ¶¶ 3-13; L. Cradick Aff. ¶ 13-14; C. Wright ¶¶ 8-20.)

In any event, should the Court harbor doubts about personal jurisdiction, the next appropriate step is not to accept as true Hershey's blanket, untested and unsupported

assertion that it lacks contacts with Delaware – especially in the face of Solae's allegations to the contrary. The next step, instead, is jurisdictional discovery.

Delaware is a single transaction jurisdiction when it comes to personal jurisdiction. *See Health Trio v. Margules*, No. 06C-04-196, 2007 WL 544156, at \*4-5 (Del. Super. Ct. Jan. 16, 2007). "[P]ersonal jurisdiction can be asserted over a defendant on the basis of a single act related to the state, if the claim has its basis in the asserted transaction." *Hadley*, 2003 WL 21960406, at \*7. Minimum contacts with the forum, including consenting to an agreement which provided that the agreement "would be enforced in accordance with the laws of Delaware," are sufficient to bring one within Delaware's jurisdiction. *Id.* at \*8.

While Hershey's previous submission professed a complete absence of contacts with Delaware, including claiming that it had no interest in real property in Delaware, public records alone suggest otherwise. In response to Hershey's arguments in its Prior Brief, a cursory search of public records revealed that Hershey filed at least one claim on assets within Delaware, which Hershey now admits. (Brief at 28.) Whether Hershey in fact has other real estate and other interests in Delaware, and whether Hershey otherwise meets Delaware's "single transaction" test, are matters by definition not known or knowable by this Court or Solae absent discovery.

Given such uncertainties, courts in similar settings order discovery confined to personal jurisdiction considerations. Where a plaintiff has alleged facts "that suggest with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained." *Toys "R" US, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)

(internal quotations and citations omitted). Where the court is "satisfied that there is some indication that [these] particular defendant[s] [are] amenable to suit in this forum," there is "presumption in favor of allowing discovery to establish personal jurisdiction." *McNeil Nutritionals, LLC v. Sugar Ass'n*, No. C.A. 05-69(GMS), 2005 WL 1000242, at *1 (D. Del. Apr. 29, 2005). Accordingly, "the Third Circuit . . . ha[s] not hesitated to reverse a dismissal for lack of personal jurisdiction where the plaintiff asserts non-frivolous claims and the court has declined to grant limited discovery." *Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 86, 96-97 (D. Del. 2002) (granting plaintiff ninety days to conduct discovery confined to the issue of personal jurisdiction).

By operation of the well-pleaded complaint rule, Hershey's assent to a Delaware forum alone is dispositive of its personal jurisdiction challenge. If the Court determines otherwise, discovery is in order.

## IV.    HERSHEY'S UNSUPPORTED "BAD FAITH" CONTENTIONS ARE LEGALLY AND FACTUALLY UNFOUNDED

Hershey opens its brief with a broadside attack on Solae for "abusive tactics," its claim being that Solae's filing of a declaratory judgment action in Delaware had an "obvious purpose" amounting to "bad faith." (Brief at 9-15; Prior Brief at 4-9.) Hershey's incendiary and unbecoming argument is not only factually incorrect, but proceeds from a misapprehension of law regarding discretionary dismissal of declaratory actions.

First, Solae has not engaged in forum-shopping. Hershey again overlooks that, as pled in crystal-clear terms in its Complaint and Amended Complaint, "choosing" this forum was not a choice made by Solae. It was a choice, rather, made by the parties together, when they entered into a contract requiring that disputes like this one be

resolved "exclusively" in a Delaware forum. There is nothing ambiguous about this contractual dictate, and no room for Solae to have "forum-shopped" even had it so intended.

Second, although Hershey strategically coins this a "declaratory action," it is not. It is an action seeking declaratory relief *and* relief for a breach of contract. (Am. Complaint ¶¶ 50-61 (Counts IV and V, alleging Hershey's breach of contract).) In seeking dismissal, Hershey does not quarrel with Solae's contention that (a) it supplied soy lecithin product to Hershey which (b) Hershey has to this date not paid for, in violation of the parties' contract. (Brief at 14.) Hershey's failure to perform under its contract demonstrates, independent of declaratory relief, an "injury [that is] traceable to [Hershey's] . . . conduct and likely to be redressed by the requested relief." *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1337 (Fed. Cir. 2007).

Third, for its incendiary argument that filing here, and now, was somehow abusive, Hershey invokes the wrong body of case law. Specifically, it invokes "first-filed" case law, in which separate United States courts are found to have "concurrent jurisdiction." *See EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988); *Consol. Rail Corp. v. Grand Trunk W. R.R. Co.*, 592 F. Supp. 562, 568-69 (E.D. Pa. 1984). Thus, in *EEOC* – cited on page 11 of Hershey's brief – the EEOC issued a subpoena to the University in Pennsylvania, but before the EEOC could file to enforce the subpoena, the University filed a declaratory judgment action in a District of Columbia court. The Third Circuit held that the district court had not abused its discretion by refusing to dismiss the EEOC's later Pennsylvania enforcement action, even though the D.C. action was "first filed." The Court so held in large part because the University *had admitted* that it filed in

33

D.C. to avoid unfavorable Third Circuit law on the controlling legal issue in that case (whether University deliberations were protected from discovery). *EEOC v. Univ. of Pa.*, 850 F.2d at 978-79. Similarly, in *Consol. Rail Corp.*, also invoked by Hershey and cited on pages 13 and 14 of the brief, the court dismissed an action seeking a declaration that Conrail was not liable under the antitrust laws even though it was technically the "first filed" case, filed ahead of an antitrust damages action by Grand Trunk in Michigan. The Court reached this conclusion in part in recognition that there had been an earlier injunction action between the ***same*** parties in the ***same*** Michigan court in which substantial discovery had already occurred. *Consol. Rail Corp.*, 592 F. Supp. at 568-69.

The present case is not governed by first-filed analysis. The Court here is not presented with which of two cases was "first filed" in separate United States courts with "concurrent jurisdiction." Hershey's action was filed not in the United States, but in the courts of a foreign sovereign, Canada. The Third Circuit has made plain that the first-filed rule

> was never meant to apply where the two courts involved are not courts of the same sovereignty.

*Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.*, 651 F.2d 877, 887 n.10 (3d Cir. 1981). Hershey's first-filed case law does not aid the Court's analysis.[9]

In any event, the factual premises of Hershey's "abusive tactics" accusations are incorrect. What Hershey terms "months of negotiations" actually constituted one meeting between Hershey and Solae officials, and one substantive phone call to discuss the foundation for the damages figures Hershey had provided to Solae. The parties' other

---

[9] Hershey now characterizes Solae's supposed abandonment of first-filed analysis as a "concession." (Brief at 11 n.1.) The facts are the opposite.

34

communications focused on scheduling.    Further, Hershey contends that Solae behaved improperly by telling Hershey that (a) an insurance meeting was postponed as a reason for not proceeding with a settlement meeting to be held on March 8, 2007; and (b) Solae counsel needed to speak with a "decision maker" before proceeding with the March 8 meeting.  It is true that Solae made these statements.  And each was, and remains, true. As explained in an affidavit of Jack Self, Solae's Director of Global Lecithin:

- Solae's insurer, Great American Custom Insurance Services, Inc. ("Great American"), in fact postponed a meeting that was to take place on March 6 that was to be a predicate for the March 8 meeting with Hershey.  Solae was informed that the meeting cancellation was due to the illness of Great American's agent, Camella Pratt, who had been working on this matter. (J. Self Aff. ¶ 4.)  Solae's coordination with Great American was mandated by insurer-insured relations, and an important component of its evaluation of the possibility of settlement.  (*Id.* ¶ 4.)

- Counsel for Solae in fact was to meet with a decision-maker in advance of the scheduled March 8 meeting.  And, entirely consistent with Solae's report to Hershey – the report that Hershey now calls bad faith – that meeting eventually took place on March 7. (*Id.* ¶ 5.)

In reality, the timing of Solae's filing was dictated not to secure a preferred forum – since a contractual forum selection clause dictated the forum – but by a sober assessment of the likelihood of settlement at a given point in time.  As noted above, Hershey had in writing demanded "all damages" to be paid by Solae.  Hershey had made clear that "all damages," according to Hershey, totaled in the many millions of dollars.

This was in contrast to the parties' contract, as pled in the Complaint, under which damages (if any) were limited to the purchase price of the soy lecithin, or approximately $50,000. (*Id.* ¶¶ 6-7.) Given the disparity between the parties' positions, and the uncertainty created by Hershey's claims of escalating damages, it was perfectly customary, appropriate and reasonable for Solae to file a declaratory judgment and breach of contract action in this Court, the forum specified in the parties' contract. However powerful, Hershey does not alone get to decide when to talk settlement, and on what terms.

Bad faith allegations should be leveled cautiously, and with humility.

### CONCLUSION

Hershey Canada, Inc.'s motion to dismiss on grounds of *forum non conveniens* and lack of personal jurisdiction should be denied. In the alternative, this Court should grant discovery limited to these issues.

June 25, 2007

P. Clarkson Collins, Jr. (I.D. No. 739)
Katherine J. Neikirk (I.D. No. 4124)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware 19899
(302) 888-6800
(302) 571-1750 (fax)
pcollins@morrisjames.com
kneikirk@morrisjames.com

Scott L. Winkelman
Monica M. Welt
CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.

Washington, D.C. 20004-2595
(202) 264-2500

Attorneys for Plaintiff Solae, LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SOLAE, LLC,                          )
                                     )
            Plaintiff                )
                                     )        C.A. No. 07-140-JJF
vs.                                  )
                                     )
HERSHEY CANADA INC.,                 )
                                     )
            Defendant.               )
                                     )

**COMPENDIUM OF UNREPORTED CASES
CITED IN ANSWERING BRIEF OF SOLAE, LLC
IN OPPOSITION MOTION TO DISMISS**

MORRIS JAMES LLP

P. Clarkson Collins (I.D. No. 739)
Katherine J. Neikirk (I.D. No. 4129)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware 19899
(302) 888-6800
pcollins@morrisjames.com
kneikirk@morrisjames.com

OF COUNSEL:
CROWELL & MORING LLP
Scott L. Winkelman
Monica M. Welt
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004
(202) 624-2500

Dated: June 25, 2007

# COMPENDIUM OF UNREPORTED CASES

**Cases**                                                                                          **Tab**

*Anderson-Tully Lumber Co. v. Int'l Forest Prods.*,
    No. 5:05-CV-68(DCB)(JCS), 2006 WL 2571273 (S.D. Miss. Sept. 5, 2006) ........1

*Beebe v. Housatonic R.R. Co.*,
    No. 05-CV-0021, 2005 WL 1173974 (N.D.N.Y. May 12, 2005)...........................2

*Brown v. Williams,*
    No. 03-426-SLR, 2007 WL 1219624 (D. Del. Apr. 25, 2007)................................3

*Cytotherapeutics, Inc. v. Neurospheres, Ltd.,*
    No. 97-019L, 1997 WL 33547301 (D.R.I. Mar. 13, 1997) .....................................4

*Grumbkow v. Walt Disney Co.,*
    No. 06-489-JJF, 2007 WL 570196 (D. Del. Feb. 20, 2007) ...................................5

*Hadley v. Shaffer,*
    No. 99-144-JJF, 2003 WL 21960406 (D. Del. Aug. 12, 2003) ..............................6

*Health Trio v. Margules,*
    No. 06-04-196, 2007 WL 544156 (Del. Super. Ct. Jan. 16, 2007).........................7

*L & L Constr. Assocs., Inc. v. Slattery Skanska, Inc.,*
    No. 05-1289, 2006 WL 1102814 (D.D.C. Mar. 31, 2006) .....................................8

*Little Switz., Inc. v. Destination Retail Holdings Corp.,*
    No. 98-315-SLR, 1999 WL 223496 (D. Del. Mar. 31, 1999) .................................9

*MaNeil Nutritionals, LLC v. Sugar Ass'n,*
    No. 05-69(GMS), 2005 WL 1000242 (D. Del. Apr. 29, 2005) .............................10

*Niv v. Hilton Hotels Corp.,*
    No. 06-7839-PKL, 2007 WL 510113 (S.D.N.Y. Feb. 15, 2007)...........................11

*Trilegiant Loyalty Solutions, Inc. v. Maritz,*
    No. 04-360-JJF, 2005 WL 441077 (D. Del. Feb. 15, 2005) ..................................12

# TAB 1

Not Reported in F.Supp.2d
(Cite as: 2006 WL 2571273 (S.D.Miss.))

Only the Westlaw citation is currently available.

United States District Court,
S.D. Mississippi,
Western Division.

**ANDERSON-TULLY LUMBER COMPANY,
Plaintiff
v.
INTERNATIONAL FOREST PRODUCTS,
S.r.l., Defendant.**

Civil Action No. 5:05-cv-68(DCB)(JCS).

Sept. 5, 2006.

Landman Teller, Jr., Mark James Chaney, Jr.,
Teller, Chaney, Hassel & Hopson, Vicksburg, MS,
for Plaintiff.

Neville H. Boschert, Watkins Ludlam Winter &
Stennis, P.A., Jackson, MS, Christopher Rizzo,
Judith A. Lockhart, Carter, Ledyard & Milburn,
LLP, New York, NY, for Defendant.

ORDER

DAVID BRAMLETTE, District Judge.

**\*1** This cause is before the Court on the plaintiff
Anderson-Tully Lumber Company's motion for
reconsideration (docket entry 39) and to reopen case
to allow limited discovery (docket entry 39). Having
carefully considered the motion and response, the
memoranda and the applicable law, and being fully
advised in the premises, the Court finds as follows:

This action was filed in the Circuit Court of
Warren County, Mississippi, on October 19, 2004,
by Anderson-Tully Lumber Company ("ATCO
Lumber"), a subsidiary of Anderson-Tully
Corporation, a domestic corporation headquartered
in Memphis, Tennessee. ATL is located in
Vicksburg, Mississippi. The defendant,
International Forest Products, S.r.l. ("IFP") is a
foreign corporation headquartered in Rome, Italy.
Following IFP's removal of this action to federal
court, the Court granted IFP's motion to dismiss
based on forum non conveniens and international
abstention.

ATCO    Lumber    has    now    moved    for

reconsideration. Generally, a motion to alter or
amend a judgment must rely on one of three major
grounds: (1) an intervening change in controlling
law; (2) availability of new evidence that was not
previously available; or (3) the need to correct a
manifest error of law or mistake of fact. Natural
Resources Defense Council v. U.S. Envtl.
Protection Agency, 705 F.Supp. 698, 701
(D.C.Cir.1989); Templet v. Hydrochem, Inc., 367
F.3d 473, 479 (5th Cir.2004). The Fifth Circuit
Court of Appeals has identified two important
judicial imperatives relating to such a motion: (1)
the need to bring litigation to an end; and (2) the
need to render a just decision on the basis of all the
facts. Lavespere v. Niagara Machine & Tool Works,
Inc., 910 F.2d 167, 174 (5th Cir.1990). The task
for the district court is to strike the proper balance
between these competing interests. Id.

ATCO Lumber's motion is premised, inter alia,
on a mistake of fact, i.e., "the erroneous assumption
and finding by this Court that ATCO Lumber has
been a party to litigation pending in Italy." (Motion
to Reconsider, ¶ 1). In its motion to dismiss, IFP
had argued:
> The claims raised by Anderson-Tully in this action
> have previously been raised by Anderson-Tully as
> part of litigation between the parties currently
> proceeding in Italy. Anderson-Tully is attempting
> to have this Court hear claims which should be
> heard in Italy where they are already pending.
(Motion to Dismiss, ¶ 1). The motion to dismiss
states that "Anderson-Tully" refers to "Anderson-
Tully Lumber Company," i.e. the plaintiff in the
present action. (Motion to Dismiss, p. 1). In its
brief in support of the motion to dismiss, IFP makes
a similar argument:
> ... IFP filed suit in Italy against Anderson-Tully
> in 2003. Anderson-Tully responded with an
> answer and counterclaims addressing the same
> issues that are addressed in the present matter. The
> Italian court has received numerous briefs from
> the litigants in its case and the proceedings have
> advanced to the "evidentiary stage"....
> **\*2** The Plaintiff has filed the present action
> seeking to litigate in this Court the same issues
> that are pending in the Italian court. The Plaintiff,
> however, is not entitled to prosecute this action in
> this Court and must litigate this matter in Italy.
(Memorandum in Support of Motion to Dismiss, p.
1). In the brief, however, IFP states that "Anderson-
Tully" refers collectively to "Anderson-Tully

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d
(Cite as: 2006 WL 2571273, *2 (S.D.Miss.))

Corporation [the parent corporation], Anderson-Tully Lumber Company (the "Plaintiff")[a subsidiary of Anderson-Tully Corporation], and ATCO Allied Timber Companies S.r.l. [another subsidiary of Anderson-Tully Corporation]." (Memorandum in Support of Motion to Dismiss, p. 1).

It is now apparent to the Court that at the time ATCO Lumber filed its action against IFP in the Circuit Court of Warren County, and at the time IFP filed its motion to dismiss, ATCO Lumber was not a party to the litigation pending in Italy, although Anderson-Tully Corporation and ATCO Allied Timber Companies S.r.l. were. Thus, the Court's findings of fact were erroneous. The Court finds that ATCO Lumber's motion for reconsideration is well-taken as to the dismissal based on international abstention. IFP argues that "courts have held that parent and subsidiary participation in foreign litigation will also support a Motion to Dismiss based on international abstention." (Memorandum Response to Motion to Reconsider, p. 11). However, this argument was not before the Court on IFP's motion to dismiss. The court shall therefore allow the parties to re-argue the issue of international abstention.

As for the Court's dismissal based on forum non conveniens, ATCO Lumber cites a number of alleged erroneous findings of fact, including:

8. That the alleged breaches of an exclusive agency agreement by IFP were alleged by ATCO Lumber to all have occurred in Italy;

9. That ATCO Lumber had asked the Italian court to call into evidence the books and balance sheets of IFP all of which are located in Italy;

10. That ATCO Lumber had identified in the Italian court seventeen (17) witnesses, only one of which had an American address; ...

(Memorandum in Support of Motion to Reconsider, p. 2). Each of these three findings stems from the finding that ATCO Lumber was a party in the Italian litigation. In addition, in granting IFP's motion to dismiss, the Court specifically relied on IFP's representation that ATCO Lumber had submitted to the jurisdiction of the Italian court and had filed a counterclaim against IFP asserting the same claims found in the litigation before this Court. (Memorandum Opinion and Order, p. 4).

Unlike international abstention, forum non conveniens does not depend on the existence of pending litigation in a foreign forum. Dismissal may still be warranted on forum non conveniens grounds, despite the absence of ATCO Lumber from the Italian litigation. However, the presence of factual inaccuracies in the Court's Order compels the Court to reexamine its forum non conveniens analysis. Because ATCO Lumber was not a party to the Italian litigation, it could not have made allegations in that court concerning the locus of the alleged breach by IFP, and the location of evidence and witnesses. ATCO Lumber may have scored a victory on this point, but it fails to address the underlying issues: Where did the breach by IFP occur? Where are the evidence and witnesses located? The Court finds that in this case the need to render a just decision on the basis of all the facts outweighs the need to bring litigation to an end. For that reason, the plaintiff's motion shall be granted, and the parties allowed to re-argue the issues of international abstention and forum non conveniens. Accordingly,

*3 IT IS HEREBY ORDERED that the plaintiff Anderson-Tully Lumber Company's motion for reconsideration (docket entry 39) and to reopen case to allow limited discovery (docket entry 39) is GRANTED;

FURTHER ORDERED that the parties shall be allowed thirty (30) days from entry of this Memorandum Opinion and Order for limited discovery on the issues of international abstention and forum non conveniens. The defendant's initial brief shall be due fifteen (15) days from the conclusion of discovery, the plaintiff's response ten (10) days thereafter, and any rebuttal five (5) days following the filing of the response.

SO ORDERED, this the 5th day of September, 2006.

2006 WL 2571273 (S.D.Miss.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



# TAB 2

Not Reported in F.Supp.2d
(Cite as: 2005 WL 1173974 (N.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.

**Robert W. BEEBE, Jr., Plaintiff,**
v.
**HOUSATONIC RAILROAD COMPANY, INC.,
Defendant.**

**No. 05-CV-0021.**

May 12, 2005.

Rosemarie Riddell Bogdan, Martin, Harding Law Firm, Albany, NY, for Plaintiff.

Michael B. Flynn, Flynn & Associates, PC, Quincy, MA, for Defendant.

DECISION and ORDER

MCAVOY, Senior J.

I. INTRODUCTION

**\*1** Plaintiff commenced the instant action asserting claims under the Federal Employer's Liability Act, 45 U.S.C. § 51 et seq., the Safety Appliance Act, 45 U.S.C. § 1 et seq., and the Boiler Inspection Act, 45 U.S.C. § 22 et seq., for personal injuries sustained while employed by Defendant. Presently before the Court is Defendant's motion to dismiss the Complaint pursuant to Fed.R.Civ.P. 12 for lack of personal jurisdiction, or, in the alternative, to dismiss the Complaint under the doctrine of forum non conveniens. For the reasons that follow, Defendant's motion is DENIED WITH LEAVE TO RENEW after the parties have had an opportunity to conduct discovery regarding personal jurisdiction and the appropriateness of the present forum.

II. FACTS

The following facts are taken from the Complaint. Plaintiff is a resident of Columbia County, New York. Defendant is incorporated in Connecticut and has its principal place of business in Connecticut. Defendant owns and operates a railroad line which is located in and/or provides services to Massachusetts, Connecticut, and New York. On or about July 30, 2003, while Plaintiff was working for Defendant, a tamper operated by Defendant's agent, servant and/or employee collided with a tie crane operated by Plaintiff, causing Plaintiff to sustain certain personal injuries. There is no allegation as to where the accident occurred. [FN1]

> FN1. Defendant asserts in its Motion to Dismiss that the accident occurred in Lee, Massachusetts. Plaintiff has not contested this fact.

Plaintiff commenced the instant action in this Court, invoking subject matter jurisdiction pursuant to 28 U.S.C. § 1337. Defendant moves to dismiss the Complaint for lack of personal jurisdiction, or, in the alternative, to transfer the case to an alternative forum, preferably the United States District Court for the District of Massachusetts, Western Division.

III. DISCUSSION

A. Personal Jurisdiction

On a Fed.R.Civ.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction, "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir.1999) (citation omitted). In opposition to the motion, Plaintiff does not argue he has pled or submitted sufficient facts to support personal jurisdiction over Defendant, but rather argues that there "is at least a triable issue of fact" in this regard. Bogdan Aff. ¶ 8. [FN2] On this point, Plaintiff notes that, while he has not yet had any discovery, Defendant's Internet website appears to represent that Defendant: (a) owns or uses railroad tracks in New York; (b) provides freight rail service into the State; (c) owns an industrial site in Dover, New York; and (d) owns rail stations in Beacon, Brewster, Fishkill, and Hopewell Junction, New York. Id. ¶¶ 13-16 & ex. A-D.

> FN2. Plaintiff has not responded with a factual affidavit or a Memorandum of Law, but instead submits an attorney affidavit that contains both legal arguments and factual exhibits.

With one exception not asserted here, in a federal question case where defendant resides outside the forum state, the Court looks first to the forum



Not Reported in F.Supp.2d
**(Cite as: 2005 WL 1173974, \*1 (N.D.N.Y.))**

state's personal jurisdiction rules to determine whether the defendant is amenable to service of process under those rules. Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 22 (2d Cir.2004). If it is amenable to service of process under the forum state's rules, the Court then determines whether the assertion of personal jurisdiction over Defendant comports with the requirements of due process. See Metro Life Ins. Co. v. Robertson-Ceco Corp. ., 84 F.3d 560, 567 (2d Cir.1996).

**\*2** Plaintiff contends that, given the representations contained on Defendant's website, there is a "triable issue of fact" as to whether this Court can assert personal jurisdiction over Defendant pursuant to New York Civil Practice Law and Rules §§ 301 and 302(a)(4). The Court agrees. In light of the representations made on Defendant's website, it may very well be that personal jurisdiction could be asserted over Defendant that comports with both the New York Civil Practice Law and Rules and constitutional notions of due process. See St. Paul Fire & Marine Ins. Co. v. Eliahu Ins. Co. ., 1997 WL 357989, at \*1 (S.D.N.Y. June 26, 1997) (Because a motion to dismiss pursuant to Rule 12(b)(2) based on lack of personal jurisdiction is "inherently a matter requiring the resolution of fact issues outside of the pleadings ... all pertinent documentation submitted by the parties may be considered in deciding the motion.") (quotation marks omitted), aff'd 152 F.3d 920 (2d Cir.1998) (table). Of course, the present record fails to provide the entire picture regarding what business, if any, Defendant was conducting in the State of New York when the summons and complaint were served. Accordingly, the dispute regarding Defendant's contacts with New York State can only be fairly resolved by allowing the parties to conduct discovery on the question of personal jurisdiction. After such discovery, the Court will revisit the motion, if made, at which time Plaintiff will be required to submit appropriate factual averments. See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir.1999) (Where "the parties have conducted extensive discovery regarding the defendants' contacts with the forum state, but no evidentiary hearing has been held--the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant.")

(quotation marks omitted; alteration in original). Therefore, this portion of Defendant's motion is denied with leave to renew following a period of limited discovery on jurisdictional issues. [FN3]

> FN3. It is anticipated that Hon. David R. Homer, United States Magistrate Judge, will fashion the parameters of this initial discovery.

### B. Forum Non Conveniens

Defendant also contends that the case should be dismissed based on the common law doctrine of forum non conveniens. Under this doctrine, a district court may dismiss a case when an alternative forum has jurisdiction to hear the case and when trial in the chosen forum would be oppressive and vexatious to a defendant. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); Boosey & Hawkes Music Pub. Ltd. v. Walt Disney Comp., 145 F.3d 481, 491 (2d Cir.1998); Scottish Air Int'l, Inc. v. British Caledonian Group, PLC, 81 F.3d 1224, 1232 (2d Cir.1996).

"The Second Circuit has held that 'a court should begin with the assumption that a plaintiff's choice of forum will stand unless the defendant can demonstrate that reasons exist to afford it less deference." ' Traver v. Officine Meccaniche Toshci SpA, 233 F.Supp.2d 404, 415 (N.D.N.Y.2002) (Scullin, C.J.) (quoting DiRienzo v. Philip Servs. Corp., 294 F.3d 21, 28 (2d Cir.2002) (citation omitted)). However, the presumption favoring Plaintiff's choice of forum is not absolute and may be rebutted by establishing that the public and private interests involved would be better served in an alternate forum. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). "The district court must carefully weigh the private and public interests set forth in Gilbert and may grant the forum non conveniens motion only if these considerations strongly support dismissal." Boosey & Hawkes, 145 F.3d at 491.

**\*3** Relevant private interests of the litigants include access to proof, availability of witnesses, and "all other practical problems that make trial of a case easy, expeditious and inexpensive." Boosey & Hawkes, 145 F.3d at 491 (quoting Gilbert, 330 U.S. at 508). "The public factors include court congestion in the chosen forum, the local interest in



Not Reported in F.Supp.2d
(Cite as: 2005 WL 1173974, *3 (N.D.N.Y.))

Page 23

deciding local controversies at home, the interest in having the trial in a forum that is familiar with the governing law, the difficulties in applying foreign law, and the unfairness of burdening citizens in an unrelated forum with jury duty." Minibooster Hydraulics A/S v. Scanwill Fluid Power ApS, 315 F.Supp.2d 286, 290 (W.D.N.Y.2004).

Although a motion to dismiss for forum non conveniens "does not typically require a detailed development of the entire case through discovery," courts will allow limited discovery when warranted. Norex Petroleum v. Ltd. v. Access Industries, Inc., 2003 WL 1484269, at *2 (S.D.N.Y. Mar.21, 2003). Here, given Plaintiff's failure to plead where the accident occurred and the unresolved factual disputes related to personal jurisdiction, it would be premature to decide the issue. The Court will permit the parties to conduct discovery regarding access to proof, the location and availability of witnesses, and other facts relevant to the forum non conveniens determination. Accordingly, the motion in this regard is denied with leave to renew following this initial discovery.

III. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED WITH LEAVE TO RENEW after the parties have had a reasonable opportunity to conduct limited discovery as set forth above.

IT IS SO ORDERED.

2005 WL 1173974 (N.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



# TAB 3

484 F.Supp.2d 271
(Cite as: 484 F.Supp.2d 271, 2007 WL 1219624 (D.Del.))

Page  28

United States District Court,
D. Delaware.

**Albert James BROWN, Plaintiff,**
v.
**Dave WILLIAMS, Raphael Williams, et al.,**
**Defendants.**

**Civil No. 03-426-SLR.**

April 25, 2007.

**Background:** Inmate brought pro se action against owner of prison's health care provider under § 1983, alleging Eighth Amendment violations. Owner moved to dismiss.

**Holding:** The District Court, Sue L. Robinson, Chief Judge, held that allegations of complaint failed to sufficiently allege personal involvement on part of owner.

Motion granted.

West Headnotes

**[1] Federal Civil Procedure    657.5(1)**
170Ak657.5(1)
Where the plaintiff is a pro se litigant, the court has an obligation to construe the complaint liberally.

**[2] Federal Civil Procedure    1825**
170Ak1825
The party moving for dismissal for failure to state a claim has the burden of persuasion.  Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[3] Civil Rights    1336**
78k1336
A defendant in a civil rights action under § 1983 must have personal involvement in the alleged wrongs;  liability cannot be predicated solely on the operation of respondeat superior. 42 U.S.C.A. § 1983.

**[4] Civil Rights    1335**
78k1335

**[4] Civil Rights    1394**
78k1394
Personal involvement, required for liability under § 1983, can be established through allegations of

either personal direction or actual knowledge and acquiescence, that is, deliberate indifference; however, such allegations must be made with particularity. 42 U.S.C.A. § 1983.

**[5] Civil Rights    1395(7)**
78k1395(7)
Allegations of pro se inmate's complaint, that defendant was owner of prison's health care provider and therefore was responsible for actions of medical personnel, failed to sufficiently allege personal involvement on part of owner, as required to state cause of action for Eighth Amendment liability on part of owner under § 1983, in that inmate failed to cite specific instances in which owner affirmatively knew of or participated in withholding of constitutionally adequate medical care to inmate. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983; Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**\*272** Albert James Brown, Howard R. Young Correctional Institution, Wilmington, DE, Pro se Plaintiff.

Dana Spring Monzo, Esquire, McCullough & McKenty, P.A., Wilmington, DE, for Defendant Tammy Y. Kastre.

MEMORANDUM OPINION

SUE L. ROBINSON, Chief Judge.

I. INTRODUCTION

**\*\*1** On April 24, 2003, Albert James Brown, a pro se plaintiff proceeding in forma pauperis ("plaintiff"), filed the present action pursuant to 42 U.S.C. § 1983 [FN1] against Dave Williams, Courtney Porstman, and Warden Raphael Williams (collectively, the "State defendants"). [FN2] (D.I. 2) On May 24, 2006, plaintiff amended his complaint to add Tammy Y. Kastre ("Kastre") as a defendant. (D.I. 60) Plaintiff asserts four claims, all of which arise under the Eighth and Fourteenth Amendments. Plaintiff requests declaratory judgment, injunctive relief, and compensatory and punitive damages. (D.I. 8 at 16) The court has jurisdiction over the present suit pursuant to 28 U.S.C. § 1331. Before the court is Kastre's motion to dismiss. (D.I. 71) For the reasons that follow, the court grants defendant's motion.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



484 F.Supp.2d 271

**Page 29**

(Cite as: 484 F.Supp.2d 271, *272, 2007 WL 1219624 (D.Del.), **1)

FN1. The statute provides, in pertinent part: Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in the action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. § 1983.

FN2. Plaintiff has also alleged Eighth Amendment violations by Courtney A., Diana Hernandez, Doctor Alvin Kingcade, Doctor Ali, Doctor N. Shah, and PA Ina (collectively, the "medical defendants"), claiming inadequate medical care. (D.I. 8 at 13)

## II. BACKGROUND

The court recited many of the pertinent facts in its memorandum opinion granting State defendants' motion for summary judgment (D.I. 46), thus, only the most pertinent facts related to the present motion to dismiss are summarized below. On May 23, 2002, plaintiff was arrested and subsequently admitted to the Howard R. Young Correctional Institution ("HRYCI") in Wilmington, Delaware, where he has remained at all times relevant to this litigation. [FN3] (D.I. 2 at 3) Plaintiff filed this *273 § 1983 lawsuit on April 24, 2003, alleging, in part, that the medical care he received during his incarceration at HRYCI violated his Eighth and Fourteenth Amendment rights under the U.S. Constitution. (D.I. 2) Plaintiff initially brought suit against the State defendants on April 24, 2003, and amended his complaint to include the medical defendants on December 1, 2003. [FN4] (D.I. 2, 8) On April 19, 2006, plaintiff again amended his complaint and added Kastre as a defendant. (D.I. 51, 59) Kastre was made a party to this action by virtue of her capacity as owner of First Correctional Medical, the prison's health care provider during the period in question. (D.I. 59) Plaintiff states that he "learned [Kastre] is the owner of First Correctional Medical," and asserts that she is at fault for the actions of the medical personnel at the prison. [FN5] (D.I. 51) On September 18, 2006, Kastre moved to dismiss plaintiff's complaint. (D.I. 71)

FN3. Plaintiff alleges that on the night of his arrest, he was the victim of police brutality, assault, and battery. (D.I. 8 at 1) Plaintiff has filed a separate

complaint regarding that incident in Civ. No. 03-404-SLR.

FN4. State defendants moved for summary judgment, which the court granted noting that liability in a civil rights action cannot be predicated solely on the operation of respondeat superior. (D.I. 46 at 9) Plaintiff's claims against the medical defendants are still pending.

FN5. Specifically, plaintiff alleges that Kastre "is [at] fault [for] the responsibilities of Dr. Shah, supervisor Courtney Portsman, Alvin A. Kingcade, Dr. Ali, PA Ina, [and] Diana Hernandez." (D.I. 51)

## III. STANDARD OF REVIEW

[1][2] Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir.1993). In analyzing a motion to dismiss, the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir.1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." Id. Claims may be dismissed only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Where the plaintiff is a pro se litigant, the court has an obligation to construe the complaint liberally. See Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); Gibbs v. Roman, 116 F.3d 83, 86 n. 6 (3d Cir.1997): Urrutia v. Harrisburg County Police Dep't, 91 F.3d 451, 456 (3d Cir.1996). The moving party has the burden of persuasion. See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir.1991).

## IV. DISCUSSION

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



**\*\*2** [3][4] The Third Circuit has concluded that a person in a supervisory position cannot be the moving force behind a constitutional violation of a subordinate unless the supervisor has exhibited deliberate indifference to the plight of the person deprived. See Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir.1989) (citing City of Canton, Ohio v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); Lipsett v. Univ. of Puerto Rico, 864 F.2d 881, 902 (1st Cir.1988)). In addition, "a defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, **\*274** 845 F.2d 1195, 1207 (3d Cir.1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n. 3, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir.1976)). Personal involvement can be established through allegations of either personal direction or actual knowledge and acquiescence (deliberate indifference); however, such allegations must be made with particularity. See Rode, 845 F.2d at 1207. Finally, the Supreme Court has held that supervising officials do not violate the constitutional rights of victims of misconduct unless they have had an affirmative part in the misconduct. See Rizzo v. Goode, 423 U.S. 362, 377, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); Commonwealth of Pa. v. Porter, 659 F.2d 306, 336 (3d. Cir.1981) (requiring that supervising officials play an affirmative role in violating the plaintiff's rights and that an official's misconduct "cannot be merely a failure to act").

[5] Viewing the facts in the light most favorable to plaintiff, the court finds that plaintiff has failed to sufficiently allege personal involvement on behalf of Kastre in order to subject her to liability. Plaintiffs allegations have not been made with the requisite particularity. In both his motion to amend the complaint and his answering brief to Kastre's motion to dismiss, plaintiff failed to state any affirmative actions on the part of Kastre. (D.I. 51, 59, 73) Plaintiff only related that Kastre is the owner of First Correctional Medical and that she, therefore, is responsible for the actions of the medical personnel. (D.I. 51) Without specific instances in which Kastre affirmatively knew of or participated in the withholding of constitutionally adequate medical care to plaintiff, it can be inferred that plaintiff intends to hold her liable by virtue of

her position. Because § 1983 prohibits the imposition of liability on the sole basis of the doctrine of respondeat superior, the court concludes that plaintiff has failed to state a claim upon which relief can be granted. See Durmer v. O'Carroll, 991 F.2d 64, 69 n. 14 (3d Cir.1993).

### V. CONCLUSION

For the reasons stated above, defendant's motion to dismiss is granted. An appropriate order shall issue.

### ORDER

At Wilmington this 25th day of April, 2007, consistent with the memorandum opinion issued this same date;

**\*\*3** IT IS ORDERED that defendant Kastre's motion to dismiss (D.I. 71) is granted.

484 F.Supp.2d 271, 2007 WL 1219624 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



# TAB 4

Not Reported in F.Supp.
(Cite as: 1997 WL 33547301 (D.R.I.))

Only the Westlaw citation is currently available.

United States District Court,
D. Rhode Island.

**CYTOTHERAPEUTICS, INC., Plaintiff,**
v.
**NEUROSPHERES LTD., Defendant.**

**No. Civ.A. 97-019L.**

March 13, 1997.

Joseph V. Cavanagh, Jr., Blish & Cavanagh, Providence, RI, William C. Brashares, H. Joseph Hameline, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Boston, MA, for plaintiff.

Don M. Kennedy, Keefe B. Clemons, Goodwin, Procter & Hoar, Boston, MA, Peter F. Mathieu, Baluch, Gianfrancesco,Mathieu & Szerlag, Providence, RI, for defendant.

MEMORANDUM AND ORDER

LAGUEUX, Chief J.

**\*1** This dispute arises from an agreement entered into by plaintiff Cytotherapeutics, Inc. (based in Rhode Island) and defendant Neurospheres Ltd. (based in Calgary, Alberta, Canada). Pursuant to that agreement, plaintiff received a license from defendant for the commercial development, sale and use of "in vitro generated, EGF-responsive neuronal stem cells." Plaintiff now claims that defendant has violated that agreement by altering its interpretation of the term "epidermal growth factor" or "EGF" and that said breach causes injury to plaintiff in Rhode Island. Therefore, plaintiff has brought suit in Rhode Island seeking expedited discovery and a preliminary injunction to hold the status quo until arbitration can be conducted in Toronto, Ontario, Canada.

This case is presently before the Court on defendant's motion to dismiss for lack of personal jurisdiction or, in the alternative, on the basis of forum non conveniens. For the reasons that follow, decision on defendant's motion is deferred. Additional discovery by the parties will be allowed over the next thirty (30) days on the issues of personal jurisdiction and forum non conveniens, and

then the Court will conduct a full evidentiary hearing on those issues.

I. Facts

The facts essential to the resolution of this motion are as follows. Plaintiff is a bio-pharmaceutical company based in Rhode Island and incorporated in Delaware. Defendant is incorporated under the laws of Alberta, Canada, and its place of business is in Calgary.

In March of 1994, the parties entered into an agreement under which plaintiff received a license for the commercial development, sale and use of "in vitro generated, EGF-responsive neuronal stem cells" for use in transplantation to treat human disease, in exchange for supplying large sums of money for continued research and development by defendant. The licensing agreement states that it shall be interpreted in accordance with the laws of Alberta. The contract also provides for alternate dispute resolution "with respect to any matter relating to" the agreement. Pursuant to the contract, such matters will be dealt with first by mediation and then binding arbitration to be conducted by the International Chamber of Commerce of Toronto, Canada.

The licensing agreement between the parties is currently a source of controversy, as plaintiff claims that defendant has broken the contract and is now negotiating with plaintiff's competitors for licensing agreements. Plaintiff has moved for, and intends to pursue, arbitration on the merits of the dispute in Canada, as provided by the licensing agreement. However, on January 13, 1997, plaintiff brought suit in this Court seeking expedited discovery and immediate injunctive relief pending arbitration.

On January 16, 1997, defendant commenced an action in Alberta, Canada. The Provincial Court there temporarily restrained plaintiff Cytotherapeutics, Inc. from pursuing its claims in this Court, but subsequently lifted that temporary restraining order.

**\*2** After the restraining order was vacated, this Court conducted a hearing on defendant's motion to dismiss for lack of personal jurisdiction or for forum non conveniens. At that time, this Court determined that facts essential to the resolution of the motion

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.
(Cite as: 1997 WL 33547301, *2 (D.R.I.))

were unknown and ordered the parties to submit supplemental affidavits and/or memoranda concerning the formation of the contract.

Both parties have filed supplemental affidavits and memoranda. Defendant argues that the final act which caused the contract to become binding occurred in Calgary, thereby rendering the exercise of specific jurisdiction in Rhode Island inappropriate. In contrast, plaintiff asserts that the final act of contract formation occurred in Rhode Island, and, therefore, this Court has specific personal jurisdiction in this case.

In the alternative, defendant contends that the present case should be dismissed by this Court on the basis of forum non conveniens. Defendant argues that Alberta provides a suitable alternate forum for this dispute, and all the "relevant and essential sources of proof" are located in Alberta. Defendant's arguments are premised on its view that this controversy is essentially based in Canada. In contrast, plaintiff disputes that the relevant witnesses and documents are exclusively in Canada. Rather, it is plaintiff's contention that the present dispute is global in nature, with serious effects in Rhode Island.

II. Discussion

A. Personal Jurisdiction

A court may exercise "specific jurisdiction" when "plaintiff's claims 'arise out of' or are 'directly related' to defendant's contacts with the forum state." DuPont Tire Serv. Ctr., Inc. v. N. Stonington Auto-Truck Plaza, Inc., 659 F.Supp. 861, 863 (D.R.I.1987) (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). [FN1] In DuPont Tire, this Court held that it could exercise specific jurisdiction over a defendant when the defendant's sole contact with Rhode Island was a trip to the state to negotiate a contract. Since the dispute arose from that contract, and the contract was completed in Rhode Island, the Court found that the defendant had "purposefully directed" its behavior toward Rhode Island, rendering itself subject to suit in this state. See DuPont Tire, 659 F.Supp. at 863-864 (quoting Asahi Metal Ind. Co. v. Superior Court of California, 480 U.S. 102, 112, 107 S.Ct. 1026, 94

L.Ed.2d 92 (1987)).

> FN1. In contrast, a court may exercise "general jurisdiction" when "plaintiff's claims do not arise out of or are not directly related to defendant's contacts with the forum state ..." if those contacts are continuous and substantial. Id. (citing Helicopteros Nacionales, 466 U.S. at 414 n. 9). At the hearing, plaintiff conceded that defendant's contacts with Rhode Island are not sufficient to sustain a finding of general jurisdiction.

Relying on DuPont Tire, at the hearing on this matter this Court inquired as to where the final act in the formation of the contract occurred. Both sides gave equivocal responses, so the Court asked for additional information. The supplemental affidavits and memoranda submitted make contrary claims as to where the contract was formed. Plaintiff states Rhode Island, and defendant says Alberta. Since a pivotal factor in the requisite analysis is disputed, this Court finds itself unable to decide the issue of personal jurisdiction at this time.

*3 In other cases where facts relevant to the issue of personal jurisdiction were disputed, this Court viewed the facts favorably to the plaintiff and proceeded to trial, even though plaintiff bears the burden of proving that the exercise of personal jurisdiction is proper. For example, in Thompson Trading Ltd. v. Allied Lyons PLC, 123 F.R.D. 417 (D.R.I.1989); 124 F.R.D. 534 (D.R.I.1989) (denying motion for reconsideration), this Court held that plaintiff's allegations, if true, would subject the defendants to the Court's specific in personam jurisdiction. Therefore, the Court allowed the case to proceed to trial for further inquiry. See also McAleer v. Smith, 728 F.Supp. 857 (D.R.I.1990) (holding that plaintiffs had alleged a prima facie case for the exercise of personal jurisdiction, but noting that plaintiffs still had the burden of proving proper exercise of such jurisdiction at trial).

However, the present matter differs from other cases in this context. For example, in Thompson, 124 F.R.D. at 535, this Court expressly stated that the issues concerning personal jurisdiction were "intertwined" with the merits of the dispute. In contrast, the facts concerning personal jurisdiction in the case at bar may be decided without reaching the substantive aspects of the controversy.

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.

(Cite as: 1997 WL 33547301, *3 (D.R.I.))

Moreover, notions of comity are particularly salient in the present case, as it involves arbitration on the merits of the dispute in Canada. For these reasons, it is important that this Court ascertain the facts relevant to the issue of personal jurisdiction before deciding whether to grant plaintiff injunctive relief.

As plaintiff has suggested, resolution of these issues would be facilitated by additional discovery. See El-Fadl v. Central Bank of Jordan, 75 F.3d 668 (D.C.Cir.1996) (remanding case for additional discovery concerning whether contacts were sufficient to support the exercise of general personal jurisdiction). Therefore, this Court orders that there be a thirty day period for additional discovery, to be followed by a full evidentiary hearing on the issue of personal jurisdiction.

B. Forum Non Conveniens

If this Court determines that it has specific personal jurisdiction over defendant, it may still dismiss this suit on the basis of forum non conveniens. This doctrine "permits discretionary dismissals on a 'case by case' basis where an alternative forum is available in another nation which is fair to the parties and substantially more convenient for them or the courts." Mercier v. Sheraton Int'l, Inc., 981 F.2d 1345, 1349 (1st Cir.1992), cert. denied, 508 U.S. 912, 113 S.Ct. 2346, 124 L.Ed.2d 255 (1993) (citations omitted) (hereinafter "Mercier II" ).

In the First Circuit, courts have conducted a two-part inquiry when determining whether to dismiss a suit on this basis. See, e.g., Id. First, the court will determine whether there is an adequate alternate forum. A forum is deemed adequate if it is both "available" and "adequate." Id. at 1349-1350. A forum is "available" if "the defendant who asserts forum non conveniens is amenable to process in the alternative forum." Id. at 1349. A forum is "adequate" unless "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). See also Mercier II, 981 F.2d at 1350. It is the defendant's burden to prove the adequacy of the alternative forum, for "[t]he plaintiff's forum choice 'should rarely be disturbed." ' Mercier v. Sheraton Int'l, Inc., 935 F.2d 419, 424 (1st Cir.1991) (quoting Gulf Oil v.

Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)) (hereinafter "Mercier I" ).

*4 Second, the court will evaluate the convenience of the forum by weighing the public and private factors articulated by the Supreme Court in Gulf Oil Corp. v. Gilbert. In Gilbert, the Court stated that when considering the "private interest of the litigant,"

[i]mportant considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

Gilbert, 330 U.S. at 508. See also Thomson Info. Svcs., Inc. v. British Telecommunications, PLC, 940 F.Supp. 20, 23 (D.Mass.1996). When examining the "[f]actors of public interest," the Court noted that congestion in the forum, the forum's relationship to the litigation, and the forum's familiarity with the law governing the case are significant. Gilbert, 330 U.S. at 508-509. See also Mercier II, 981 F.2d at 1354; Howe v. Goldcorp Investments, Ltd., 946 F.2d 944, 951 (1st Cir.1991), cert. denied, 502 U.S. 1095, 112 S.Ct. 1172, 117 L.Ed.2d 418 (1992).

Plaintiff asserts, and this writer agrees, that defendant has merely made "conclusory allegations" concerning the adequacy of Alberta as a forum for the present dispute. Defendant has responded to several arguments made by plaintiff concerning the adequacy of Alberta; however, defendant has not affirmatively shown why Alberta is an adequate forum. More specifically, defendant has not discussed Alberta's procedural rules or substantive law concerning the issues at hand--the granting of expedited discovery and maintaining the status quo pending arbitration.

In addition, the parties to this controversy depict very different scenarios when weighing the Gilbert factors. For example, defendant asserts that the ease of access to both witnesses and documents militates in favor of the Alberta forum, whereas plaintiff argues that important witnesses and other sources of proof are located in several places at great distance from Alberta.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.

**(Cite as: 1997 WL 33547301, \*4 (D.R.I.))**

As a threshold matter, this Court may not dismiss this case because of forum non conveniens without determining that Alberta is an adequate alternative forum. For example, in Mercier I, 935 F.2d at 430, the First Circuit reversed the district court's dismissal of a case on the basis of forum non conveniens and remanded the case for additional factual inquiry. In so holding, the First Circuit noted that the defendant had failed to affirmatively show the adequacy of the proposed alternative forum, and the plaintiff had not proven that the forum could not be deemed adequate. Id. at 427. Cf. Tramp Oil and Marine, Ltd. v. M/V Mermaid I, 743 F.2d 48 (1st Cir.1984) (reversing dismissal by district court under the doctrine of forum non conveniens because district court acted without first identifying an adequate alternative forum). Moreover, the factual predicate for evaluation under the factors articulated in Gilbert is substantially disputed in this case. Therefore, during the additional thirty day period granted by this Court, the parties should also conduct discovery on the issue of forum non conveniens.

III. Conclusion

**\*5** For the foregoing reasons, defendant's motion to dismiss for lack of personal jurisdiction, or, in the alternative, for forum non conveniens, is held in abeyance. The parties are granted a thirty day period from the date hereof for additional discovery on the issues of personal jurisdiction and forum non conveniens. A full evidentiary hearing before this Court will be scheduled thereafter.

It is so ordered.

1997 WL 33547301 (D.R.I.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



**TAB 5**

Slip Copy
154 Lab.Cas. P 10,806
(Cite as: 2007 WL 570196 (D.Del.))

Page 50

United States District Court,
D. Delaware.

**Ronald C. GRUMBKOW, Plaintiff,**
v.
**WALT DISNEY COMPANY, George J. Mitchell,
Robert A. Igor, and Jeffrey Ruthizer,
Defendants.**

**No. CIV A 06-489-JJF.**

Feb. 20, 2007.

Ronald C. Grumbkow, Plaintiff, pro se.

Suzanne Melcher Hill, Wilmington, Delaware, for
Defendants.

MEMORANDUM OPINION

FARNAN, J.

**\*1** Presently before the Court is Defendants'
Motion To Dismiss with supporting memorandum,
Plaintiff's Response, and Defendants' Reply.
(D.I.7, 8, 9, 10, 11, 12.) For the reasons set forth
below, the Court will grant the Motion To Dismiss.
(D.I.7.)

I. BACKGROUND

Plaintiff alleges that Defendants have denied him
of all normal employment opportunities and
remuneration through planned patterns of
harassment. (D.I.1.) He alleges that the company
(presumably The Walt Disney Company ("Walt
Disney")), initiated the actions in an attempt to
thwart him from uncovering fraudulent schemes
used by Defendants to manipulate arbitration
awards, control union voting figures, employee
buyouts and labor contract agreements and deals,
and other associated illegalities. Id. Plaintiff alleges
that the actions were perpetrated by lawyers or law
firms "through clandestine quid-pro-quo ongoing
maneuvers." Id. Plaintiff alleges these actions
resulted in the denial of due process and equal
protection, illegal seizure of property, cruel and
unusual punishment, and other violations. He
further alleges that because of the company,
Defendants have shielded themselves from
collusively criminal actions as defined under the

Racketeer Influenced Corrupt Organization Act
("RICO"). Plaintiff seeks ten billion, one hundred
million dollars as a result of the foregoing
allegations and his thirty-seven year "under
compensated career at ABC News" due to
recognition of the "(Von) Grumbkow name." Id.

The Court Docket Sheet indicates that summonses
were issued for Defendants George J. Mitchell
("Mitchell"), Robert A. Iger ("Iger"), and Jeffrey
Ruthizer ("Ruthizer"). Plaintiff filed copies of the
summonses along with postal receipts for mailing of
the summonses. (D.I.3, 4, 5.) The Court Docket
does not indicate that summons was issued for Walt
Disney.

Defendants move for dismissal pursuant Rules
12(b)(2), 12(b)(4), 12(b)(5), and 12(b)(6) of the
Federal Rules of Civil Procedure for lack of
personal jurisdiction, insufficiency of process,
insufficiency of service of process, and for failure to
state a claim. (D.I.7.) Plaintiff objects to the Motion
on the basis that it is an "attempt to further cover-up
the illegalities committed" by Defendants. (D.I.11.)

II. DISCUSSION

A. Dismissal Under 12(b)(2)

Defendants argue that Plaintiff has not pled facts
sufficient to show that the Court has personal
jurisdiction over Defendants Mitchell, Iger, and
Ruthizer. While Plaintiff opposes the Motion To
Dismiss, he made no response to Defendants'
position that personal jurisdiction is lacking. The
Court will address this issue first inasmuch as it
disposes of the claims against Defendants Mitchell,
Iger, and Ruthizer.

Pursuant to Rule 12(b)(2) of the Federal Rules of
Civil Procedure, the Court may dismiss a suit for
lack of jurisdiction over the person. Two
requirements, one statutory and one constitutional,
must be satisfied for personal jurisdiction to exist
over a defendant. Bell Helicopter Textron, Inc. v. C
& C Helicopter Sales, Inc., 295 F.Supp.2d 400, 403
(D.Del.2002). "First, a federal district court may
assert personal jurisdiction over a nonresident of the
state in which the court sits to the extent authorized
by the law of that state." Id. (citing Fed.R.Civ.P.
4(e)). The Court must, therefore, determine whether



there is a statutory basis for jurisdiction under the Delaware long-arm statute. Id. (citing Del.Code Ann. tit. 10 § 3104(c)). "Second, because the exercise of jurisdiction must also comport with the Due Process Clause of the United States Constitution, the Court must determine if an exercise of jurisdiction violates [Defendants'] constitutional right to due process." Id. (citing International Shoe Co. v. Washington, 326 U.S. 310 (1945)).

**\*2** "Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing with reasonable particularity that sufficient minimum contacts have occurred between the defendant and the forum state to support jurisdiction." Id. (citing Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F .2d 434, 437 (3d Cir.1987). Plaintiff may establish jurisdictional facts through sworn affidavits or other competent evidence." Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n. 9 (3d Cir.1984).

Plaintiff must demonstrate either specific or general jurisdiction. Specific jurisdiction arises when the particular cause of action arose from Defendants' activities within the forum state. In contrast, general jurisdiction does not require Defendants' connections related to the particular cause of action, but that Defendants have continuous or systematic contacts with the forum state. American Bio Medica Corp. v. Penisula Drug Analysis Co, Inc ., Civ. No. 99-218-SLR, 1999 WL 615175 (D.Del.1999).

"[A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." Id. (citation omitted). Plaintiff is required to respond to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction with actual proof, not mere allegations. Id. see also Hurley v. Cancun Playa Oasis Int'l Hotels, No. 99-574, 1999 WL 718556, at *1 (E.D.Pa. Aug. 31, 1999)(stating that "[g]eneral averments in an unverified complaint or response without the support of sworn affidavits or other competent evidence are insufficient to establish jurisdictional facts").

Defendants Mitchell, Iger, and Ruthizer are mentioned by name only one time in the body of the

Complaint, and that is when Plaintiff lists their names and addresses for purposes of issuance of subpoenas. (D.I. 1 at 2.) Without mentioning names, the Complaint alleges that Defendants denied Plaintiff of all normal employment opportunities and due remuneration through planned patterns of harassment. (D.I. 1 at 1.) There are no allegations in the Complaint indicating where the alleged actions took place.

Defendants argue that the Complaint fails to show that they had sufficient minimum contacts with Delaware to satisfy the minimum requirements of due process necessary for this Court to exercise personal jurisdiction over them. The Court agrees. Even taking Plaintiff's averments as true, as this Court is required to do pursuant to Rule 12(b)(2), Plaintiff's Complaint makes no mention of any occurrence in Delaware. As previously mentioned, when a defendant raises a personal jurisdiction defense, the plaintiff has the burden to establish with "reasonable particularity" sufficient contacts between the defendant and the forum state to support jurisdiction. See Provident Nat'l Bank, 819 F.2d at 437. Plaintiff made no argument in opposition to Defendants' Motion To Dismiss pursuant to Rule 12(b)(2). Nor did Plaintiff present any competent evidence in support of his Complaint to meet his burden of proof showing that this Court has personal jurisdiction over these three Defendants. By failing to respond to Defendants' argument, Plaintiff did not provide this Court with any additional information to warrant the exercise of personal jurisdiction over Defendants, and, thus, he fails to meet his burden to establish that either specific or general personal jurisdiction exists. Because Plaintiff has not demonstrated a basis for personal jurisdiction, this Court will dismiss the Complaint as to Defendants Mitchell, Iger, and Ruthizer.

### B. Dismissal Under Rule 12(b)(4) and 12(b)(5)

**\*3** Defendants move for dismissal on the basis of insufficiency of process and insufficiency of service of process. Defendants argue that Plaintiff improperly sent summonses and Complaints to Defendants Mitchell, Iger, and Ruthizer's place of business. No summons was issued for Walt Disney. Defendants argue that Plaintiff did not comply with the service requirements of Rule 4, and therefore, the Complaint should be dismissed pursuant to 12(b)(4) [FN1] and 12(b)(5) [FN2] of the Federal



Rules of Civil Procedure. The Court finds no need to address the service issue as to Defendants Mitchell, Iger, and Ruthizer since it lacks personal jurisdiction over them. As will be discussed, service has not been effected upon Walt Disney.

> FN1. Rule 12(b)(4) provides for dismissal for insufficiency of process.

> FN2. Rule 12(b)(5) provides for dismissal for insufficiency of service of process.

A defendant may file a motion to dismiss pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure when a plaintiff fails to properly serve him or her with the summons and complaint. Plaintiff was notified by way of Defendants' Motion To Dismiss that summons was never issued for Walt Disney. Plaintiff opposes the Motion To Dismiss, but did not respond to the issue of his failure to serve Walt Disney.

Rule 4(m) of the Federal Rules of Civil Procedure states that "[i]f service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action." Fed.R.Civ.P. 4(m). Plaintiff filed his complaint on August 7, 2006. At the time he filed his Complaint he received a copy of Rule 4 of the Federal Rules of Civil Procedure. Plaintiff signed the acknowledgment which states that he "understand(s) that it is (his) responsibility to make service of process on Defendants in accordance" with Rule 4. (D.I.1, Attach.3.)

More than 120 days have passed, yet Plaintiff failed to seek issuance of a summons for Walt Disney and there has been no service of the summons and Complaint. Moreover, Plaintiff did not respond to the service issue raised in the Motion To Dismiss, nor did he provide any reason for his failure to serve, or to even attempt to serve Walt Disney. Accordingly, as to Walt Disney, the Court will grant the Motion To Dismiss for failure to serve.

C. Dismissal Under Rule 12(b)(6)

Defendants contend that the Complaint should be dismissed because it fails to meet the liberal

pleading standard set forth in Fed.R.Civ.P. 8 in that it does not give Defendants fair notice of Plaintiff's claims. Defendants also argue that because of the futility of amendment and Plaintiff's litigious history, amendment should not be allowed.

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir.1993). To that end, the Court assumes that all factual allegations in Plaintiff's pleading are true, and draws all reasonable factual inferences in the light most favorable to Plaintiff. Amiot v. Kemper Ins. Co., 122 Fed. Appx. 577, 579 (3d Cir.2004). However, the Court should reject "unsupported allegations," "bald assertions," or "legal conclusions." Id. A Rule 12(b)(6) motion should be granted to dismiss a pro se complaint only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

\*4 Rule 8(a)(2) provides that the Complaint shall set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Plaintiff is not required to allege affirmatively every aspect of his claims, but only to present sufficient facts to allow the opposing party to conduct discovery and prepare a defense. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Thus, the Court should not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id.; see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002). Under this liberal pleading policy, a court should generally grant a plaintiff leave to amend his claims before dismissing a complaint that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir.2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir.2000).

Defendants are correct that the Complaint is deficient. The Complaint does not apprise Defendants of their alleged actions sufficient for them to form an adequate response. Nor does the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Slip Copy
(Cite as: 2007 WL 570196, *4 (D.Del.))

Page  53

Complaint state when the alleged actions took place, or where the alleged actions occurred. Moreover, the Complaint states that the "primary actions were perpetuated" not by the named Defendants, but by law firms and attorneys listed in the Complaint.

The Complaint fails to state a claim upon which relief may be granted.  Inasmuch as the Court has no personal jurisdiction over Defendants Mitchell, Igor, and Ruthizer, and Walt Disney has never been served, amendment will not be allowed. Based upon the foregoing analysis, the Court will grant the Motion To Dismiss.

IV. CONCLUSION

For the reasons discussed, the Court will grant Defendants' Motion To Dismiss. (D.I.7.) An appropriate Order will be entered.

ORDER

At Wilmington, this 20 day of February 2007, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Defendants' Motion To Dismiss (D.I.7) is GRANTED.

2007 WL 570196 (D.Del.), 154 Lab.Cas. P 10,806

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



# TAB 6

Not Reported in F.Supp.2d
(Cite as: 2003 WL 21960406 (D.Del.))

Page 60

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.

**Thomas J. HADLEY, in his capacity as the
Former Shareholders Representative of
the shareholders of Kiamichi Railroad Company,
Inc ., Plaintiff
v.
James S. SHAFFER, individually, Kiamichi
Railroad Company, L.L.C., and
Statesrail, L.L.C., Defendants/Third-Party
Plaintiffs/Counterclaim Plaintiffs
v.
Jack L. HADLEY and Thomas J. Hadley,
individually. Third-Party Defendants.**

**No. Civ.A. 99-144-JJF.**

Aug. 12, 2003.

Jesse E. Finkelstein, Frederick K. Cottrell, III, Anne Shea Gaza, of Richards, Layton & Finger, Wilmington, Delaware, for Defendants/Third Party Plaintiffs/Counterclaim Plaintiffs, Michael E. Schonberg, and James Berglund, of Thompson & Knight, P.C., Dallas, Texas, of counsel.

Robert Jacobs, Vincent J.X. Hedrick, of Jacobs & Crumplar, P.A., Wilmington, Delaware, for Third Party Defendants, Weldon Stout, of Wright, Stout, Fite & Wilburn, Muskogee, Oklahoma, of counsel.

OPINION

FARNAN, J.

**\*1** Presently before the Court is Third Party Defendants' Motion to Dismiss for Lack of Jurisdiction. (D.I.92). For the reasons discussed below, the motion to dismiss (D.I.92) will be denied.

I. Introduction

In June, 1995, StatesRail L.L.C. ("StatesRail"), a Delaware limited liability company, and Kiamichi Railroad Company ("Kiamichi"), a Delaware corporation, (collectively referred to as "Third Party Plaintiffs") entered into an Agreement and Plan of Merger (the "Merger Agreement"). (D.I.95, Exh.

A). The merger was completed effective June 30, 1995. (D.I. 95, Exh. A at 1). Before the merger, Kiamichi was a closely-held corporation with approximately 16 shareholders. (D.I.95, Exh. C). Jack Hadley and his wife were the majority shareholders of Kiamichi. (D.I.95, Exh. C). Under the Merger Agreement, Kiamichi created a subsidiary under the laws of Delaware, Kiamichi Acquisition, L.L.C. ("KRR Acquisition"). (D.I. 95, Exh. A at 1). Pursuant to the terms of the Merger Agreement, KRR Acquisition acquired Kiamichi's stock and Kiamichi ceased to exist.

At the time of closing, $1.4 million of the total purchase price was placed into an escrow account by the parties for indemnification purposes (the "Indemnity Escrow Account"). (D.I. 33 at 7, ¶ 4). Pursuant to the Merger Agreement, funds in the Indemnity Escrow Account not returned to StatesRail as indemnity payments are to be disbursed to the former shareholders of Kiamichi according to a schedule in the Merger Agreement. (D.I. 95, Exh. A at §§ 2.3(b), 2.6(e)). A Former Shareholder Representative ("Representative") was appointed to administer the indemnity claims asserted by Third Party Plaintiffs. (D.I. 95, Exh. A at 25, 48). Initially, Jack Hadley served as the Representative, but Thomas J. Hadley later assumed the position. (D.I. 95, Exh. B at ¶ 6).

Following the merger, StatesRail filed a lawsuit in Texas against Thomas J. Hadley, in his capacity as Representative, alleging that Hadley had failed to release indemnity payments to States Rail in accordance with the terms of the Merger Agreement. (D.I.95, Exh. E). Thomas J. Hadley filed a Motion to Dismiss, claiming that the mandatory forum selection clause in § 11.11 of the Merger Agreement provided that the Delaware courts had exclusive jurisdiction. (D.I. 95, Exh. F at 6). As a result of Section 11.11's mandatory forum selection clause, Hadley argued that the Texas court lacked jurisdiction. (D.I. 95, Exh. F at 6). Hadley's Motion to Dismiss was granted on June 29, 1998. (D.I.95, Exh. H).

On July 10, 1998, Thomas J. Hadley, in his capacity as Representative, filed a lawsuit in an Oklahoma state court alleging various breaches of the Merger Agreement. (D.I. 95 at 5). Third Party Plaintiffs removed the suit to federal court and subsequently requested and obtained a change of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d
(Cite as: 2003 WL 21960406, *1 (D.Del.))

venue to this Court, based on Section 11.11's forum selection clause. (D.I. 92 at 1-2). Third Party Plaintiffs then filed a Counterclaim and Third Party Complaint against Thomas J. Hadley and Jack Hadley, individually, disputing the ownership of certain life insurance policies related to the Merger Agreement. (D.I. 98 at 2-3).

**\*2** The parties do not dispute that the instant claims are based upon the Merger Agreement. However, Jack Hadley and Thomas J. Hadley, individually, (the "Hadleys") have moved to dismiss the claims against them for lack of in personam jurisdiction. (D.I.92).

## II. Standard of Review

Third Party Defendants Jack Hadley and Thomas J. Hadley contend that the Third Party Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) because the Court lacks personal jurisdiction over them in their individual capacities. Rule 4(e) of the Federal Rules of Civil Procedure provides that a federal court may exercise personal jurisdiction over a nonresident "to the extent permissible under the law of the state where the district court sits." Mesalic v. Fiberloat Corp., 897 F.2d 696, 698 (3d Cir.1990); Mobil Oil Corp. v. Advanced Envtl. Recycling Tech., Inc., 833 F.Supp. 437, 440 (D.Del.1993).

Once a defendant has properly raised the jurisdictional defense, the plaintiff has the burden of establishing by a preponderance of the evidence that the defendant has had minimum contacts with the forum state. Patterson v. F.B.I., 893 F.2d 595, 604 (3d Cir.1990), cert. denied, 498 U.S. 812 (1990). If the plaintiff is able to make a prima facie case supporting the exercise of personal jurisdiction, the burden shifts to the defendant to "present a compelling case that the presence of some other consideration would render jurisdiction unreasonable." Grand Entm't Group v. Star Media Sales, 988 F.2d 476, 483 (3d Cir.1993). In the context of a motion to dismiss, the record must be viewed in the light most favorable to the non-moving party. See Joint Stock Soc'y v. Heublein, Inc., 936 F.Supp. 177, 192 (D.Del.1996) (holding that the court must accept as true all well-pled facts).

## III. Parties' Contentions

The Hadleys contend that the Court lacks in personam jurisdiction over them for the purposes of this litigation. (D.I.92). The Hadleys rely on three assertions: (i) that they are not bound by the Merger Agreement's forum selection clause; (ii) that they have taken no acts within the state of Delaware that would subject them to statutory jurisdiction; and (iii) that to subject them to jurisdiction would be inconsistent with Due Process.

First, the Hadleys contend that, as non-signatories to the 1995 Merger Agreement, they are not bound by the Merger Agreement's mandatory forum selection clause. (D.I. 98 at 8). Because they are not bound by the forum selection clause, they argue that they have not consented to the exercise of personal jurisdiction over them by the Court. (D.I. 98 at 8-9). Further, the Hadleys contend that the forum selection clause cannot be enforced against them in their individual capacities as third-party beneficiaries. (D.I. 98 at 12-13). The Hadleys contend that third-party beneficiary status can only be conferred upon the party bringing the suit. (D.I. 98 at 13). Because they are not Plaintiffs in the Third Party Complaint, the Hadleys contend that they are not third-party beneficiaries to the Merger Agreement such that they should be deemed to have consented to this Court's jurisdiction.

**\*3** The Hadleys further contend that they have not committed any acts in their individual capacities that would subject them to personal jurisdiction in this Court under Delaware's long-arm statute, 10 Del. C. § 3104(c)(1-6). (D.I. 92 at 6). Finally, the Hadleys contend that because they have not had the requisite minimum contacts with the State of Delaware, the constitutional Due Process requirement has not been met. (D.I. 92 at 7). In support of this assertion, the Hadleys submit affidavits which state that they have not been in the State of Delaware regarding the subject matter of this action. (D.I. 92 at 7). For all these reasons, the Hadleys contend that they are not subject to the jurisdiction of this Court. (D.I.92).

In response, Third Party Plaintiffs contend that the Hadleys have expressly consented to and waived any objections to the exercise of personal jurisdiction by this Court pursuant to the Merger Agreement's forum selection clause. (D.I. 95 at 10). Third Party Plaintiffs argue that, as intended third-party beneficiaries of the Merger Agreement, the

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d
(Cite as: 2003 WL 21960406, *3 (D.Del.))

Hadleys are bound by the forum selection clause. (D.I. 95 at 12-13). In support of this contention, Third Party Plaintiffs point out that Thomas J. Hadley had previously attempted to enforce the terms of the Merger Agreement in an Oklahoma court, by asserting his standing as the Former Shareholders Representative. (D.I. 95 at 4, 15). Further, Thomas J. Hadley successfully argued to the Texas state court that all causes of action arising out of the Merger Agreement must be brought in Delaware. (D.I. 95 at 16). By having previously used the forum selection clause to his benefit, Third Party Plaintiffs argue that Thomas J. Hadley is now bound by the terms of that clause. (D.I. 95 at 15).

Alternatively, Third Party Plaintiffs contend that this Court has specific jurisdiction over the Hadleys. Plaintiffs assert that under a properly expansive reading of the Delaware long-arm statute, the Hadleys have, in fact, transacted business in Delaware sufficient to satisfy § 3104(c)(1). (D.I. 95 at 17-18).

Further, Third Party Plaintiffs assert that the exercise of jurisdiction by this Court over the Hadleys comports with Due Process. (D.I. 95 at 21). In support of this contention, Third Party Plaintiffs argue that the Hadleys: (i) purposely availed themselves of Delaware state laws; (ii) could have reasonably anticipated being called into the courts of Delaware; and (iii) would bear a minimal burden if made to defend this action in this jurisdiction. (D.I. 95 at 21). In sum, Plaintiffs contend that the Hadleys are subject to the exercise of personal jurisdiction by this Court. (D.I.95).

IV. Discussion

A. Whether the Hadleys Have Expressly Consented to Jurisdiction in Delaware Pursuant to the Forum Selection Clause?

The first question in an evaluation of whether the Hadleys can be properly subjected to the jurisdiction of this Court, is whether they have consented to jurisdiction as a result of the Merger Agreement's forum selection clause. When a party is bound by a forum selection clause, the party is considered to have expressly consented to personal jurisdiction. Res. Ventures, Inc. v. Res. Mgmt Int'l, Inc., 42 F.Supp.2d 423, 431 (D.Del.1999). An express consent to jurisdiction, in and of itself, satisfies the

requirements of Due Process. Sternberg v. O'Neil, 550 A.2d 1105, 1116 (Del.1987). Such consent is deemed to be a waiver of any objection on Due Process grounds and an analysis of minimum contacts becomes unnecessary. See Hornberger Mgmt. Co. v. Haws & Tingle General Contractors, Inc., 685 A.2d 724, 727 (Del.Super.Ct.2000) (stating "[a] party may expressly consent to jurisdiction by agreeing to a forum selection clause … If a party consents to jurisdiction, a minimum contacts analysis is not required."); USH Ventures v. Global Telesystems, Inc. C.A. No. 97C-08-086, 1998 Del. Super Lexis 167, at *22 (Del.Super.Ct. May 21, 1998) (same). Thus, if the Court determines that the Hadleys are bound by the forum selection clause, the Court can exercise in personam jurisdiction over them.

*4 In order to determine whether the Hadleys are bound by the forum selection clause, three questions must be resolved. These questions are: (1) whether the forum selection clause is valid; (2) whether the Hadleys are either parties, third-party beneficiaries, or closely related to the Merger Agreement; and (3) whether the present claim arises from their standing relating to the Merger Agreement. Only where all three questions are answered in the affirmative, can the Hadleys be bound by the forum selection clause and found to have consented to the Court's jurisdiction.

1. Is the Forum Selection Clause Valid?

Both Delaware and federal decisional law acknowledge that, as a general principle, private parties may agree to conduct all potential litigation arising out of a contract in a single jurisdiction. Process and Storage Vessels, Inc. v. Tank Servs., Inc., 541 F.Supp. 725, 733 (D.Del.1982). Such Merger Agreements are presumptively valid and will be enforced by the forum unless the party objecting to its enforcement establishes: (i) it is a result of fraud or overreaching; (ii) enforcement would violate a strong public policy of the forum; or (iii) enforcement would, in the particular circumstances of the case, result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable. Coastal Steel Corp. v. Tilghman Wheelabrator, LTD., 709 F.2d 190, 202 (3d Cir.1983), overruled on other grounds by, Lauro Lines v. Chasser, 490 U.S. 495 (1989). Generally put, forum selection clauses are enforced so long as enforcement at the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



time of litigation would not place any of the parties at a substantial and unfair disadvantage or otherwise deny a litigant his day in court. See Process, 541 F.Supp. at 733 (citing The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972)). Because the Hadleys have made no assertion regarding the validity of the clause, they have not overcome the presumption in favor of validity. Accordingly, the Court concludes that the forum selection clause is valid.

2. Are the Hadleys Subject to the Forum Selection Clause As Third-Party Beneficiaries?

The Court must next determine whether the Hadleys are subject to the terms of the forum selection clause. If the Hadleys are found to be either parties, third-party beneficiaries, or closely related to the Merger Agreement, they will necessarily be bound by the forum selection clause. The Court will first turn to whether the Hadleys can be considered parties to the Merger Agreement.

The Hadleys correctly assert that they are not parties to the original 1995 Merger Agreement. (D.I. 98 at 8). They are not listed as parties on the Merger Agreement's cover page. Further, neither Thomas nor Jack Hadley signed the Merger Agreement in any capacity. (D.I. 95 at Exh. A). The Hadleys, however, stop short of a full analysis. The parties executed an amendment to the Merger Agreement (the "Amendment") on October 3, 1995. Jack Hadley, in his capacity as Chairman of the Board of Directors of Kiamichi, was a signatory to the Amendment. As such, Jack Hadley would be bound by the forum selection clause in his capacity as chairman. See Resource Ventures, Inc., 42 F.Supp.2d at 432 (finding that a signatory to an amendment of a contract is bound by the forum selection clause in the original contract). However, Jack Hadley is not bound by the clause in his individual capacity. See, e.g., Packer v. TDI Systems, 959 F.Supp. 192, 195 n. 2 (S.D.N.Y.1997) (stating "[t]he forum selection clause, of course, applies to the parties to the contracts, the corporate entities, and not to the individual signatories."). Accordingly, the Court concludes that the Hadleys, in their individual capacities, are not parties to the Merger Agreement.

*5 The next inquiry is to determine whether the Hadleys can be considered third-party beneficiaries

to the Merger Agreement. To qualify as a third-party beneficiary, it must be shown that the contract was "made for the benefit of that third party within the intent and contemplation of the contracting parties." Grand St. Artists v. Gen'l Electric. Co., 19 F.Supp.2d 242, 253 (D.N.J.1998) (citing Grant v. Coca-Cola Bottling Co., 780 F.Supp. 246 (D.N.J.1991)); Pierce Associates, Inc. v. Nemours Foundation, 865 F.2d 530, 535 (3d Cir.1988) (applying Delaware law); Browne v.. Robb, 583 A.2d 949, 954-955 (Del.1990) (requiring the contracting parties to intend to confer a benefit on the third party). To determine whether the parties intended to make an individual a third-party beneficiary, the Court must look to the terms of the contract and the surrounding circumstances. Grand St. Artists, 19 F.Supp.2d at 253.

Under Delaware law, the intention of the contracting parties is paramount in determining whether others have standing as third-party beneficiaries. See E.I. DuPont & Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S., 269 F.3d 187, 197 (3d Cir.2001). Thus, if it was not the promisee's intention to confer direct benefits upon a third party, but rather such third party happens to benefit from the performance of the promise either coincidentally or indirectly, then the third party will have no enforceable rights under the contract. Guardian Constr. Co. v. Tetra Tech Richardson, Inc., 583 A.2d 1378, 1386 (Del.Super.Ct.1990).

The Court concludes that the Hadleys are intended third-party beneficiaries of the Merger Agreement. As consideration for the sale of shares in Kiamichi, the Merger Agreement provided that the shareholders (including the Hadleys) would receive the payments set forth in paragraph 2.3(a). (D.I. 95, Exh. A at 5).    Paragraph 8.6 of the Merger Agreement required the approval of the Hadleys and other shareholders before the Merger Agreement became final. (D.I. 95, Exh. A at 36). The Hadleys also consented to the stock purchase and merger. (D.I. 95 at Exh. D, E, K). The Hadleys, as shareholders, were undoubtedly intended to receive a benefit from the sale of their stock through the Merger Agreement. See DuPont, 269 F.3d at 196. In fact, Jack Hadley and his wife were majority shareholders of Kiamichi, owning approximately 60% of the shares. (D .I. 95 at Exh. C. Schedule 3.4 of Stock Purchase Merger Agreement). Further, Jack Hadley was actively involved in the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



negotiations that led to the Merger Agreement. See Kleifgen Decl. at ¶¶ 3-4.

Thomas J. Hadley has exhibited his status as a third-party beneficiary in at least two ways. First, when faced with the Texas suit, initiated by StatesRail, Mr. Hadley was granted a 12(b)(2) Motion to Dismiss after he successfully argued that "... by Section 11.11 of the Merger Agreement the parties irrevocably submitted and consented to the jurisdiction and venue of the courts of the State of Delaware and the federal courts located in Delaware." (D.I. 95, Exh. F at ¶ 6). The case was dismissed based on Mr. Hadley's assertion that the forum selection clause was enforceable in "any dispute arising out of or relating to the Merger Agreement." (D.I. 95, Exh. F at ¶ 6). Two weeks after the Texas court granted Mr. Hadley's Motion to Dismiss, Mr. Hadley instituted suit against Third Party Plaintiffs in Oklahoma. There, Mr. Hadley used his third-party beneficiary status to his benefit by seeking compensation for alleged breaches of the Merger Agreement. The Oklahoma court agreed with the Texas court's conclusion that the forum selection clause was binding and transferred the case to this Court.

*6 Delaware law prohibits third-party beneficiaries from reaping the benefits of a contract they seek to enforce, while, at the same time, avoiding the burdens or limitations of the contract, such as a forum selection clause. Process, 541 F.Supp. at 733. For example, in Rumsey Elec. Co. v. Univ. of Del., the Delaware Supreme Court held that:

> When plaintiff seeks to secure benefits under a contract as to which he is a third-party beneficiary, he must take that contract as he finds it .... the third party cannot select the parts favorable to him and reject those unfavorable to him.

358 A.2d 712, 714 (Del.1976) (quoting Sanders v. Amer. Cas. Co., 269 Cal.App.2d 306, 310 (Cal.Ct.App.1969)). See also, Coastal Steel, 709 F.2d at 203 (holding that third-party beneficiary status does not permit the avoidance of contractual provisions otherwise enforceable); Barrett v. Picker Int'l Inc., 589 N.E.2d 1372, 1376 (Ohio Ct.App.1990) ("Therefore, plaintiffs' status as third-party beneficiaries cannot be used as both a sword to reap the benefits of the [contract] and a shield to protect them from enforcement of the

forum selection clause."). Thomas J. Hadley cannot use the forum selection clause to his advantage, as he did in the Texas and Oklahoma litigations, and then assert that he is not bound by its terms in this Court. Based on the above cited factors, the Court concludes that the Hadleys are third-party beneficiaries to the Merger Agreement. As third-party beneficiaries, the Hadleys are bound by the terms of the Merger Agreement, including the forum selection clause.

Even if the Hadleys are not third-party beneficiaries to the Merger Agreement, the Court concludes that they are closely related to the Merger Agreement, and therefore, reasonably bound by its forum selection clause. "Forum selection clauses bind nonsignatories that are closely related to the contractual relation or that should have foreseen governance by the clause." Jordan v. SEI Corp., 1996 U.S. Dist. LEXIS 7627, at *18-19 (E.D. Pa. June 4, 1996). See also Hugel v. Corporation of Lloyd's, 999 F.2d 206, 209-210 (7th Cir.1993) (binding corporations owned and controlled by contracting party); Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 514 n. 5 (9th Cir.1988) (binding parent companies of contracting party and individual directors); Coastal Steel, 709 F.2d at 202 (binding a third-party beneficiary). In the instant case, the Hadleys are closely related to the Merger Agreement for the reasons discussed in the context of the Court's third-party beneficiary analysis. Accordingly, the Court concludes that the Hadleys should have foreseen governance by the forum selection clause.

3. Do the Claims Against the Hadleys Arise from their Status Relating to the Merger Agreement?

In order for the Hadleys to be bound by the terms of the forum selection clause, the claims asserted must arise from the Merger Agreement at issue. See DuPont, 269 F.3d at 197; see also Indus. Elec. Corp. v. Power Distrib. Group, Inc., 215 F.2d 677, 680 (7th Cir.2000) (holding that a third-party beneficiary was not compelled to arbitrate claims because the claims did not arise out of the contract from which it derived its third-party status). Here, the Hadleys concede that the present claim arises out of the Merger Agreement. Because the claim is based on the Merger Agreement to which the Hadleys are bound, the Court concludes that the Hadleys are bound by the terms of the forum



selection clause contained within the Merger Agreement.

**\*7** In sum, the Court concludes that Jack Hadley and Thomas J. Hadley are third-party beneficiaries, or at the very least, closely related to the Merger Agreement, which contains a valid forum selection clause such that the Hadleys are bound by the forum selection clause. Because the Hadleys are bound by the forum selection clause, the Court concludes that they have expressly consented to the jurisdiction of this Court.

B. Whether the Hadleys are Subject to Personal Jurisdiction Under Specific Jurisdiction Principles?

In the alternative, even if the Hadleys were not bound by the forum selection clause such that they cannot be said to have consented to jurisdiction in this Court, the Court would conclude that the Hadleys are subject to the Court's jurisdiction under the principles of specific jurisdiction. In the absence of consent to jurisdiction, the determination of whether personal jurisdiction exists is a two-step process under Delaware law. Jeffreys v. Exten, 784 F.Supp. 146, 150 (D.Del.1992). First, in personam jurisdiction must exist under the applicable state long-arm statute. See 10 Del. C. § 3104 (2003). Second, the exercise of jurisdiction must comport with the Due Process Clause of the Federal Constitution under the standards announced in International Shoe Company v. Washington, 326 U.S. 310 (1945). See Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (3d Cir.1984); Hercules, Inc. v. Leu Trust and Banking (Bahamas) Ltd., 611 A.2d 476 (Del.1992), cert. dismissed, 507 U.S. 1025 (1993).

In order to determine whether in personam jurisdiction over the Hadleys exists, the Court must determine whether "the alleged conduct of a defendant comes within one of the provisions of the long-arm statute." Blue Ball Props., Inc. v. McClain, 658 F.Supp. 1310, 1315 (D.Del.1987). Third Party Plaintiffs assert that jurisdiction exists under 10 Del. C. § 3104(c)(1). This subsection of Delaware's long-arm statue provides that a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent "transacts any business or performs any character of work or service in the State." 10 Del.C. § 3104(c)(1). When applying the

statute, it must be construed liberally, to "confer jurisdiction to the maximum extent possible under the Due Process Clause." Wesley-Jessen Corp. v. Pilkington Visioncare, Inc., 863 F.Supp. 186, 188 (D.Del.1993); accord LaNuova D & B S.p.A. v. Bowe Co., 513 A.2d 764, 768 (Del.1986).

Subsection (c)(1) has been interpreted to be a specific jurisdiction provision. Intel Corp. v. Broadcom Corp., 167 F.Supp.2d 692, 700 (D.Del.2001). Specific jurisdiction requires that there be a nexus between the plaintiff's cause of action and the conduct of the defendant. Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414 n. 8 (1983). Therefore, personal jurisdiction can be asserted over a defendant on the basis of a single act related to the state, if the claim has its basis in the asserted transaction. Blue Ball, 658 F.Supp. at 1316; Applied Biosystems, Inc. v. Cruachem, Ltd., 772 F.Supp. 1458, 1466 (D.Del.1991); Tristrata Tech., Inc. v. Neoteric Cosmetics, Inc., 961 F.Supp. 686, 690 (D.Del.1997). The relatedness requirement only provides that the plaintiff cannot assert personal jurisdiction over a defendant on claims that are unrelated to the defendant's jurisdictional contacts. Intel, 167 F.Supp.2d at 704; Int'l Shoe, 326 U.S. at 317-18. The analysis then rests on two questions: (i) whether the Hadleys "transacted business" in Delaware to satisfy subsection (c)(1); and (ii) if so, whether those contacts in Delaware gave rise to the present controversy.

1. Whether the Hadleys Transacted Business in Delaware?

**\*8** Because Third Party Plaintiffs assert jurisdiction over the Hadleys in their individual capacities based on actions taken in their capacities as corporate agents, the fiduciary shield doctrine is implicated. The fiduciary shield doctrine is a judicially created doctrine that immunizes acts performed by an individual in the individual's capacity as a corporate employee from serving as the foundation for the exercise of personal jurisdiction over that individual. Res. Ventures, 42 F.Supp.2d at 434. In the past, this Court has concluded that the fiduciary shield doctrine is not an absolute bar to personal jurisdiction over a corporate agent. Mobil Oil, 833 F.Supp. at 443. As such, the mere fact that the defendant has acted through his corporation is insufficient to bar jurisdiction over the defendants

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Westlaw.

Not Reported in F.Supp.2d
(Cite as: 2003 WL 21960406, *8 (D.Del.))

individually. Tristrata, 961 F.Supp. at 690. Thus, the Court must read § 3104(c)(1) broadly and consider all forum related contacts of the individual defendants, even those taken in their fiduciary capacities. Res. Ventures, 42 F.Supp.2d at 434; Brady v. Preferred Florist Network, Inc., 791 A.2d 8, 12 (Del. Ch.2001).

In support of their argument that the Hadleys are subject to this Court's jurisdiction, Third Party Plaintiffs point to the Delaware Chancery Court's decision in NRG Barriers, Inc. v. Jelin, C.A. No. 15013, 1996 Del. Ch. LEXIS 81 (Del. Ch. July 1, 1996). This Court finds NRG to be on point factually and is persuaded by the NRG Court's analysis. In NRG, the Chancery Court denied defendant-shareholder's Motion to Dismiss for lack of in personam jurisdiction. 1996 Del. Ch. LEXIS 81, at *6. The court found that the actions of defendant-shareholders constituted the "transact[ion] of business" sufficient to subject them to jurisdiction under Subsection (c)(1) of Delaware's long-arm statute. Id. The court pointed to the following four facts as support for its finding: (i) defendants were shareholders in a closely-held Delaware corporation; (ii) defendants entered into a Stock Purchase Merger Agreement, a contract with a Delaware corporation to sell their stock in the Delaware close corporation; (iii) the parties expressly agreed Delaware law governed the Stock Purchase Merger Agreement; and (iv) Delaware lawyers participated in drafting the Merger Agreement and rendered legal advice with respect to Delaware law. Id. at *7.

The Court finds that three of the four factors cited in NRG are present in this case. As to the first factor, the Hadleys were shareholders in Kiamichi, a closely-held Delaware corporation. Second, the Hadleys, as shareholders, entered into the Merger Agreement, which provided for a stock purchase and merger. Third, as the Court has previously discussed, the parties consented to the Merger Agreement, which contained a Governing Law Clause and provided that the Merger Agreement would be enforced in accordance with the laws of Delaware. (D.I. 95, Exh. A. at § 11.5).

**\*9** In support of their contention that the statutory requirements of Delaware's long-arm statute have not been met, the Hadleys have provided the Court with affidavits that assert that they have not been in Delaware regarding the subject matter of this action.

(D.I. 92 at 7). However, the Hadleys fall short in their effort to avoid jurisdiction by relying too heavily on physical ties to Delaware. As noted in NRG, the court is not limited to a "personal, physical presence ... within the borders of a state" when determining whether personal jurisdiction exists. 1996 Del. Ch. LEXIS 81, at *10.

The Court concludes that the Chancery Court's holding in NRG should be followed, and therefore, concludes that the Hadleys' actions satisfy the minimum contacts required by Subsection (c)(1) of the Delaware long-arm statute. Having concluded that the Hadleys transacted business in Delaware sufficient to satisfy the Delaware long-arm statute, the Court must next determine whether the Hadleys' contacts with Delaware are related to the present controversy. Because neither party disputes that the Merger Agreement and resulting stock purchase and merger gave rise to the present controversy, the Court concludes that the statutory requirement of specific jurisdiction has been met.

2. Due Process Requirements

Having determined that the Hadleys have satisfied the statutory basis for establishing personal jurisdiction, the Court must next consider whether the exercise of personal jurisdiction comports with the constitutional requirements. Due process requires that a defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." ' Int'l Shoe, 326 U.S. at 319. In Hanson v. Denckla, the Supreme Court noted that "it is essential that in each case there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 357 U.S. 235, 253 (1958).

In addition, the defendant's conduct and connection with the forum State must be such that he should reasonably anticipate being haled into court there. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). A Due Process analysis requires the court to examine the relationship between the forum, the litigation, and the defendant to determine whether a defendant can be fairly subjected to the court's personal jurisdiction. Sternberg v. O'Neil, 550 A.2d 1105, 1120 (Del.1988).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d
**(Cite as: 2003 WL 21960406, \*9 (D.Del.))**

After reviewing the facts in light of the applicable principles, the Court concludes that the exercise of personal jurisdiction in this case comports with due process. The Hadleys purposely availed themselves of Delaware law. As shareholders, they approved the Merger Agreement, which explicitly stated that Delaware law would govern all disputes arising from the Merger Agreement after the merger. *See* Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). Further, Jack Hadley was instrumental in the negotiations that led to the Merger Agreement. Both Jack and Thomas J. Hadley voted their shares in favor of the Merger Agreement. By approving the Merger Agreement, the Hadleys could have reasonably anticipated being haled into the Delaware courts. *See* World-Wide Volkswagen, 555 U.S. at 291-292.

**\*10** Finally, the burden on the Hadleys to litigate the present claim in Delaware is minimal when weighed against the interests of Third Party Plaintiffs and the State of Delaware. Because this claim arises out of Thomas J. Hadley's breach of contract claims, which are also being litigated in Delaware, he cannot contend that he would be unduly burdened by being made to litigate the instant claims in Delaware, as well. Further, the State of Delaware has a strong interest in adjudicating related claims in the same court. Finally, the Hadleys have failed to present the Court with any factual support for why jurisdiction would violate Due Process or be unduly burdensome. Accordingly, the Court concludes that the Due Process requirements are satisfied.

V. Conclusion

In sum, the Court concludes that the forum selection clause contained within the Merger Agreement is valid and enforceable against the Hadleys in their individual capacities. Additionally, the Court concludes that the exercise of personal jurisdiction over the Hadleys is proper under the Delaware long-arm statute and comports with Due Process. Accordingly, the Third Party Defendants' Motion to Dismiss (D.I.92) will be denied.

An appropriate Order will be entered.

ORDER

NOW THEREFORE, for the reasons stated set

forth in the Opinion issued this date, IT IS HEREBY ORDERED this 12 th  day of August 2003, that the Third Party Defendants' Motion to Dismiss for Lack of Jurisdiction (D.I.92) is DENIED.

2003 WL 21960406 (D.Del.)

END OF DOCUMENT



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SOLAE, LLC, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | C.A. No. 07-140-JJF |
| vs. | ) | |
| | ) | |
| HERSHEY CANADA INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**COMPENDIUM OF UNREPORTED CASES
CITED IN ANSWERING BRIEF OF SOLAE, LLC
IN OPPOSITION MOTION TO DISMISS**

MORRIS JAMES LLP

P. Clarkson Collins (I.D. No. 739)
Katherine J. Neikirk (I.D. No. 4129)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware  19899
(302) 888-6800
pcollins@morrisjames.com
kneikirk@morrisjames.com

OF COUNSEL:
CROWELL & MORING LLP
Scott L. Winkelman
Monica M. Welt
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004
(202) 624-2500

Dated:  June 25, 2007

# TAB 7

Slip Copy
**(Cite as: 2007 WL 544156 (Del.Super.))**

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Delaware,
New Castle County.

**HEALTHTRIO, INC., Plaintiff,**
v.
**David J. MARGULES; Howard Horwitz;
Norman Oberstein; Curtis Capeling;
Montgomery McCracken and John W.
Newcomer, Defendants.**

**C.A. No. 06C-04-196.**

Submitted: Oct. 6, 2006.
Decided: Jan. 16, 2007.

Upon Consideration of Defendants' Motion to Dismiss GRANTED IN PART, DENIED IN PART.

Kevin W. Gibson, Esq., Gibson & Perkins, P.C., Wilmington, Delaware for Plaintiff.

Nicholas E. Skiles, Esq., Swartz, Campbell, Wilmington, Delaware for Defendant Margules.

John A. Elzufon, Esq., Elzufon, Austin, Reardon, Tarlov & Mondell, Wilmington, Delaware for Defendant Horowitz.

Daniel A. Griffith, Esq., Marshall, Dennehey, Wilmington, Delaware for Defendant Capeling.

M. Duncan Grant, Esq., Pepper, Hamilton, LLP, Wilmington, Delaware for Defendant Montgomery.

OPINION AND ORDER

YOUNG, J.

**\*1** On April 21, 2006, HealthTrio, Inc. ("HealthTrio"), the Plaintiff, filed a four count legal malpractice action against David J. Margules ("Margules") and Joanne P. Pinckney ("Pinckney") and their firm Bouchard, Margules & Friedlander, P.A. ("BMF"); Howard L. Horwitz ("Horwitz") and Norman Oberstein ("Oberstein") and their firm Oberstein, Kibre & Horowtiz, LLP ("OKH"); Curtis

Capeling ("Capeling") and his firm Harwell, Howard, Hyne, Gabbert & Manner, P.C. ("HHHGM"); and John H. Newcomer, Jr. ("Newcomer") and his firm Montgomery, McCraken, Walker & Rhoads, LLP ("MMWR"). The four claims raised in the Complaint are: (1) Legal Malpractice against all Defendants, (2) Breach of Fiduciary Duty against all Defendants, (3) Breach of Contract against all Defendants and (4) Respondeat Superior against BMF, OKH, HHHGM and MMWR. While the Plaintiff filed the Praecipe with the Complaint, he also filed a document asking that the Praecipe be held because an Acceptance of Service would be filed by the Defendants. [FN1] An Acceptance of Service was never filed and instead the Plaintiff released the hold placed on the Praecipe on May 12, 2006, when he filed a second Praecipe. On July 27, 2006, the Plaintiff filed his First Amended Complaint, which removed Pinckney as a defendant and modified the second count of the Complaint, the Breach of Fiduciary Duty claim, to allege a breach solely against Margules/BMF. None of the Defendants answered the Complaint or the First Amended Complaint. Rather, each of the four sets of Defendants has submitted the assorted motions to dismiss.

> FN1. The Plaintiff's attorney, Kevin W. Gibson, emailed the Defendants on April 21, 2006 and notified them of the fact he was holding sheriff service because it is his custom to offer defendants the option of accepting personal service.

FACTS

While each Defendant is moving to dismiss for different reasons, the basic facts of the case are universal. This legal malpractice action arose out of litigation between Immedient Corp. ("Immedient") and HealthTrio in the Delaware Superior Court. The defendant in that case and the plaintiff in the present action, HealthTrio, is in the business of producing computer systems for managed health care organizations. The plaintiff in the underlying action, Immedient, is a software system producer that entered into a professional services agreement ("PSA") with HealthTrio to create certain software programs for HealthTrio. In March, 2001, a dispute arose between Immedient and HealthTrio. On August 23, 2001, Immedient filed suit to recover monies it claimed were due under the PSA. HealthTrio hired Newcomer, Horwitz, Oberstein



and Capeling and their law firms to defend them in the litigation.

The lawyers consulted, and on October 17, 2001, after being furnished information by HealthTrio, Newcomer filed an Answer and Counterclaim. On January 30, 2002, Margules/BMF agreed to render legal advice to Healthtrio in the Immedient action. On February 11, 2002, HealthTrio filed a Substitution of Counsel in the Immedient action, whereby Newcomer/MMWR withdrew as HealthTrio's local counsel of record and Margules/BMF became HealthTrio's local counsel of record. The applicable scheduling order required that any motions to amend the pleadings be filed by February 8, 2002. Despite new counsel, no such motion was made until Margules/BMF filed a motion to amend HealthTrio's Answer and Counterclaim to assert a counterclaim of breach of contract and an additional counterclaim for fraud and misrepresentation on April 22, 2003. Judge Cooch denied the motion on the first day of trial, April 28, 2003, stating that "[c]utoff dates for amendments and pleadings are important in litigation so we can avoid the very imbroglios that we find ourselves in today." The trial was held April 28 through May 2, 2003, December 1 through December 5, 2003, and March 3 and 4, 2004. On December 12, 2003, Margules/BMF renewed its motion to amend the pleadings. In a February 24, 2004 letter, and in a lengthy March 3, 2004 ruling, Judge Cooch denied HealthTrio's renewed motion to amend the counterclaim. On November 4, 2004, Margules/BMF withdrew as counsel of record and William R. Denny and his firm, Potter Anderson & Corroon, LLP were substituted as counsel for HealthTrio. On November 23, 2004, HealthTrio's new counsel requested leave to amend the counterclaim, which Judge Cooch again denied on December 8, 2004. On January 18, 2005, HealthTrio argued for the inclusion of a claim for negligent misrepresentation against Immedient. Judge Cooch, in a Memorandum Opinion issued on June 22, 2005, ruled that HealthTrio could not make such a claim because it came too late. Judge Cooch ultimately ruled against HealthTrio in the amount of $721,579.

**\*2** In the case at bar, HealthTrio claims, in the first count of the First Amended Complaint, legal malpractice against all the aforementioned Defendants arising from their failure to "counsel, advise, and recommend" that HealthTrio plead "a breach of contract counterclaim, an additional fraud and misrepresentation counterclaim and a negligent misrepresentation counterclaim." In the second count, Plaintiff claims Breach of Fiduciary Duty against Margules/BMF for Margules' failed to notify HealthTrio that it did not have an affirmative claim against Immedient for breach of contract or negligent misrepresentation. Finally, in the third count, the Plaintiff alleges all the Defendants breached their contractual duty to provide "skillful, diligent, competent and professional legal advice." The Plaintiff seeks damages in excess of $100,000. In addition, the Plaintiff claims it is entitled to recoup attorney fees paid to its counsel in the present action, and to disgorge the attorney fees paid to the Defendants in the underlying action.

### DISCUSSION

Currently before the Court are four motions to dismiss filed by the four sets of defendants in this action. While each set of defendants has filed its own motions, two of the motions are repeated by multiple defendants, and so will be addressed together. First, Capeling/HHHGM and Newcomer/ MMWR filed motions to dismiss due to the expiration of the statute of limitations. Second, Margules/BMF, Capeling/HHHGM, and Newcomer/MMWR all filed Rule 12(b)(6) motions to dismiss Counts I and III. Each remaining motion is filed singularly. Horwitz and Oberstein/OKH have filed a Rule 12(h)(3) motion to dismiss for lack of jurisdiction based on a forum selection clause. In addition, Capeling/HHHGM have filed a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. The Court will begin by addressing the three motions raising jurisdictional issues, before proceeding to the Rule 12(b)(6) motion.

The Horwitz and Oberstein/OKH Rule 12(h)(3) Motion to Dismiss for Lack of Jurisdiction Based on a Forum Selection Clause

Defendant Horwitz and Oberstein/OKH seeks a Rule 12(h)(3) dismissal based on the Court's lack of jurisdiction due to the existence of an enforceable forum selection clause between it and the Plaintiff. The forum selection clause is contained within the retainer agreement. It mandates that "any and all disputes arising in connection with this agreement or the services provided pursuant to this agreement must and shall be resolved in the courts of the State

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



of California, County of Los Angeles, which shall have sole and exclusive jurisdiction and venue as to the same."

Defendants caption this as a Rule 12(h)(3) motion to dismiss for lack of jurisdiction. The Delaware Court of Chancery has held that the proper procedural rubric for addressing a forum selection clause is under Rule 12(b)(3), improper venue. [FN2] As the Court of Chancery points out, the Superior Court is in conflict, with some judges holding the correct standard is under 12(b)(6) and others holding it is 12(b)(3). [FN3] The approach taken here will follow that adopted by the Court of Chancery and the majority of the federal courts, reviewing the Defendant's motion as if it had a Rule 12(b)(3) filing. Hence, the Court can "grant a dismissal motion before the commencement of discovery on the basis of affidavits and documentary evidence if the plaintiff cannot make out a prima facie case in support of its position." [FN4] However, if the plaintiff "advances a non-frivolous legal argument that would defeat the motion if the facts turn out to be as it alleges, the court usually must allow the plaintiff to take discovery to gather proof of those facts." [FN5]

> FN2. Simon v. Navellier Series Fund, 2000 WL 1597890, at *3-*7 (Del. Ch.).

> FN3. Id. at *6. See Simm Associates, Inc. v. PNC Nat'l Bank, 1998 WL 961764, at *3 (Del.Super.) (In which Judge Quillen held that Rule 12(b)(6), and not Rule 12(b)(3), should govern motions); but see Double Z Enterprises, Inc. v. General Marketing Corp., 2000 WL 970718, at *2-*3 (Del.Super.) (In which Judge Del Pesco, without discussion, treats a motion based on a forum selection clause that limited plaintiff to a particular venue as one under Rule 12(b)(3)).

> FN4. Id.

> FN5. Id.

*3 As to the merits of the Motion, in considering the enforceability of forum selection clauses, Delaware courts have followed the approach adopted by the United States Supreme Court in M/S Bremen v. Zapata Off-Shore Company, 407 U.S. 1 (1972). [FN6] Delaware courts have held that, if there is a forum selection clause in a contract, even when

venue where the suit is filed is proper, the court should decline to proceed when the parties freely agreed that litigation should be conducted in another forum. [FN7] Furthermore, in M/S Bremen, the U.S. Supreme Court held that, "forum selection clauses are prima facia valid and should be enforced unless the clause is shown by the resisting party to be unreasonable under the circumstances." [FN8] At least two Delaware courts have held that "the circumstances" are to be assessed at the time of trial. [FN9] However, our courts have also held that these clauses do not violate due process, if they are the product of a "freely negotiated" agreement and are not "unreasonable and unjust." [FN10] Furthermore, the Delaware Superior Court has stated:

> FN6. See Chaplake Holding v. Chrysler Corporation, et al., 1995 WL 653510, at *6 (Del.Super.).

> FN7. Eisenmann Corp. v. General Motors Corp., 2000 WL 140781, at * 7 (Del.Super.).

> FN8. Id.

> FN9. See Elia Corp. v. Paul N. Howard Co., 391 A.2d 214, 216 (Del.1978) and Brandywine Balloons, Inc. v. Custom Computer Service, Inc., 1989 WL 63968, at *3 (Del.Super.).

> FN10. Hornberger Management Company v. Haws & Tingle General Contractors, Inc., 768 A.2d 983, 987 (Del.Super.2000)

"Such an agreement is only unreasonable when its enforcement would seriously impair the Plaintiff's ability to pursue its cause of action. Mere inconvenience or additional expense is not the test of unreasonableness. In light of present day commercial realities, a forum clause should control absent a strong showing that it should be set aside." [FN11]

> FN11. Eisenmann Corp., 2000 WL 140781, at *7.

By requiring a showing of unreasonableness, the Delaware courts have placed a heavy burden on the plaintiff. This burden cannot be overcome by pleading mere inconvenience. As M/S Bremen stated, "it should be incumbent on the party seeking to escape his contract to show that trial in the



contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." [FN12] Thus, a resisting party must clearly demonstrate grave inconvenience. [FN13]

FN12. M/S Bremen, 407 U.S. at 18.

FN13. Chaplake Holding, 1995 WL 653510, at *6-*7.

The Plaintiff argues that the clause does not control due to reasons of judicial economy, Delaware's strong interest in adjudicating the case, and Plaintiff's entitlement to its day in court. First, it is noteworthy that the Defendants argue that OKH became involved in the Delaware litigation only when it secured agreement from HealthTrio that any issues arising out of its representation of HealthTrio in Delaware would be resolved in California. The Defendants support their argument with an affidavit from Dr. Korpman, the CEO and President of HealthTrio at the time the retainer agreement with OKH was negotiated and executed. In that affidavit, Dr. Korpman averred how changes were made by HealthTrio to the initial retainer agreement, an arbitration provision. However, Dr. Korpman stated that he and HealthTrio specifically agreed to the forum selection clause, because he knew OKH would not represent HealthTrio otherwise, and because he and HealthTrio had excessive contacts with California. Thus, it is clear that the clause was freely negotiated.

*4 Turning to Plaintiff's specific efforts aimed at resisting the motion, the first two arguments, that of judicial economy and Delaware's interest in adjudicating the matter, must fall by the wayside. The U.S. Supreme Court, in M/S Bremen, is clear that the resisting party must demonstrate some grave difficulty that accrues to him as a party, not to the courts. While the third argument attempts to capture the language necessary to overcome the forum selection clause, returning to M/S Bremen reveals the Plaintiff still cannot prevail. The Supreme Court stated that when parties to a freely negotiated agreement "contemplated the claimed inconvenience, it is difficult to see why any such claim of inconvenience should be heard to render the forum clause unenforceable." [FN14] Dr. Korpman's affidavit indicates that the inconvenience the Plaintiff now cites as creating a denial of it its day in

court, the distance, was contemplated during negotiations of the retainer. Dr. Korpman and HealthTrio freely traded the convenience of bringing an action arising from OKH's representation in Delaware in order to obtain OKH's representation against Immedient. Furthermore, this inconvenience also falls into the category of "mere inconveniences or additional expenses" and, in this day and age, would not seriously impair the Plaintiff's ability to pursue its cause of action. [FN15] As such, the Plaintiff has failed to demonstrate the required grave inconvenience.

FN14. Bremen, 407 U.S. at 16.

FN15. See Eisenmann Corp., 2000 WL 140781, at *7.

Therefore, because the Plaintiff has not made out a prima facie case in support of its position, Defendant Horwitz and Oberstein/OKH's Motion to Dismiss for Lack of Jurisdiction is GRANTED. The proper venue for the Plaintiff's claims against this Defendant is the courts of the State of California, County of Los Angeles.

The Capeling/HHHGM Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

Defendant Capeling/HHHGM challenges the personal jurisdiction of this Court, contending that the Delaware Long-Arm Statute does not apply, and that maintaining such jurisdiction would violate due process. When a motion to dismiss challenges personal jurisdiction, the burden is on the plaintiff to show a basis for the court's jurisdiction over the nonresident defendant. [FN16] This burden is met if the plaintiff can make out a prima facie case that personal jurisdiction may be exercised by the Court. [FN17] To determine whether Delaware courts can obtain personal jurisdiction, a two-step analysis is applied. First, the Court must consider whether the Delaware Long-Arm Statute, 10 Del. C. § 3104, applies; and then must evaluate whether subjecting a defendant to jurisdiction in Delaware violates the due process clause of the Fourteenth Amendment. [FN18] In determining whether jurisdiction is appropriate, the Court must view all factual disputes in a light most favorable to the plaintiff. [FN19]

FN16. Galasso v. Continental Bank, 1986 WL 7986, at *1 (Del.1986).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



FN17. Hart Holding v. Drexel Burnham Lambert, 593 A.2d 535, 593 (Del. Ch.1991).

FN18. LaNuova D & B, S.p.A. v. Bowe Co. Inc., 513 A.2d 764, 768 (Del.1986).

FN19. Boone v. Oy Partek Ab, 724 A.2d 1150, 1155 (Del.Super.1997), aff'd, 707 A.2d 765 (Del.1998).

In pertinent part, Delaware's Long-Arm Statute provides that a court may exercise personal jurisdiction over a nonresident defendant if the person:

*5 "(1) transacts any business or performs any character of work or service in the State; (2) contracts to supply services or things in this State; (3) causes tortious injury in the State by an act or omission in this State; (4) causes tortious injury in the State or outside of the State by any act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenues from services, or things used or consumed in the State." [FN20]

FN20. 10 Del. C. § 3104(c). The statute is to be construed liberally in favor of exercising jurisdiction. [FN21] In addition, it has been held to be a "single act" statute, which means that jurisdiction over nonresidents may be predicated on a single act or transaction engaged in by a nonresident within the State. [FN22] Federal and State courts have held that a reviewing court must undertake "an expansive interpretation to the long arm statute, ruling that § 3104 must be construed as conferring jurisdiction to the maximum perimeters of the due process clause." [FN23]

FN21. Waters v. Deutz Corp., 460 A.2d 1332, 1334 (Del.Super.1983).

FN22. Eudaily v. Harmon, 420 A.2d 1175, 1180 (Del.1980).

FN23. Transportes Aereos de Angola v. Ronair, Inc., 544 F.Supp. 858, 864 (D.Del.1982).

In the present case, the litigants chiefly rely on two Delaware Superior Court decisions in their arguments on the applicability of the long-arm statute. While the Defendant argues that International Controls Corp. v. Bondi [FN24] prevents the exercise of personal jurisdiction under the statute, the Plaintiff has cited Lester v. Katzen [FN25] to support its claim of personal jurisdiction. A review of the facts of International Controls reveals that the case is inapposite. In that case, the plaintiff, International Controls Corp. ("ICC"), sued its general counsel, Shea & Gould, a New York law firm, for legal malpractice in Delaware. [FN26] The plaintiff argued that personal jurisdiction existed based on the defendants' hiring of Richards, Layton & Finger ("RL & F"), a Delaware law firm. [FN27] However, RL & F was hired merely to offer opinions on Delaware corporate law to the defendant so that the defendant could assist ICC in its sale of the assets of a Delaware corporation that it owned. [FN28] While ICC was also subject to a lawsuit, through its subsidiary Delaware corporation, that litigation occurred in Oregon's federal district court. [FN29] The court ultimately concluded that sections (c)(1)-(3) of the long-arm statute did not authorize personal jurisdiction, because the defendants performed no actions in Delaware. They simply received the benefit of services performed by another in Delaware. [FN30]

FN24. 1993 WL 331172 (Del.Super.).

FN25. 1994 WL 750324 (Del.Super.).

FN26. International Controls, 1993 WL 331172, at *1.

FN27. Id. at *3.

FN28. Id. at * 1.

FN29. Id. at *2.

FN30. Id. at *3-*4.

On the other hand, Lester appears similar to the present action. In Lester, the plaintiff was injured in an industrial accident in Delaware, yet lived in Maryland. [FN31] The plaintiff discharged the previous Maryland attorney assisting him in the matter, and had his file transferred to the defendant, another Maryland attorney. [FN32] The court held that these facts demonstrated a contract to supply services. [FN33] The defendant, while advising the plaintiff to obtain Delaware counsel, nevertheless continued to work for the plaintiff. [FN34] The

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



court found that the defendant's contacts with the Industrial Accident Board and the plaintiff's employer demonstrated that the defendant made "a broad initial undertaking and did in fact serve the plaintiff as an attorney, albeit without formal appearance in Delaware, in the worker's compensation matter." [FN35] Thus, these facts met 10 Del. C. § 3104(c)(2)'s provision for the court's exercise of personal jurisdiction over a nonresident who has contracted to supply services in this State.

FN31. Lester, 1994 WL 750324, at *1.

FN32. Id.

FN33. Id.

FN34. Id. at *2.

FN35. Id.

*6 Based on Lester, the Court can exercise personal jurisdiction under section (c)(2) of the long-arm statute. From 2000 to 2004, the Plaintiff retained the Defendant to provide assistance in filing its Certificate of Incorporation with the Delaware Secretary of State and serve as its legal counsel. As part of that contract, the Defendant became involved in the litigation initiated by Immedient, another Delaware corporation, against the Plaintiff in the Delaware Superior Court. As part of that litigation, the Defendant assisted the Plaintiff in obtaining Delaware counsel, and in drafting some language related to a part of its Answer to Immedient's Complaint. Billing records indicate that, following the Plaintiff's Answer, the Defendant called, corresponded with, and generally assisted Delaware counsel in the Delaware litigation. This demonstrates that the Defendant, much like the defendant in Lester, made a broad initial undertaking, and served as one of the Plaintiff's attorneys in the action begun by Immedient in the Delaware Superior Court. Therefore, based on the services provided by the Defendant in the Delaware action, the Court holds that the Plaintiff has made a prima facie case that the Court can exercise personal jurisdiction under our long-arm statute.

While the Court has found the nonresident Defendant subject to our jurisdiction under the long-arm statute, this Court must not exercise personal

jurisdiction over a defendant when doing so would violate the defendant's due process. If the defendant is not present within the state, due process requires that he have certain minimum contacts with it to ensure that he has fair warning that a particular activity may subject him to jurisdiction in another state . [FN36] The required minimum contacts are "such that maintenance of the suit does not offend traditional notions of fairplay and substantial justice." [FN37] This analysis requires an evaluation of the quality and nature of the activity. [FN38] Returning to Lester, that court concluded that because the underlying "workers compensation matter had to be resolved in Delaware ... it [was] not unreasonable to anticipate that defendant may be haled into a Delaware court under notions of fair play and substantial justice." [FN39]

FN36. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

FN37. Id.

FN38. Id. at 319.

FN39. Lester, 1994 WL 750324, at *2.

As to the due process prong of the analysis in the present case, the Plaintiff has demonstrated that the Defendant had numerous written and oral communications to and from Delaware with Margules and Newcomer, both Delaware attorneys, regarding the Delaware litigation involving the Plaintiff. In addition, the Defendant was aware that the matter was one that was currently in the Delaware court system and had to be resolved in Delaware. Based on the above facts and the reasoning of Lester, the Defendant had notice that it could be haled into a Delaware court for legal malpractice arising from the Delaware litigation.

Therefore, because the Plaintiff has made a prima facie case that section (c)(2) of the long-arm statute covers the Defendant, and because the Court's exercise of jurisdiction does not offend due process, the Defendant's motion is DENIED.

The Capeling and HHHGM and Newcomer and MMWR Motion to Dismiss Due to Expiration of the Statute of Limitations

*7 Defendants Capeling/HHHGM and Newcomer/

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



MMWR argue that the statute of limitations works as a bar to prevent this action from proceeding. Capeling/HHHGM begin by arguing that Tennessee's one year statute of limitations applies to the action. This argument must fail, for parties do not carry the statute of limitations of their home state with them. As the Delaware Court of Chancery has held:

"Where the law of two different states may apply to an action, Delaware Courts apply the Restatement (Second) Conflicts of Laws to determine which state law applies. With respect to questions of which state's statute of limitations to apply, the courts are instructed by the Restatement to apply the statute of limitations of the forum." [FN40]

> FN40. Juran v. Bron, 2000 WL 1521478, at *10 (Del. Ch.). Thus, in this case the Court will apply Delaware's statute of limitations.

Turning to the Delaware statute of limitations, the Delaware case law is clear that 10 Del. C. § 8106 provides a three-year statute of limitations governing these actions. [FN41] Furthermore, as to legal malpractice actions, Delaware Courts have specifically held that the three year statute of limitations contained in 10 Del. C. § 8106 controls. [FN42] The statute begins to run at the time of the alleged malpractice. Ignorance of the facts does not act as an obstacle to the operation of the statute. [FN43] The only exceptions to this rule are in cases of infancy, incapacity, fraud and the absence of observable factors that would place a layman on notice of a problem, such as a title defect. [FN44] In such cases, the statute begins to run when the defect is, or should have been, discovered. [FN45] This date of discovery exception applies only in cases "where the negligence was inherently unknowable by a blamelessly ignorant plaintiff." [FN46]

> FN41. Certainteed Corp. v. Celotex Corp., 2005 WL 217032, *5 (Del. Ch.2005).

> FN42. Began v. Dixon, 547 A.2d 620, 623 (Del.Super.1988). See also Hood v. McConemy, 53 F.R.D. 435 (D.Del.1971) ("This section governs actions for legal malpractice, regardless of whether such an action sounds in contract or tort.").

> FN43. Oropeza v. Maurer, 2004 WL 2154292, at *

> 1 (Del.2004).

> FN44. Id.

> FN45. Id.

> FN46. Scott v. Bosari, 1994 WL 682615, at *9 (Del.Super.1994).

In the present case, Plaintiff defends against the Defendants' claims by arguing that the statute of limitations was tolled by (1) Defendants' fraudulent concealment; (2) the application of the date of discovery exception, and the fact the claims were inherently unknowable, and it was blamelessly ignorant, or (3) the defense of equitable tolling. First, Plaintiff's arguments as to Defendants' fraudulent concealment and the defense of equitable tolling are not made against the Defendants who are claiming that the statute of limitations has run. Instead, the Plaintiff argues that it is Margules who committed fraudulent concealment and the self-dealing necessary to claim equitable tolling. Because there is no claim of fraudulent concealment or self-dealing against these Defendants, these two arguments must fail.

As to the date of discovery exception, the Delaware Superior Court's holding in Began v. Dixon [FN47] is instructive. The Began Court was faced with a legal malpractice action against a divorce attorney. [FN48] The divorce attorney, the defendant, Gerald E. Dixon, represented Edward J. Began, the plaintiff, during Began's divorce. [FN49] On March 16, 1983, the plaintiff, apparently dissatisfied with the legal services being provided by the defendant, sought the assistance and advice of independent counsel. [FN50] The new attorney entered his appearance on April 4, 1983. [FN51] By April 2, 1986, the plaintiff had hired a second attorney to file a legal malpractice action against the defendant. [FN52] The defendant moved to dismiss plaintiff's complaint on the grounds that it was time barred. [FN53] The Court stated the statute of limitations law discussed above. As to the date of discovery rule, the court held that even, if the rule applied, the court "must presume the plaintiff discovered the allegedly negligent cause of conduct at least by the time he consulted with independent counsel in March of 1983." [FN54] Thus, the Court concluded that the March 1983 date of independent consultation clearly took the April



1986 complaint outside the statute of limitations. [FN55]

> FN47. Began, 547 A.2d 620.

> FN48. Id. at 622.

> FN49. Id.

> FN50. Id.

> FN51. Id.

> FN52. Id.

> FN53. Id.

> FN54. Id. at 623 (citing Ewing v. Beck, 520 A.2d 653, 664 (Del.1987) ("[W]e also hold that there shall be a presumption that a patient who actually consults with an independent health care provider about the same condition which is subsequently the subject matter of an alleged negligent medical continuum knew or in the exercise of reasonable diligence could have known about the prior negligent course of conduct on date of the consultation with the independent health care provider. If a patient receives independent medical advice from a skilled health care provider in the form of a second opinion or consultation, that patient has a duty of inquiry not only about his condition but about his prior course of medical treatment.")).

> FN55. Id. at 624.

**\*8** In the present case, the Plaintiff states that he consulted with Margules/BMF on January 30, 2002, and signed a retainer that day. By February 11, 2002, Margules/BMF were substituted in place of Newcomer/MMWR. "Independent counsel," as used in the Began case, would include counsel separate and apart from the previously retained counsel, such that the new counsel is free from the control of the previous counsel. There is little doubt that Margules/BMF, an attorney/firm separate and apart from both Newcomer/MMWR and Capeling/HHHGM, is free from the control of the previous counsel such that it qualifies as independent counsel. Based on this conclusion, the Plaintiff cannot prove any set of facts that would support its "blamelessly ignorant" contention. Therefore, the statute of

limitations began to accrue against these Defendants on January 30, 2002, and no tolling occurred. Because the Complaint was filed on April 21, 2006, over four years after Plaintiff sought independent counsel, the three year statute of limitations has expired, and the action against Newcomer/MMWR and Capeling/HHHGM is time barred. [FN56]

> FN56. Such a determination obviates the need to address the Defendants' argument that the Plaintiff had notice of the alleged legal malpractice by way of the April 22, 2003, motion to amend the Complaint. This determination also obviates the need to discuss the Plaintiff's decision to ask the Prothonotary's Office to hold the Praecipe. Thus, the Plaintiff's eventual released of the Praecipe on May 12, which the Defendants claimed took the Plaintiff outside the statute of limitations by 21 days, is irrelevant.

Therefore, for the foregoing reasons, the Defendants' Motion to Dismiss Due to Expiration of the Statute of Limitations is GRANTED .

Additionally, the Plaintiff has alleged that the Defendant, Capeling, filed a false affidavit with the Court. Any such misrepresentations would, presumably, be matters to be argued at an evidentiary hearing. However, since the alleged discrepancies do not affect this statute of limitations issue, these allegations are deemed MOOT.

The Margules/BMF, Capeling/HHHGM and Newcomer/MMWR Superior Court Civil Rule 12(b)(6) Motions to Dismiss Counts I and III

Defendants Margules/BMF, Capeling/HHHGM and Newcomer/MMWR, in their Motions to Dismiss, argue that Counts I and III of the First Amended Complaint should be dismissed under Delaware Superior Court Civil Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Those Defendants also contend that the Plaintiff is not legally permitted to seek recovery of the attorney fees paid to its current counsel, nor is it permitted to seek disgorgement of the fees paid to the Defendants in the underlying matter. [FN57]

> FN57. The Court has already ruled in favor of Capeling/HHHGM and Newcomer/MMWR as to their Motion to Dismiss Due to the Expiration of the Statute of Limitations. The Plaintiff's entire

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Complaint has been dismissed as to them. Therefore, the Court's decision as to this motion will affect only Margules/BMF.

When reviewing a Rule 12(b)(6) motion to dismiss, the Court "will consider all well-pleaded facts in the complaint and accept them as true." [FN58] The motion should be granted "only where it appears with reasonable certainty that [the plaintiff] would be unable to prevail on any set of facts inferable from the complaint." [FN59] The motion will be denied "if the plaintiff may recover under any conceivable set of circumstances susceptible to proof under the complaint." [FN60] In viewing the facts, the Court must draw "all reasonable inferences in favor of the non-movant." [FN61] The Court may consider documents that are "integral to the plaintiff's claim and incorporated in the complaint" in deciding a motion to dismiss. [FN62]

FN58. AT & T Corp. v. Clarendon America Ins., 2006 WL 2685081, at *3 (Del.Super.).

FN59. Lord v. Souder, 748 A.2d 393, 398 (Del.2000).

FN60. Rinaldi v. Iomega Corp., 1999 WL 1442014, at *2 (Del.Super .).

FN61. Id.

FN62. In re Santa Fe Pacific Corp. S'holder Litig., 669 A.2d 59, 69-70 (Del.1995).

**\*9** First, for the Plaintiff to maintain a legal malpractice action in Delaware, it must meet each prong of a three element test, which includes proving: "(1) the employment of an attorney; (2) the attorney's neglect of a professional obligation; and (3) resultant loss." [FN63] To prove the third element, the damages element, the plaintiff in a legal malpractice action must demonstrate that "but for his lawyer's negligence, [he] would have been successful" in the underlying action. [FN64] As the Superior Court concluded in Middlebrook v. Ayers: "Thus, in order to sustain a claim of professional negligence against a Delaware attorney, plaintiff must establish the applicable standard of care through the presentation of expert testimony, a breach of that standard of care, and a causal link between the breach and the injury." [FN65] In the

case at bar, the Defendants have elected to attack only the requirement of proximate cause, the third element, in this motion.

FN63. Sanders v. Malik, 1997 WL 817854, at *2 (Del.Super.).

FN64. Trader v. Streett, 1997 WL 528043, at * 2 (Del.Super.).

FN65. Middlebrook v. Ayers, 2004 WL 1284207, at * 10 (Del.Super.).

In the present case, the Plaintiff can withstand this motion only if, taking the well-pleaded facts as true and viewing all reasonable inferences in favor of the non-movant, but for the Defendants' negligence it would have been successful in the underlying action.

The Defendants, to support the motion, argue that Judge Cooch's legal rulings and factual findings reflect that the Plaintiff lost on the merits, and consequently would not have succeeded on any additional counterclaims. Therefore, Defendants assert Plaintiff cannot succeed in this legal malpractice action. The Plaintiff contends, citing case law from other jurisdictions, that the judicial upon opinion which Defendants rely is not admissible in the present action. In addition, the Plaintiff argues that the Defendants are essentially making a collateral estoppel argument, and that the doctrine does not apply in legal malpractice cases.

Again, in order for Plaintiff to prevail in this legal malpractice action, it must prove that it would have prevailed on the three counterclaims it contends Defendants were negligent in failing to plead in an amended counterclaim. To do so, it must be able to establish that the facts would have been borne out, at the very least on a prime facie basis, on those counterclaims. If collateral estoppel applies, then it would bar the Plaintiff from relitigating the facts in the underlying suit. The Defendants argue that would mean that their motion must be granted, since the Plaintiff cannot state a claim upon which relief may be granted.

Collateral estoppel is a refinement of the doctrine of res judicata. [FN66] When the doctrine was originally adopted, the Delaware Supreme Court stated that, "where a question of fact essential to the judgment is litigated and determined by a valid and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



final judgment, the determination is conclusive between the same parties in a subsequent case on a different cause of action. In such situation, a party is estopped from relitigating the same issue again in the subsequent case." [FN67] However, the Delaware Supreme Court has since refined the effect of collateral estoppel. [FN68] While res judicata bars a suit involving the same parties based on the same cause of action, collateral estoppel bars any party from relitigating factual issues previously litigated. [FN69] "Originally, many jurisdictions required mutuality to assert collateral estoppel. Mutuality requires a party attempting to bar an adversary from relitigating an issue to have been a party in the prior litigation or in privity with a party in the prior litigation." [FN70] The Delaware Supreme Court, however, has stated that our state, like so many other jurisdictions, has abandoned this requirement. [FN71] The modern trend of decision and the rule in Delaware expand the use of the doctrine to situations where total mutuality does not exist. [FN72] The Delaware Supreme Court has explained that "the [current] test for applying collateral estoppel [only] requires that (1) a question of fact essential to the judgment (2) be litigated and (3) determined (4) by a valid and final judgment." [FN73]

FN66. Tyndall v. Tyndall, 238 A.2d 343, 346 (Del.1968).

FN67. Id.

FN68. Columbia Cas. Co. v. Playtex FP, Inc., 584 A.2d 1214, 1216 (Del.1991).

FN69. Id., n. 4.

FN70. Id. at 1217.

FN71. Id.

FN72. Id. ("Thus, many jurisdictions [including our own] no longer require a litigant have been a party in the prior litigation or in privity with a party in the prior litigation. It is sufficient that the party against whom collateral estoppel is asserted was a previous party.").

FN73. Taylor v. State, 402 A.2d 373 (Del.1979).

*10 To begin, the Plaintiff's argument that Judge

Cooch's opinion is inadmissible evidence is moot because the doctrine of collateral estoppel is applicable in legal malpractice cases. [FN74] Hence it is the primary source for a subsequent court to turn to in order to ascertain whether the elements of collateral estoppel are met.

FN74. See Sanders, 1997 WL 817854, at *2.

Plaintiff argues that Defendants committed legal malpractice by not filing "a breach of contract counterclaim, an additional fraud and misrepresentation counterclaim and a negligent misrepresentation counterclaim." Turning to the collateral estoppel elements, the Court notes that, in addressing the breach of contract claim by Immedient against HealthTrio, Judge Cooch held that HealthTrio had not proved by a preponderance of the evidence that its performance under the contract was excused by Immedient's alleged failure to perform under the same contract. [FN75] Judge Cooch's ruling indicates that the elements of collateral estoppel have been met as to the Plaintiff's allegation that the Defendants should have included a breach of contract counterclaim, for: (1) a question of fact essential to the judgment in this case, to wit: that Immedient breached its contract with HealthTrio; (2) has been litigated, because there was a trial at which evidence on this point was presented; (3) and determined, because Judge Cooch issued an opinion in the case deciding the point; (4) by a final and binding judgment, because Judge Cooch issued an opinion that the Plaintiff did not appeal. Therefore, collateral estoppel bars the Plaintiff from relitigating the Defendants' alleged failure to plead such a counterclaim.

FN75. Immedient Corp. v. HealthTrio, Inc., 2005 Del.Super. LEXIS 262, at *29-34.

Judge Cooch's opinion in Immedient v. HealthTrio also provides the basis for a collateral estoppel ruling as to the additional fraud and misrepresentation counterclaim and the negligent misrepresentation counterclaim, which Plaintiff alleges should have been raised. Judge Cooch held that based on HealthTrio's background and experience in computers, the Court could "only harmonize the evidence by finding that HealthTrio did not contemporaneously believe that Immedient had misled them into executing the contract or that Immedient had breached the contract first." [FN76]

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Slip Copy
(Cite as: 2007 WL 544156, *10 (Del.Super.))

Additionally, the Court held that HealthTrio had "waived any affirmative defense or counterclaim for fraud by entering as it did into subsequent agreements." [FN77] Thus, the elements of collateral estoppel have been met as to the additional fraud and misrepresentation counterclaim and the negligent misrepresentation counterclaim the Plaintiff asserts Defendants should have raised, because: (1) a question of fact essential to the judgment in this case, to wit: that Immedient committed fraud or negligently misrepresented facts; (2) has been litigated, because there was a trial at which evidence on this point was presented; (3) and determined, because Judge Cooch issued an opinion in the case deciding the point; (4) by a final and binding judgment, because Judge Cooch issued an opinion that the Plaintiff did not appeal. Because the doctrine of collateral estoppel works to prevent this Court from reviewing the facts necessary for Plaintiff to have prevailed in the underlying action there is "no conceivable set of circumstances susceptible to proof under the complaint" upon which the Plaintiff can prevail on the legal malpractice claim. Therefore, the motion is GRANTED as to Count I of the First Amended Complaint.

FN76. Id. at 49.

FN77. Id. at 36.

*11 Second, the Plaintiff has included a breach of contract claim against all the Defendants. While there is an apparent dearth of Delaware case law on the requirements to maintain a breach of contract action against an attorney, Pennsylvania case law is instructive on the point. The Pennsylvania Superior Court, an intermediate appellate court in that state, has held that "[a] client who sues his attorney on an assumpsit theory must allege that an attorney breached a contract term or failed to follow a specific instruction of the client." [FN78] In F & G Associates v. Pomerantz, [FN79] the Court of Common Pleas of Philadelphia, the state's trial level court, dealt with a 12(b)(6) motion to dismiss a breach of contract claim against an attorney. Applying the established case law, the court stated that "a complaint based on the averment that an attorney failed to exercise the requisite duty of care toward them, and which did not aver a breach of a specific provision of their contract, does not state a true contract cause of action." [FN80] That court,

turning to the facts before it, concluded that because plaintiffs' complaint did not plead facts that would support a breach of contract claim it must be dismissed. [FN81] Specifically, that court found that the plaintiffs failed to identify even a single contract provision that defendants breached, or a specific instruction with which defendants failed to comply. [FN82] That court, then, concluded that it was impermissible for a plaintiff to assert both negligence and breach of contract claims based on the same conduct "in an attempt to have two bites at the apple." [FN83] Continuing, that court stated:

FN78. Rogers v. Williams, 616 A.2d 1031, 1033 (Pa.Super.1992).

FN79. 2000 WL 33155748 (Pa.C.P.).

FN80. Id. (citing Hoyer v. Frazee, 470 A.2d 990, 992-993 (Pa . Super.1984)).

FN81. Id.

FN82. Id.

FN83. Id.

"A contract claim must relate to conduct distinct from a tort claim. In the context of legal malpractice, a tort claim and a breach of contract claim are not alternative theories of recovery for the same conduct. If they were, 'claims in tort and claims in breach of contract, at least within the context of service contracts, would be indistinguishable.' " [FN84]

FN84. Id. (citing Guy v. Liederbach, 459 A.2d 744, 752 (Pa.1983)). See Sherman Indus. Inc. v. Goldenhammer, 683 F.Supp. 502, 506 (E.D.Pa.1988).

In the present case, the Plaintiff has sought yet another ground on which to hang the success of its complaint, attempting another bite of the same apple. The Plaintiff contends the Defendants failed to fulfill their duty as attorneys when they failed to include, in a timely manner, the aforementioned counterclaims in the pleadings. This claim is a repetition of the legal malpractice claim. Additionally, neither the Plaintiff's Complaint nor its First Amended Complaint identified a single contract provision allegedly breached or a specific



Slip Copy
(Cite as: 2007 WL 544156, *11 (Del.Super.))

client instruction not followed. Therefore, because the Plaintiff cannot "recover under any conceivable set of circumstances susceptible to proof under the complaint" the Defendants' motion is GRANTED as to Count III.

Therefore, for the foregoing reasons, Counts I and III of the First Amended Complaint are DISMISSED as to Margules/BMF.

Additionally, the Plaintiff's First Amended Complaint seeks to recoup all attorneys' fees paid to its counsel in this matter, and to disgorge the attorneys' fees paid to Margules/BMF. The Defendant, Margules/BMF, argues these prayers for relief should be dismissed as contrary to Delaware law. This issue is one to be resolved at trial.

### CONCLUSION

*12 Accordingly, the Horwitz and Oberstein/OKH motion to dismiss for lack of jurisdiction due to the forum selection clause is GRANTED and these parties are DISMISSED; the Capeling/HHHGM motion to dismiss for lack of personal jurisdiction is DENIED; the Capeling/HHHGM and Newcomer/ MMWR motion to dismiss due to the time barred nature of the action is GRANTED and these parties are DISMISSED; and the Margules/BMF Rule 12(b)(6) motion to dismiss is GRANTED and Counts I and III are DISMISSED as to these parties. All that remains is Count II of the First Amended Complaint against Margules/BMF.

SO ORDERED.

2007 WL 544156 (Del.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



# TAB 8

Not Reported in F.Supp.2d
**(Cite as: 2006 WL 1102814 (D.D.C.))**

Only the Westlaw citation is currently available.

United States District Court,
District of Columbia.

**L & L CONSTRUCTION ASSOCIATES, INC.,
Plaintiff,
v.
SLATTERY SKANSKA, INC., Defendant.**

**No. CIV. 05-1289.**

March 31, 2006.

Bradshaw Rost, Tenenbaum & Saas, P.C.,
Bethesda, MD, for Plaintiff.

Edmund Michael Amorosi, Smith, Pachter,
McWhorter & Allen, Vienna, VA, for Defendant.

MEMORANDUM OPINION

ROYCE C. LAMBERTH, District Judge.

*1 This matter comes before the Court on
defendant's Motion [11] to Dismiss the Amended
Complaint pursuant to Rules 12(b)(1), (b)(3), and
(b)(6) of the Federal Rules of Civil Procedure.
Defendant claims that the forum selection clause in
the subcontract agreement makes this venue
inappropriate. While defendant stylizes the motion
to dismiss under Rule 12, the Court finds that the
motion is more properly construed under the
doctrine of forum non conveniens. Upon
consideration of the parties' submissions and the
entire record herein, the Court hereby grants
defendant's motion to dismiss.

BACKGROUND

This action arises out of a construction contract to
perform work for Washington Metropolitan Transit
Authority ("WMATA") at the New York Avenue
Metro station. Lane Construction Corp., a
Connecticut corporation and defendant, Slattery
Skanska, Inc. a New York corporation, formed a
joint venture under the laws of New York, to
perform work for WMATA. As part of the bidding
process, plaintiff, L & L Construction Associates
Inc., entered into a preliminary arrangement with
defendant via a "Letter of Intent" on October 3,
2001, whereby the parties agreed that plaintiff

would perform work for defendant upon award of
the prime contract from WMATA. (Compl.¶ 8.)
WMATA awarded the prime contract to defendant's
joint venture, who then entered into a subcontract
with plaintiff for the completion of certain
underground utility work (the "Subcontract"). (Id.
¶¶ 10, 12.) The Subcontract contained a forum
selection clause that required all litigation arising
out of the Subcontract to be filed in the Supreme
Court of the State of New York, County of Queens.
(Subcontract, Art. 31, at 25.) The Subcontract also
contained a merger clause which states that the
Subcontract is the final agreement and all previous
negotiations and representations are merged therein.
(Subcontract, Art. 32, at 25.)

On June 20, 2005, plaintiff filed suit in this Court
alleging breach of the October 3, 2001 Letter of
Intent. Plaintiff avers that it was promised four-
times more work than it received. On July 17,
defendant moved to dismiss pursuant to Rule
12(b)(6) for failure to state a claim upon which
relief could be granted, arguing that the October 3
Letter of Intent was not an enforceable contract, but
merely an agreement to agree. An opposition, reply,
and sur-reply followed. Meanwhile, on August 10,
2005, plaintiff moved to amend the complaint,
adding an additional count for promissory estoppel,
but largely leaving the remaining portions of the
complaint unaltered. On August 29, defendant filed
a motion to dismiss the amended complaint under
Rules 12(b)(1), 12(b)(3), and 12(b)(6). Defendant
claims that the forum selection clause in the
subcontract requires the parties to litigate in another
forum. Plaintiff contends that defendant waived the
right to raise the forum selection clause defense
because the defense was not asserted in the initial
motion to dismiss.

DISCUSSION

*2 The forum selection clause defense has "evaded
precise classification." Marra v. Papandreou, 216
F.3d 1119, 1123 (D.C .Cir.2000). Indeed, many of
the circuits have not resolved the issue. See New
Moon Shipping Co., Ltd. v. MAN B & W Diesel
AG, 121 F.3d 24, 29 (2d Cir.1997); Haynsworth v.
The Corp, 121 F.2d 956, 963 (5th Cir.1997). On
the other hand, some circuits have viewed the forum
selection clause defense under Rule 12: the Ninth
Circuit has determined that the forum selection
clause defense should be treated as a motion

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



pursuant to Rule 12(b)(3), Kukje Hwajae Ins. Co. Ltd., v. M/V Hundai Liberty, 294 F.3d 1171, 1174 (9th Cir.2002), while the First Circuit treats the defense as a motion pursuant to Rule 12(b)(6), Lambert v. Kysar, 983 F.2d 1110, 1112 n. 1 (1st Cir.1993). While the District of Columbia Circuit has not ruled on how the forum selection clause defense should be characterized, the Marra Court recognized that this defense is most analogous to a forum non conveniens motion or motion for transfer of venue under 28 U.S.C. § 1404. 216 F.3d at 1123.

The doctrine of forum non conveniens is the most appropriate lens to determine this issue. A Rule 12(b)(3) dismissal for improper forum is an inappropriate mechanism because the question is not whether the chosen venue is proper, but whether there is a more appropriate forum for this suit. Similarly, a Rule 12(b)(1) dismissal for lack of subject matter jurisdiction would be inappropriate because there is no dispute about whether the Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 or 1332. Finally, a Rule 12(b)(6) dismissal for failure to state a claim is not available because disposition of this motion requires review of the Subcontract, not allowed under Rule 12(b)(6) since it is not a pleading. The doctrine of forum non conveniens is an appropriate procedural mechanism for determining this issue because this is one of those rare circumstances where the Court has personal and subject matter jurisdiction, and venue is proper, but there is a more appropriate forum for resolving the dispute. See Gulf Oil Corp. v.. Gilbert, 330 U.S. 501, 504 (1947); see also 15 Charles Allen Wright Arthur R. Miller & Edward H. Cooper Federal Practice and Procedure § 3828, at 387-90 (2d ed.1986).

In granting the motion to dismiss for forum non conveniens, the Court must determine that the motion is timely, that an adequate forum exists which possesses jurisdiction over the case, that the private and public interests weigh in favor of dismissal and that plaintiff can reinstate its suit in the alternative forum without undue prejudice. Pain v. United Tech. Corp., 637 F.2d 775, 784-85 (D.C.Cir.1980).

A. Timeliness

L & L contends that Slattery waived the right to assert a defense based on the forum selection clause by failing to raise it in its first motion to dismiss. However, Rules 12(g) and 12(h) do not apply to the doctrine of forum non conveniens. Rule 12(g) states in pertinent part:

*3 If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except as a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated.

Rule 12(h) states: "(1) A defense of lack of jurisdiction over the person, improper venue, insufficiency of service of process is waived if omitted from a motion in the circumstances described in subdivision (g)." Rd. R. Civ. P. 12(h)(1). The plain text of the Federal Rules of Civil Procedure clearly state that the waiver provision of Rule 12(g) only applies to the types of motions permitted by Rule 12, namely, motions to dismiss under 12(b). Rule 12(g) does not apply to motions outside of Rule 12, and thus is not applicable to motions to dismiss under forum non conveniens.

Most importantly, a dismissal under forum non conveniens, like a motion for change of venue under 28 U.S.C. § 1404, is at the discretion of the court and may be made at any time. Cf. Abiola v. Abubakar, 267 F.Supp.2d 907, 918 (N.D.Ill.2003) (holding that the objection is not waived by failing to raise the issue in an answer or a motion to dismiss); accord Spencer v. Alcoa S.S. Co., 221 F.Supp. 343, 346 (E.D.N.Y.1963); Fifth & Walnut, Inc. v. Loew's, Inc., 76 F.Supp. 64, 67 (S.D.N.Y.1948;. Limitations on the time period for moving to dismiss only bar a defendant from making the objection at an unreasonable time. See In re Air Crash Disaster Near New Orleans, 821 F.2d 1147, 1165 (5th Cir.1987). In addition, courts have denied such motions when granting the motion would unduly prejudice the plaintiff. See Zelinski v. Columbia 300, Inc., 335 F.3d 633, 643 (7th Cir.2003).

Here, plaintiff filed the complaint on June 30, 2005. The initial motion to dismiss followed on July 17, and the second motion on August 10. Less than two months elapsed between the filing of the complaint and the raising of the objection. The

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d
**(Cite as: 2006 WL 1102814, \*3 (D.D.C.))**

Court finds that the delay in bringing this defense was not unreasonable to the plaintiff. Cf. id. (commenting that a motion made one month before the scheduled time of trial was unreasonable and prejudicial). Furthermore, there is no indication that the plaintiff would be unduly burdened by granting the objection. The plaintiff has not incurred substantial costs in preparing for trial. The only expenses that plaintiff has incurred thus far have been in the regular course of a motions practice and pre-trial discovery. Therefore, the Court finds that the objection of forum non conveniens is timely.

B. Presence of Adequate Forum

When considering a motion to dismiss based on forum non conveniens, the Court must (1) identify whether an adequate forum exists and (2) balance the relative conveniences to the parties against the presumption in favor of plaintiff's choice of forum. El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 676-77 (D.C.Cir .1996). However, when there is a valid forum selection clause in place, the Court must defer to the expressed intent of the parties unless plaintiff can demonstrate that enforcement would be unjust or that the contract is invalid due to fraud or overreaching. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972).

**\*4** Since plaintiff reached out to defendant, a New York corporation, sought to enter into a contractual relationship with defendant, and waived the right to raise to objection to the designated forum by agreeing to the forum selection clause, the Court finds that venue in New York is appropriate. See Kotan v. Pizza Outlet, 400 F.Supp.2d 44, 48 (D.D.C.2005) (Lamberth, J.). More, plaintiff has not demonstrated that the forum selection clause is otherwise invalid.

The burden of invalidating a forum selection clause is heavy. See Carnival Cruise Lines v. Shute, 499 U.S. 585, 591-92 (1991) (commenting that a court is unlikely to set aside a forum selection clause even when the designated forum is remote). Plaintiff has failed to meet its burden. Plaintiff only makes conclusory allegations that the clause was the result of fraud and misrepresentations, but these allegations are insufficient to overcome the strong presumption in favor of enforcing forum-selection clauses. Since New York state court is a proper forum and plaintiff has failed to meet its burden to

invalidate enforcement of the forum selection clause, the Court gives deference to the expressed intent of the parties and finds that the New York state court is a proper forum.

C. Scope of the Forum Selection Clause

Next, the Court must address whether the scope of the Subcontract and its forum selection clause governs the alleged breach. In addressing this question, the Court must "adhere to the objective of the law of contracts whereby the written language embodying the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered the contract unless the written language is not susceptible of clear and definite undertaking, or unless there is fraud, duress or mutual mistake. Kyriakopoulos v. George Washington Univ., 866 F.2d 438, 444 n. 1 (D.C.Cir.1989). Furthermore, in deciding whether the forum selection clause is enforceable, the Court treats the clause as a contract unto itself. Marra, 216 F.3d at 1123. The Court only examines the forum selection clause, making no findings concerning the remaining portions of the contract or the merits of the case. Id.

The Court finds that the language of Articles 31 and 32 of the Subcontract, the forum selection and merger clauses, are clear, and the Court need not look beyond the text to interpret the contract. The merger clause states, in relevant parts, "except as expressly set forth herein, there have been no representation by either party to other to induce execution of this Subcontract, and all prior negotiations and understanding with respect to the subject matter are merged herein." (Subcontract, Art. 31, at 25.) The merger clause explains that the Subcontract was the complete and final agreement of the parties. (Subcontract, Art. 31, at 25.) All prior agreements, including the October 3 Letter of Intent, were to be merged into the Subcontract. The Court finds that the parties intended that all disputes arising out of the subject matter of the agreement, i.e., underground utilities work, would be governed by the forum selection clause.

D. Private and Public Interests

**\*5** Ordinarily, the Court must consider whether the private interests weigh in favor of granting the motion to dismiss. If the balance is in equilibrium, then the Court looks to the public interest factors.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d                                                                    **Page  91**
**(Cite as: 2006 WL 1102814, \*5 (D.D.C.))**

Finally, if the balance favors another forum, the Court must ensure that plaintiff can reinstate the suit in the alternative forum without undue inconvenience or prejudice. Pain v. United Tech. Corp., 637 F.2d at 784-84.

However, the presence of a forum selection clause, once again, changes the analysis. See Oversees Partners, Inc. v. Progen Musavirlik Ve Yonetim Hismetleri, LTD, 15 F.Supp.2d 47, 53 (D.D.C.1998). Normally, a court would analyze the private factors keeping in mind the substantial weight of the plaintiff's choice of forum. These private factors include

[T]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions to the enforceability [sic ] of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial.

Ott v. Kaiser-Georgetown Cmty. Health Plan, Inc., 689 F.Supp. 9, 10 (D.D.C.1988) (citing Pain, 637 F.2d at 784-85). However, the forum selection clause is now the dominant factor in the determination. See Bremen, 407 U.S. at 15. In Bremen, the Supreme Court stated that "in the light of present-day commercial realities and expanding international trade we conclude that the forum selection clause should control absent a strong showing that it should be set aside." Id. Plaintiff may escape enforcement of the forum selection clause only if it can demonstrate that it will be deprived of its day in court by trying the matter in New York state court. Plaintiff has not and cannot make that argument. Finally, dismissal will not unduly prejudice L & L as the statute of limitations has not run on the claim. See N.Y. C.P.L.R. § 213 (2004) (setting statute of limitations to six years on actions for breach of contract).

The motion is timely, the designated forum is appropriate, the scope of the forum selection clause covers the instant dispute, and the Court will grant defendant's motion.

CONCLUSION

For the foregoing reasons, the Court grants defendant's motion [11] and dismisses the action on the basis of forum non conveniens.

A separate Order shall issue this date.

2006 WL 1102814 (D.D.C.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



# TAB 9

Not Reported in F.Supp.2d
(Cite as: 1999 WL 223496 (D.Del.))

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.

**LITTLE SWITZERLAND, INC., Plaintiff,**
v.
**DESTINATION RETAIL HOLDINGS
CORPORATION; Young Caribbean Jewellery
Company
Limited; Alliance International Limited; CEI
Distributors Inc.; and Stephen
G.E. Crane, Defendants.**

**No. CIV. A. 98-315-SLR.**

March 31, 1999.

Alan J. Stone, Esquire, of Morris, Nichols, Arsht
& Tunnell, Wilmington, Delaware, attorneys for
plaintiff. Of Counsel: R. Todd Cronan, Esquire and
Jeremy M. Sternberg, Esquire, of Goodwin, Procter
& Hoar LLP, Boston, Massachusetts.

Gregory P. Williams, Esquire, Raymond J.
DiCamillo, Esquire, and John S. Mills, Esquire, of
Richards, Layton & Finger, Wilmington, Delaware,
attorneys for defendants. Of Counsel: William J.
McSherry, Jr., Esquire, of Battle Fowler, New
York, New York.

MEMORANDUM OPINION

ROBINSON, District J.

I. INTRODUCTION

*1 Plaintiff Little Switzerland, Inc. ("LSI") filed
suit in this court seeking damages related to a failed
merger transaction with defendants Destination
Retail Holdings Corporation ("DRHC"), Young
Caribbean Jewellery Company Limited ("Young
Caribbean"), Alliance International Holdings
Limited ("Alliance"), CEI Distributors, Inc.
("CEI"), and Stephen G.E. Crane ("Crane")
(collectively "defendants"). More specifically,
plaintiff LSI contends that the corporate defendants
(allegedly controlled by defendant Crane) breached a
merger agreement by failing to secure the financing
necessary to close the merger, despite the lack of a
financing contingency in the merger agreement.
Plaintiff asserts this court's subject matter
jurisdiction based solely upon diversity of

citizenship pursuant to 28 U.S.C. § 1332.

Defendants have moved to dismiss the complaint
pursuant to Fed.R.Civ.P. 12(b)(1) for lack of
subject matter jurisdiction and pursuant to
Fed.R.Civ.P. 12(b)(7) for failure to join a party
under Rule 19. In addition, defendant Crane has
moved to dismiss the complaint pursuant to
Fed.R.Civ.P. 12(b)(2) for lack of personal
jurisdiction and pursuant to Fed.R.Civ.P. 12(b)(6)
for failure to state a claim for "aiding and abetting."

For the reasons that follow, defendants' motion to
dismiss is denied.

II. FACTS

On or about February 4, 1998, a merger
agreement ("the Agreement") was entered into by
plaintiff LSI and defendants DRHC, Young
Caribbean, Alliance and CEI. Plaintiff LSI is a
Delaware corporation with its principal place of
business in St. Thomas in the United States Virgin
Islands. Defendant DRHC is an Island of Nevis
corporation with its principal place of business
located in Freeport in the Bahamas. Defendant
Young Caribbean is a Cayman Islands corporation
which is a subsidiary of DRHC. Defendant Alliance
is a Bahamian corporation which is a wholly owned
subsidiary of DRHC. Defendant CEI is a British
Virgin Islands corporation which is a wholly owned
subsidiary of DRHC. Defendant Crane, a resident of
Freeport in the Bahamas, executed the Agreement as
a corporate officer of DRHC and Young Caribbean
(D.I.34, Ex. B)

Another signatory to the Agreement was LSI
Acquisition Corp. ("LSI Acquisition"). LSI
Acquisition is a Delaware corporation and a wholly
owned subsidiary of DRHC established as a vehicle
for accomplishing the merger at issue. Under the
terms of the Agreement, the corporate defendants
and LSI Acquisition agreed to acquire all of the
outstanding stock of LSI for a price of $8.10 per
share. The all-cash merger was structured so that
LSI would merge with either LSI Acquisition or
with another entity specified by DRHC, with LSI
surviving as a wholly owned subsidiary of DRHC
(unless DRHC elected to have another entity survive
the merger). (D.I.34, Ex. B)

Plaintiff asserts that the Agreement was the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d

**Page 97**

(Cite as: 1999 WL 223496, *1 (D.Del.))

culmination of a concerted effort on the part of defendant Crane to acquire control of LSI. (D.I.34, Ex. A) In connection with his plan to pursue a business combination with LSI, defendant Crane undertook the following steps. Crane directed that LSI Acquisition be incorporated in Delaware, with Crane described as President, director, and controlling stockholder. (D.I. 34, Ex. A; D.I. 55 ¶ 3) Crane directed that a series of offer letters be sent to LSI in 1997 and 1998. (D.I.34, Ex. G) When these offers were rejected by LSI, Crane initiated a proxy contest to take control of LSI's board of directors. As part of the proxy contest, Crane caused a lawsuit to be filed in the Court of Chancery for the State of Delaware whereby he was authorized to nominate his slate of "dissident directors" and secured LSI's shareholder list. [FN1] (D.I.34, Exs.A, H) On or about January 15, 1998, defendant Crane sent to LSI shareholders (some of whom allegedly reside in Delaware [FN2]) his proxy statement and accompanying letter describing the transaction at issue as an "all-cash, fully-financed offer." (D.I. 34, Ex. F at 20) On or about January 29, 1998, defendant Crane sent another letter to LSI shareholders urging support of DRHC's slate of board nominees "in order to maintain pressure on the Little Switzerland Board" to consummate a transaction with DRHC. (D.I.34, Ex. J) Crane once again described the transaction as an "all-cash, fully-financed offer...." in the January 29, 1998 missive. (D.I.34, Ex. J) Crane caused his attorneys to issue a series of press releases in support of his acquisition plan. (D.I.34, Ex. A)

*2 On or about February 4, 1998, plaintiff LSI and the corporate defendants executed the Agreement. Crane personally negotiated the terms of the Agreement with LSI and executed the Agreement on behalf of DRHC, Young Caribbean, and LSI Acquisition. (D.I.34, Ex. B) The Agreement included various representations and warranties. Of especial relevance to the dispute at bar are the representations by defendants that they had: (1) "a combined net worth in excess of $48 million ...;" and (2) "financing commitments in place which, together with cash presently on hand, [would] provide sufficient funds to purchase and pay for the shares pursuant to the Merger in accordance with the terms of this Agreement and to consummate the transactions contemplated hereby...." (D.I. 34, Ex. B at 24, 26) The Agreement also provided that it "shall be governed and construed in accordance with

the laws of the State of Delaware" and that the parties "irrevocably and unconditionally consent to the jurisdiction of the courts of the State of Delaware and the United States District Court for the District of Delaware...." (D.I. 34, Ex. B at 58)

On or about May 8, 1998, LSI shareholders voted in favor of the merger. Despite their representations to the contrary, defendants were unable to meet their obligation to tender the $8.10 per share consideration to LSI shareholders. LSI then commenced this action for breach of the Agreement.

### III. ANALYSIS

#### A. Subject Matter Jurisdiction

Plaintiff at bar asserts jurisdiction based upon diversity of citizenship pursuant to 28 U.S.C. § 1332. [FN3] It is well settled that, in order to sustain diversity jurisdiction, all of the parties on one side of the controversy must be citizens of different states than all of the parties on the other side. See Midlantic Nat'l Bank v. Hansen, 48 F.3d 693, 696 (3d Cir.1995); see also Transamerica Corp. v. Reliance Ins. Co., 884 F.Supp. 133, 137 (D.Del.1995). For purposes of determining diversity jurisdiction, a corporation has "dual citizenship" and is considered a citizen of the state of its incorporation and the state where its principal place of business is located. See 28 U.S.C. § 1332(c)(1); Mid-Atlantic, 48 F.3d at 696; Transamerica Corp., 884 F.Supp. at 137. If LSI Acquisition were made a party to this action, the requirement of complete diversity would not be met because both LSI and LSI Acquisition are Delaware corporations. See Johnson & Johnson v. CooperVision, Inc., 720 F.Supp. 1116, 1120 (D.Del.1989).

Where jurisdiction is based upon a diversity of citizenship, a plaintiff cannot confer jurisdiction upon the federal court by its own determination as to who are the proper parties to an action. A federal court must ascertain the " 'principal purpose of the suit' ... and the 'primary and controlling matter in dispute'...," Indianapolis v. Chase National Bank, 314 U.S. 63, 69-70 (1941) (citations omitted), and "must disregard nominal or formal parties to the action [in order to] determine jurisdiction based only upon the citizenship of the real parties to the controversy." Rose v. Giamatti, 721 F.Supp. 906,

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

914 (S.D.Ohio 1989) (citing Navarro Savings Ass'n v. Lee, 446 U.S. 458 (1980)). A real party in interest has been characterized as "one who, by the substantive law, has the duty sought to be enforced or enjoined." Rose, 721 F.Supp. at 914.

*3 In examining whether the alignment of the parties is consistent with the invocation of federal jurisdiction, the court must undertake a two-step analysis. First, the court must identify "necessary" parties under Fed.R.Civ.P. 19(a). As explained by the Third Circuit in Angst v. Royal MacCabees Life Ins. Co., 77 F.3d 701 (3d Cir.1996),

> Rule 19(a) requires the joinder of a party who is subject to service of process and within the court's subject matter jurisdiction when:
> (1) in the person's absence complete relief cannot be accorded among those already parties, or
> (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may
> (i) as a practical matter impair or impede that person's ability to protect that interest or
> (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Id. at 705. Under Rule 19(a), the court need only find that a party's absence "results in any of the problems identified in the rule." Id. at 706.

If the court concludes that a party is "necessary" at the time the complaint is filed, the party should be joined if feasible. If joinder is not feasible, [FN4] then the court proceeds to the second step of the analysis, that is, whether "in equity and good conscience the action should proceed among the parties before it, or [alternatively, whether the action] should be dismissed." Fed.R.Civ.P. 19(b). Rule 19(b) lists four factors to be considered by the court, in light of the facts of a given case:

> [F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19(b).

Defendants assert that LSI Acquisition is both a necessary and indispensable party. In support of their assertion, defendants compare the allegations of the complaint with the provisions of the Agreement and conclude that LSI Acquisition's obligations under those provisions of the Agreement cited in the complaint [FN5] are joint with (and not severable from) those of the other corporate defendants. Although the court agrees that the Agreement says what it says, other facts of record require consideration before a conclusion as to joinder can be drawn.

Section 1.01 of the Agreement provides that LSI Acquisition, the identified "Sub," was essentially a fungible actor in the transaction:

> At the election of Parent, any direct or indirect wholly owned subsidiary of Parent may be substituted for Sub as a constituent corporation in the Merger. In the event such a subsidiary is substituted for Sub, Parent will cause such subsidiary to become a party to this Agreement and to assume and perform the obligations of Sub hereunder. Notwithstanding the foregoing, Parent may elect ... that instead of merging Sub into the Company as hereinabove provided, to merge the Company into Sub or another direct or indirect wholly owned subsidiary of Parent ....

*4 (D.I. 34, Ex. B at 2) As stipulated to by the parties:

> LSI Acquisition Corp. ("LSI Acquisition") was established as a vehicle for accomplishing a triangular merger through which Little Switzerland Inc. ("Little Switzerland") would be merged into a corporate entity owned in its entirety by Destination Retail Holdings Corporation ("DRHC").
> LSI Acquisition was to be the merger subsidiary pursuant to the Agreement and Plan of Merger dated February 4, 1998 (the "Merger Agreement"), but this purpose was never accomplished because the merger did not close.
> Incorporating LSI Acquisition was purely a ministerial act accomplished by a paralegal at a law firm representing DRHC.
> LSI Acquisition has conducted no business to date other than the execution of the Merger Agreement, thereby, among other things, agreeing to serve as an entity which could potentially merge with Little Switzerland under the Merger

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Agreement.
LSI Acquisition currently has no assets and no liabilities other than those it would obtain if the merger closed.
(D.I.35)  [FN6]

In applying Rule 19(a) to the facts of this case, the court must determine whether "complete relief" can be accorded among those who are already parties in LSI Acquisition's absence. The specific question framed by the record is whether the court "can grant complete relief in a breach of contract action to the parties before it when only [four] of [five] co-obligors [have] been joined as [defendants]." Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 405 (3d Cir.1993) (footnote omitted). The Third Circuit in Janney Montgomery Scott recognized "a strong trend in favor of a principle that co-signors or co-obligors on a contract are jointly and severally liable for its performance." Id. The Third Circuit concluded that if an agreement "can be construed or interpreted as a contract imposing joint and several liability on its co-obligors, ... complete relief may be granted in a suit against only one of them." Id. at 406. Cf. Bank of Am. Nat'l Trust & Savings Ass'n v. Hotel Rittenhouse Assocs., 844 F.2d 1050, 1054 (3d Cir.1988) (noting that "Professor Moore instructs that 'all joint obligors should be joined in order that there may be a complete determination of the controversy, provided ... their joinder would not destroy federal jurisdiction.' ... However, if such joinder would destroy diversity, 'the court can proceed without the joinder of all joint obligors.' ") (citation omitted).

Defendants argue that "[b]ecause the obligations of DRHC, Young Caribbean, Alliance, CEI, and LSI Acquisition under the Merger Agreement are not severable, LSI Acquisition's absence would leave the named defendants subject to a substantial risk of incurring 'double or inconsistent obligations." ' (D.I. 19 at 12) The specific risk identified is that LSI could sue LSI Acquisition in a separate proceeding, thus "expos[ing] DRHC to multiple or inconsistent judgments." (Id.) [FN7]

*5 Although defendants argue that the obligations of the corporate defendants are not severable, they cite to no portion of the record or to any case law in support of their assertion. (D.I. 19 at 12) Indeed, if anything, various provisions of the Agreement

indicate an intention that there be joint and several liability among the co-obligors. [FN8] Because the Agreement can be construed to impose joint and several liability, LSI Acquisition is not a necessary party under Rule 19(a)(1).

Turning to the concerns raised in Rule 19(a)(2), the court finds that defendants have failed to adequately identify LSI Acquisition's "interest relating to the subject of the action," save for its interest in avoiding litigation. In that respect, the court further concludes that the risk of subsequent litigation being pursued against LSI Acquisition (thus exposing DRHC to the risk of multiple or inconsistent obligations)     [FN9] is simply too remote and speculative to constitute a "substantial risk."

Having determined that LSI Acquisition is not a necessary party pursuant to Fed.R.Civ.P. 19(a), the court need not "navigate the path of equity and good conscience" in order to determine whether to dismiss the action pursuant to Rule 19(b). Given the court's findings above and the overlapping concerns of Rule 19(a) and (b), suffice it to say that it is unlikely, in the absence of additional evidence, that LSI Acquisition would be deemed indispensable, thus requiring dismissal of the action.

B. Personal Jurisdiction

Defendant Crane contends that this court lacks personal jurisdiction over him and accordingly moves for dismissal pursuant to Fed.R.Civ.P. 12(b)(2). To defeat a Rule 12(b)(2) motion to dismiss, plaintiff bears the burden of establishing, by a preponderance of the evidence, that jurisdiction exists. Patterson v. FBI, 893 F.2d 595, 603-04 (3d Cir.1990). Bare pleadings and allegations are insufficient to withstand a Rule 12(b)(2) motion; rather, a plaintiff "must sustain its burden of proof ... through sworn affidavits or other competent evidence." Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 67 n. 9 (3d Cir.1984). Once a plaintiff has made out a prima facie case, the burden shifts to defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 483 (3d Cir.1993) (internal quotations and citation omitted). In reaching its determination, the court must accept as true all well-



Not Reported in F.Supp.2d
(Cite as: 1999 WL 223496, *5 (D.Del.))

pled facts and draw all reasonable inferences from the facts in favor of LSI, the nonmoving party. Shushan, 954 F.2d at 142 n. 1.

This court may assert personal jurisdiction to the extent permitted under the Delaware long arm statute, 10 Del. C. § 3104, Max Daetwyler Corp. v. R. Meyer, 762 F.2d 290, 293 (3d Cir.1985), and the due process clause of the Fourteenth Amendment. Jeffreys v. Exten, 784 F.Supp. 146, 152-53 (D.Del.1992). In determining whether jurisdiction lies the court must apply a two-step analysis: "First, [the] court must determine whether the alleged conduct of a defendant comes within one of the provisions of the long-arm statute.... [T]hen the court must proceed to consider whether the exercise of jurisdiction over a particular defendant violates due process interests." Blue Ball Properties, Inc. v. McClain, 658 F.Supp. 1310, 1315 (D.Del.1987).

1. Delaware Long Arm Statute

**\*6** Plaintiff alleges that personal jurisdiction over defendant Crane is proper under 10 Del. C. § 3104(c). This section provides in pertinent part that "a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent: (1) Transacts any business or performs any character of work or service in the State; ... [or] (3) Causes tortious injury in the State by an act or omission in this State." 10 Del. C. § 3104(c)(1) and (3). As this court has held, this section is to be construed liberally, favoring the exercise of jurisdiction. Mobil Oil Corp. v. Advanced Envtl. Recycling Technologies, 833 F.Supp. 437, 444 (D.Del.1993). Accord Wesley-Jessen Corp. v. Pilkington Visioncare, Inc., 863 F.Supp. 186, 188 (D.Del.1993) ("The long arm statute 'is to be broadly construed to confer jurisdiction to the maximum extent possible under the Due Process Clause." ') (citation omitted).

a. Transacting Business in Delaware

In support of its contention that defendant Crane transacted business in Delaware, plaintiff LSI argues "that the single act of incorporating a business in Delaware, even in the absence of other contacts with the forum state Delaware, may be sufficient to confer jurisdiction" under 10 Del. C. § 3104(c)(1).

(D.I. 33 at 22) The Supreme Court of the State of Delaware held in Papendick v. Bosch, 410 A.2d 148 (Del.1979), that a single act of incorporation in Delaware will suffice to confer personal jurisdiction over a nonresident defendant responsible for the transaction, if such purposeful activity in Delaware is an integral component of the total transaction to which plaintiff's cause of action relates. See Cairns v. Gelmon, No. Civ. A. 16062, 1998 WL 276226 (Del. Ch. May 21, 1998) at \*3; Arnold v. Society for Savings Bancorp, Inc., Civ. A. No. 12883, 1993 WL 526781 (Del. Ch. Dec. 17, 1993) at \*3, reversed on other grounds, 650 A.2d 1270 (Del.1994). The question, then, is whether the relationship between defendant Crane, the incorporation of LSI Acquisition under Delaware law, and plaintiff's cause of action is sufficient to subject Crane to this court's personal jurisdiction.

The court finds the relationship to be insufficient. LSI Acquisition, although incorporated in Delaware, was a fungible corporate entity in terms of the proposed merger transaction. Not only could another corporation have been substituted for LSI Acquisition but, more significantly (and unlike the facts in both Cairns and Arnold ), the transaction was never consummated, leaving LSI Acquisition a shell company with no business activities, no assets, and no actual role in the transaction. The court concludes, therefore, that under the factual record presented, the act of incorporating LSI Acquisition in Delaware is insufficient to confer personal jurisdiction over defendant Crane. [FN10]

b. Tortious Acts in Delaware

Jurisdiction under § 3104(c)(3) requires that the tortious act itself, and not merely the resulting harm, occur in Delaware. See Applied Biosystems, Inc. v. Cruachem, Ltd., 772 F.Supp. 1458, 1468 (D.Del.1991). This interpretation is necessary to distinguish § 3104(c)(3) from § 3104(c)(4), which provides for jurisdiction over one who

**\*7** [c]auses tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the state or derives substantial revenue from services, or things used or consumed in the State ....

This latter section, known as a grant of "general jurisdiction," clearly does not require a nexus

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d
(Cite as: 1999 WL 223496, *7 (D.Del.))

between the cause of action and a defendant's activities in the State, but does require a higher level of regular contacts in the State than do the other "specific jurisdiction" subsections. To give this subsection any meaning, the court must read § 3104(c)(3) as requiring a connection between the alleged tortious activity and defendant Crane's "presence" in Delaware.

It is undisputed that defendant Crane has not had any physical presence in the State of Delaware. Plaintiff contends, however, that Crane "was directly and personally responsible for a series of actions--all taken in Delaware--with the objective of acquiring control of Little Switzerland, a Delaware corporation." (D.I. 33 at 23) As a basis for this conclusion, plaintiff relies on Mobil Oil Corp. v. Advanced Envtl. Recycling Technologies, Inc., 833 F.Supp. 437 (D.Del.1993). In Mobil Oil, the court exercised jurisdiction over an individual defendant who had authorized, in his official capacity, the corporate act that was the subject of plaintiff's suit.

The crux of LSI's complaint against defendants is that they misrepresented to LSI and its shareholders that they were capable of consummating an all-cash merger transaction; in fact, defendants were not able to consummate such a deal and, therefore, breached the Agreement. The representations made in the materials of record, therefore, are related to the causes of action as "necessary precursors to the execution of the Merger Agreement ...." (D.I. 33 at 25) These representations as published in the proxy statement and the January 16 and 29, 1998 letters were signed by defendant Crane and were directed to be circulated by defendant Crane.

In order to find jurisdiction under 10 Del. C. § 3104(c)(3), a defendant must have caused a tortious injury in Delaware by its acts or omissions in Delaware. Plaintiff's invocation of subsection (c)(3) fails on the second of these requirements. Although defendant Crane arguably caused tortious injury in Delaware by mailing to Delaware residents materials containing misrepresentations, this court has held that

[t]he "act" of mailing, for purposes of subsection (c)(3), is complete when the material is mailed. Any other interpretation of the statute would mean that anytime tortious injury was felt in Delaware, the alleged tortfeasor could be deemed to have committed an "act" in Delaware. [Plaintiff's]

construction of the statute would "eviscerate the distinction between subsections (c)(3) and (c)(4) ...." ... Simply put, in order for a defendant to commit an act in Delaware and be subject to subsection (c)(3), the defendant, or an agent of the defendant, must be present in Delaware when the deed is done.... There was no such presence with regard to the mailing of the billing statements, the mailing of the promotional material, or the placement of the advertisements....

*8 Sears, Roebuck & Co. v. Sears plc, 744 F.Supp. 1289, 1294 (D.Del.1990) (citations omitted). See also Applied Biosystems, Inc. v. Cruachem, Ltd., 772 F.Supp. 1468. The court does not understand the materials to have been mailed from Delaware but to Delaware. Therefore, defendant Crane has not committed an "act" in Delaware for purposes of conferring jurisdiction under 10 Del. C. § 3104(c)(3).

c. Agency Theory

Plaintiff LSI contends that defendant Crane is subject to this court's personal jurisdiction because his "agents" had the requisite contacts with the forum. "It is true that a person who is controlled by a principal may be deemed an agent," Wesley-Jessen Corp., 863 F.Supp. at 188, and that actions taken by an agent in the forum state are imputed to the principal for purposes of jurisdiction, Hercules, Inc. v. Leu Trust & Banking (Bahamas) Ltd., 611 A.2d 476, 481 (Del.1992).

The "agents" identified by plaintiff at bar are the attorneys (and their staff) who incorporated LSI Acquisition in Delaware and instituted the lawsuit in Delaware relating to the proxy contest. Plaintiff argues that, because these "acts" took place in Delaware and "were necessary precursors to the execution of the Merger Agreement," there is a sufficient nexus between the conduct in the state and the tortious injury alleged in plaintiff's lawsuit to satisfy the jurisdictional prerequisites of section 3104(c)(3). (DI 33 at 25)

The court finds, however, that the "acts" performed by the "agents" in Delaware, while arguably of historical relevance, are too far removed from the causes of action asserted by plaintiff to justify the imposition of personal jurisdiction on the principal, defendant Crane.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d

**(Cite as: 1999 WL 223496, \*8 (D.Del.))**

d. Conspiracy Theory

Under Delaware law, the actions of a conspirator may be attributed to a co-conspirator for the purposes of asserting personal jurisdiction. [FN11] Hercules, 611 A.2d at 481-82. To assert jurisdiction under this theory, a plaintiff must establish that:

(1) a conspiracy ... existed; (2) the defendant was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy.

Id. at 482. Accord Wesley-Jessen Corp., 863 F.Supp. at 189.

Plaintiff LSI alleges that defendant Crane "was part of a conspiracy to breach the Merger Agreement, make misrepresentations regarding the Merger Agreement and otherwise unlawfully harm [LSI's] business." (D.I. 33 at 32; D.I. 1, ¶ 46) Plaintiff further alleges that one of Crane's co-conspirators was Robert Cordes, the President of Alliance, CEI and Aspen (Aspen being the corporate entity which instituted the Chancery Court action). (D.I.34, Exs.B, H) Harking back to the proxy contest and the related lawsuit, plaintiff asserts that "Crane and Cordes were co-conspirators and the acts of one can be attributed to the other both for jurisdictional and liability purposes." (D.I. 33 at 32)

**\*9** A conspiracy is defined as "[a]n agreement manifesting in words or deeds and made by two or more persons confederating to do an unlawful act or use unlawful means to do an act which is lawful." Webster's New International Dictionary 485 (1993). There is evidence of record that the defendants engaged in a concerted effort to take control of plaintiff LSI. Plaintiff has asserted that defendants engaged in unlawful conduct (e.g., fraud) to effectuate their business plan. Reviewing the facts and inferences to be drawn from the pleadings in the light most favorable to the nonmoving party, the court finds the first two prongs of the conspiracy test satisfied.

The next inquiry is whether the acts identified by plaintiff constitute "substantial acts" which occurred

in Delaware or, alternatively, whether "substantial effects" in furtherance of the conspiracy occurred in Delaware. Defining the scope of the term "substantial act" commensurate with the requirements of 10 Del. C. § 3104(c), the court finds that the acts performed in the State of Delaware are not "substantial" enough (i.e., do not have a sufficient nexus to the controversy at issue) to confer personal jurisdiction over defendant Crane. The court finds, however, that the defendant's personal conduct outside the State of Delaware had a "substantial effect in furtherance of the conspiracy in the forum state." More specifically, the materials containing the representations at issue were mailed into Delaware at Crane's direction. Such communications with LSI shareholders (including Delaware shareholders) had the effect of forcing LSI's directors to agree to the merger. LSI executed the Agreement based on those same representations as recited in the Agreement. The court further finds that defendant Crane knew or had reason to know that the acts outside the forum state would have an effect in the forum state and that the effect was a direct and foreseeable result of the conduct in furtherance of the conspiracy.

e. Controlling Person Theory

Plaintiff asserts as yet another jurisdictional basis a theory that defendant Crane's control over the transaction and the corporate defendants fairly subject him to the jurisdiction of this court. More specifically, the argument is that, because the corporate defendants are subject to personal jurisdiction in Delaware by virtue of Section 8.06 of the Agreement, so too is defendant Crane, as "the controlling person responsible for the actions taken by the corporate defendants in their efforts to acquire" LSI. (D.I. 33 at 29)

Under Delaware law, "merely contracting with" a Delaware corporation does not provide the necessary connections between the contract and the forum to support a finding of jurisdiction. Abajian v. Kennedy, Civ. A. No. 11425, 1992 WL 8794 (Del. Ch. Jan. 17, 1992) at \*10. Therefore, merely executing the Agreement on behalf of the corporate signatories does not confer individual responsibilities on or personal jurisdiction over defendant Crane. Plaintiff cites to Soviet Pan Am Travel Effort v. Travel Committee Inc., 756 F.Supp. 126 (S.D.N.Y.1991), for the broad



Not Reported in F.Supp.2d
(Cite as: 1999 WL 223496, *9 (D.Del.))

proposition that an out-of-state corporation and its shareholder are subject to personal jurisdiction in New York (under New York law) "based not on their own actions but instead on the actions" of an affiliated corporation in New York over which they exerted "some control in the matter." Id. at 130.

**\*10** Of course, New York law and its interpretation are not controlling in the case at bar. The court finds no evidence that plaintiff's "controlling person" theory has found acceptance in Delaware as an alternate basis for asserting personal jurisdiction over a nonresident. Therefore, although the record indicates that defendant Crane was the moving force behind the transaction in dispute and that he controlled some, if not all, of the corporate defendants and directed some, if not all, of their activities relating to the transaction in dispute, nevertheless, the court finds that these facts add nothing to the traditional analyses under 10 Del.C. § 3104(c).

### f. Alter Ego Theory

Plaintiff asserts that defendant Crane is subject to personal jurisdiction "upon a showing that the corporate defendants are his alter egos under Delaware law." (D.I. 33 at 26) Assuming for purposes of argument that plaintiff has demonstrated that the corporate defendants' activities satisfy the requirements of 10 Del. C. § 3104(c), plaintiff has not sufficiently "show[n] fraud, injustice or inequity in the use of the corporate form" "distinct from the tort alleged in the complaint." Sears plc, 744 F.Supp. at 1304-05.

### D. Due Process

Having concluded that jurisdiction over defendant Crane exists under Delaware law, the court must also determine whether the requirements of the due process clause of the Constitution would prevent this court from asserting jurisdiction. The Supreme Court of the United States set forth the relevant due process requirements in International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945):

> [D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial

justice." Milliken v. Meyer, 311 U.S. 457 ....

In Hanson v. Denckla, 357 U.S. 235, 253 (1958), the Supreme Court noted further:

> [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

In addition, the "defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

> By requiring that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," ... the Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit ...."

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (citations omitted). In a case such as the present,

> **\*11** [w]here a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, th[e] "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, ... and the litigation results from alleged injuries that "arise out of or relate to those activities ...."

Id. at 472-73 (citations and footnotes omitted).

As noted above, the court has found that defendant Crane "controlled" the transaction at issue, including negotiating the final terms of the Agreement with plaintiff LSI. As admitted by defendants, Crane is a "controlling person" of at least DRHC and Young Caribbean and executed the Agreement on their behalf. (D.I. 19 at 18; D.I. 33 at 25; D.I. 34, Ex. B) The Agreement, of course, specifically provides for a Delaware forum. Under these circumstances, where the court has found contacts sufficient to uphold personal jurisdiction, the court further finds that defendant Crane should reasonably have anticipated being haled into court in Delaware, thus satisfying "traditional notions of fair play and substantial justice." International Shoe, 326 U.S. at 316.

### E. Aiding and Abetting Claim

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Defendants urge the court to dismiss LSI's aiding and abetting claim against Crane, arguing that "LSI has not cited any Delaware authority recognizing a cause of action for aiding and abetting a breach of contract or misrepresentation." (D.I. 41 at 19). Defendants acknowledge that Section 876 of the Restatement (Second) of Torts recognizes the tort of "aiding and abetting," but contend that Section 876 "does not apply to allegations of wrongdoing premised on agency principles." (Id.)

It would appear that Delaware recognizes a cause of action for aiding and abetting. See In re Santa Fe Pac. Corp. Shareholder Litig., 669 A.2d 59, 72 ((Del.1995). While it may be true that one cannot be both an "aider and abetter" and a principal to an agent, inconsistent legal theories at this stage of the proceedings are not cause for dismissal.

## IV. CONCLUSION

For the reasons stated, defendants' motions to dismiss and to stay discovery are denied. An order shall issue.

FN1. The suit was filed by Aspen Investments, Inc., another corporation allegedly controlled by defendant Crane. Aspen is a corporation organized and existing under the laws of the Republic of Panama, with a business address of Freeport in the Bahamas. (D.I. 34, Ex. F at 1; Ex. H at 1)

FN2. Plaintiff has submitted the affidavit of William Carey who avers, inter alia, that Delaware residents are included among LSI's shareholder list. (D.I.37, ¶¶ 5, 6) There is no evidence of record to the contrary.

FN3. Although "[t]he burden of proving diverse citizenship falls on the party invoking federal jurisdiction," Rashid v. Kite, 957 F.Supp. 70, 72 (E.D.Pa.1997), generally when reviewing a motion to dismiss under Fed.R.Civ.P. 12, all well-pled facts are taken as true and all inferences therefrom viewed in a light most favorable to the nonmoving party. Carteret Savings Bank FA v. Shushan, 954 F.2d 141, 142 n. 1 (3d Cir.1992).

FN4. For instance, joinder in this case would destroy the diversity among the parties, thus depriving the court of subject matter jurisdiction.

FN5. Sections 1.01, 4.01, 4.04, 5.05, and 6.03. (D.I.34, Ex. B)

FN6. Although counsel for defendants asserted at oral argument that one could not assume that LSI Acquisition would "always be what it is today" (D.I. 55 at 10), the court's charge is to determine a party's role at the time the complaint was filed and not engage in speculation about its future role. See Angst, 77 F.3d at 706.

FN7. At oral argument, counsel also argued that if LSI Acquisition remains exposed to separate legal proceedings, "certainly, Little Switzerland or its stockholders could then try to go up the ladder to other corporations or persons." (D.I. 55 at 10) LSI has stipulated that it will not sue LSI Acquisition, "except to the extent that LSI Acquisition is the recipient of funds transferred fraudulently from any of the defendants" at bar. (D.I.44) A derivative suit has been filed in this court; LSI Acquisition is not a named defendant. (Civil Action No. 99-176, D.I. 1)

FN8. The preface to Article IV of the Agreement provides that: "Parent, Sub and the Parent Related Entities, jointly and severally represent and warrant to the Company as follows: ..." (Emphasis added) Section 4.02 of the Agreement provides that the Agreement "constitutes a valid and binding agreement of each of Parent, Sub and the Parent Related Entities, enforceable against each of Parent, Sub and the Parent Related Entities...." (emphasis added) Section 8.10 of the Agreement provides in relevant part that: "Parent shall cause Sub to perform its obligations hereunder and shall be fully liable, severally and jointly, for any failure of Sub to perform such obligations." (emphasis added)

FN9. The fact that a derivative suit has been instituted against DRHC supports the notion that LSI Acquisition, a non-operating, no-asset corporate entity, is not a real party in interest.

FN10. This conclusion is not inconsistent with the finding that LSI Acquisition is not a necessary party to the litigation.

FN11. Defendants assert that, "as a matter of law, a corporation cannot conspire with its officers and agents." (D.I. 41 at 16) Assuming that to be the case, see Red Sail Easter Ltd. Partners v. Radio City Music Hall Prods., Inc., Civ. A. No. 12036,



Not Reported in F.Supp.2d
**(Cite as: 1999 WL 223496, *11 (D.Del.))**

1991 WL 129174 (Del. Ch. July 10, 1991) at *4, the court finds that defendants cannot assert both that defendant Crane does not control all of the corporate defendants (for purposes of avoiding personal jurisdiction under the agency and controlling person theories) and that he does control all of the corporate defendants (for purposes of avoiding personal jurisdiction under a conspiracy theory). At this juncture, on a motion to dismiss, the court declines to adopt defendants' varying versions of the facts and will analyze LSI's conspiracy theory as though defendant Crane were neither a principal nor a controlling person of all of the corporate entities.

1999 WL 223496 (D.Del.)

**END OF DOCUMENT**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Westlaw.

**TAB 10**

Not Reported in F.Supp.2d
(Cite as: 2005 WL 1000242 (D.Del.))

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.

**MCNEIL NUTRITIONALS, LLC, Plaintiff,**
v.
**THE SUGAR ASSOCIATION, et al.,**
**Defendants.**

**No. C.A. 05-69(GMS).**

April 29, 2005.

Steven J. Balick, Wilmington, DE, for Plaintiff.

Sarah Elizabeth Diluzio, Potter Anderson & Corroon, LLP, Wilmington, DE, for Defendant.

MEMORANDUM

SLEET, J.

I. INTRODUCTION

**\*1** On February 8, 2005, plaintiff McNeil Nutritionals, LLC ("McNeil") brought the present action against The Sugar Association, The Sugar Association's seventeen member companies, [FN1] the American Sugarbeet Growers Association, and Qorvis Communications, LLC ("Qorvis"). The complaint alleges one count of false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1998), one count of deceptive trade practices in violation of the Delaware Uniform Deceptive Trade Practices Act, Del.Code Ann. tit. 6, §§ 2531 et seq., and one count of unfair competition and product disparagement in violation of Delaware common law. (D.I. 1 ¶¶ 60-71.) On March 25, 2005, a Motion to Dismiss was filed on behalf of all twenty defendants, in which it is argued (among other things) that the court does not have personal jurisdiction over fifteen of the defendants. (D.I.28.) McNeil responded with a Motion for Enlargement of Briefing Schedule in Order to Permit Discovery Necessary to Respond to Motion to Dismiss. (D.I.30.) For the following reasons, the court will grant McNeil's motion and permit limited and appropriate jurisdictional discovery.

> FN1. The Sugar Association's seventeen member companies include: The Amalgamated Sugar Co.,

American Crystal Sugar Co., American Sugar Cane League, American Sugar Refining, Inc., Atlantic Sugar Ass'n, Hawaiian Sugar & Transportation Coop., Imperial Sugar Co., Michigan Sugar Co., Minn-Dak Farmers Coop., Okeelanta Corp., Osceola Farms Co., Rio Grande Valley Sugar Growers, Inc., Southern Minnesota Beet Sugar Coop., Sugar Cane Growers Coop. of Florida, United States Sugar Corp., Western Sugar Coop., and Wyoming Sugar Co.

II. DISCUSSION

The Sugar Association is a Delaware non-profit corporation (D.I. 28 Ex. C ¶ 1), comprising seventeen member companies who are "producers and growers of sugar in the United States" (D.I. 34 Ex. 3). Its stated mission is "educating health professionals, media, government officials, and the public about sugar's goodness." (Id.) McNeil, on the other hand, is a Delaware limited liability company that markets products containing the no-calorie sweetener sucralose, which is sold under the name Splenda. (D.I. 1 ¶ 3.) Obviously, sugar and Splenda are competing products. McNeil alleges that a decrease in sugar consumption in recent years (id.¶ 37) has led The Sugar Association to mount "a false and malicious smear campaign" against Splenda through press statements and internet websites, including The Sugar Association's "Truth About Splenda" website (id. ¶¶ 1-2; see also id. ¶¶ 41-55). Consequently, McNeil brought the present action against The Sugar Association and nineteen others. As mentioned above, the twenty defendants include The Sugar Association, its seventeen member companies, the American Sugarbeet Growers Association, and Qorvis. Of those twenty, thirteen member companies, the American Sugarbeet Growers Association, and Qorvis argue that they do not have sufficient contacts with Delaware for the court to exercise personal jurisdiction over them in this matter. Rather than answering the defendants' contentions, McNeil argues it should be permitted to engage in limited jurisdictional discovery.

"Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.' " Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir.2003) (internal citations omitted). "Thus,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



resolution of this motion begins with the presumption in favor of allowing discovery to establish personal jurisdiction." Hansen v. Neumueller GmbH, 163 F.R.D. 471, 474 (D.Del. Oct.5, 1995). However, "[t]he court must be satisfied that there is some indication that [these] particular defendant[s] [are] amenable to suit in this forum." Id. at 475. For example, "a plaintiff may not rely on the bare allegations in his complaint to warrant further discovery." Id. at 476. Likewise, "a mere unsupported allegation that [a] defendant 'transacts business' in an area is 'clearly frivolous.' " Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir.1997). See also B.L. Poe v. Babcock Int'l, 662 F.Supp. 4, 7 (M.D.Pa. Mar.14, 1985) ("Since plaintiff has met defendants' affidavit evidence with mere speculation, plaintiff's request for an opportunity to conduct discovery on the matter must be denied. It would be inappropriate for this court to allow plaintiff to conduct a fishing expedition in order to construct a basis for jurisdiction."). Rather, "there must be some competent evidence to demonstrate that personal jurisdiction over [a] defendant might exist before allowing discovery to proceed." Hansen, 163 F.R.D. at 475. See also Impact Labs, Inc. v. X-Rayworld.com, Inc., No. 03-211-GMS, 2003 WL 21715872, at *3 (D.Del. July 24, 2003) (permitting jurisdictional discovery on the basis of an affidavit merely reflecting that a defendant-company's President and CEO held out the defendant-company's principal place of business as Delaware).

A. The Thirteen Member Companies

**\*2** The thirteen member companies [FN2] objecting to personal jurisdiction disavow (by individual affidavits) the notion that they have any direct contacts with Delaware. [FN3] (See D.I. 28 Exs. D-P.) Furthermore, The Sugar Association's President and CEO, Andrew C. Briscoe III, asserts in his affidavit ("the Briscoe affidavit") that The Sugar Association did not obtain either "approval" or "specific approval" from board members or member companies in issuing the various statements complained of in McNeil's complaint. (D.I. 28 Ex. C ¶¶ 8-12.) Therefore, the defendants argue, "McNeil should be required to make a preliminary showing that the individual Members were involved in determining the content of the 'Truth About Splenda' website or engaged in other activity

generically charged in the complaint before this Court permits discovery." (D.I. 31 at 3.)

> FN2. These thirteen companies include: American Crystal Sugar Co., American Sugar Cane League, Atlantic Sugar Ass'n, Hawaiian Sugar & Transportation Coop., Imperial Sugar Co., Michigan Sugar Co., Minn-Dak Farmers Coop., Osceola Farms Co., Rio Grande Valley Sugar Growers, Inc., Southern Minnesota Beet Sugar Coop., Sugar Cane Growers Coop. of Florida, Western Sugar Coop., and Wyoming Sugar Co.

> FN3. One exception is Imperial Sugar Co., a Texas corporation. Imperial Sugar admits to (1) deriving less than 0.1% of its revenue in Delaware, (2) selling to Delaware customers over the internet, and (3) filing for Chapter 11 protection in Delaware in 2001, which was allegedly resolved within that same year. (D.I. 28 Ex. H.)

McNeil responds by pointing to the following statement on The Sugar Association's website, on a page entitled "Who We Are":

The Sugar Association's member companies are producers and growers of sugar in the United States. The Board of Directors is comprised of decision-making representatives from each of these companies or organizations.... Three advisory committees comprised of member company staff help guide the direction of Public Policy, Public Education, and Scientific Affairs for the Association.

(D.I. 34 Ex. 3 (emphasis added).)    [FN4] Furthermore, each of the thirteen objecting member companies is listed on the website as either (or both) a board member or a member company. Of course, it is well established that a defendant's mere "status as a stockholder and officer of a Delaware corporation is an insufficient basis for the court to exercise personal jurisdiction over him pursuant to [the long-arm statute]." Impact Labs, 2003 WL 21715872, at * 2. However, McNeil's theory of jurisdiction is that the member companies are (1) "acting under the guise of a Delaware corporation (the [Sugar] Association)," (2) "to falsely attack and disparage a product sold by a Delaware limited liability company (McNeil)," and (3) "thereby causing economic injury in the State of Delaware." (D.I. 33 at 8.) Although the court is not prepared at this juncture to hold that proof of these three assertions would necessarily establish personal

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d
(Cite as: 2005 WL 1000242, *2 (D.Del.))

jurisdiction, such proof would at least constitute "some indication" that the member companies are amenable to suit in Delaware. Indeed, the website's assertion that staff from member companies help to guide public policy, public education, and scientific affairs of The Sugar Association certainly gives evidentiary credence, albeit thinly, to McNeil's jurisdictional theory. Moreover, the excerpt satisfies the defendants' demand that McNeil make a preliminary showing as to the member companies' involvement in "The Truth About Splenda" website or other activities charged in the complaint. Therefore, the court will permit McNeil to take limited and appropriate jurisdictional discovery from the thirteen objecting member companies.

> FN4. Excerpts from The Sugar Association's website were submitted as part of the affidavit of McNeil's counsel, Steven A. Zalesin. (D.I.34.) The court notes that The Sugar Association's website is separate from the "Truth About Splenda" website, excerpts of which were also submitted as part of Zalesin's affidavit.

### B. The American Sugarbeet Growers Association

**\*3** According to the Briscoe affidavit, the American Sugarbeet Growers Association is not a member of The Sugar Association. (D.I. 28 Ex. C ¶ 7.) Instead, it allegedly "facilitates the selection" of four sugarbeet growers to sit on The Sugar Association's board of directors in an advisory capacity only. (Id.) Furthermore, Luther Markwart, Executive Vice President of the American Sugarbeet Growers Association, submitted an affidavit in which he asserts that the advisory board members representing his organization have "no authority to approve any policy, actions, or financial obligations taken by the Sugar Association." (D.I. 28 Ex. Q ¶ 18.) Markwart also denies any contacts between his organization and Delaware. (D.I. 28 Ex. Q.) The only other evidence regarding the American Sugarbeet Growers Association that the court can find is in the website excerpt provided by McNeil, which merely verifies that the organization has four representatives on The Sugar Association's board of directors. (D.I. 34 Ex. 3.)

The question of whether to permit jurisdictional discovery with regard to this defendant is a closer case. The dispositive evidence regarding the member companies is the website's statement that staff from member companies help to guide the direction of public policy, public education, and scientific affairs for The Sugar Association. Yet, it is undisputed that the American Sugarbeet Growers Association is not a member company. Were the court to strictly construe the website's language, the evidence would be inapposite. However, taking notice of the fact that statements on the internet are often written without the same precise intent as are, say, claims in a patent, and recalling the presumption in favor of permitting jurisdictional discovery, the court is convinced that the evidence presented by McNeil is sufficient to permit limited and appropriate jurisdictional discovery to be taken from the American Sugarbeet Growers Association as well.

### C. Qorvis

Qorvis is allegedly a public relations firm that aids The Sugar Association in promoting its "education program about the chemical sucralose." (D.I. 28 Ex. R ¶ 19.) But according to the affidavit of Michael Petruzello, Qorvis' Managing Partner, the "Truth About Splenda" website "was designed and is maintained by Qorvis' web designer in Virginia." (Id.) Petruzello further asserts that the "website, which is not targeted at Delaware or its residents, does not advertise Qorvis' services, allow visitors to contract for Qorvis' services, offer any products or services for sale, solicit donations of any kind, or generate revenues for Qorvis." (Id.) The only contact with Delaware admitted by Qorvis in connection with its work for The Sugar Association is the sending of one postcard, out of five to ten thousand sent as part of a national mailing campaign regarding sucralose, to a health reporter for the Wilmington News Journal in New Castle, Delaware. (Id.¶ 16.) Qorvis also maintains a website accessible from Delaware, but it "is not commercially interactive and cannot be used to conduct commercial activities with Delaware residents." (Id.¶ 17.) Qorvis' other admitted contacts with Delaware are relatively insignificant and unrelated to the present litigation. However, Petruzello's affidavit fails to mention that the "Truth About Splenda" website contains the following invitation: "For more information about the 'Truth About Splenda' campaign or to get involved, please contact Rich Masters at Qorvis Communications...." The sentence continues by offering Masters' contact information, including his telephone number and email address. (D.I. 34 Ex. 1.)

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



**\*4** In their motion to dismiss, the defendants argue that the mere ownership or maintenance of a passive website accessible in Delaware does not render Qorvis amenable to suit in this jurisdiction. (D.I. 28 at 19.) Here, however, the evidence suggests Qorvis has done more than that. In addition to creating and maintaining the "Truth About Splenda" website for a Delaware corporation, Qorvis sent information regarding sucralose to a Delaware reporter, and held itself out as the point of contact for anyone interested in learning about or becoming involved with the campaign of a Delaware corporation. While these acts may or may not ultimately be sufficient to establish personal jurisdiction, they certainly give "some indication" that Qorvis is amenable to suit in Delaware. Thus, McNeil will be permitted to take limited and appropriate jurisdictional discovery from Qorvis.

### III. CONCLUSION

For the aforementioned reasons, McNeill will be permitted to take limited and appropriate jurisdictional discovery from all fifteen above-mentioned defendants.

### ORDER

IT IS HEREBY ORDERED THAT:

1. McNeil Nutritionals, LLC's ("McNeil") Motion for Enlargement (D.I.30) be GRANTED;

2. McNeil be permitted to take limited and appropriate jurisdictional discovery from the following fifteen defendants: American Crystal Sugar Co., American Sugar Cane League, Atlantic Sugar Ass'n, Hawaiian Sugar & Transportation Coop., Imperial Sugar Co., Michigan Sugar Co., Minn-Dak Farmers Coop., Osceola Farms Co., Rio Grande Valley Sugar Growers, Inc., Southern Minnesota Beet Sugar Coop., Sugar Cane Growers Coop. of Florida, Western Sugar Coop., Wyoming Sugar Co., the American Sugarbeet Growers Association, and Qorvis Communications, LLC;

3. McNeil shall answer the defendants' Motion to Dismiss (D.I.28) by July 29, 2005; and

4. The defendants shall reply to McNeil's answer in the time provided by the Local Rules.

2005 WL 1000242 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



# TAB 11

Page 120

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.

**Zohar NIV, individually and as Personal
Representative of the Estate of
Decedent Tzila Niv and his minor children
Decedents Gilad Niv and Lior Niv, et
al., Plaintiffs,
v.
HILTON HOTELS CORPORATION and Hilton
International Co., Defendants.**

**No. 06 Civ. 7839(PKL).**

Feb. 15, 2007.

MEMORANDUM ORDER

LEISURE, J.

**\*1** The defendants Hilton Hotels Corporation and Hilton International Co. move this Court for an order pursuant to Rule 26(c)(4) of the Federal Rules of Civil Procedure limiting discovery to issues of forum non conveniens during the pendency of their motion to dismiss on the grounds of forum non conveniens. For the following reasons, the defendants' motion is granted.

Background

This action arises out of a car bombing on October 7, 2004 at the Hilton Taba Hotel on the Sinai Peninsula in Egypt. According to the complaint, the plaintiffs, or their decedents, were guests at the hotel. The plaintiffs allege that the defendants failed to provide adequate security to their guests and bring this action for negligence and wrongful death. The defendants have indicated that they intend to move this Court to dismiss the action on the grounds of forum non conveniens, and the parties have agreed to a motion schedule.

Discussion

Rule 26(c) provides that, "for good cause shown," a district court may make a protective order limiting discovery to certain matters. Fed.R.Civ.P. 26(c); see Jones v. Hirschfeld, 219 F.R.D. 71, 74 (S.D.N.Y.2003) ("a court has discretion to

circumscribe discovery even of relevant evidence"). " 'The grant and nature of protection is singularly within the discretion of the district court and may be reversed only on a clear showing of abuse of discretion." ' Dove v. Atlantic Capital Corp., 963 F.2d 15, 19 (2d Cir.1992) (quoting Galella v. Onassis, 487 F.2d 986, 997 (2d Cir.1973). Good cause may be shown where a party has filed, or has sought leave to file, a dispositive motion, the stay is for a short period of time, and the opposing party will not be prejudiced by the order. See Spencer Trask Software & Information Services, LLC v. RPost Intern. Ltd., 206 F.R.D. 367, 368 (S.D.N.Y., 2002); Anti-Monopoly, Inc. v. Hasbro, Inc., No. 94 Civ. 2120, 1996 WL 101277, at \*2, 1996 U.S. Dist. LEXIS 2684, at \*6 (S.D .N.Y. March 7, 1996) (collecting cases).

However, while discovery may in a proper case be limited or stayed pending the outcome of a motion to dismiss, the issuance of a protective order is by no means automatic. See Spencer Trask, 206 F.R.D. at 368 (citing cases). Two related factors a court may consider in deciding a motion for a restriction or stay of discovery are the breadth of discovery sought and the burden of responding to it. See Anti-Monopoly, Inc., 1996 WL 101277, at \*3, 1996 U.S. Dist. LEXIS 2684, at \*6-7. Finally, a court should also consider the strength of the dispositive motion that is the basis of the application. See, e.g., Gandler v. Nazarov, No. 94 Civ. 2272, 1994 WL 702004, at \*4, 1994 U.S. Dist. LEXIS 17885, at \*12 (S.D.N.Y. Dec. 14, 1994) (stay of discovery should be granted where motion to dismiss "is potentially dispositive, and appears to be not unfounded in the law.").

It would be premature for the Court to explore the merits of the defendants' proposed motion. However, the Court does note, based on a discussion with counsel at a pre-motion conference, that at this stage the defendants' motion appears not to be unfounded in the law. Further, if successful, the motion to dismiss would result in the case not being litigated in this forum. The requested protective order would of course remain in effect only during the pendency of the motion.

**\*2** The discovery sought so far does not appear on its face to be unreasonably broad. However, responding to the discovery requests will likely prove burdensome, and if the motion is granted, this

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Slip Copy

Page 121

**(Cite as: 2007 WL 510113, \*2 (S.D.N.Y.))**

burden will likely have served little purpose. Both the plaintiffs and the defendants anticipate that, if the motion to dismiss is granted, the plaintiffs will bring their case in Egypt or elsewhere in the Middle East. (See Sentner Decl. ¶ 17, Jan. 25, 2007; Karadaras Aff. at 6, Feb. 12, 2007.) Discovery in any forum will likely require, inter alia, the translation, review, and production of Hebrew and Arabic documents. (Karadaras Aff. at 8-9.) However, the forum in which the case is ultimately litigated will dictate the translation requirements, and likely the translations necessary for litigation in this forum will differ from those needed in the Middle East. Furthermore, if the litigation occurs in a forum in the Middle East, counsel litigating the case will need to review the same documents that New York counsel had already reviewed (id. at 9), and presumably with different considerations. Thus, if the motion is granted and the action litigated in a forum in the Middle East, full merits discovery in this forum is likely to result in avoidable inefficiencies and pointlessly duplicative efforts. Such inefficiencies are unnecessarily burdensome.

The plaintiffs have not sought to identify any prejudice they might suffer as a result of the protective order the defendants seek. Rather, they ask the Court to expand the presumption of prejudice caused by a plaintiff's unreasonable delay in prosecuting a case, see, e.g., Shannon v. General Electric Co., 186 F.3d 186, 195 (2d Cir.1999), to include the delay caused by a court order. The Court declines to do so. To presume that an order made pursuant to Rule 26(c) would result in prejudice to the non-moving party would be to significantly restrict the effectiveness of Rule 26(c). Further, the presumption of prejudice applies when a plaintiff's failure to prosecute its case results in " 'unreasonable delay," ' id. (quoting Lyell Theatre Corp. v. Lowes Corp., 682 F.2d 37, 43 (2d Cir.1982)), and the Court is not inclined to view delay intentionally caused by its order as unreasonable.

## Conclusion

For the reasons set forth herein, defendants' motion is granted: discovery is limited to issues relating only to forum non conveniens.

SO ORDERED.

2007 WL 510113 (S.D.N.Y.)



# TAB 12

Not Reported in F.Supp.2d
(Cite as: 2005 WL 441077 (D.Del.))

Page 137

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.

**TRILEGIANT LOYALTY SOLUTIONS, INC.**
**Plaintiff,**
**v.**
**MARITZ, INC., Defendant.**

**No. Civ.A. 04-360 JJF.**

Feb. 15, 2005.

Jack B. Blumenfeld, and Rodger D. Smith II, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, Steven Lieberman, Sharon L. Davis, and R. Elizabeth Brenner, of Rothwell, Figg, Ernst & Manbeck, P.C., Washington, D.C., for Plaintiff, of counsel.

Rudolf E. Hutz, and Patricia Smink Rogowski, of Connolly Bove Lodge & Hutz LLP, Wilmington, Delaware, J. Bennett Clark, Jennifer E. Hoekel, and Marc W. Vander Tuig, of Senniger Powers, St. Louis, Missouri, for Defendant, of counsel.

MEMORANDUM OPINION

FARNAN, J.

*1 Presently before the Court is the Motion To Transfer Under 28 U.S .C. § 1404(a) (D.I.13) filed by Defendant Maritz, Inc. ("Maritz"). For the reasons discussed, Maritz's Motion To Transfer will be denied.

BACKGROUND

Plaintiff Trilegiant Loyalty Solutions, Inc. ("Trilegiant") initiated this lawsuit in this Court alleging patent infringement arising from Defendant Maritz's development and operation of online incentive programs. Trilegiant is incorporated in Delaware, and has its principal place of business in Richmond, Virginia. Maritz is a Missouri corporation with its principal place of business in Fenton, Missouri.

PARTIES' CONTENTIONS

By its motion, Maritz contends that a transfer to the Eastern District of Missouri is appropriate in this case pursuant to the factors identified in Jumara v. State Farm Insurance Co., 55 F.3d 873 (3d Cir.1995). Maritz contends that both the private and public interests favor a transfer to Missouri. With regard to the private interests, Maritz contends that none of the parties has a presence in Delaware, and that transfer to the Eastern District of Missouri would not significantly change the burden Trilegiant already bears by virtue of choosing Delaware. Maritz further contends that party witnesses and potential non-party witnesses appear to be located far from Delaware. Maritz also contends that accused activities likely took place in Missouri and that relevant documents are not likely to be located in Delaware. With regard to the public interests, Maritz contends that none of the interests involved in this lawsuit are unique to Delaware and that Missouri is the more practical venue for this lawsuit. Maritz did not address the following factors: 1) likelihood of an enforcement problem; 2) administrative difficulty in the two fora resulting from court congestion, and 3) familiarity with applicable state law.

In response, Trilegiant claims that its choice to bring suit in Delaware is entitled to substantial deference because Trilegiant chose to litigate in Delaware for several rational and legitimate reasons. Trilegiant contends that it sought the benefits of Delaware law by incorporation in this state. Trilegiant further contends that Magistrate Thyne mediated a previous case that involved two of the three patents in this suit. With regard to the convenience of the parties and witnesses, Trilegiant contends that Delaware is more convenient than Missouri for it and the inventor, Mr. Storey. Trilegiant stresses the Delaware Court has subpoena power over potential third-party Delaware corporations that would make access to documents easier in Delaware than in Missouri.

DISCUSSION

I. Legal Standard

Maritz moves for a transfer to the Eastern District of Missouri pursuant to 28 U.S.C. § 1404(a). Section 1404(a) is the general transfer statute that provides, "For the convenience of the parties and the witnesses, in the interest of justice, a district court may transfer any civil action to any other

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d
(Cite as: 2005 WL 441077, *1 (D.Del.))

district or division where it may have been brought." Courts in the Third Circuit apply the public and private interest factors outlined in Jumara v. State Farm Insurance Co., 55 F.3d 873 (3d Cir.1995), to decide if they should order a transfer. The private interests outlined in Jumara include: (1) Plaintiff's forum preference; (2) Defendant's preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties; (5) the convenience of the witnesses--but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records--but only to the extent that the documents may be unavailable for trial in one of the fora. Id. at 879 (citations omitted).

*2 The public interests include "the enforceability of the judgment, practical considerations that could make the trial easy, expeditious, or inexpensive, the relative administrative difficulty in the two fora resulting from court congestion, the local interest ..., [and] the public policies of the fora." Id.

Maritz bears the burden of establishing the need for transfer. Id.

II. Analysis

A. Whether Plaintiffs' Choice Of Forum Is Entitled To "Paramount Consideration"

Ordinarily, a court will give "paramount consideration" to a plaintiff's choice of forum. See Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir.1970). However, absent a legitimate, rational reason, if the plaintiff chooses to litigate away from his or her "home turf," the defendant's burden is lessened. Waste Distillation Tech., Inc. v. Pan Am. Res., Inc., 775 F.Supp. 759, 764 (D.Del.1991). Under Section 1404(a), "home turf" refers to a corporation's principal place of business. Id. A corporation's decision to incorporate in a particular state is a rational and legitimate reason to choose to litigate in that state. Stratos Lightwave, Inc. v. E20 Communications, Inc., C.A. No. 01-309 JJF, 2002 WL 500920 at *2 (D.Del. March 26, 2002).

Applying these principles to the circumstances in this case, the Court will give "paramount consideration" to Trilegiant's decision to file the instant action in Delaware. Trilegiant is a Delaware corporation. As the Court observed in Stratos, a

corporation's decision to incorporate in a state is a rational and legitimate reason to file an action in that forum. 2002 WL 500920 at *2. Therefore, to prevail on its Motion, Maritz must demonstrate that the Jumara factors strongly favor a transfer to Missouri.

B. Whether The Private Interests Strongly Favor Transfer

Although the claim arose and Maritz has its principal place of business in Missouri, I conclude that these factors, along with the remaining Jumara private interest considerations, do not strongly favor a transfer to Missouri.

First, I conclude that the convenience of the parties does not favor venue in Missouri over Delaware. Neither party would be unduly burdened by litigating this action in Delaware. See Pennwalt Corp. v. Purex Inds., Inc., 659 F.Supp. 287, 290 (D.Del.1986) (taking into account the burden a small company would encounter in litigating an action in a jurisdiction where it did not reside). Maritz's annual sales approximate $1.4 billion (D.I. 16 App. D) and Trilgiant chose to litigate in Delaware. Therefore, I conclude that litigating this action in Delaware will not "place a significant and onerous burden" on either party. Pennwalt, 659 F.Supp. at 290.

Next, although Maritz contends that the books and records necessary to litigate this action are in Missouri, Maritz does not contend that they could not be produced or would be unavailable in Delaware. Therefore, I do not consider the location of the books and records as weighing in favor of a transfer to Missouri. See Jumara, 55 F.3d at 879 (indicating that a court should consider the location of books and records only to the extent that the files "could not be produced in the alternative forum").

*3 Further, party witnesses or witnesses who are employed by Maritz or Trilegiant carry no weight in the "balance of convenience" analysis since each party is able to procure the attendance of its own employees. See Affymetrix, Inc. v. Synteni, Inc., 28 F.Supp.2d 192, 203 (D.Del.1998). With respect to Mr. Storey, the inventor of the patents-in-suit and a non-party witness, Maritz does not contend that he would be unavailable for trial in Delaware, and Maritz has provided the Court with no evidence that

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d
(Cite as: 2005 WL 441077, *3 (D.Del.))

Mr. Storey, would be unwilling to testify on its behalf. Accordingly, I give little weight to Mr. Storey's status as a non-party witness and residence outside of Delaware.

Finally, although I appreciate the additional expense that Maritz may incur as a result of litigating in Delaware, I find that this hardship is substantially outweighed by the private interest considerations.

C. Whether The Public Interests Strongly Favor Transfer

I also conclude that the public interests do not weigh strongly in favor of a transfer to Missouri. Maritz did not argue that the congestion of the Delaware courts strongly favors a transfer. Further, there is no strong local interest in litigating this action in Missouri. The instant action is a patent infringement case, and, as the Court held in Stratos, rights relating to patents are not local or state matters. Stratos, 2002 WL 500920 at *2. Therefore, patent rights do not alone give rise to a local controversy or implicate local interests. Id. Accordingly, I conclude that the fact that the alleged infringement occurred in Missouri does not weigh strongly in favor of transferring the instant action.

In addition, I find that the Jumara factor that requires examining the difficulty in enforcing a judgment, were Trilegiant to prevail in the Delaware litigation, does not weigh in favor or against a transfer because there has been no dispute in either state over in personam jurisdiction.

CONCLUSION

Based upon Trilegiant's decision to file the instant lawsuit in Delaware and the absence of strong private or public interests favoring transfer to Missouri, I conclude that the Jumara factors do not strongly favor a transfer of the instant action under 28 U.S.C. § 1404(a). Accordingly, I will deny Maritz's Motion.

An appropriate Order will be entered.

ORDER

At Wilmington, this 15th day of February 2005, for the reasons set forth in the Memorandum

Opinion issued this date,

IT IS HEREBY ORDERED that the Motion To Transfer (D.I.13) filed by Defendant is DENIED.

2005 WL 441077 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

