## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SOLAE, LLC,                              )
a Delaware limited liability company,    )
                                         )
              Plaintiff,                  )
                                         )
vs.                                      )    C.A. No. 07-140-JJF
                                         )
HERSHEY CANADA INC.,                     )
an Ontario, Canada corporation,          )
                                         )
              Defendant.                  )
_____  )

## REPLY BRIEF OF HERSHEY CANADA INC.
## IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

*Of Counsel*:

Craig S. Primis, P.C.
John R. Phillips
Kirkland & Ellis LLP
655 15th Street, N.W.
Washington, D.C. 20005
(202) 879-5000

Jeffrey L. Moyer (#3309)
moyer@rlf.com
Steven J. Fineman (#4025)
fineman@rlf.com
Richards, Layton & Finger
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700

*Attorneys for Defendant Hershey Canada Inc.*

Dated: July 5, 2007

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................................1

I.      SOLAE PROVIDES NO VALID LEGAL OR FACTUAL GROUND FOR WHY
        THIS COURT SHOULD EXERCISE JURISDICTION OVER ITS
        DECLARATORY JUDGMENT CLAIMS. .........................................................................3

II.     HERSHEY CANADA DID NOT "ASSENT" TO JURISDICTION IN
        DELAWARE AND HAS NO CONTACTS SUFFICIENT TO SUBJECT IT TO
        PERSONAL JURISDICTION............................................................................................6

        A.      Mere Allegations Are Insufficient To Survive A Rule 12(b)(2) Challenge. ...........6

        B.      Solae Cannot Establish That The Parties' Contract Included A Delaware
                Forum-Selection Clause...........................................................................................9

        C.      Solae Can Allege No Other Relevant Contacts With Delaware. ..........................14

III.    SOLAE'S AMENDED COMPLAINT SHOULD BE DISMISSED ON *FORUM
        NON CONVENIENS* GROUNDS....................................................................................15

CONCLUSION............................................................................................................................19

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcoa Steamship Co. v. M/V Nordic Regent*,
654 F.2d 147 (2d Cir. 1980)............................................................................. 17

*Bell Helicopter Textron, Inc. v. C&C Helicopter Sales, Inc.*,
295 F. Supp. 2d 400 (D. Del. 2002)........................................................... 15, 16

*Carteret Savings Bank, F.A. v. Shushan*,
954 F.2d 141 (3d Cir. 1992)............................................................................ 7, 8

*Chateau des Charmes Wines Ltd. v. Sabate USA Inc.*,
328 F.3d 528 (9th Cir. 2003) ......................................................................... 9, 12

*Contact Lumber Co. v. P.T. Moges Shipping Co. Ltd.*,
918 F.2d 1446 (9th Cir. 1990) .......................................................................... 17

*Grumbkow v. Walt Disney Co.*,
No. CIV A 06-489-JJF, 2007 WL 570196 (D. Del. Feb. 20, 2007) ............... 6, 7

*Guidi v. Inter-Continental Hotels Corp.*,
224 F.3d 142 (2d Cir. 2000).............................................................................. 16

*Hadley v. Shaffer*,
No. 99-144-JJF, 2003 WL 21960406 (D. Del. Aug. 12, 2003) ...................... 6, 8

*Iragorri v. United Technologies Corp.*,
274 F.3d 65 (2d Cir. 2001)................................................................................ 16

*Mizokami Bros. of Arizona, Inc. v. Mobay Chemical Corp.*,
660 F.2d 712 (8th Cir. 1981) ............................................................................ 15

*Mobil Tankers Co., S.A. v. Mene Grande Oil Co.*,
363 F.2d 611 (3d Cir. 1966).............................................................................. 16

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981)..................................................................................... 15, 18

*National Union Fire Insurance Co. of Pittsburgh, Pa. v. Freeport-McMoRan, Inc.*,
767 F. Supp. 568 (D. Del. 1991)......................................................................... 4

*Reid-Whalen v. Hansen*,
933 F.2d 1390 (8th Cir. 1991) .......................................................................... 16

ii

*Rudisill v. Sheraton Copenhagen Corp.,*
  817 F. Supp. 443 (D. Del. 1993).................................................................................. 15, 16

*Sanitec Industries, Inc. v. Sanitec Worldwide, Ltd.,*
  376 F. Supp. 2d 571 (D. Del. 2005).................................................................................. 6, 8

*Step-Saver Data Systems, Inc. v. Wyse Technology,*
  939 F.2d 91 (3d Cir. 1991)............................................................................................. 13

*Terra Nova Insurance Co. Ltd. v. 900 Bar, Inc.,*
  887 F.2d 1213 (3d Cir. 1989).......................................................................................... 3

*Toys 'R' Us, Inc. v. Step Two, S.A.,*
  318 F.3d 446 (3d Cir. 2003)........................................................................................... 15

*Trilegiant Loyalty Solutions, Inc. v. Maritz,*
  No. 04-360-JJF, 2005 WL 441077 (D. Del. Feb. 15, 2005) ........................................... 17

*Vanity Fair Mills, Inc. v. T. Eaton Co.,*
  234 F.2d 633 (2d Cir. 1956)........................................................................................... 16

*Wall Street Aubrey Golf, LLC v. Aubrey,*
  189 Fed. Appx. 82 (3d Cir. 2006).................................................................................... 8

iii

## PRELIMINARY STATEMENT

Solae's Opposition to Hershey Canada's Motion to Dismiss fails to identify a single connection between the shipment of Salmonella-infested soy lecithin that gave rise to this dispute and Delaware. Solae concedes, as it must, that the contract between the parties was not negotiated in Delaware, that the tainted soy lecithin Solae sent to Hershey Canada never passed through Delaware, and that more than 99.9% of the contaminated Hershey products never left Canada (with none reaching Delaware). By comparison, Solae admits that this dispute has substantial contacts with Hershey Canada's preferred forum of Ontario, Canada, where the tainted soy lecithin triggered a nationwide recall supervised by Canadian health authorities and caused a month-long shutdown of Hershey Canada's Smiths Falls plant.

In the face of this record, Solae pitches its entire argument in support of the Delaware forum on the allegation that a forum-selection clause in Solae's standard "Conditions of Sale" requires that this case be heard in Delaware. Indeed, so desperate is Solae to avoid the Canadian forum — where the public actually has an interest in the dispute — that it has now offered its *third* version of events to justify enforcement of that clause. And, moreover, Solae argues that the Court is required to accept *this* version of what Solae claims happened because Solae alleges *this* version in its Amended Complaint. Solae is wrong on both the law and the facts, and its own conduct in this litigation proves that the parties never assented to a forum-selection clause designating Delaware as the forum for this dispute.

A brief recounting of Solae's shifting position on forum will demonstrate that its latest version is no more trustworthy than the earlier ones. *Version 1*, set forth in the Initial Complaint, alleged that Solae sent its Conditions of Sale with the order confirmation on the contaminated lot and sent them again with the shipment itself. That version was false, and Solae has now recanted it, as demonstrated by the blacklined version of its Amended Complaint filed with the Court.

*Version 2*, set forth in an affidavit sworn by Solae's lead contract negotiator, abandoned Version 1 and instead alleged (i) that Solae and Hershey Canada had entered into a year-long supply agreement for 2006, and (ii) that because Solae mailed its Conditions of Sale around the time it shipped the contaminated lot, those terms were incorporated into the annual supply agreement, even though Hershey Canada received the terms *after* it accepted the contaminated lot. But then Hershey Canada pointed to caselaw demonstrating that, under the U.N. Convention on the International Sale of Goods (CISG), the subsequent mailing of terms cannot alter the terms of a pre-existing contract, and Solae abandoned Version 2. Now, in *Version 3*, set out in Solae's Amended Complaint and supporting affidavits, Solae rejects its prior position that there was a supply agreement in place for 2006 and now alleges a "course of conduct." Under this version, Solae claims that its forum-selection clause must be implied into Hershey Canada's order of the contaminated lot, even though neither the offer for, nor the acceptance of, that lot contained such a term. Of course, that is not the law, and even Solae's erroneous argument that this Court must accept Solae's new forum allegations as true cannot save Version 3.

The record makes clear that this case has nothing to do with Delaware and everything to do with Solae's goal of avoiding judgment in Canada, where its conduct threatened the health and welfare of the citizenry and damaged a respected local company. Solae will say and do anything to achieve that goal. That is why Solae told Hershey that it had to "postpone" a scheduled settlement conference for logistical reasons when in reality Solae was secretly preparing to file its Delaware complaint. And that is why Solae rushed to file a complaint containing critical factual allegations on forum and contract formation that were untrue, and had to be recanted. And now it urges this Court to assume the truth of its latest jurisdictional allegations, even though the Third Circuit has long held that to be error. For these reasons and

2

the reasons set out below, this case should be dismissed so that this matter may be litigated in a single forum where it actually belongs: Ontario, Canada.

## I.    SOLAE PROVIDES NO VALID LEGAL OR FACTUAL GROUND FOR WHY THIS COURT SHOULD EXERCISE JURISDICTION OVER ITS DECLARATORY JUDGMENT CLAIMS.

The Court should decline jurisdiction over Solae's declaratory judgment action at the outset because it constitutes an abuse of the Declaratory Judgment Act. As evidenced by the numerous factual errors in its Initial Complaint, Solae rushed to this Court in the midst of settlement negotiations in a bid to seize the jurisdiction of its choice and deprive Hershey Canada, the true plaintiff, of its choice of forum. The use of the declaratory judgment device for such tactical maneuvering is plainly improper and requires dismissal of Solae's declaratory judgment claims. *See Terra Nova Ins. Co. Ltd. v. 900 Bar, Inc.*, 887 F.2d 1213, 1225 (3d Cir. 1989).

Solae raises both legal and factual arguments in opposition to dismissal on this ground, but neither withstands scrutiny. As a legal matter, Solae argues that Hershey Canada "invokes the wrong body of case law," claiming that it "invokes 'first-filed' case law, in which separate United States courts are found to have 'concurrent jurisdiction.'" (D.I. 32, Ans. Br. Of Solae In Opp. To Mot. To Dismiss at 33 (June 25, 2007) ("Solae Br.").) This contention is mistaken, at best. Hershey Canada's argument does not depend on the first-to-file rule. In fact, the first footnote of Hershey Canada's brief states that the parties agreed "that 'the present case is *not* governed by first-filed analysis' . . . because Hershey Canada's action against Solae is not pending in another federal court." (D.I. 27, Op. Br. Of Hershey Canada In Support Of Mot. To Dismiss at 11 n.1 (June 8, 2007) ("Hershey Canada Op. Br.") (emphasis added).)

3

Having asserted incorrectly that Hershey Canada depends on first-to-file cases involving suits between two federal courts, Solae offers no answer to the many cases cited in Hershey Canada's brief that hold that a court should decline jurisdiction where, as here, a plaintiff files a declaratory judgment claim in an effort to avoid litigation in a ***state or foreign court*** favored by the true plaintiff. (*See* Hershey Canada Op. Br. at 10, 13-14 & n.2 (citing cases).) As these cases uniformly hold, where courts of different sovereigns are at issue, the Declaratory Judgment Act should not be used to "reward [a plaintiff] 'for winning a race to the courthouse which it had completed before its adversary heard the starting gun." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Freeport-McMoRan, Inc.*, 767 F. Supp. 568, 573 (D. Del. 1991). This, of course, is precisely what Solae proposes to do here.

With no answer to this caselaw, Solae argues instead that "the factual premises of Hershey's 'abusive tactics' accusations are incorrect." (Solae Br. at 34.) But Solae fails to identify a single factual assertion in Hershey Canada's brief that is untrue. To the contrary, Solae concedes that the parties had been involved in settlement negotiations for more than three months when Solae filed suit in Delaware on March 9, 2007, without providing any notice to Hershey Canada. (*Id.* at 34-35.) Solae likewise admits that, on the evening before the March 8, 2007 meeting at which the parties' settlement talks were to culminate, its outside counsel contacted Hershey and asked to "postpone" the meeting because he had been unable to meet with certain "decisionmakers." (*Id.* at 35.) Although Solae now submits an affidavit stating that these "decisionmakers" were, in fact, unavailable, it provides no explanation for why it hurriedly prepared a complaint for filing in Delaware, while leaving Hershey Canada with the impression that it intended to continue settlement talks. Similarly, Solae does not explain why neither its outside counsel nor any of its other representatives returned messages from Hershey Canada

4

seeking to reschedule a final settlement meeting until **after** Solae had filed its lawsuit against Hershey Canada in Delaware.

Indeed, the fact that Solae's first filing in Delaware was the product of a "race to the courthouse" is apparent from the Initial Complaint itself, which contained multiple false allegations and ultimately had to be withdrawn. (*See* D.I. 23, Ex. A to Am. Compl. (containing a "blackline" comparison of the Amended Complaint and Initial Complaint).) Solae's urgency to file in Delaware is also apparent from the Complaint's facial inconsistency: Solae pleads that the CISG supplies the law that governs the parties' relationship and supports subject-matter jurisdiction in federal court, but at the same time asks the Court to hold that the parties' contract included a forum-selection clause that specifically disclaims the applicability of the CISG. (*Compare* D.I. 23, Am. Compl. ¶¶ 4, 28-29 (stating that the CISG creates federal-question jurisdiction and "applies" to the parties' relationship) *with* ¶ 26 (alleging that "the transaction between the parties for Lot 1 is governed by the Conditions of Sale," which paragraph 17 of the Amended Complaint quotes as stating that the CISG "shall not govern this Agreement or the performance thereof or any aspect of any dispute arising therefrom").)

The result of Solae's actions is similarly undisputed: while Hershey Canada waited in good faith for Solae to provide a new date on which the parties could meet to settle their dispute, Solae rushed to court in Delaware to file this declaratory judgment action. Thus, although Solae now objects to Hershey Canada's argument as "unbecoming," (Solae Br. at 32), it was Solae who took advantage of Hershey Canada's desire to settle this dispute amicably by surreptitiously filing a declaratory judgment action in Delaware after three months of negotiations between the parties. As this Court and numerous others have recognized, the Declaratory Judgment Act was

5

not designed to facilitate this sort of conduct. This Court should exercise its discretion to dismiss Solae's declaratory judgment action.

## II.    HERSHEY CANADA DID NOT "ASSENT" TO JURISDICTION IN DELAWARE AND HAS NO CONTACTS SUFFICIENT TO SUBJECT IT TO PERSONAL JURISDICTION.

### A.    Mere Allegations Are Insufficient To Survive A Rule 12(b)(2) Challenge.

According to Solae, the Court may exercise personal jurisdiction over Hershey Canada because *Solae alleges in its Amended Complaint* that Hershey Canada "assented to Delaware as having 'exclusive jurisdiction' over this dispute." (Solae Br. at 29-30.) That plainly is not the law of this Circuit, and Solae's own conduct proves why: if a plaintiff could establish personal jurisdiction by making false allegations that the Court had to presume to be true, as Solae did here in its Initial Complaint, a defendant could be required to litigate in a jurisdiction with which it had no contacts — in violation of its due process rights — with no ability to contest the plaintiff's allegations.

The law is clear: When relevant jurisdictional facts are in dispute, a plaintiff cannot simply plead its way into court. As this Court has observed on more than one occasion, the "Plaintiff is required to respond to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction with actual proof, not mere allegations." *Grumbkow v. Walt Disney Co.*, No. CIV A 06-489-JJF, 2007 WL 570196, at *2 (D. Del. Feb. 20, 2007); *see also Sanitec Indus., Inc. v. Sanitec Worldwide, Ltd.*, 376 F. Supp. 2d 571, 573 (D. Del. 2005) ("Plaintiff 'must sustain its burden of proof . . . through sworn affidavits or other competent evidence.'") (quoting *Time Share Vacation v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir.1984)); *Hadley v. Shaffer*, No. 99-144-JJF, 2003 WL 21960406, at *2 (D. Del. Aug. 12, 2003) ("Once a defendant has properly raised the jurisdictional defense, the plaintiff has the burden of establishing by a

6

preponderance of the evidence that the defendant has had minimum contacts with the forum state.").

In asserting that a plaintiff's bare allegations are sufficient to withstand a motion to dismiss for lack of personal jurisdiction, Solae quotes selectively from the caselaw. For example, Solae quotes this Court for the general proposition that it must "tak[e] Plaintiff's averments as true . . . " (Solae Br. at 27), but omits the Court's key statement: "'*At no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction.*'" *Grumbkow*, 2007 WL 570196, at *2 (emphasis added) (quoting *Time Share Vacation,* 735 F.2d at 66 n.9).

Solae is no more faithful to Third Circuit precedent. It quotes the court's decision in *Carteret Savings Bank, F.A. v. Shushan*, 954 F.2d 141 (3d Cir. 1992), as stating that, when "reviewing a motion to dismiss a case for lack of in personam jurisdiction, [courts] must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." (Solae Br. at 27 (quoting *Carteret*, 954 F.2d at 142 n.1).) But again Solae neglects to inform the Court that several pages later in the case, the Third Circuit *rejects* the very proposition of law Solae is urging here. In response to the *Carteret* plaintiff's argument that the district court was bound to "accept[] the factual allegations on the face of its Amended Complaint in the light most favorable to [the plaintiff]," the Court explained that, *"once the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." Id.* at 146 (emphasis added).

Indeed, this case illustrates perfectly why courts do not accept plaintiffs' allegations of disputed facts as true when deciding jurisdictional motions. After all, if this were the law, Solae could have hauled Hershey Canada into court (potentially violating its due process rights) on the

7

basis of allegations in its Initial Complaint that Solae later withdrew as untrue. (*See* D.I. 1, Initial Compl. ¶¶ 10, 15-16) (alleging, incorrectly, that Hershey Canada had consented to jurisdiction because Solae's order confirmation and shipping documents for the order at issue contained a Delaware forum-selection clause). Under Solae's contention, even in the face of documents proving otherwise, the Court would have been bound to accept these false allegations as true for the purpose of exercising personal jurisdiction over Hershey Canada. The law does not require this perverse result. Rather, as both this Court and the Third Circuit have explained, once a defendant challenges the facts on which personal jurisdiction rests (as Hershey Canada has done here), the burden is on the plaintiff to prove facts sufficient to establish personal jurisdiction. *Carteret*, 954 F.2d at 146; *Sanitec Indus.*, 376 F. Supp. 2d at 573.

This rule applies to the formation of a contract containing a forum-selection clause, just as it would to any other fact relevant to personal jurisdiction. As another of Solae's own cases notes: "Of course, before a contractual forum selection provision can be enforced, it must actually effectuate a selection." *Wall Street Aubrey Golf, LLC v. Aubrey*, 189 Fed. Appx. 82, 85 (3d Cir. 2006). Solae cannot establish the validity of its forum-selection clause simply by alleging it; Solae instead must produce evidence ***proving*** that Hershey Canada has assented to litigate there.[1]  As a fundamental matter, Solae's complaint and affidavits have not — and cannot — make this showing.

---

[1]   Solae's repeated reliance on cases such as *Hadley v. Shaffer*, which enforce forum-selection clauses on the basis of the plaintiff's allegations, is misleading and misplaced. In *Hadley*, the court could accept the forum-selection clause as binding because the defendants in that case did not dispute the existence of the contract at issue or the allegation that it included a valid forum-selection clause. *Hadley*, 2003 WL 21960406, at *4. The same deference is inappropriate here, of course, because contract formation and the inclusion of a forum-selection clause are exactly the points at issue.

8

**B.    Solae Cannot Establish That The Parties' Contract Included A Delaware Forum-Selection Clause.**

Unable to rely on its bare allegations that the parties agreed to a Delaware forum-selection clause, Solae cannot establish that Hershey Canada ever consented to Delaware jurisdiction. Under basic principles of contract law, the undisputed facts establish that neither the overarching supply agreement between the parties for 2006, nor the individual order corresponding to the tainted shipment, contained such a term.

As an initial matter, Solae appears to accept that, under *Chateau des Charmes Wines Ltd. v. Sabate USA Inc.*, 328 F.3d 528 (9th Cir. 2003), if the parties had an overarching supply agreement for 2006, Solae could not have altered the terms of that agreement simply by including reverse-side terms on an invoice sent well after the contract had been formed. Solae, instead, denies that any such contract existed. Indeed, in its answering brief and accompanying affidavits, Solae reacts with surprise to Hershey's assertion that both parties agreed that there was a binding contract between the parties by the beginning of 2006 (Solae Br. at 24), seemingly forgetting that its own witness, Laurie Cradick, discussed this agreement at length in her original affidavit. (*See* D.I. 15, Apr. 19, 2007 Aff. of Laurie Cradick ¶¶ 14, 19, Ex. B to Apr. 27, 2007 Ltr. from J. Moyer to Ct. ("Apr. 19, 2007 Cradick Aff.") (describing the formation and terms of the "SOLEC™ Supply Agreement").) As Ms. Cradick herself has sworn: "[I]n about mid-December, 2005, [Hershey employee] Ms. McLucas and I agreed that for the period from January 1, 2006 to December 31, 2006, Hershey Canada would order up to 250,000 pounds of [soy lecithin] at a price of US$1.2565 per pound," and her affidavit even assigned this contract a defined term: the "SOLEC™ Supply Agreement." (*Id.* ¶ 19.) Ms. Cradick further stated that Hershey Canada ordered the contaminated shipment "pursuant to the SOLEC Supply Agreement" formed by her agreement with Ms. McLucas in mid-December 2005. (*Id.* ¶ 20)

9

Now claiming in her second affidavit that no binding contract was ever formed (and now avoiding all use of the term "SOLEC™ Supply Agreement"), Ms. Cradick's new story cannot be squared with the facts. Specifically, Ms. Cradick's claim that she did not intend a contract to be formed through her communications with Ms. McLucas is contradicted by her final "bid" email to Ms. McLucas, which states that the price and quantity terms in the email would be "valid upon acceptance." (D.I. 30, Ex. A to McLucas Decl.) This bid was accepted by Ms. McLucas shortly thereafter, as is evidenced by the fact that both Solae and Hershey Canada acted pursuant to the terms of that original bid for many months thereafter, including for the order at issue in this dispute. (D.I. 10, Kuehl Decl. ¶ 9; D.I. 15, Apr. 19, 2007 Cradick Aff. ¶ 20.) And though Ms. McLucas specifically identified Ms. Cradick's "valid upon acceptance" email as the basis for the parties' contract, (D.I. 30, McLucas Decl. ¶ 4), neither Ms. Cradick's affidavit nor any other part of Solae's opposition has an answer to it. (*See, e.g.,* D.I. 15, Apr. 19, 2007 Cradick Aff. ¶¶ 5-6 (failing to address e-mail "bid").) Thus, whether or not Ms. Cradick received a written Quantity Contract from Hershey Canada regarding its orders of soy lecithin (and Ms. McLucas is confident she transmitted the contract correctly (Supp. McLucas Decl. ¶¶ 5-6)), it is clear that in mid-December 2005 or early January 2006 the parties had entered into an agreement committing Hershey Canada to buy significant quantities of soy lecithin from Solae and committing Solae to sell soy lecithin at a specific price, (*id.* ¶¶ 2-3).[2] And under no circumstances did this valid, enforceable contract include Solae's purported forum-selection clause, which the parties had never even discussed. (Hershey Canada Op. Br. at 25-26; D.I. 30, McLucas Decl. ¶ 5.)

---

[2]  It bears noting that, unlike the UCC, the CISG does not require contracts over $500 to be in writing. *See* C.I.S.G., art. 11 ("A contract of sale need not be concluded in or evidenced by writing and is not subject to any other requirement as to form.").

10

Furthermore, even if the Court were to accept Solae's premise that there was no annual supply agreement in effect as of January 2006, there would still be no basis for incorporating Solae's Conditions of Sale into the contract for the contaminated lot on the basis of an invoice Hershey Canada received in early October 2006. The latest point at which a contract between the parties could have been formed with respect to the order of soy lecithin at issue would have been June 23, 2006. Hershey Canada sent the purchase order for the relevant shipment to Solae on June 21, 2006 and Solae accepted that order by sending an order confirmation two days later, June 23, 2006, thereby forming a contract between the parties. (*See* D.I. 10, Kuehl Decl. ¶¶ 10-11.) At no point during the parties' communications about this order has it even been alleged that Solae communicated its Conditions of Sale to Hershey Canada. In fact, Solae had still not mentioned those terms when the ordered product was shipped to Hershey Canada on September 27, 2006.

The existence of a contract between the parties ***prior to*** the delivery of the invoice for the order is confirmed by Solae's own pleading regarding the lot of soy lecithin that was to follow the tainted shipment. In its Amended Complaint, Solae pleads that the parties had formed a contract with respect to this second lot by virtue of Hershey Canada's purchase order and Solae's order confirmation in response — even though it is undisputed that Solae never sent Hershey Canada an invoice for the order.[3] (*See* D.I. 23, Am. Compl. ¶¶ 19-20, 52, 60 (alleging breach-of-

---

[3]    Solae appears to assume that its Conditions of Sale must be applied to this second order of soy lecithin because Solae alleged those facts in its Amended Complaint. Again, however, Solae is mistaken. As Hershey employee James Kuehl set forth in his sworn declaration, Solae did not include its Conditions of Sale with the order confirmation it sent to Hershey Canada for this second order. (D.I. 10, Kuehl Decl. ¶ 18.) Thus, just as with the order for the contaminated shipment, those terms cannot be held to govern the parties' relationship for this second order.

11

contract claims against Hershey Canada with respect to the second lot of soy lecithin).) Solae cannot have it both ways: if a contract existed with respect to the second soy-lecithin order based on the order confirmation that Solae sent to Hershey Canada, the same must be true with respect to the order that later turned out to be contaminated.

Thus, Solae cannot distinguish *Chateau des Charmes Wines*, by arguing "there was no contract" between the parties when Solae's mailed invoice arrived at Hershey Canada in early October. (Solae Br. at 25.) As described above, a contract between the parties existed, if not in mid-December 2005 as Solae's employee Cradick referenced in her April 19, 2007 affidavit, then, at the very latest, on June 23, 2006, when Solae accepted Hershey Canada's offer to purchase 39,682 pounds of IP soy lecithin for $1.2565 per pound, to be shipped to the Wills Warehouse in Smiths Falls, Ontario. (D.I. 10, Exs. D & E to Kuehl Decl.) As in *Chateau*, Hershey Canada never did anything other than perform its obligations under the contract that was formed either in mid-December 2005 or with Solae's acceptance of its order on June 23, 2006, and certainly took no actions that would have signaled "its affirmative assent" to modify the parties' existing contract to include a Delaware forum-selection clause or any other terms that had not been included in the mid-December 2005 agreement or the original purchase order and order confirmation. *Chateau*, 328 F.3d at 531; (D.I. 30, McLucas Decl. ¶¶ 13, 18-20; D.I. 10, Kuehl Decl. ¶¶ 8, 11.)

Solae's suggestion — unsupported by even a single case citation — that the forum-selection clause somehow formed part of the parties' contract through a prior course of dealing also fails. Regardless of Solae's allegations that the terms were faxed to Hershey Canada locations in the past (and putting aside the fact that they were never sent to anyone with any authority to negotiate supply terms, nor were the terms ever discussed by anyone from either

12

company), neither party has ever had the opportunity to *act* pursuant to such terms, this being the first litigated dispute to arise between them. Yet some type of *action* is the *sine qua non* of a course-of-conduct argument. *Step-Saver Data Systems, Inc. v. Wyse Technology*, 939 F.2d 91, 103 (3d Cir. 1991) ("[A] 'course of dealing' or 'course of performance' analysis focuses on the actions of the parties with respect to a particular issue."). As the Third Circuit has held, "the repeated sending of a writing which contains certain standard terms, without any action with respect to the issues addressed by those terms, cannot constitute a course of dealing which would incorporate a term of the writing otherwise excluded under [UCC] § 2-207." *Id.* at 104.

In *Step-Saver*, no overarching supply agreement existed between the purchaser Step-Saver and seller The Software Link, Inc. ("TSL"); separate purchase orders, order confirmations and box-top licenses were transmitted for each individual shipment. *Id.* at 95-96. TSL claimed that the parties' contract was not formed by the purchase order and order confirmation alone but that terms contained in the box-top license were incorporated into the contract through a course of dealing over time because the same terms appeared in each box-top license. *Id.* at 103. The Third Circuit disagreed, concluding that

> the repeated exchange of forms by the parties only tells Step-Saver that TSL *desires* certain terms. Given TSL's failure to obtain Step-Saver's express assent to these terms before it will ship the program, Step-Saver can reasonably believe that, while TSL desires certain terms, it has agreed to do business on other terms — those terms expressly agreed upon by the parties.

*Id.* at 104 (emphasis in original). The same result is dictated here, where Hershey Canada never expressly agreed to any terms beyond those in the mid-December 2005 agreement or, alternatively, those appearing on the face of the purchase order and corresponding order confirmation, and where neither party ever had an opportunity to act pursuant to any other terms.

13

The reasoning of *Step-Saver* is dispositive here, and Solae has identified no caselaw to suggest that a course of dealing analysis under the CISG would require any different conclusion.

In sum, Solae has presented no viable theory for how the Delaware forum-selection clause in its Conditions of Sale may be implied into a contract between the parties for the contaminated shipment of soy lecithin. Those terms were not part of the overarching supply agreement the parties entered into in or around December 2005; they were not part of any subsequent contract relating to the specific lot of soy lecithin at issue; and they cannot be implied into the parties' contract on the basis of some course-of-dealing theory.

## C.    Solae Can Allege No Other Relevant Contacts With Delaware.

Apart from the forum-selection clause that, as discussed above, never became part of the parties' contract, Solae points to ***not a single Hershey Canada contact with Delaware*** related to this case. Contrary to Solae's suggestion, public records do not reveal any interest of Hershey Canada in real property in Delaware; Solae's sole identified contact with Delaware is a 1998 UCC financing statement for a security interest in the *non*-real property of one of its debtors at the time — an interest that has long since been discharged. (D.I. 29, Supp. Angele Decl. ¶ 4.) It also bears noting that Solae has also now abandoned its earlier contention that the seven bottles of sundae topping that made their way from Hershey Canada to Michigan could somehow establish jurisdiction in Delaware. (*See* Solae Br. at 30-32.)

With an inapplicable forum-selection clause and an irrelevant, expired security interest as the sole basis for establishing personal jurisdiction, Solae's allegations do not even approach the level necessary to justify discovery on jurisdictional issues, much less establish jurisdiction itself. As Solae's own cases make clear, discovery is warranted only where a plaintiff has alleged facts "that suggest ***with reasonable particularity*** the possible existence of the requisite contacts

14

between [the party] and the forum state." *Toys 'R' Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (emphasis added). Solae fails to allege *any* relevant ties between Hershey Canada and Delaware, much less any with "reasonable particularity." Without satisfying this threshold requirement, jurisdictional discovery is unwarranted.

## III.    SOLAE'S AMENDED COMPLAINT SHOULD BE DISMISSED ON *FORUM NON CONVENIENS* GROUNDS.

As Hershey Canada argued in its Opening Brief, this case is a textbook candidate for dismissal on *forum non conveniens* grounds. Critically, Solae makes no real effort to establish that litigation would be convenient in Delaware, or that this case lacks a substantial connection with the alternative forum of Ontario, Canada. Instead, with nothing but an inapplicable forum-selection clause connecting this case to Delaware, Solae maintains that it is entitled to litigate here (and any other American court that it chooses) because it is an American citizen with various activities in the United States, regardless of whether litigation in this Court would be convenient. Solae is simply wrong on this score, as the decisions of this Court and others in this District make clear. *See Bell Helicopter Textron, Inc. v. C&C Helicopter Sales, Inc.*, 295 F. Supp. 2d 400, 411-12 (D. Del. 2002); *Rudisill v. Sheraton Copenhagen Corp.*, 817 F. Supp. 443, 446-48 (D. Del. 1993).

As a general matter, a plaintiff's choice of home forum is entitled to deference because it is presumed to be convenient, and a plaintiff's citizenship is considered a proxy for convenience. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 & n.24 (1981). Because a plaintiff's citizenship "is at best an imperfect proxy for other relevant convenience factors," *Mizokami Bros. of Arizona, Inc. v. Mobay Chem. Corp.*, 660 F.2d 712, 718 n.9 (8th Cir. 1981), however, the accuracy of that proxy in any given case (and the corresponding level of deference to be given to the plaintiff's choice of forum) must be evaluated according to the relevant facts.

15

Indeed, even Solae's own caselaw instructs that, "while [a] plaintiff's citizenship and residence can serve as a proxy for, or indication of, convenience, neither the plaintiff's citizenship nor residence, nor the degree of deference given to her choice of forum, necessarily controls the outcome." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 74 (2d Cir. 2001) (en banc). Dismissal on *forum non conveniens* grounds is thus appropriate where, as here, the presumption of plaintiff's convenience can clearly be overcome. *See, e.g., Rudisill*, 817 F. Supp. at 446-48 (recognizing deference due to American plaintiffs' choice of forum, but dismissing on grounds of *forum non conveniens* where only nexus between litigation and Delaware forum was that defendant was incorporated there); *Bell Helicopter*, 295 F. Supp. 2d at 402, 411-12 (recognizing fact that plaintiff was incorporated in Delaware, but concluding that Canadian forum was more convenient).

Solae's suggestion that, as an American citizen, it should be practically immune from dismissal on *forum non conveniens* grounds has no place in recent caselaw, especially considering that Solae is a corporation that has chosen to do business abroad. In contrast to the dated decisions relied upon by Solae (*see* Solae Br. at 14-15 (citing *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 646 (2d Cir. 1956) and *Mobil Tankers Co., S.A. v. Mene Grande Oil Co.*, 363 F.2d 611, 614 (3d Cir. 1966)), modern courts have recognized that, unlike a typical individual plaintiff, "[a] corporate plaintiff's citizenship or residence may not correlate with its real convenience because of the nature of the corporate entity." *Reid-Whalen v. Hansen*, 933 F.2d 1390, 1395 n.8 (8th Cir. 1991). In this context, the traditional concern for providing U.S. citizens access to American courts "has been tempered by the expansion and realities of international commerce," *id.* at 1395, as courts have concluded that a "corporation doing business abroad can expect to litigate in foreign courts." *Guidi v. Inter-Continental Hotels*

16

*Corp.*, 224 F.3d 142, 147 (2d Cir. 2000); *see also Alcoa Steamship Co. v. M/V Nordic Regent*, 654 F.2d 147, 156-57 (2d Cir. 1980) ("The trend of ... the common law generally ... has been away from according a talismanic significance to the citizenship or residence of the parties."). As one recent decision explained:

> In an era of increasing international commerce, parties who choose to engage in international transactions should know that when their foreign operations lead to litigation they cannot expect always to bring their foreign opponents into a United States forum when every reasonable consideration leads to the conclusion that the site of the litigation should be elsewhere.

*Contact Lumber Co. v. P.T. Moges Shipping Co. Ltd.*, 918 F.2d 1446, 1450 (9th Cir. 1990). Thus, Solae cannot simply rest on its identity as an American citizen and Delaware LLC when all other factors point to the affirmative convenience of Ontario and corresponding inconvenience of Delaware for litigating this dispute. (*See* Hershey Canada Op. Br. at 19-24.) In particular, Solae has done nothing to challenge Hershey Canada's assertion that there are important Canadian witnesses whose trial testimony can be compelled only by the Ontario court, while there are no important witnesses who cannot be compelled to trial in Ontario. (*See id.* at 20-21 (identifying non-party witnesses in Canada who could not be compelled to testify in Delaware).)

Solae relies heavily on *Trilegiant Loyalty Solutions, Inc. v. Maritz*, No. 04-360-JJF, 2005 WL 441077 (D. Del. Feb. 15, 2005), but that case is merely an example of the private and public convenience factors being clearly insufficient under the circumstances to overcome any presumption of plaintiff's convenience resulting from its choice of home forum. In *Trilegiant*, easily transferable books and records constituted the only evidence; no witnesses would be unavailable for trial in Delaware; and the fact that it was a patent case meant there was no strong local interest in litigating the matter elsewhere. *Id.* at *2-3. None of these factors is present here.

17

Solae also suggests in passing that dismissal based on *forum non conveniens* would doom this litigation to bifurcation (with the declaratory judgment action proceeding in Ontario and the breach of contract claim remaining in Delaware) (Solae Br. at 23), but its logic on this point is difficult to follow. Hershey Canada's motion is directed to the entirety of Solae's Complaint, not some portion of it. And litigation over the $40,000 at issue with respect to the second lot of soy lecithin — which was never even delivered to Hershey Canada — would be just as inconvenient in Delaware as litigation over the Salmonella-infected shipment. Thus, dismissal on *forum non conveniens* grounds would not result in piecemeal litigation. Piecemeal litigation would, however, be the likely result if the Court were to exercise jurisdiction in Delaware in light of Hershey Canada's action in the Ontario court, which is proceeding and includes Canadian law claims not at issue in this litigation. (*See* Hershey Compl. ¶¶ 1, 19-20, 25 (D.I. 12, Ex. M to Angele Decl.)[4]

---

[4]    Solae devotes pages of its brief to describing Canada's discovery procedures, in an apparent attempt to establish the inadequacy of the Canadian forum. (Solae Br. at 20-22.) Yet the fact that the courts of Ontario, Canada employ different procedural rules than this Court is wholly irrelevant to *forum non conveniens* analysis. Critically, Solae does not argue — and none of Solae's allegations remotely suggest — that the Ontario court in which Hershey Canada has filed suit would provide a remedy "so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft*, 454 U.S. at 254. Accordingly, there should be no question that the alternative forum of Ontario, Canada is "adequate" for *forum non conveniens* purposes. *See id.*

18

## CONCLUSION

For all of these reasons, and those set forth in Hershey Canada's Opening Brief dated

June 8, 2007, this case should be dismissed.

Jeffrey L. Moyer (#3309)
moyer@rlf.com
Steven J. Fineman (#4025)

*Of Counsel*:

fineman@rlf.com

Craig S. Primis, P.C.

Richards, Layton & Finger, P.A.

John R. Phillips

One Rodney Square

Kirkland & Ellis LLP

920 North King Street

655 15th Street, N.W.

Wilmington, DE 19801

Washington, D.C. 20005

(302) 651-7700

(202) 879-5000

*Attorneys for Defendant Hershey Canada Inc.*

Dated: July 5, 2007

19

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2007, I electronically filed the foregoing with the Clerk of

Court using CM/ECF which will send notification of such filing(s) to the following and which

has also been served as noted:

**HAND DELIVERY**
P. Clarkson Collins, Jr.
Katherine J. Neikirk
Morris James, LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19899

I further certify that on July 5, 2007, the foregoing document was sent to the following

non-registered participants in the manner indicated:

**BY ELECTRONIC MAIL**
Scott L. Winkelman
Monica M. Welt
Crowell & Moring LLP
1001 Pennsylvania Ave. N.W.
Washington, D.C. 20004-2595

Steven J. Fineman (#4025)

RLF1-3174800-1