# RICHARDS, LAYTON & FINGER

A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX (302) 651-7701
WWW.RLF.COM

JEFFREY L. MOYER
DIRECTOR

DIRECT DIAL NUMBER
302-651-7525
MOYER@RLF.COM

August 23, 2007

**VIA E-FILING and HAND DELIVERY**

The Honorable Joseph J. Farnan, Jr.
United States District Court
J. Caleb Boggs Federal Building
844 King Street
Wilmington, DE 19801

> Re: **Solae LLC v. Hershey Canada Inc.,**
> C.A. No. 07-140-JJF

Dear Judge Farnan:

Pursuant to Delaware District Court Local Rule 7.1.2(b), Hershey Canada Inc. ("Hershey Canada") respectfully submits this letter to bring to the Court's attention a decision recently issued by the Ontario Superior Court of Justice. As the Court may recall from the parties' briefing on Hershey Canada's motion to dismiss this action, Solae commenced the present proceedings on Friday, March 9, 2007. Believing that this case properly should proceed in Ontario, Canada, Hershey Canada immediately commenced the Canadian proceedings on Monday, March 12, 2007. Thereafter, Solae moved the Ontario court to stay the Canadian proceedings in favor of the above-referenced Delaware action.

On August 22, 2007, the Ontario Superior Court of Justice issued an opinion finding that the contract between Hershey Canada and Solae did not contain a forum selection clause, and that Hershey Canada's case may proceed in Ontario under that court's forum *non conveniens* analysis. The court denied Solae's motion and ordered Solae to file its statement of defense within 30 days. Enclosed please find a copy of the Ontario Superior Court of Justice's opinion.

RLF1-3192996-2

The Honorable Joseph J. Farnan, Jr.
August 23, 2007
Page 2


    If Your Honor should have any questions, counsel remains available at the Court's convenience.

Respectfully submitted,

Jeffrey L. Moyer (#3309)

JLM/lll
Enclosures

cc:    P. Clarkson Collins, Jr., Esq.
       Katherine J. Neikirk, Esq.
       Scott L. Winkelman, Esq.
       Monica M. Welt, Esq.

RLF1-3192996-2

COURT FILE NO.: 07-CV-329291PD2
DATE: 20070822

ONTARIO

SUPERIOR COURT OF JUSTICE

| BETWEEN: | ) | |
|---|---|---|
| HERSHEY CANADA, INC. | ) ) | Scott Maidment, Lisa Parliament, for the Plaintiff, Respondent |
| Plaintiff | ) | |
| - and - | ) | |
| SOLAE, LLC | ) ) | Peter J. Pliszka, Robin P. Roddey, for the Defendant, Moving Party |
| Defendant | ) | |
| | ) | HEARD: August 3, 2007 |

H. Spiegel J.

### REASONS FOR DECISION

#### Overview

[1] The plaintiff Hershey Canada, Inc. ("Hershey Canada") operates a chocolate manufacturing plant in Smith Falls, Ontario that produces confectionary products for distribution throughout Canada. Among its ingredients is a soy-based product known as identity-preserved lecithin ("IP lecithin").

[2] The defendant Solae, LLC ("Solae"), a Delaware corporation with headquarters in St. Louis, Missouri, manufactures soy-ingredient lecithin for sale to commercial users. Hershey

- 2 -

Canada regularly purchases IP lecithin from Solae pursuant to agreements negotiated by Hershey Canada's parent corporation, Hershey, Inc. ("Hershey"). In September 2006, Solae delivered one such shipment of IP lecithin (the "September Shipment") to Hershey Canada's Smith Falls plant.

[3]     In November 2006, the plaintiff discovered traces of Salmonella at its Smith Falls plant. This triggered regulatory action and necessitated a recall of over 2 million chocolate products and a temporary closing of the plant. In this action the plaintiff alleges that Solae's September shipment of IP lecithin was the source of the Salmonella contamination and seeks substantial damages.

[4]     Solae now seeks to stay the present action in favour of a declaratory action it commenced in Delaware. Solae argues that the parties' contract included a forum selection clause designating Delaware as the exclusive forum for the resolution of disputes, and that there is no "strong cause" for not enforcing that agreement. In the alternative, Solae submits that this court should decline to exercise jurisdiction because Ontario is *forum non conveniens*.

**The Facts**

[5]     Hershey, Hershey Canada and Solae have had a relationship for the supply of IP lecithin for a number of years. Each year, representatives of Hershey and Solae would meet to discuss terms for the supply of IP lecithin for the coming year. Hershey would provide Solae with a projected volume of IP lecithin for the year, and Solae would provide a price-per-pound to apply to that year's sales. The parties agree that Solae's price was based on Hershey's projected volume; however, the obligations that arose as a result of these discussions, if any, are in dispute. I will refer to these yearly agreements as the "Supply Agreements".

[6]     In December 2005, a Supply Agreement for 2006 was negotiated between Laurie Cradick of Solae's lecithin division and Kimberly McLucas of Hershey's commodities department. Ms. McLucas provided an estimated volume of 250,000 pounds of IP lecithin for 2006. Relying on that estimate, Ms. Cradick sent an email to Ms. McLucas on December 14, 2005 stating as follows:

> SOLEC 3F-UB-IP/SOLEC 162-US-IP [IP lecithin], packaged in 1 metric ton tote containers, is $1.265/lb. delivered. This bid is for a volume award of no more than 250,000 pounds.
>
> Payment terms for all products are Net 30 days. Effective dates are January 01, 2006 through December 31, 2006; valid upon acceptance.

Ms. McLucas's uncontradicted evidence is that she accepted these terms by telephone. Whether these terms were reduced to a further writing that was exchanged between the parties is in dispute.

- 3 -

[7] On January 10, 2006, after her negotiations with Ms. Cradick were completed, Ms. McLucas wrote an email to James Kuehl, a materials analyst at the Smith Falls plant, informing him of the 2006 Supply Agreement with Solae for 250,000 pounds IP lecithin and authorizing him to 'pull' on it through the year. She referred to the Supply Agreement by the number 46044618.

[8] Solae's individual shipments of IP lecithin to the Smith Falls plant for 2006, as in previous years, followed a regular course. Mr. Kuehl would fax a purchase order to Solae's customer service department. The purchase order would indicate the quantity of IP lecithin required and the date for delivery, and would contain a line reading "release against contract 46044618". Solae would fax Mr. Kuehl an order confirmation. Solae would then ship the product. After the shipment was delivered, Solae would send an invoice to the Smith Falls plant.

*Solae's Conditions of Sale*

[9] The front side of Solae's standard order confirmations and invoice forms contains the words "Please see Attachment 1 – Conditions of Sale on Reverse Side". The reverse side of these standard forms contains 18 paragraphs entitled 'Conditions of Sale'. Paragraph 17 is a forum selection clause, which reads as follows:

> 17. This Agreement is to be construed and the respective rights of Buyer and Seller are to be determined according to the laws of the State of Delaware, U.S.A., without regard to choice of law or conflicts principles of Delaware or any other jurisdiction, and the courts of Delaware shall have exclusive jurisdiction over any disputes arising under this agreement.

[10] I note that clause 4 of the Conditions of Sale states that the buyer's sole and exclusive remedy for any claim against Solae is limited to a refund of the purchase price paid for the relevant goods.

[11] Ms. Cradick agrees that the Conditions of Sale were never mentioned in her negotiations of the Supply Agreements with Ms. McLucas. Ms. Cradick has stated that it was not her practice to discuss these terms. Solae's uncontradicted evidence is that no one from Hershey or Hershey Canada ever flagged or raised an objection to the Conditions of Sale found on the reverse side of Solae's standard forms

*The September Shipment*

[12] On June 21, 2006, Mr. Kuehl faxed Solae a purchase order for the shipment of 18,000 kg of IP lecithin, to be delivered on September 29, 2006. On June 23, 2006, Solae faxed a corresponding order confirmation. The order confirmation, however, did not include Solae's Conditions of Sale, although it did contain the reference thereto noted above.

- 4 -

[13]  Solae delivered the September Shipment to the Smith Falls plant on September 27, 2006. After the delivery, Solae sent an invoice to the Smith Falls plant. The invoice did contain Solae's Conditions of Sale.

[14]  On November 3, 2006, Hershey Canada discovered traces of Salmonella in the course of routine microbiological testing on its "Symphony" chocolate line. Hershey Canada immediately shut down production on the "Symphony" line and began conducting investigations into the source of the Salmonella. On November 9, 2006, all operations at the Smith Falls plant ceased and its workers were sent home.

[15]  The Salmonella finding triggered regulatory investigation by the Canadian Food Inspection Agency and a complete recall of over 2 million chocolate products. It also necessitated a lengthy and complex clean-up of the entire factory, which involved dismantling the chocolate manufacturing system and cleaning it thoroughly. Production of finished goods at the Smith Falls plant did not resume until December 4, 2006.

*Commencement of the Ontario and Delaware Actions*

[16]  As a result of its investigations, Hershey Canada concluded that the September Shipment of IP lecithin was the source of the Salmonella. On November 13, 2006, Hershey Canada sent a letter to Solae stating that it would hold Solae responsible for the contamination at the Smith Falls plant. The letter also invited Solae to enter settlement discussions. Counsel for the parties met on December 19, 2006.

[17]  Hershey Canada states that prior to this December meeting it had prepared a statement of claim against Solae, but elected to withhold issuing the claim pending settlement discussions.

[18]  After the December meeting Hershey Canada provided Solae with material relating to its alleged damages and the parties agreed to meet again on March 8, 2007.

[19]  Solae cancelled this meeting on the evening of March 7, 2007 and filed an action against Hershey Canada in Delaware on March 9, 2007. In the Delaware action Solae seeks, among other things, a declaration that the Conditions of Sale, including the clause limiting Solae's liability to the purchase price paid, apply to the September Shipment.

[20]  As soon as it learned that Solae had commenced the Delaware action, Hershey Canada commenced this action in Ontario on March 12, 2007, alleging negligence, breach of contract, and breach of Canadian Health regulations.

- 5 -

### The Forum Selection Clause

[21]    Where a contract contains a valid forum selection clause for the resolution of disputes, that clause should be respected unless the plaintiff demonstrates "strong cause" or "exceptional circumstances" to justify overriding the parties' agreement.[1]

[22]    It is obvious that I must first determine whether the contract between the parties contained a forum selection clause. Solae, as the party asserting the forum selection clause, has the burden of proving that the clause was part of the contract.

[23]    The parties differ on what constitutes the governing contract between them

*Solae's Position*

[24]    Solae submits that each individual shipment of IP lecithin should be viewed as an individual contract. It contends that each time Hershey Canada sent Solae a purchase order for IP lecithin, Hershey Canada was making an offer to purchase and when Solae replied with an order confirmation including its Conditions of Sale, Solae was making a counter-offer to Hershey Canada's offer. When Hershey Canada accepted the shipment of IP lecithin without reference or objection to the Conditions of Sale, it accepted Solae's counter-offer (including its Conditions of Sale) by its conduct.

[25]    Solae concedes that the order confirmation for the September Shipment did not include the Conditions of Sale but notes that they were included in previous order confirmations. Solae therefore submits, relying on *Anticosti Shipping Co. v. St. Amand*[2], that the Conditions of Sale were part of the regular past practice between the parties and thus formed part of their bargain for the September Shipment.

*Hershey Canada's Position*

[26]    Hershey Canada submits that the governing contract between the parties was the Supply Agreement for 2006. Ms. Cradick submitted a 'bid' to Ms. McLucas to supply up to 250,000 pounds of IP lecithin at $1.2565 per pound, and that bid was accepted by Ms. McLucas. Thus there was an offer and acceptance sufficient to create a binding contract.

[27]    In response to Solae's position, Hershey Canada submits that once the Supply Agreement was concluded, Solae was obligated to sell and deliver the IP lecithin at the agreed price and therefore Solae's promise to sell or deliver provided no consideration to Hershey Canada for acceptance of the Conditions of Sale. It further submits that neither Mr. Kuehl nor any of the other employees who were involved in the September Shipment had any authority to bind the plaintiff to the terms contained in the Conditions of Sale.

---

[1] *Z.I. Pompey Industries v. ECU-Line N.V.*, [2003] 1 S.C.R. 450 at paras. 20-21.
[2] (1959), 19 D.L.R. (2d) 472 (S.C.C.)

- 6 -

*Analysis*

[28]   Contractual interpretation is based on the objective intentions of the parties. This interpretive exercise may be informed by the factual matrix in which the events took place and the commercial purpose of the contract.[3] The court should look at the conduct of the parties and the documents that passed between them and consider whether they have reached agreement on all material points.[4] Having done so, I am unable to accept Solae's view of the contractual relationship between the parties.

[29]   When Ms. McLucas and Ms. Cradick discussed Hershey's purchases of IP lecithin for 2006, they were the individuals with authority to enter into contracts on behalf of their respective organizations. Ms. Cradick herself, in her first affidavit dated April 19, 2007, referred to the Supply Agreements as "underlying agreements" and characterized the relationship as follows (paras. 13-14):

> Typically, on an annual basis I would meet with Hershey's representative at Hershey's offices in Pennsylvania to negotiate the projected aggregate volume of soy lecithin products that would be ordered by the manufacturing plants of Hershey and Hershey Canada over the course of the next year, and the price that would apply to those purchases.
>
> Once such a supply-pricing agreement was in effect, various manufacturing facilities of Hershey and Hershey Canada would then send purchase orders to Solae (and previously Central Soya) from time to time to trigger specific shipments of soy lecithin by Solae pursuant to the supply-pricing agreement.

[30]   Ms. Cradick has also stated that Hershey maintains a "centralized buying operation" out of their location in Hershey, Pennsylvania; that she expected to negotiate only with Ms. McLucas, who was the Hershey agent authorized to negotiate price and volume; that the substance of the negotiation was how much IP lecithin Solae would be committed to supply; that the price per pound was set based on an expectation of how much product Hershey would buy; and that Hershey was entitled to have Solae deliver the product at the agreed-upon price.

[31]   I am aware that in her subsequent affidavits and cross-examinations Ms. Cradick purported to change her position on the nature of the Supply Agreement and its relationship to the subsequent purchase orders, but I am of the view that the statements that I have referred to are consistent with the evidence as a whole and are strong support for the plaintiff's position.

[32]   Solae argues that the Supply Agreement cannot be the governing contract because certain important terms such as dates of delivery and quantities of individual shipments were not agreed upon or even discussed. I do not agree. On the record before me I find that when the negotiation

---

[3] See Kim Lewison, *The Interpretation of Contracts*, 2nd ed. (London: Sweet & Maxwell, 1997) at paras. 1.02-1.06.
[4] *Butler Machine Tool Co. v. Ex-Cell-O Corp.*, [1979] 1 All E.R. 965 (C.A.) at 968-69.

- 7 -

between Ms. Cradick and Ms. McLucas concluded in December 2005, Solae reasonably believed that it was obliged to sell 250,000 pounds of IP lecithin at a specified price. Hershey reasonably believed that it was obliged to buy a substantial quantity of IP lecithin and to use its best efforts and good faith to purchase 250,000 pounds of it. In my view, the absence of an agreement on dates of delivery and quantities of individual shipments did not prevent the formation of a binding contract.

[33]    There are a number of serious flaws in Solae's argument that the parties entered into a separate contract for the September Shipment which included the Conditions of Sale. Given my characterization of the Supply Agreement, when Mr. Kuehl sent a purchase order for the September Shipment, Solae was bound to supply up to 250,000 pounds for $1.2565 per pound. In her cross-examination of July 20, 2007 Ms. Cradick admitted as much (see p. 44 of the transcript). Thus I agree with the plaintiff's submission that no further consideration flowed to Hershey Canada to support the Conditions of Sale.

[34]    Moreover, assuming there was consideration, I am not satisfied on the evidence that Mr. Kuehl had any real or ostensible authority to agree to the Conditions of Sale. Mr. Kuehl is a materials analyst at the Smith Falls plant. It was his job was to monitor the levels of IP lecithin at the Smith Falls plant and to order more when it was needed, and to do so, he prepared and issued ordering documents to members of Solae's customer service department. His evidence is that he was not authorized to negotiate contractual terms.

[35]    Mr. Kuehl certainly had authority to decide when to "pull" on the Supply Agreement and to determine the quantity and date for delivery of individual shipments. It is quite another matter to say that he had authority to commit Hershey Canada to the Conditions of Sale which, among other things, committed Hershey Canada to the exclusive jurisdiction of the Delaware court and significantly limited Solae's liability. Ms. Cradick herself acknowledged that Ms. McLucas was the individual with authority to negotiate the IP lecithin contract. I find it difficult to believe that Solae could reasonably have viewed Mr. Kuehl as a person with authority to bind Hershey Canada to the significant contractual obligations set out in the Conditions of Sale

[36]    In *General Refractories Co. of Canada v. Venturedyne, Ltd.* Himel J. makes the following statement, which I find to be apt:

> It is my view that where senior management has negotiated an agreement on certain terms, it is unlikely that the parties intended to change the transaction by using standard terms and conditions expressed by the administrative staff involved in the shipping and delivery of the press.[5]

[37]    In sum, for the purposes of this motion I am not persuaded that the contract between the parties contained a forum selection clause. It is therefore unnecessary for me to consider whether Hershey has made out "strong cause" to justify overriding such a clause.

---

[5] [2002] O.J. No. 54 at para. 153.

- 8 -

[38]   I wish to emphasize that my findings with respect to the contractual relationship between the parties are made solely for the purpose of determining the issues on this motion, and that nothing that I have said should be interpreted as a binding determination of the nature of that relationship. This is a matter that will have to be determined at trial.

## *Forum Non Conveniens*

[39]   An Ontario court with jurisdiction over the parties may nonetheless stay an action where it finds that an alternative forum is clearly a more appropriate forum for resolving the dispute. Where the defendant has been served *ex juris*, the plaintiff bears the burden of meeting this standard[6], although in most cases the burden will not play a significant role.[7] In this case, I must determine whether Delaware is clearly a more appropriate forum to resolve the dispute between Hershey Canada and Solae.

[40]   Solae submits that I should treat factors that connect this action to any location in the United States of America as favouring the Delaware court as the more appropriate forum. Solae's argument is not based on the physical location of evidence or witnesses. Rather, Solae states that this principle stems from the similarities among the legal systems of the United States and from the need to treat parties in a fair and orderly manner. Therefore, Solae argues that anything that connects this action to Illinois, Missouri, Pennsylvania, or Indiana should militate in favour of Delaware being the more appropriate forum.

[41]   I find this submission wholly unpersuasive, and Solae has provided no authority to support it. Solae seeks to stay this action in favour of its Delaware proceeding. The proper question is therefore whether Delaware, not the United States as a whole, is the most appropriate forum for the dispute. To treat Canada and the United States as the two competing jurisdictions is not in accord with the facts or the well-established *forum non conveniens* analysis.

[42]   The *forum non conveniens* test is directed to determining the jurisdiction that has the closest connection to the dispute and that will be the most convenient forum for resolving the matter. To that end, the court must consider all relevant factors suggesting the most appropriate forum, including,

    (a)    the location where the contract was signed and the applicable law of the contract,
    (b)    the residence or place of business of the parties,
    (c)    the location of witnesses,
    (d)    the location where the bulk of the evidence will come from,
    (e)    the jurisdiction in which the factual matters arose,
    (f)    geographical factors suggesting the natural forum,
    (g)    the applicable law and its weight in comparison to the factual questions to be decided,

---

[6] *Frymer v. Brettschneider* (1994), 19 O.R. (3d) 60 at 78.
[7] *Amchem Products Inc. v. British Columbia (Workers' Compensation Board)*, [1993] 1 S.C.R. 897 at 921.

- 9 -

      (h)    the avoidance of multiplicity of proceedings, and
      (i)    loss of legitimate juridical advantage.[8]

[43]    Beyond the fact that it is the place of incorporation of Solae and Hershey, the plaintiff's parent company, there is very little to connect this litigation to Delaware. Neither party has any operations in Delaware. The products did not pass through Delaware and were not recalled from Delaware. No witnesses or evidence are located in Delaware.

[44]    On the other hand, I find this litigation has a number of strong connections with Ontario. Hershey Canada is an Ontario corporation. The IP lecithin was delivered to the Smith Falls plant in Ontario. The 2 million chocolate products recalled were produced here. A number of relevant witnesses, both employees of Hershey Canada and regulatory officers, reside in Ontario. The tort alleged was committed here. The alleged statutory violations are violations of Canadian statutes.

[45]    Solae commenced the Delaware action one business day before Hershey Canada commenced this action, and the Delaware action has not progressed passed the pleading stage. Though the avoidance of multiple proceedings is generally a salutary aim, on the facts of this case, it is not a strong factor favouring Delaware.

[46]    Both parties claim legitimate juridical advantages in their chosen forums. Solae notes that Delaware has more extensive discovery rules, and that these rules are frequently used in business-related civil actions. However, Solae has not provided any explanation why Delaware's more extensive discovery rules will provide Solae with a real advantage on the facts of this case. Hershey Canada makes the point that the Delaware court will not have jurisdiction to subpoena non-party witnesses located in Ontario, including inspectors of the Canada Food Inspection Agency and Mr. Kuehl, who is no longer an employee of the plaintiff. This, my view, is a legitimate juridical advantage that weighs in favour of Ontario.

[47]    In short, a consideration of the *forum non conveniens* factors leads overwhelmingly to the conclusion that Ontario is the more appropriate forum.

### Disposition

[48]    The motion for a stay is dismissed. The defendant will have 30 days from the date of delivery of these reasons to deliver its statement of defence.

---

[8] *Eastern Power Ltd. v. Azienda Comunale Energia & Ambiente* (1999), 174 D.L.R. (4th) 409 at 415; *Muscutt v Courcelles* (2002), 213 D.L.R. (4th) 577 at para. 41.

- 10 -

[48]  Hershey Canada is entitled to its costs of the motion on a partial indemnity basis. If the parties cannot agree upon the quantum of costs, I will receive brief written submissions, including copies of any costs outlines exchanged between the parties pursuant to rule 57.01(6), within 14 days hereof.

H. Spiegel J.

Released: AUG 2 2 2007

COURT FILE NO.: 07-CV-329291PD2
DATE: 20070822

## ONTARIO

## SUPERIOR COURT OF JUSTICE

BETWEEN:

HERSHEY CANADA, INC.

Applicant

– and –

SOLAE, LLC

Respondent

## REASONS FOR DECISION

H. Spiegel J.

Released:   August 22, 2007



Court File No.: 07-CV-32929IPD2

Hershey Canada, Inc.
Plaintiff

- and -

Solae, LLC
Defendant

ONTARIO
SUPERIOR COURT OF JUSTICE

Proceeding commenced at Toronto

MOTION RECORD
(Motion before a Judge;
Returnable August 3, 2007)

FASKEN MARTINEAU DUMOULIN LLP
Barristers and Solicitors
Box 20, Suite 4200
Toronto-Dominion Centre
Toronto, ON  M5K 1N6

Robert S. Harrison (LSUC#14046D)
Tel: 416 865 4384
Peter J. Pliszka (LSUC#29634T)
Tel: 416 868 3336

Fax: 416 364 7813
Solicitors for the Defendant

Aug 22/07
For reasons delivered this day
the motion is dismissed.
[signature]

TOTAL  P.13