IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF DELAWARE

SOLAE, LLC,                               :
                                          :
                    Plaintiff,            :
                                          :
      v.                                  :   Civil Action No. 07-140-JJF
                                          :
HERSHEY CANADA INC.,                      :
                                          :
                    Defendants.           :

Scott L. Winkelman, Esquire, and Monica W. Welt, Esquire of
CROWELL & MORING LLP, Washington, D.C.
P. Clarkson Collins, Esquire and Katherine J. Keikirk, Esquire of
MORRIS JAMES, Wilmington, Delaware.

Attorneys for Plaintiff.

Craig S. Primis, Esquire, and John R. Phillips, Esquire of
KIRKLAND & ELLIS LLP, Washington, D.C.
Jeffrey L. Moyer, Esquire and Steven J. Fineman, Esquire of
RICHARDS, LAYTON & FINGER, Wilmington, Delaware.

Attorneys for Defendant.

                              **OPINION**

May  9 , 2008
Wilmington, Delaware

Farnan, District Judge.

Presently before the Court is Defendant's Motion to Dismiss the Amended Complaint (D.I. 26). Because the Court finds that it lacks personal jurisdiction over Hershey Canada, Inc., the motion will be granted.

## BACKGROUND

On March 9, 2007, Plaintiff, Solae LLC ("Solae") filed its original complaint (D.I. 1) in this declaratory judgment and breach of contract action against Hershey Canada, Inc. ("Hershey Canada"). Solae filed an Amended Complaint on May 11, 2007. (D.I. 23.) By its Complaint, Solae "seeks a determination of the parties' respective rights and obligations arising from the sale of two lots of lecithin manufactured by Solae for [Hershey Canada's] use at its facility in Smith Falls, Ontario, Canada." (D.I. 23 at ¶1.)

Solae is a Delaware limited liability company with its principal place of business in St. Louis, Missouri. (Id. at ¶2.) Hershey Canada is a Canadian corporation with its principal place of business in Mississauga, Ontario. (Id. at ¶2.) For the past several years, Solae has supplied soy lecithin to Hershey Canada. (D.I. 23 at ¶12.) In late 2005, Laurie Cradick ("Ms. Cradick"), Solae's account manager responsible for sales of soy lecithin products to, and the customer relationship with The Hershey Company ("Hershey"), and Kim McLucas ("Ms. McLucas"), of

2

Hershey's commodities department, began negotiating the projected volume of soy lecithin products that Hershey and Hershey Canada would be ordering in 2006, and the sale price that would apply during that period. (D.I. 15, Ex. 2 at ¶18.) In December 2005, Ms. Cradick and Ms. McLucas reached agreement that "for the period from January 1, 2006 to December 31, 2006 Hershey Canada would order up to 250,000 pounds of [soy lecithin] at a price of US$1.2565 per pound." (Id. at ¶18.) The parties dispute whether the terms of this agreement were reduced to writing. Ms. McLucas then notified James Kuehl ("Mr. Kuehl"), a materials analyst for Hershey Canada at its Smith Falls, Ontario manufacturing plant ("the Smith Falls plant"), of this agreement, which she referred to as contract "46044618," by email on January 20, 2006.

Under the 2006 agreement, as under agreements reached in previous years, Mr. Kuehl would fax a purchase order to Solae's customer service department, indicating, among other things, that the quantity ordered should be "release[d] against contract 46044618." (D.I. 10, Ex. D.) After faxing Mr. Kuehl an order confirmation, Solae would ship the soy lecithin. Following shipment, Solae would send an invoice to the Smith Falls Plant. Solae's standard order confirmations and invoices refer to attached "Conditions of Sale." The parties do not dispute that these Conditions of Sale were not mentioned during negotiations between Ms. McLucas and Ms. Cradick.

This action arises largely out of Solae's September 27, 2006 shipment of 40,000 pounds of soy lecithin allegedly contaminated with Salmonella to Hershey Canada for use in chocolate products at its Smith Falls, Ontario manufacturing plant ("the Smith Falls plant"). (Id.) The shipment was made pursuant to Mr. Kuehl's faxed purchase order on June 21, 2006, requesting delivery on September 29, 2006. Solae's order confirmation, sent June 23, 2006, did not include its Conditions of Sale, but did refer to them. The invoice sent to the Smith Falls Plant following shipment did contain the Conditions of Sale.

The contamination was discovered by Hershey Canada in October 2006 while conducting routine testing. Before the contamination was realized, Hershey Canada had incorporated this allegedly-contaminated soy lecithin into over two million units of Hershey Canada product shipped throughout Canada. (D.I. 27.) This contamination resulted in a large-scale recall of Hershey Canada chocolate products, the temporary closure of the Smith Falls plant, and an extensive investigation by the Canadian Food Inspection Agency ("CFIA") and the Office of Food Safety and Recall ("OFSR"). (D.I. 27 at 3.) Subsequently, Hershey Canada notified Solae of the contaminated soy lecithin, and informed Solae that it would hold Solae responsible for damages incurred as a result of the incident. (D.I. 23 at ¶22.) Hershey Canada also refused to accept delivery or pay for any additional lots of

4

soy lecithin, including a lot for which an order had been placed on October 17, 2006. (D.I. 23 at ¶23, D.I. 27 at 4.)

In December 2006, the parties entered into a common interest agreement for purposes of initiating settlement negotiations. (D.I. 32 at 10; D.I. 27 at 4.) Over the next three months, the parties engaged in settlement negotiations, meeting once, and engaging in a substantive phone conversation regarding the foundation for the damages figures Hershey Canada had provided to Solae. (D.I. 32 at 34.) A settlement meeting was scheduled for March 8, 2007, but this meeting was postponed on March 7, 2007 per Solae's counsel request. (D.I. 32 at 35.) No further communications between the parties occurred before Solae filed this action on March 8, 2007.

## PARTIES' CONTENTIONS

Hershey Canada contends, first, that the Court should exercise its discretion and dismiss Solae's declaratory judgment action because it was motivated by bad faith and forum shopping. Next, Hershey Canada contends that the Court should dismiss this case on *forum non conveniens* grounds because it has no connection to the State of Delaware and a comparable case is pending in Ontario, Canada, which Hershey Canada contends is the proper forum for this action. Finally, Hershey Canada contends that the Court should dismiss the action under Federal Rule of Civil Procedure 12(b)(2) because it lacks personal jurisdiction over

Hershey Canada.

Examining Solae's Amended Complaint in conjunction with the facts as stated above, the Court will proceed to determine if jurisdiction exists over Hershey Canada.

**ANALYSIS**

## I.   Forum Selection Clause

The parties dispute the relevant contract governing this dispute.   If the relevant contract contains a forum-selection clause, Hershey Canada's contentions regarding personal jurisdiction are largely irrelevant.   When a party is bound by a forum selection clause, the party is considered to have expressly consented to personal jurisdiction.   <u>Res. Ventures, Inc. v. Res. Mgmt Int'l, Inc.</u>, 42 F.Supp.2d 423, 431 (D.Del. 1999).   An express consent to jurisdiction, in and of itself, satisfies the requirements of Due Process.   <u>Sternberg v. O'Neil</u>, 550 A.2d 1105, 1116 (Del. 1987).   Such consent is deemed to be a waiver of any objection on Due Process grounds and an analysis of minimum contacts becomes unnecessary.   <u>See</u> <u>Hornberger Mgmt. Co. v. Haws & Tingle General Contractors, Inc.</u>, 685 A.2d 724, 727 (Del.Super. Ct. 2000) (stating "[a] party may expressly consent to jurisdiction by agreeing to a forum selection clause ... If a party consents to jurisdiction, a minimum contacts analysis is not required."); <u>USH Ventures v. Global Telesystems, Inc.</u> C.A. No. 97C-08-086, 1998 Del. Super Lexis 167, at *22 (Del.Super.Ct.

May 21, 1998) (same). Accordingly, the Court must determine whether Hershey Canada is bound by a forum selection clause.

According to Solae, the relevant contract is the invoice and "Conditions of Sale," mailed to Hershey Canada on or about September 27, 2006, concurrent with Solae's shipment of the allegedly-contaminated soy lecithin. (D.I. 23 at ¶12.) Solae contends these Conditions of Sale set forth terms governing the transaction, and have been "included in invoices from Solae to Hershey for soy lecithin and other soy-based products since approximately 2003." (Id.) The Conditions of Sale provide:

> This Agreement is to be construed and the respective rights of Buyer and Seller are to be determined according to the laws of the State of Delaware, USA, without regard to choice of law or conflict principles of Delaware or any other jurisdiction, and the courts of Delaware shall exclusive jurisdiction over any disputes or issues arising under this Agreement." (Id. at ¶17.)

Solae contends that Hershey Canada accepted the September 2006 shipment of soy lecithin and rendered payment in full, without objecting to or rejecting the Conditions of Sale, and therefore the forum selection clause governs the transactions at issue.

Hershey Canada contends that a "Quantity Contract" entered in January 2006 governed Solae's sale of soy lecithin to Hershey Canada for the year 2006, which contains no provision identifying Delaware as either a proper forum, or the source of governing law. Under the terms of the 2006 Quantity Contract, the parties agreed to the total volume of soy lecithin that Hershey Canada

7

was obligated to purchase before December 31, 2006, the price at which Solae was obligated to sell such volume, and the freight terms of "FOB Destination." Hershey Canada contends that no modifications to the Quantity Contract were proposed after January 2006.

Hershey Canada points out that the Conditions of Sale that Solae contends govern the dispute arrived after the shipment of the allegedly-contaminated soy lecithin had been delivered, and were received by individuals with no authority to modify the existing 2006 Quantity Contract. Hershey Canada further contends that there was never an affirmative assent to modify the parties' existing contract, and that, under the United Nations Convention of Contracts for the International Sale of Goods, Solae's "unilateral attempt to add terms through an invoice did not modify the parties' contract." (D.I. 27 at 26.)

In response, Solae contends that the Conditions of Sale were familiar to Hershey Canada through Solae and Hershey Canada's "long history of dealing under Solae's terms." (D.I. 32 at 24). Solae contends that the discussions between the parties regarding 2006 shipments to Hershey Canada did not give rise to a binding contract, and that the parties' course of dealing as to these shipments confirm that the annual volume discussions did not create binding agreements. Solae contends that it never received Hershey Canada's 2006 Quantity Contract, pointing to the

8

incorrect address and fax number listed for Solae on the face of the contract, and that Solae's representative had not seen a document akin to the 2006 Quantity Contract prior to this litigation. (D.I. 32 at 24-25.)

The parties agree that the United Nations Convention of Contracts for the International Sale of Goods ("CISG") governs contract formation here. Under the terms of the CISG, "a contract is concluded at the moment when an acceptance of an offer becomes effective in accordance with the provisions of this Convention." CISG, Art. 23. An offer must be "sufficiently definite," and "demonstrate an intention by the offerer to be bound if the proposal is accepted." Id., Art. 14. An offer is accepted, and a contract is formed when the offeree makes a statement or other conduct, "indicating assent to an offer." Id., Art. 18. The CISG does not contain a statute of frauds, stating that "a contract of sale need not be concluded in or evidenced by writing and is not subject to any other requirement as to form." Id., Art. 11. Courts have held that a binding contract exists when the parties sufficiently agree to the goods, the quantity and the price. See, e.g., Chateau Charmes Wines LTD., v. Sabate U.S.A. Inc., 328 F.3d 528531 (9th Cir. 2003).

Having reviewed the record in light of the applicable legal standard, the Court is not persuaded by Solae's contention that its Conditions of Sale control the disputed transaction. In her

9

April 19, 2007 affidavit, Ms. Cradick states that, in or about
mid-December 2005, the parties reached agreement as to "the
projected volume of soy lecithin...that would be ordered by
manufacturing plants of . . . Hershey Canada during 2006, and the
sale price that would apply during that period." (D.I. 15 at Ex.
B.) Ms. Cradick also states that Mr. Kuehl's June 21, 2006
purchase order was "[p]ursuant to" this agreement (Id. at ¶20);
this is further reflected in the actual purchase order, which
indicates that the order should be "release[d] against" the
250,000 pounds Hershey Canada was obligated to purchase under
this agreement. (D,I. 30 at Ex. E.)

     The record is clear that Ms. Cradick and Ms. McLucas had
reached agreement as to the amount of soy lecithin Solae was
obligated to sell Hershey Canada during the calendar year 2006,
and the price at which Solae was obligated to sell. Under this
agreement, Hershey Canada was obligated to purchase a substantial
quantity of soy lecithin from Solae at the price agreed upon.
The Court concludes that this is sufficient to create a complete
and binding contract under the CISG (the "2006 Contract").

     Because the 2006 Contract did not include a forum-selection
clause, the Court must now determine if the forum-selection
clause contained in the Conditions of Sale subsequently became
part of the 2006 Contract under the CISG. As Hershey Canada
points out, this issue was addressed by the Ninth Circuit in

10

Chateau des Charmes Wine Ltd., 328 F.3d 528:

> Under the Convention, a "contract may be modified or
> terminated by the mere agreement of the parties."
> [CISG], art. 29(1). However, the Convention clearly
> states that "[a]dditional or different terms relating,
> among other things, to ... the settlement of disputes
> are considered to alter the terms of the offer
> materially." Id., art 19(3). There is no indication
> that [the buyer] conducted itself in a manner that
> evidenced any affirmative assent to the forum
> selection clauses in the invoices. Rather, [the
> buyer] merely performed its obligations under the oral
> contracts. Nothing in the Convention suggests that
> the failure to object to a party's unilateral attempt
> to alter materially the terms of an otherwise valid
> agreement is an "agreement" within the terms of
> Article 29.

Id. at 531. Here, as in Chateau, Solae has set forth no

substantive evidence indicating that Hershey Canada agreed to a

modification of the terms of the 2006 Contract, beyond Hershey

Canada's receipt of the Conditions of Sale. Solae has not set

forth evidence refuting Mr. Kuehl's statement that he was not

authorized to negotiate contractual terms or to commit Hershey

Canada to Solae's Conditions of Sale, and the Court does not

agree with Solae's contention that because multiple invoices and

pre-shipment confirmations containing these Conditions of Sale

were sent to Hershey Canada over "years of sales and dozens of

transactions," these terms necessarily became part of the 2006

Contract. "[A] parties' multiple attempts to alter an agreement

unilaterally do not so effect." Chateau, 328 F.3d at 531. In

sum, the Court concludes that Hershey Canada's continued

performance of its duties under the 2006 Contract did not

11

demonstrate its acceptance of the terms contained in the Condition of Sales, and the Court further concludes that Solae's Conditions of Sale did not modify the 2006 Contract to add a forum-selection clause.

## II. Whether the Court Can Properly Assert Jurisdiction Over Hershey Canada

Having determined that Hershey Canada did not consent to this Court's jurisdiction, the Court will now determine whether personal jurisdiction exists over Hershey Canada.

In support of its motion, Hershey Canada contends that its contacts with Delaware "do not even arguably subject it to personal jurisdiction, either as a statutory or constitutional matter," since Hershey Canada has no business operations in Delaware, does not regularly solicit business or engage in persistent conduct in Delaware, and does not derive any significant revenue from the State of Delaware. (D.I. 27 at 27.) Hershey Canada further contends that, in connection with its relationship with Solae and the events giving rise to this dispute, it has not transacted business or performed work or services in Delaware, contracted to supply services or goods or to act as a surety in Delaware, caused tortious injury in Delaware, nor maintained an interest in real property in Delaware. (Id. at 27-28.) Hershey Canada contends that the seven jars of allegedly-contaminated sundae product recalled from the United States as a result of the incident were recalled from

12

Michigan, not Delaware.  Hershey Canada also contends that the
UCC financing statement filed in 1998, cited by Solae as evidence
of Hershey Canada's connection to Delaware, is irrelevant to
jurisdiction because, had the security interest not been
discharged, it would have lapsed as a matter of law.  Hershey
Canada also points out that the security interest has nothing to
do with this case.

Beyond contending that this Court has jurisdiction over
Hershey Canada based on the forum selection clause, Solae also
contends that, should the Court "harbor doubts about personal
jurisdiction," the Court should allow Solae leave to conduct
jurisdictional discovery.  Solae contends that it has already
discovered that Hershey Canada "filed at least one claim of
assets within Delaware," (the UCC financing statement) and
"Delaware is a single transaction jurisdiction when it comes to
personal jurisdiction." (D.I. 32 at 31.)  Solae contends that it
has alleged facts sufficient to suggest with "reasonable
particularity the possible existence of the requisite contacts"
between Hershey Canada and the State of Delaware.  (D.I. 32 at
31, quoting Toy "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 454
(3d Cir. 2003.))

For personal jurisdiction to exist over a non-resident
defendant, two requirements must be met, one statutory and one
constitutional.  Merck & Co., Inc. v. Barr Laboratories, Inc.,

13

179 F.Supp.2d 368, 371 (D.Del. 2002). With regard to the statutory requirement, the Court must determine whether there is a statutory basis for jurisdiction under the forum state's long arm statute. Id. As for the constitutional basis, the Court must determine whether the exercise of jurisdiction comports with the defendant's right to Due Process. Id. (citations omitted).

"When a non-resident [defendant] challenges personal jurisdiction, the burden is on the plaintiff to show that the defendant purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits [and] protections of its laws." Virgin Wireless, Inc. v. Virgin Enterprises Ltd., 201 F.Supp.2d 294, 298 (D.Del. 2002). As such, the plaintiff may not rely on the pleadings alone to withstand a motion to dismiss for lack of personal jurisdiction. Id. (citations omitted). Rather, "the plaintiff must come forward with facts to establish by a preponderance of the evidence that the court can exercise personal jurisdiction over the defendant." Id. (citations omitted).

The Delaware Supreme Court has construed its long-arm statute, Del. Code Ann. tit. 10 § 3104, liberally to confer jurisdiction to the maximum extent possible in order "to provide residents a means of redress against those not subject to personal service within the State." Kloth v. Southern Christian University, 494 F.Supp.2d 273, 278 (D. Del. 2007) (quoting Boone

14

v. Oy Partek Ab, 724 A.2d 1150, 1156-1157 (Del. Super. Ct 1997)).

Delaware state courts have interpreted section 3104(c)(1)-(3) as specific jurisdiction provisions of the Delaware long-arm statute. Outokumpu Eng'g, Enters., Inc. v. Kvaerner Enviropower, Inc., 685 A.2d 724, 729 (Del. Super. Ct. 1996). Specific jurisdiction exists when the defendant has purposefully directed his activities toward the forum, and the litigation arises out of or is related to the defendant's contacts with the forum. Helicopteros Nacionales de Colombia, S.A. v. Hall et al., 466 U.S. 408. 414-16 (1984). Specific jurisdiction requires that there be a "nexus" between the plaintiff's cause of action and the conduct of the defendant that is used as a basis for jurisdiction. See id. at 414 at n. 8; Boone, 724 A.2d at 1155.

In this case, the only contact with the State of Delaware that Solae alleges is Hershey Canada's filing of the UCC financing statement.[1] However, Solae has not asserted that there is any nexus between this act in Delaware and the conduct which is the basis of this lawsuit. Accordingly, the Court concludes that this contact is insufficient to give rise to specific jurisdiction over Hershey Canada.

Subsection (c)(4) of the Delaware long-arm statute provides

---

[1]Solae has also asserted this dispute's multiple connections with states such as Missouri, Pennsylvania and Illinois. However, none of these connections are relevant to whether jurisdiction is appropriate in Delaware.

for general jurisdiction.  While this section authorizes

jurisdiction even when the tortious acts and the injury occurred

outside the State of Delaware, the defendant must still be

"generally present" in the state.  Tristrata Tech., 961 F.Supp.

at 691.  Under the statute, a "general presence" requires that

the defendant "regularly does or solicits business, engages in

any other persistent course of conduct in the State or derives

substantial revenue from services, or things used or consumed in

the State."  Del. Code Ann. tit. 10 § 3104(c)(4).  The Court

concludes that the filing of a UCC financing statement is not

sufficient to establish "continuous and substantial" activity

within the forum necessary to subject Hershey Canada to general

personal jurisdiction.  Intel Corp. v. Silicon Storage

Technology, Inc., 20 F.Supp.2d 690, 699 (D.Del. 1998).

        Because the Court has concluded that Hershey Canada is not

subject to this Court's jurisdiction under Delaware's long arm

statute, the Court will not undertake the due process inquiry

concerning whether Hershey Canada has sufficient minimum contacts

with Delaware to satisfy "traditional notions of fair play and

substantial justice."  See International Shoe Co. v. Washington,

326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

III. Whether Solae is Entitled to Jurisdictional Discovery

        Fed. R. Civ. P. 26 permits liberal discovery of any facts

which are relevant and not privileged, and this rule also applies

                                                                16

where the plaintiff seeks discovery to establish personal jurisdiction. While the scope of discovery permitted under the Federal Rules is quite broad, trial courts are vested with the discretion to permit or deny discovery in aid of jurisdiction. Id. at 474 (citing, e.g., Naartex Consulting Corp. V. Watt, 722 F.2d 779, 788 (D.C. Cir. 1983)). "As a general rule, courts are wary of allowing discovery absent some showing of personal jurisdictional facts if a defendant has challenged plaintiff's assertion of personal jurisdiction over him, because basic fact-finding should precede discovery." Id. (citations omitted). The court must be satisfied that there is some indication that the defendant is amenable to suit in this forum. Id. at 475.

Here, Solae relies almost entirely on the allegations of its pleadings to establish this Court's jurisdiction by virtue of the forum-selection clause. However, such reliance is not appropriate as the "Court is not bound to accept as true the allegations in plaintiff's complaint for the purposes of determining whether plaintiff has made a minimal showing so as to entitle him to discovery on the issue of personal jurisdiction." Hansen v. Neumueller, 163 F.R.D. 471, 476 (D.Del. 1995). Solae alleges the following:

- Ms. McLucas, Hershey's representative who negotiated the 2006 Contract, was located in Pennsylvania (D.I. 32 at 7);

- Susan Angele, who is "heavily involved in this matter" is located in Pennsylvania (D.I. 32 at 7);

17

- Hershey "has dealings relevant to this dispute with Solae representatives in settings throughout the United States, including Missouri, Illinois and Wisconsin"(D.I. 32 at 8);

- The alleged contamination occurred in Smith Falls, Ontario (D.I. 32 at 8);

- The allegedly contaminated soy lecithin was manufactured in Gibson City, Illinois (D.I. 32 at 17);

- All orders for soy lecithin were delivered to Solae's office in Chicago, Illinois (D.I. 32 at 17; D.I. 10, Ex. D);

- Much of the evidence "which Hershey [Canada] considers essential to the negotiation of the contract is located in Hershey, Pennsylvania," (D.I. 32 at 18).

Solae seems to contend that these "substantial" contacts (D.I. 32 at 19) suggest with "reasonable particularity the possible existence of the requisite contacts" between Hershey Canada and the State of Delaware (Id. at 31), however, as discussed above, the only actual contact between Hershey Canada and Delaware Solae refers to is Hershey Canada's financing statement, which has since been discharged.  The Court concludes that Solae has not adduced "competent evidence" to demonstrate that personal jurisdiction exists over Hershey Canada.  Telcordia Tech., Inc. v. Alcatel, S.A., No. 04-874-GMS, 2005 WL 1268062, at *9 (D.Del. May 27, 2005).  The Court therefore will deny Solae's request for jurisdictional discovery.

Having concluded that personal jurisdiction does not exist over Hershey Canada, the Court declines to address Hershey

Canada's remaining arguments concerning the Court's equitable discretion to decline jurisdiction, and *forum non conveniens*. Accordingly, Hershey Canada's Motion to Dismiss (D.I. 27) will be granted.

## Conclusions

For the reasons discussed, Defendants' Motion to Dismiss the Amended Complaint (D.I. 26) will be granted.

An appropriate order will be entered.